**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| MIDNIGHT MADNESS DISTILLING, LLC, | : | Bankruptcy No. 21-11750-MDC |
| Debtor. | : | |

| | | |
|---|---|---|
| BONNIE FINKEL, in her capacity as Chapter 7 | : | |
| Trustee for Midnight Madness Distilling LLC, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 23-00047-MDC |
| Casey Parzych, et al., | : | |
| | : | |
| Defendants. | : | |

# <u>MEMORANDUM</u>

## I.    INTRODUCTION

Bonnie Finkel (the "Plaintiff"), as the chapter 7 trustee of the bankruptcy estate of

Midnight Madness Distilling, LLC (the "Debtor"), initiated the above-captioned adversary action

(the "Adversary Action") against a number of individual and entity defendants (collectively, the

"Defendants").  The Complaint lodges 14 counts against some or all Defendants, asserting a

variety of claims based on actions they allegedly took or did not take both pre-petition and post-

petition that had the effect of rendering or deepening the Debtor's insolvency and depressing its

value in the sale process approved by this Court during the Debtor's chapter 11 bankruptcy case.

Pending before the Court is a motion to dismiss the Complaint (the "Motion to Dismiss")[1]

filed by certain of the Defendants (the "Moving Defendants" and together with the Plaintiff, the

"Parties"), asserting that the Complaint should be dismissed with respect to them pursuant to Federal Rule of Civil Procedure 12(b)(6) because none of the Counts against them states a claim for which relief can be granted.  The Plaintiff filed an opposition brief to the Motion to Dismiss (the "Opposition"),[2] to which the Moving Defendants filed a reply brief (the "Reply").[3]  The Court held a hearing (the "Hearing") on Motion to Dismiss, the Opposition, and the Reply on March 1, 2024, after which it took the matter under advisement.

For the reasons discussed *infra*, the Court will grant the Motion to Dismiss in part and deny it in part.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[4]

### A.    The Defendants

The Complaint spans 294 numbered paragraphs over 75 pages, naming 21 different individual and entity Defendants.  Therefore, as an initial matter, the Court sets out the various Defendants and defined groups named in the Complaint in order to make the discussion of alleged facts more comprehensible.[5]

---

[1] Adv. Pro. Docket No. 17.

[2] Adv. Pro. Docket No. 31.

[3] Adv. Pro. Docket No. 35.

[4] This factual background is based on Plaintiff's well-pleaded factual allegations, construed in a light most favorable to Plaintiff, as required when considering a motion to dismiss.  *See, e.g., Crabtree v. Academy Life Ins. Co.,* 878 F.Supp. 727, 729 (E.D. Pa. 1995) (citing *Piecknick v. Commonwealth of Penn.,* 36 F.3d 1250, 1255 (3d Cir. 1994)).

[5] The Moving Defendants take issue in the Motion to Dismiss with the Complaint's use of defined terms to group certain Defendants together, arguing that such terms are inaccurate and/or incendiary.  The Motion to Dismiss therefore uses different defined terms with respect to various groups of Defendants.  In its Opposition, the Plaintiff reverts to the defined terms used in the Complaint.  It is unmanageable and impractical for the Court to adopt yet another set of defined terms in this Memorandum.  It therefore uses the terms employed in the Complaint, without any implication that such terms are accurate or appropriate, but rather because it is the easiest way to ensure that the Parties understand to whom the Court is referring.

### 1. The Insider Defendants

There are six individual Defendants that the Complaint refers to as the Insider Defendants.  Each is alleged to have had a role or roles with the Debtor and with one or more of the other Defendant entities.  Those individuals, and their respective alleged former roles with the Debtor, are:

(i)     Casey Parzych ("Casey"), the Debtor's Manager, majority Member, and from 2012 to 2020, its President and Treasurer;

(ii)    Angus Rittenburg ("Rittenburg"), alleged to have been an officer and Member of the Debtor;

(iii)   Kelly Festa ("Festa"), the Debtor's Chief Financial Officer;

(iv)    Ashleigh Baldwin ("Baldwin"), the Debtor's spokesperson and agent (and Casey's wife);

(v)     Michael Boyer ("Boyer"), general counsel to the Debtor; and

(vi)    R.F. Culbertson ("Culbertson"), the Debtor's Chief Operating Officer and a Member of the Debtor.

### 2. The Polebridge Entities

These Defendants are alleged to be alter egos of one another and to have misappropriated Debtor resources to divert two products, the CBDelight beverage and Faber Hand Sanitizer, away from the Debtor to obtain the profits therefrom.  They are:

(i)     Polebridge, LLC ("Polebridge"), a Pennsylvania limited liability company; and

(ii)    Good Design, Inc. ("Good Design"), a Canadian corporation alleged to be owned by Baldwin, Rittenburg, and non-Defendant Thomas Rittenburg.

### 3.      The Wynk Entities and Shawn Sheehan[6]

These Defendants are alleged to be alter egos of each other, under the control of Casey

and Shawn Sheehan ("Sheehan"), and to have misappropriated Debtor resources to produce,

market and sell a beverage called Wynk Seltzer.  They are:

(i)      AgTech PA LLC f/k/a American Cannabis LLC ("AgTech PA"), a
Pennsylvania limited liability company;

(ii)     XO Energy Worldwide, LLLP ("XO Energy"), a U.S. Virgin Islands
limited liability limited partnership;

(iii)    XO EW, LLC ("XO EW"), a U.S. Virgin Islands limited liability
company;

(iv)     Sheehan, Chief Executive Officer, manager and sole member of XO EW;

(v)      AgTech VI, LLC ("AgTech VI"), a U.S Virgin Islands limited liability
company owned and operated by XO Energy and XO EW, which in turn is
owned by Sheehan; and

(vi)     Canvas 340, LLC ("Canvas 340"), a U.S. Virgin Islands limited liability
company, for which Sheehan and the Shawn P. Sheehan Revocable Trust
serve as members.

### 4.      The Best Bev Entities and Ryan Uszenski

These Defendants are alleged to be alter egos of one another and to have misappropriated

Debtor resources to profit from beverage sales and beverage packaging sales.  They are:

(i)      Can Man LLC d/b/a Best Bev ("Can Man"), a Pennsylvania limited
liability company;

(ii)     Best Bev, LLC ("Best Bev"), a U.S. Virgin Islands limited liability
company which Sheehan owns and controls through the corporate chain of
XO EW, XO Energy, and EtOH;

---

[6] In addition to the below enumerated entities and Sheehan, the Complaint's definition of the Wynk
Entities includes "the now-dissolved Sheehan-controlled entities AgTech VI, LLLP and AgTVI, LLC".
Complaint at ¶26.  The Court will refer to these two entities as the "Dissolved AgTech Entities," though
that term is not used in the Complaint.

(iii)    EtOH Worldwide LLC ("EtOH"), a U.S. Virgin Islands limited liability
company; and

(iv)    Ryan Uszenski ("Uszenski"), manager of Can Man and Best Bev.

**5.      The Gary Parzych Entities and Gary Parzych**

These Defendants are alleged to have received fraudulent transfers from the Debtor

and/or inappropriately interfered with the sale of the Debtor's asset in the chapter 11 case.  They

are:

(i)    Finland Leasing Co., Inc. ("Finland Leasing"), a Pennsylvania corporation
the Debtor's former landlord;

(ii)    Eugene T. Parzych, Inc. ("ETP"), a Pennsylvania corporation; and

(iii)    Gary Parzych ("Gary"), president and owner of Finland and ETP and
Casey's father.

**6.      The Pilfering Entities**

The Complaint defines and refers to the Polebridge Entities, the Wynk Entities, and the

Best Bev Entities collectively as the Pilfering Entities.

**7.      The Sheehan Entities**

The Complaint defines and refers to the U.S. Virgin Island-based group of Defendants as

the Sheehan Entities, consisting of AgTech VI, XO Energy, XO EW, EtOH, and the Dissolved

AgTech Entities.

8.      **The Moving Defendants**

The Moving Defendants are all Defendants other than Finland Leasing, ETP, Gary, Can Man, and Uszenski (the "Answering Defendants"), who together filed an Answer to the Complaint.[7]

B.      **Use of Debtor Personnel and Resources to Produce, Sell and Profit from CBDelight, Faber Hand Sanitizer, and Wynk Seltzer Products**

The Debtor, also known as Theobold & Oppenheimer and Faber Distilling Co., was formed in 2012 by Casey and non-Defendant Anthony Lorubbio.  In the years thereafter it experienced rapid growth developing, manufacturing, marketing, and selling distilled sprit products.  In April 2019 it obtained an approximately $2.5 million loan from PNC, secured by a first lien on Debtor's personal property and second lien on its Bucks County headquarters.  The Plaintiff alleges that the Insider Defendants and other Defendants then contemporaneously formed shadow entities in the same line of business as the Debtor in order to circumvent PNC's security interest and loot the Debtor.  These Defendants generated sham profit sharing arrangements and loan agreements, between the Debtor on the one hand and the Sheehan Entities and EtOH Worldwide on the other, to misappropriate Debtor resources and siphon resulting profits.

1.      **Development of CBDelight**

In April and May 2019, Baldwin and Rittenburg, with Festa's administrative support, formed the Polebridge Entities, with both entities listing the Debtor's headquarters as their respective addresses.  The Polebridge Entities then began manufacturing, packaging, and marketing a beverage with cannabis derivative called CBDelight using Debtor resources, labor,

and material.  For example, in April 2019, the trademark for CBDelight was filed not by a

Polebridge Entity, but by the Debtor.  GoodDesign press releases indicated Debtor employees

were working on CBDelight expansion projects.  Debtor employees had Polebridge email

addresses and were using the Debtor's computers to further Polebridge's business interests.

Likewise, Debtor employees' social media accounts indicated that they were working on

CBDelight sales, and the Debtor's internal slides and presentations reflect that the Debtor's sales

staff and leadership were focusing on CBDelight.

## 2.      Development of Faber Hand Sanitizer

Beginning in March 2020, the Debtor began manufacturing Faber Hand Sanitizer, which

the Debtor had trademarked in 2016, using its resources, labor, equipment, etc., but the resulting

proceeds and profits were funneled away from the Debtor to the Polebridge Entities.  According

to the Plaintiff, in April 2020, Baldwin instructed the Debtor's sales team to ensure payments

from sales of Faber Hand Sanitizer were funding into Polebridge's account.  Festa likewise

instructed the Debtor's sales staff to ensure Debtor customers were wiring the Polebridge bank

account for Faber Hand Sanitizer sales.  The Plaintiff alleges this resulted in possibly hundreds

of thousands of dollars in revenue diverted from the Debtor to Polebridge.  As with the

CBDelight product, Baldwin and Culbertson used the Debtor's computers to further Polebridge's

business interests with respect to Faber Hand Sanitizer.  The Plaintiff alleges that, between sales

of CBDelight and sales of Faber Hand Sanitizer, a minimum of $8.8 million in profits was

diverted from the Debtor.

---

[7] Adv. Pro. Docket No. 16.

### 3.    Development of Wynk Seltzer

In the fall of 2020, Parzych, Rittenburg and Sheehan used Debtor resources and personnel to create a beverage called Wynk Seltzer.  The Plaintiff alleges that Debtor employees including Casey, Rittenburg, Festa, Culbertson, and non-Defendant Casey Coughlin ("Coughlin") were working on Wynk while employees of the Debtor, and that Debtor materials, office and warehouse space, and soft services were used to produce and promote Wynk. Moreover, the Debtor's funds were used to pay expenses for Coughlin's Wynk-related business trip in April 2021 while she was a Debtor employee, and the Wynk Entities had the Debtor pay for industrial equipment shipped to a Wynk location.  The Debtor was also billed during the summer of 2021 for invoices that expressly stated that they were Wynk-related or were for deliveries to a non-Debtor location.  The Plaintiff alleges that, despite being manufactured, marketed and sold with Debtor resources and employees, all Wynk revenue went to the Wynk Entities, and that the Defendants attempted to hide the diversion of revenue and profits away from the Debtor by fabricating invoices, tax forms and other documents that failed to fully and accurately disclose the Debtor's resources being devoted to the Polebridge and Wynk Entities.

### C.    Creation of the Best Bev Entities to Take the Debtor's Brands

In May 2021 Boyer formed Can Man.  The Plaintiff alleges that the Defendants then caused the Debtor to physically transfer a Hamrick Recaser machine valued at $145,000 to the location used by the Wynk Entities, for use by the Pilfering Entities.  Plaintiff also alleges that once Can Man was formed, Coughlin and Casey took preparatory actions for hiring at a time when the Debtor was in default on the PNC loan and soon to file bankruptcy.  Specifically, Coughlin announced via social media that Faber Distilling was in a "hiring spree" that was

intended to benefit the Pilfering Entities, since the Debtor was on the verge of bankruptcy.

Likewise, Casey caused the Debtor to enter into a human resources consulting agreement, with

such services paid for by the Debtor but for benefit of the Pilfering Entities.

By mid-June 2021, Festa and Uszenski had created a document, using the Debtor's

technology, detailing a corporate structure under which Can Man would own the Debtor's brands

and operate out of the same location as the Wynk Entities.  Also in mid-June, Best Bev was

formed in the U.S. Virgin Islands and the fictitious name of Best Bev was registered in

Pennsylvania.  In September 2021 Can Man changed its registered office to the same location as

the Wynk Entities.

### D.        Collusion with the Sheehan Entities in the Sale of the Debtor's Assets

Plaintiff alleges that the some or all of the Insider Defendants colluded with Sheehan to

depress the value of the Debtor, first before the Debtor filed for bankruptcy, and then post-

petition in the sale process before this Court.

With respect to their pre-petition efforts, after the Debtor defaulted on the PNC loan on

February 28, 2021 due to the diversion of revenue and profits to the Polebridge Entities and the

Wynk Entities, the Defendants sought to have certain of the Sheehan Entities either purchase the

PNC debt or purchase the Debtor's assets outside of bankruptcy.  However, rather than engage in

an arms-length transaction, certain of the Defendants coordinated with the Sheehan Entities and

sought to portray a low value of the Debtor in hopes of allowing the Sheehan Entities to acquire

the business for less than fair value.[8]  Then in the lead-up to the Debtor's bankruptcy filing,

---

[8] Plaintiff alleges that Sheehan's wife, Kelli Sheehan, and John Cherette, the CFO of the Sheehan Entities,
maintained accounts on the Debtor's system and had full access to the Debtor's books, records and online
accounts

Sheehan and Parzych jointly retained a public relations firm to direct marketing strategies in anticipation of Sheehan's acquisition of the Debtor's assets. Sheehan also sent a letter to PNC as President of EtOH, seeking PNC's cooperation in a bankruptcy sale of the Debtor's assets at a depressed price to the Best Bev Entities, reasoning that the assets had a higher value as a going concern, highlighting the issues that would arise with selling them piecemeal, and noting the complicating factor of Gary being unwilling to lease the Debtor's space to another party.

On the Petition Date, the Debtor filed a sale motion proposing to sell its assets to EtOH. The Complaint alleges the Debtor did so without disclosing the full extent of its relationship with EtOH. The Complaint further alleges that the Defendants then took various actions to chill the sale process and steer it toward the Sheehan Entities. For example, contrary to Casey's sworn declaration filed with this Court, Gary advised potential bidders that he was only willing to lease the Debtor's space to the Sheehan Entities because Casey was part of their organization, and he would not lease the space to any party other than the Sheehan Entities or permit a buyer a transition period to find new space. The Debtor also posted a document in the sale data room stating that the lease for the Debtor's space had expired, that all equipment stored there would need to be immediately removed upon sale, and that a new license would have to be obtained because the Debtor's current license was tied to the leased space. In late July and August 2021, creditors and PNC were raising concerns with the U.S. Trustee and the Debtor's bankruptcy counsel regarding the Debtor's relationship with and to the Wynk Entities, which Casey Parzych had denied both at the Debtor's meeting of creditors and in a subsequent written statement, and Casey's relationship with the Sheehan Entities, particularly given that one (EtOH) was the stalking horse for the sale. Ultimately Millstone Spirits Group LLC ("Millstone") was named

10

the winning bidder in the bankruptcy sale for a purchase price of $1.4 million, the assumption of

certain contracts, and the payment of certain administrative expenses, but the Complaint asserts

this is far less than the Debtor would have obtained through a fair bidding process.

> **E.** **Defendants Operated the Debtor-in-Possession as an Extension of the Pilfering Entities Even After the Sale**

The Complaint alleges that the Defendants not only misappropriated the Debtor's

resources and looted its assets pre-petition for the benefit of the Pilfering Entities, but continued

to do so post-petition.  The Debtor made various post-petition transfers of assets[9] to or for the

benefit of the Best Bev Entities, including: (i) transferring an industrial shrink wrap machine to

Best Bev's location, then having Festa falsely inform Millstone it had to be scrapped; (ii) using

the Debtor's account and making post-petition payment for supplies delivered to Best Bev, which

Festa instructed vendors to tell the chapter 7 trustee were being delivered to the Debtor, and (iii)

removal of various pieces of equipment from the Debtor's facility for the benefit of the Best Bev

Entities.

The Complaint further alleges that prior to the Millstone sale closing, the Insider

Defendants deleted or stole all of the Debtor's electronic data and cloud computing drives, and

that while Festa testified at the meeting of creditors that she unintentionally deleted the data

while trying to transfer it to Millstone, this is contradicted by (i) the safeguards against mass

deletion put in place by the Debtor's cloud computing provider, (ii) the fact that the Debtor's

hardware also was wiped of meaningful data, (iii) forensic analysis reflecting that the data was

---

[9] The Complaint alleges that ascertaining the full extent of the Debtor's post-petition transfers has been hampered by the Defendants' intentional destruction of records.

transferred rather than deleted, and (iv) that fact that Festa was thereafter able to retrieve certain particular electronic documents after requesting permission to do so from Casey and Sheehan.

The Complaint further alleges that the Debtor's employees began working for and fulfilling orders for the Best Bev Entities post-petition, using the Debtor's inventory and equipment. Best Bev, through Culbertson and other Defendants, was targeting the Debtor's customers with price discounts made possible as a result of the diversion of Debtor's assets. The Defendants then began manufacturing, marketing and selling a "Well Rebellion" line of products using Debtor resources, including stolen equipment, data, customer contacts, and employees. Furthermore, in conversations with the Debtor's customers, the Defendants advised that Best Bev was merely a continuation of Midnight Madness

**F.     Insider Defendants' Failure to Maintain Internal Controls and Misuse of Funds**

The Complaint alleges that the Insider Defendants intentionally caused the Debtor to fail to comply with the most basic principles of corporate governance and internal controls, particularly with respect to accounting, in order to allow the Defendants to steal from the Debtor for the benefit of the Pilfering Entities. The Complaint asserts that Boyer served as the Debtor's general counsel while simultaneously acting as counsel to the Polebridge and Wynk Entities, and while the other Insider Defendants were providing the Sheehan Entities with full access to the Debtor's books and records. This concerted effort, the Plaintiff asserts, was an attempt to rig the bankruptcy sale process in favor of a Sheehan Entity, resulting in an artificially low sale price and causing the Debtor to incur substantial fees and costs it would not have otherwise. The Insider Defendants, together with Sheehan, also grossly mismanaged the Debtor's chapter 11 case, provided false testimony, and produced inaccurate documents.

12

The Insider Defendants also misused Debtor funds.  Casey and Rittenburg used Debtor funds for personal expenses such as flight lessons.  In transactions for the benefit of the Gary Parzych Entities, but to the detriment of the Debtor, the Insider Defendants caused the Debtor to pay amounts well exceeding the contractual monthly rent of $2,050.00 under its lease with Finland Leasing for many months from August 2017 through June 2021, totaling nearly $225,000 in excess payments.  They also caused the Debtor to make various payments for utilities and services that were provided at the Debtor's facility for the benefit of ETP, notwithstanding lease language calling for proration, for many months from May 2016 through September 2021, totaling over $355,000.

### G.    The Complaint's Counts

Based on the Defendants' alleged acts and omissions discussed *supra*, the Complaint asserts 14 counts against the Defendants:[10]

1.    Count 1 – Breach of Fiduciary Duty (Insider Defendants)

2.    Count 2 – Aiding and Abetting Breach of Fiduciary Duty (All Defendants)

3.    Count 3 – Corporate Waste (Insider Defendants)

4.    Count 4 – Alter Ego, Veil Piercing, Successor Liability (All Defendants)

5.    Count 5 – Unjust Enrichment (All Defendants)

6.    Count 6 – Accounting (All Defendants)

7.    Count 7 – Constructive Trust (All Defendants)

8.    Count 8 – Breach of Contract (Casey and Rittenburg) and Declaratory Relief (Pilfering Entities)

---

[10] Counts 9 and 14 are asserted against only Finland Leasing and ETP, both of which have answered the Complaint, and therefore are not a subject of the Motion to Dismiss.

9. Count 9 – Breach of Contract (Finland Leasing)

10. Count 10 – Equitable Subordination (All Defendants)

11. Count 11 – Turnover Under §542 of the Bankruptcy Code (All Defendants)

12. Count 12 – Avoidance/Recovery of Post-Petition Transfers Under §§549 and 550 of the Bankruptcy Code (Best Bev Defendants)

13. Count 13 – Avoidance/Recovery of Preferential Transfers Under §§547 and 550 of the Bankruptcy Code (Finland Leasing, ETP, and Boyer)

14. Count 14 – Avoidance/Recovery of Fraudulent Transfers Under §§548 and 550 of the Bankruptcy Code (Finland Leasing and ETP)

## III. DISCUSSION

### A. Motion to Dismiss Standard

As noted *supra,* the Moving Defendants seek dismissal of all counts against them pursuant to Rule 12(b)(6), for failure to state a claim. Rule 12(b)(6) requires the Court to accept as true all well-pleaded factual allegations of the Complaint, construe disputed facts in a light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the Complaint, the Plaintiff may be entitled to relief. *In re Reinford*, 2010 WL 4026806, at *1 (Bankr. E.D. Pa. Oct. 7, 2010) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Dismissal is appropriate only if, accepting as true all facts alleged in the Complaint, the Plaintiff has not pleaded enough facts to state a claim to relief that is plausible on its face. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In applying Rule 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2

14

L.Ed.2d 80 (1957).  Dismissal is not appropriate "merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevails on the merits," as Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips,* 515 F.3d at 231, 234.  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

While the Complaint need not include detailed factual allegations, it does need to go beyond "a formulaic recitation of the elements of a cause of action … Factual allegations must be enough to raise a right to relief above the speculative level."  *In re Reading Broadcasting, Inc.*, 390 B.R. 532, 548 (Bankr. E.D. Pa. 2008) (quoting *Twombly*).  This Court's role "is limited to determining whether, based upon the allegations of the complaint, accepted as true with all reasonable inferences, the plaintiff is entitled to offer evidence in support of the claims, and not whether the plaintiff will ultimately prevail upon the merits.  Resolution of that issue requires that the complaint contain sufficient averments to provide fair notice to the defendant of the claims asserted, and that the factual allegations suggest the required elements of the individual claims.  The standard does not require that a plaintiff plead every fact upon which his claim is based." *Id.* (internal citations omitted).

In determining motions to dismiss under Rule 12(b)(6), the Third Circuit has articulated a two-part test to be employed.  First, the factual and legal elements of a claim should be separated, accepting all well-pleaded facts as true but disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Second, the Court must then

determine whether the facts alleged in the Complaint are sufficient to show that the Plaintiff has a plausible claim for relief. *Id.* at 212. The Complaint must do more than allege the Plaintiff's entitlement to relief; it must show such an entitlement with its pleaded facts. *Id.* Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has not shown the Plaintiff is entitled to relief. *Id.* The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B.  The Complaint is Not a Shotgun Pleading**

Before arguing that none of the counts against them state a claim, the Moving Defendants first argue that the Complaint is a classic "shotgun pleading" that fails to put them on adequate notice of both the claims against them and the grounds upon which each claim rests.

**1.  The Moving Defendants' Argument**

The Moving Defendants cite the four typical types of shotgun pleadings: (i) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (ii) the complaint is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (iii) the complaint does not separate each cause of action or claim for relief into different counts, or (iv) the complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or against which of the defendants the claim is brought.

The Moving Defendants argue the Complaint suffers from multiple of these deficiencies. First, they argue that multiple counts simply adopt the allegations of all preceding counts. Next, they argue the Complaint is replete with conclusory or immaterial facts not obviously connected

to a cause of action.  They further argue that Counts 1 through 4 improperly lump groups of

Defendants together without specifying which are responsible for which acts or omissions, while

Counts 5 and 7 are alleged against all Defendants but only contain allegations against certain

Defendants.  Furthermore, they argue, Count 8 asserts two separate forms of relief (breach of

contract and declaratory judgment), while Count 12 is asserted against the "Best Bev

Defendants," a term not used or defined anywhere in the Complaint.

### 2.      The Plaintiff's Response

The Plaintiff argues that Rule 8(a)(2) requires only a short plain statement of the claim

showing the plaintiff is entitled to relief, and the test for the Complaint's sufficiency is whether it

provides adequate notice to Defendants of the claims against them and the grounds upon which

each claim rests.  Under that standard, the Plaintiff argues that the Complaint is not a shotgun

pleading, but rather alleges in detail the role and specific actions of each individual and entity

Defendant in an overall scheme to benefit themselves at the expense of the Debtor.  Moreover,

the Plaintiff asserts, where conduct is alleged to have been committed by all or a subset of

Defendants, that is because all such Defendants engaged in that conduct collectively, and "group

pleading" is not problematic to a claim when the alleged conduct involved collective action and

decision making.

### 3.      The Moving Defendants' Reply

The Moving Defendants reply that the Plaintiff is attempting to impermissibly rectify the

Complaint's pleading deficiencies through the Opposition, which is not a pleading under Rule

8(a).  Furthermore, they argue, the Complaint cannot assert multiple counts by simply adopting

the allegations of all preceding counts, and cannot use group pleading and defined terms to avoid

having to associate specific Defendants to particularized conduct.  They argue the Complaint and

Opposition are replete with conclusory, vague or immaterial facts not obviously connected to a

cause of action.

### 4.      The Court's Analysis

The Moving Defendants correctly identify the four general types of shotgun pleadings.

*See Bartol v. Barrowclough,* 251 F.Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm*

*Beach County Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015)).  The "unifying

characteristic" of these four types of pleadings is that "'they fail to one degree or another, and in

one way or another, to give the defendants adequate notice of the claims against them and the

grounds upon which each claim rests.'" *Id.* (again quoting *Weiland*).

The Moving Defendants primarily rely both in their papers and at the Hearing on *Bartol*,

where the court found a 54 page complaint pressing 13 counts "against any combination of well

over seven distinct defendants" to be a shotgun pleading because (i) most of the defendants were

not present during the events at issue in the case, likely never had any interaction with the

plaintiff, and based on "geographic and temporal realities: could be presumed to have no

knowledge or involvement in the plaintiff's case," (ii) it was not clear against which defendants

many of the claims were brought, exacerbated by the complaint's failure to define the meaning

of the phrase "individual Defendants," against whom many claims were brought, and (iii)

multiple counts adopted "the allegations of all preceding counts," leading to a situation in which

most counts contained irrelevant factual allegations and legal conclusions.  *Id.* at 860.  The

*Bartol* court therefore found that the complaint at issue failed to give adequate notice to the

defendants of the claims against them and the grounds on which each claim rested.  *Id.*

18

However, "whether a complaint is an impermissible shotgun pleading is not wholly dependent on whether it incorporates all preceding paragraphs or names multiple defendants, but on whether the complaint 'gives the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Milo, LLC v. Procaccino,* 2020 WL 1853499, at *10 (E.D. Pa. Apr. 13, 2020) (quoting *M.B. v. Schuylkill County,* 375 F.Supp.3d 574, 587 (E.D. Pa. 2019)).  Moreover, a complaint can "ha[ve] some of the characteristics of a shotgun pleading" such as "(1) each count adopt[ing] the allegations of the preceding counts, and (2) some of the causes of action … not identify[ing] the role of each particular defendant in the claim" without being subject to dismissal where it "describes, in significant detail, specific allegations against the respective defendants."  *M.B. v. Schuylkill County,* 375 F.Supp.3d at 587 (rejecting argument that the complaint was a shotgun pleading notwithstanding the presence of these features, and distinguishing it from the complaint in *Bartol* because it gave the defendants adequate notice of the claims against them and the grounds upon which each claim rested); *see also Murphy v. Hotwire Communications, LLC,* 2020 WL 2128472, at *6 (E.D. Pa. May 5, 2020) (finding the complaint did not constitute a shotgun pleading despite each count incorporating every preceding allegation because the factual allegations were pleaded with enough detail to establish the factual background of the claims and each count specified the basis for the claim and general conduct creating liability, thereby giving the defendant adequate notice of the claims and the grounds on which they rest).

Here, as in *Bartol,* the Complaint is lengthy, asserts over a dozen counts against various groups of Defendants which incorporate the preceding allegations by reference, and uses defined terms to group those Defendants, many of which are entities.  It is dense, made even more so by

the fact that there are over 20 named defendants grouped in buckets to which not all factual

allegations apply.  Some claims are made against certain groups of Defendants, others are made

against all Defendants.  However, it includes nearly 160 paragraphs of detailed factual

allegations against the Defendants, which the Court has summarized *supra*, detailing the acts and

involvement of each in the alleged scheme to use the Debtor's personnel and other resources for

the benefit of the Defendants. Complaint, at ¶¶39-198.  Moreover, as the Plaintiff has argued,

where certain alleged conduct was undertaken by a group of Defendants, defining the Defendants

in groups and alleging claims against them as groups does not deprive them of notice as to the

basis for the claim against them or against whom it is pressed.  *See Corbin v. Bucks County,*

2023 WL 8042560, at *2 (E.D. Pa. Nov. 21, 2023) (rejecting the defendant's argument that the

complaint did not satisfy Rule 8's notice pleading requirement because it relied on impermissible

group pleading, concluding that there is no categorical prohibition in the Third Circuit on

allegations that multiple defendants undertook the same action in tandem, such that irrespective

of whether the complaint's allegations were sufficient to state a claim for which relief may be

granted, they permitted each named defendant to understand the nature of the allegations levied

against them).

The Complaint's factual allegations detail which Defendant or Defendants acted or failed

to act in a manner that renders them liable, distinguishing it from cases where the complaint

makes no distinction among all defendants or asserts facts and claims against all defendants

despite "geographic and temporal" impossibility.  *Compare Modlin v. Piazza Mgmt. Co.,* 2023

WL 7386682, at *5 (E.D. Pa. Nov. 7, 2023) (finding that complaint was not a shotgun pleading

because it was "sufficiently clear" and contained separate counts premised on separate alleged

facts against all defendants "that, although certainly not perfect or a model for pleading, specifies that all were responsible or played a role" in the alleged bad acts, such that it gave the moving defendant adequate notice), *with Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.") *and Kabbaj v. Obama,* 568 F.App'x 875, 880 (11th Cir. 2014) (finding improper shotgun pleading where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct.").  As *Modlin* indicates, the test is not perfect pleading, but rather whether the Complaint provides adequate notice to the Moving Defendants of the claims that are asserted against them and the factual basis for the claims.  The Court finds that the Complaint sets forth the underlying facts underpinning each claim against the Defendants, and identifies in each count which Defendants it seeks to hold liable, thereby adequately satisfying this test.  The Complaint therefore does not constitute a shotgun pleading.[11]

**C.      Analysis of Each Count Against the Moving Defendants for Failure to State a Claim**

**1.      Consideration of the Exculpation Affirmative Defense is Premature**

**a.      The Parties' Arguments**

As a threshold position, the Moving Defendants argue that the Debtor's Operating

---

[11] This finding is subject to the directives the Court gave at the Hearing that, in order to clarify certain counts of the Complaint, (i) the successor liability claim must be separated into a distinct count from the veil-piercing/alter ego claim in Count 4, and (ii) the Plaintiff must revise Count 12 to be assert it against the defined "Best Bev Entities" as intended, rather than the undefined "Best Bev Defendants" as drafted.

Agreement (the "LLC Agreement") insulates them from liability for the Plaintiff's fiduciary duty, aiding and abetting, and corporate waste claims, based on the purported exculpation granted under §5.21 (the "Exculpation Provision").  The Moving Defendants assert that the Exculpation Provision states that "No Member as such or any Manager, officer, employee, or agent of any Member or the Company shall be liable to the Company or any Member for losses or liabilities arising from the conduct of the affairs of the Company or from the conduct of any employee or agent of the Company."

The Plaintiff argues in the Opposition that (i) the Exculpation Provision should not be considered at the motion to dismiss stage because it is an affirmative defense under Pennsylvania law that is not grounds for dismissal at the pleading stage (the "Affirmative Defense Argument"), (ii) even were it considered, the Moving Defendants have misrepresented its language in order to gloss over its ambiguity, inserting the phrase "shall be **liable**" in place for the phrase "shall be **able**" (emphasis provided) as it actually appears in the LLC Agreement (the "Ambiguity Argument"), and (iii) even if the Exculpation Agreement's language could be revised as the Moving Defendants seek, it would not protect them as a matter of law because if it shields gross negligence and higher levels of fault, as the Moving Defendants assert, it is unenforceable under Pennsylvania law because it contravenes public policy and relates to a matter of public interest in allowing the Moving Defendants to discard their fiduciary duty to maximize recovery to creditors once the Debtor was insolvent (the "Public Policy Argument").

### b.    The Court's Analysis

The Court first addresses the Plaintiff's Affirmative Defense Argument.  The Court agrees with the Plaintiff that exculpation is an affirmative defense under Pennsylvania law.  *See*

22

*generally King v. U.S. Steel Corp.,* 247 A.2d 563, 565 (Pa. 1968) (referring to defendant's

reliance on exculpatory clause in leases as an affirmative defense); *Coatesville Contractors &*

*Engineers, Inc. v. Borough of Ridley Park,* 339 Pa. Super. 147, 152-53 (Pa. Super. 1984), *rev'd*

*on other grounds,* 509 Pa. 553 (1986) (facts implicating exculpatory language in contract

constituted an affirmative defense); *Warren City Lines, Inc. v. United Refining Co.,* 287 A.2d

149, 152 n.3 (Pa. Super. 1971) (referring to exculpatory clause in lease as affirmative defense).

However, even if the nature of a defense is determined by state substantive law, the

manner of pleading the claims or defenses in a federal matter is governed by the Federal Rules of

Civil Procedure (the "Federal Rules").  *Robbins v. Galbraith,* 1993 WL 157725, at *1 (E.D. F.3d

Pa. 1993) (citing 2A Moore's Federal Practice ¶8.27[3] (2d ed. 1993); *see also GF Indus. of*

*Missouri, LLC v. Lehigh Valley Genomics, LLC,* 2024 WL 1889797, at *11 n.22 (E.D. Pa. Apr.

30, 2024) ("Typically, with respect to affirmative defenses in diversity cases, 'state law defines

the nature of the defenses, but the Federal Rules of Civil Procedure provide the manner and time

in which defenses are raised and when waiver occurs.'") (quoting *Morgan Guar. Tr. Co. of N.Y. v.*

*Blum,* 649 F.2d 342, 344 (5th Cir. 1981)).[12]

The Federal Rules generally require that affirmative defenses be pleaded in the answer.

F.R.C.P. 8(c) (providing that in responding to a pleading, a party must affirmatively state any

affirmative defense); F.R.C.P. 12(b) (providing that, with certain exceptions that may be asserted

---

[12] That said, Pennsylvania courts have declined to dismiss claims based on an exculpation defense at the
early stage of litigation prior to discovery. *See Leidy v. Deseret Enters., Inc.,* 381 A.2d 164, (Pa. Super.
Ct. 1977) (where the defendant pleaded an exculpatory clause that would be a complete defense to suit,
and the plaintiff denied the clause's validity, the dispute precluded the trial court from entering judgment
on the pleadings in favor of the defendant); *see also Clay v. Erie Ins. Exchange,* 1993 WL 792111, at *2
(Pa. Ct. Comm. Pl. July 13, 1993) (citing *Leidy* in stating that if a defense is presented against an
"exclusion of named-person" clause in an insurance contract, judgment on the pleadings is precluded, but
concluding that no such defense was presented in the case before it).

by motion, every defense to a claim for relief must be asserted in the responsive pleading);

*Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002) (citing Rule 12(b)).  In the Third Circuit,

affirmative defenses may be raised at the motion to dismiss stage if the defenses are "'apparent

on the face of the complaint.'"  *Boardakan Restaurant LLC v. Atlantic Pier Assocs., LLC,* 2013

WL 5468264, at *8 (E.D. Pa. Oct. 2, 2013) (quoting *Bethel v. Jendoco Constr. Corp.,* 570 F.2d

1168, 1174 (3d Cir. 1978)); *Rycoline Prods., Inc. v. C&W Unlimited,* 106 F.3d 883, 886 (3d Cir.

1997) (explaining that the exception applies to any affirmative defense raised pursuant to Rule

8(c)).  This means that the Court "'is limited to the materials properly before it on a motion to

dismiss, which may include public records and materials embraced by the complaint.'"  *In re*

*Nat'l Football Players' Concussion Injury Litig.,* 2019 WL 634640, at *5 (E.D. Pa. Feb. 14,

2019) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 983 (8th Cir. 2008)); *see*

*also In re Sun Apparel Warehouse, Inc.,* 2003 WL 21262691, at *5 (Bankr. E.D. Pa. 2003)

(finding that the court could not dismiss the complaint under Rule 12(b)(6) based on the

affirmative defense of equitable or judicial estoppel because neither the face of the complaint nor

facts the court could judicially notice made the defense apparent, as required under *Rycoline*

*Products*).

　　　　Here the Moving Defendants' affirmative defense of exculpation is not apparent from the

face of the Complaint or facts which the Court can judicially notice.  To the extent it is viable, it

arises from the Exculpation Provision of the LLC Agreement.  Although it is true, on a motion to

dismiss, that the Court may go beyond the Complaint to consider documents "integral to or

explicitly relied upon" in the Complaint, *see e.g., In re Burlington Coat Factory Sec. Litig.,* 114

F.3d 1410, 1426 (3d Cir. 1997)), the Exculpation Provision itself is not integral to the fiduciary

24

duty, aiding and abetting, and corporate waste claims the Moving Defendants assert are barred.[13]

Moreover, the Plaintiff was not required to plead around any exculpation rights the Moving

Defendants assert exist thereunder.  *See Schmidt v. Skolas,* 770 F.3d 241, 248 (3d Cir. 2014) (a

complaint need not anticipate or overcome affirmative defenses, and does not fail to state a claim

simply because it omits facts that would defeat an affirmative defense).  Moreover, while the

Court does not need to resolve the Ambiguity Issue the Plaintiff raises with respect to the

Exculpation Provision, the Parties' differing assertions as to the import of its language makes

reference to it at the pleadings stage premature.

Therefore, because the Moving Defendants' affirmative defense of exculpation is not

apparent from the face of the Complaint, nor was it required to be addressed in the Complaint, it

is not properly a basis for dismissal.[14]  As such, the Court need not further address the Plaintiff's

Ambiguity Argument or Public Policy Argument at the dismissal stage.

### 2.    Count 1 for Breach of Fiduciary Duty Against All Insider Defendants

Count 1 of the Complaint asserts that the Insider Defendants owed duties of care, loyalty,

and good faith to the Debtor as (a) officers (Casey, Rittenburg, Festa, and Culbertson), (b)

Members (Casey, Rittenburg, and Culbertson), (c) employees or agents (all Insider Defendants),

or (d) legal counsel (Boyer).  The Count sets forth at ¶204 a laundry list of actions and omissions

by the Insider Defendants asserted to be breaches of these duties.

---

[13] The Moving Defendants assert that the Complaint specifically references the LLC Agreement and
quotes from it at length, pointing to ¶¶ 256-57.  Motion to Dismiss, at 22.  These paragraphs fall under the
Complaint's constructive trust claim.

[14] Because the Court finds that the Exculpation Provision is not a proper basis for dismissal as a general
matter, it does not discuss exculpation further as it might apply to individual counts of the Complaint.

### a.      The Moving Defendants' Arguments

Pennsylvania fiduciary duty law requires four elements to establish a breach: (a) the

existence of a fiduciary duty; (b) breach; (c) harm to the plaintiff; and (d) actual loss or damage.[15]

The Moving Defendants argue that Festa, Baldwin, Culbertson, and Boyer did not owe a

fiduciary duty to the Debtor as a matter of law under the Pennsylvania Limited Liability

Company Act (the "LLC Act"), applicable to the Debtor as a limited liability company (an

"LLC"), and the LLC Agreement.  With respect to all Insider Defendants, the Moving

Defendants argue the Complaint fails to plausibly allege facts constituting breach.

Beginning with Festa, Baldwin, Culbertson, and Boyer, the Moving Defendants argue

that because the Debtor was a manager-managed LLC, only Managers of the Debtor owed

fiduciary duties pursuant to the LLC Act.  The Complaint does not allege any of these

individuals were Managers, only that they were employees or agents in various roles or, in the

case of Culbertson, a Member.  Furthermore, although the default fiduciary duties under the LLC

Act are the duties of care and loyalty, the members of an LLC have substantial freedom to

contractually alter or modify those duties.  The Moving Defendants assert §5.7 of the LLC

Agreement significantly narrowed the scope of a Manager's fiduciary duties.[16]  The Moving

Defendants also point to the LLC Agreement's allowance at §5.8 for each Manager, Member,

---

[15] The Moving Defendants argue that because such claims are subject to a two-year statute of limitation, any breach claim that relates to alleged acts or omissions predating June 21, 2019 is time-barred in any event.

[16] Section 5.7 provides as follows: "<u>Liability for Certain Acts</u>.  Each Manager shall perform his duties as a Manager in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. No Manager shall be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence or willful misconduct by such Manager."

officer and agent to pursue other ventures without offering participation to the Debtor, arguing this further insulates the Insider Defendants from the breach of fiduciary duty allegations the Plaintiff levels.[17]  The Moving Defendants argue that in addition to the exculpation provided by §5.21 for Members, Managers, officers, employees and agents, as well as the indemnification provided by §5.22 for Members and Managers, the LLC Agreement does not impose fiduciary duties on any officers, employees, agents, spokespersons, or outside counsel to begin with. Based on these provisions of the LLC Act and the LLC Agreement, the Moving Defendants argue the Complaint fails to allege any facts showing that Festa, Baldwin, Boyer, or Culbertson owed fiduciary duties to the Debtor, making dismissal of Count 1 against them appropriate.

With respect to all Insider Defendants, the Moving Defendants argue that the Complaint fails to state a plausible claim against any of them because it does not allege they engaged in "fraud, deceit, gross negligence or willful misconduct" that would leave them unprotected under the §5.7 of the LLC Agreement.  As a general matter, the Moving Defendants argue, the Complaint does not assert with the requisite particularity which specific individual was allegedly responsible for any act or omission that would be a breach.  They argue that general allegations the Insider Defendants engaged in self-dealing does not meet the pleading standard, particularly

---

[17] Section 5.8 provides as follows: "<u>Conflicts of Interest</u>.  The Managers shall devote such time as they, in their discretion, deem necessary to manage the Company's affairs in an efficient manner.  Subject to the other express provisions of this Agreement, each Manager, Member, officer and agent of the Company at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, with no obligation to offer to the Company or any other Member, Manager, or agent the right to participate therein.  Except as otherwise provided in this Agreement, the Company may transact business with any Manager, Member, agent or Affiliate thereof provided the terms of those transactions are disclosed to the Managers and no Managers has any objection thereto.  The foregoing notwithstanding, no Manager, Member, officer or agent may use his/her/its position with the Company, and information received as a result of said position, in a manner that will harm the business of the Company in any way."

when the LLC Agreement contemplates and permits the Debtor's officers and employees to engage in outside business ventures.

Addressing the general patterns of conduct alleged to have constituted a breach of the Insider Defendants' duties, the Moving Defendants assert that the Debtor was restricted from selling CBD and cannabis products, such that any ventures involving CBDelight and Wynk Seltzer could not have been offered to the Debtor. The Moving Defendants argue that allegations that Parzych and Rittenburg used the Debtor's funds for unauthorized personal expenses do not state a breach of fiduciary duty claim because the funds used were for legitimate business expenditures. The Moving Defendants also take issue with the Complaint's assertion that the Insider Defendants failed to maintain books and records, arguing it does not rise to the level of reckless, willful misconduct or a knowing violation of law, and further that the allegations regarding Debtor's electronic information that was destroyed do not support a fiduciary duty claim because the only information lost was on the Google Cloud platform and resulted from the Debtor being unable to pay for the cloud services. Finally, the Moving Defendants argue the Complaint's assertion that the Insider Defendants sabotaged the sale process does not state a breach of fiduciary duty claim; rather, because the Debtor entered bankruptcy with a stalking horse bid and the auction then produced a higher sale price that the sale order found to be reasonably equivalent value, this is an impermissible collateral attack on the approved sale.

**b.     The Plaintiff's Opposition**

The Plaintiff responds that all Insider Defendants owed fiduciary duties to the Debtor,

and that the Complaint alleges in extensive detail the actions each Insider Defendant took or did

not take that constituted a breach of such duties.

Turning first to whether the Insider Defendants owed fiduciary duties to the Debtor, the

Plaintiff argues that Festa, Baldwin, Culbertson, and Boyer owed fiduciary duties as employees

or agents of the Debtor, as it is black letter Pennsylvania law that an employer/principal is

entitled to its employees'/agents' undivided loyalty during the term of employment and within

the scope of agency.  With respect to Boyer, it is also Pennsylvania law that a fiduciary

relationship exists between an attorney and their client.  The Plaintiff argues that the Moving

Defendants cite no provision of the LLC Act that would supplant this law, and in fact the

Pennsylvania Associations Code, of which the LLC Act is a part, provides that unless displaced,

the law relating to, *inter alia*, principals and agents, shall supplement its provisions.  Moreover,

the Plaintiff argues, the provisions of the LLC Act the Moving Defendants cite in arguing that

only managers of the Debtor owe fiduciary duties contain no language that would support this

conclusion, and by contrast, Pennsylvania caselaw confirms that employees and agents of an

LLC owe common law fiduciary duties.  Nor, the Plaintiff asserts, is there any language or

provision of the LLC Agreement limiting fiduciary duties to Managers.  Moving Defendants'

citation to §§5.1 and 5.7 is misguided, because these provisions pertain only to Managers and are

inapplicable to Festa, Baldwin, Boyer, and Culbertson.  While §5.8 applies in certain respects to

officers and agents, it does not provide for a waiver of fiduciary duties, and expressly prohibits

Members, Managers, officers and agents from using their position to harm the Debtor's business in any way, which is precisely what is alleged to have happened.

With respect to Casey and Rittenburg's fiduciary duties to the Debtor, the Plaintiff responds that they owed fiduciary duties to the Debtor as Managers.  Section 8849.2 of the LLC Act establishes that managers of a manager-managed LLC owe duties of loyalty, care, and good faith and fair dealing, and while an LLC's operating agreement can modify these duties to some extent, it cannot eliminate certain aspects of the duty of loyalty or of a manager's duty of care. Furthermore, any modification is effective only to the extent is it stated clearly and with particularity, and here any reliance on §5.7 of the LLC Agreement as a waiver of the duty of care fails because the provision is ambiguous; the first sentence of the section establishes that the Managers are subject to an ordinary negligence standard, which is a lower standard than the LLC Act's default, but the second sentence then contradicts that standard by stating that Managers will only be liable for damages and losses that are the result of fraud, deceit, gross negligence or willful misconduct, thereby invoking the LLC Act's gross negligence standard.  The Plaintiff argues that ambiguities in written waivers of fiduciary duties are resolved against the drafters. The same result holds, the Plaintiff argues, with respect to the Moving Defendants' reliance on §5.8 to limit the duty of loyalty, as that section does not contain language altering the statutory default under §8849.2(b) of the LLC Act.  It permits Managers to engage in other business ventures, but expressly provides that no Manager, Member, officer or agent may use their position or information received in a manner that will harm the business.

The Plaintiff argues that the Complaint alleges more than sufficient facts to state a plausible claim that each of the Insider Defendants breached their fiduciary duties, and the

Opposition sets forth a chart detailing the individualized allegations in the Complaint against each Insider Defendant supporting the breach of fiduciary duty claim against them.  The Plaintiff argues that the Moving Defendants' assertion that the Debtor was prohibited from marketing and selling CBD and cannabis products, if true, only supports the fiduciary duty claims against the Insider Defendants, because the Complaint alleges in detail how they used the Debtor and its resources to do exactly that.  A fiduciary, the Plaintiff argues, is obligated to correct illegal corporate action.  The Plaintiff further responds that the Moving Defendants make a number of arguments against the fiduciary duty allegations that are improper at the pleading stage or that are based on facts not in the Complaint, including that (i) the LLC Agreement permitted them to engage in other business ventures where the allegations are that they did so to circumvent PNC's lien on the Debtor's assets and did so by using the Debtor's resources, (ii) that the allegedly improper personal expenses were legitimate business expenses, and (iii) that the Complaint mischaracterizes the nature of electronic data missing.  These, the Plaintiff argues, are issues for trial, and the allegations must be taken as true at this stage.  Finally, the Plaintiff responds that the Complaint's allegations that the Insider Defendants rigged the bankruptcy sale process does not represent a collateral attack on the sale order, because the Plaintiff is alleging that the price paid was less than it would have been had the sale been conducted on a level playing field.

### c.    The Moving Defendants' Reply

The Moving Defendants reply that, with respect to the Plaintiff's assertion that certain of the Insider Defendants owed fiduciary duties as employees and agents of the Debtor, it relies on Pennsylvania employment law to refute the fact that an LLC's members and managers are not personally liable for an LLC's debts solely by reason of being members or managers.

Furthermore, whether an employee owes a duty of loyalty to *its employer* is a separate question from whether there is a claim for breach of fiduciary duty. The Moving Defendants argue the Plaintiff cannot rely on duties under employment contracts, rather than the LLC Agreement, because Pennsylvania law interprets the LLC Act to not impose duties that do not exist by statute or agreement. Here the LLC Agreement does not impose fiduciary duties on employees, spokespersons, outside counsel, or agents.

Furthermore, the duties Managers owed under §5.7 of the LLC Agreement are not ambiguous or inconsistent. The first sentence of that section refers to the Manager's managerial duties, which requires that they be discharged as an ordinarily prudent person, while the second sentence addresses manager liability, providing that conduct amounting to fraud, deceit, gross negligence or willful misconduct results in liability. This, the Moving Defendants assert, constitutes an alteration of the duties of loyalty and care called for under the LLC Act. Likewise, §5.8 permits Managers to participate in other business ventures, including competitive business ventures, and the provision prohibiting Managers from using information gained to harm the business does not expand the duty of loyalty.

### d.    The Court's Analysis

Breach of fiduciary duty claims are subject to a notice pleading standard. *In re Covenant Partners, L.P.,* 531 B.R. 84, 94 (Bankr. E.D. Pa. 2015). The Court finds that the Complaint's factual allegations, taken as true for purposes of resolving the Motion to Dismiss, adequately state a claim for breach of fiduciary duty against all Insider Defendants. It details the alleged acts taken or not taken by the Insider Defendants, both individually and as a group, that constituted a breach of their duties to the Debtor either as Manager, Member, officer, employee,

or agent.[18]

The Court rejects the Moving Defendants' argument that, as a matter of law, Festa, Baldwin, Boyer, and Culbertson did not owe the Debtor any fiduciary duties because they were not Managers.  The Court agrees with the Debtor that each of these Insider Defendants owed the Debtor, at a minimum, a duty of loyalty as an officer, employee or agent, and that such duty was not vitiated by the LLC Act or the LLC Agreement.

"Fiduciary duty demands undivided loyalty, prohibits conflicts of interest and its breach is actionable.  An employee, as an agent of his employer, is considered a fiduciary with respect to matters within the scope of his agency and is subject to a duty not to act or agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed." *Prudential Ins. Co. of Am. v. Stella,* 1998 WL 57514, at *3 (E.D. Pa. Feb. 12, 1998) (citing *Maritrans v. Pepper, Hamilton & Scheetz,* 529 Pa. 335, 602 A.2d 1277, 1283 (1993) and *SHV Coal, Inc. v. Continental Grain Co.,* 376 Pa. Super. 241, 545 A.2d 917, 920-21 (1988), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991)).  The LLC Act no doubt provides wide latitude to an LLC in how it organizes, including the level and type of duties its members and managers have, but that latitude does not dispense with an employee's or agent's duties to the LLC, either by its provision that managers, not members, of a manager-managed LLC owe the entity duties, *see* 15 Pa.C.S. §§8849.1 and .2, or otherwise, and the LLC

---

[18] The Court notes here that certain arguments the Moving Defendants make in the Motion to Dismiss as to why the Insider Defendants did not breach their fiduciary duties are not appropriately resolved at the motion to dismiss stage, but rather can only be resolved after fact discovery and possible trial, including that (a) any ventures involving CBD or cannabis products violated certain restrictions the Debtor operated under, and therefore could not be part of its business, (b) Casey and Rittenburg did not breach their fiduciary duties by using Debtor funds for personal expenses because all expenses charged were legitimate business expenditures, and (c) any of Debtor's electronic information lost was on the Google Cloud platform and resulted from the Debtor being unable to pay for the services.

Agreement's failure to provide for employee and agent fiduciary duties does not do so either. Rather, as the Plaintiff notes, the LLC Act is part of Pennsylvania's Corporations and Unincorporated Associations Code, the general provisions of which state, *inter alia*, that "Unless displaced by the particular provisions of this title, the principles of law and equity, including, but not limited to, that law relating to principal and agent … shall supplement its provisions."  15 Pa.C.S. §110.  As such, Pennsylvania made explicit that the law of agency has not been supplanted by the LLC Act unless the LLC Act expressly does so, and the Moving Defendants have not pointed the Court to any such provision.[19]

The Moving Defendants argue that nowhere does the Complaint, rather than the Opposition, allege these Insider Defendants owed duties as employees and/or agents, but it is not necessary for a plaintiff to identify the specific legal theory underlying the factual allegations in the complaint; it is only necessary to allege sufficient facts to put the Insider Defendants on notice that the Plaintiff seeks to hold them liable for breaching duties owed to the Debtor by their actions.  *See Skinner v. Switzer,* 562 U.S. 521, 529-530 (2011) ("[Plaintiff's] complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."); *see also Retina Assocs. of Greater Philadelphia, Ltd. v. Retinovitreous Assocs., Ltd.,* 176 A.3d 262, 281 (Pa. Super. Ct. 2017).  The

---

[19] The Moving Defendants state that the LLC Agreement does not impose fiduciary duties on the Debtor's employees, 'spokespersons,' outside counsel, or agents," citing §5.19 of the LLC Agreement.  It is not clear to the Court what the Moving Defendants intend by directing the Court to this provision, which relates to the Board of Managers' ability to select, pay, and remove officers.  There is no reference to employees, agents, or fiduciary duties.

Complaint alleges each of Festa, Baldwin, Boyer, and Culbertson were officers, employees, or agents of the Debtor, and that in those capacities they each breached their duty of loyalty to Debtor as their employer or principal. That is sufficient to provide notice to the Insider Defendants of the claim against them and the basis for it, which is all that is required to survive dismissal. Count 1 therefore will not be dismissed against Festa, Baldwin, Boyer and Culbertson.

With respect to Casey and Rittenburg (and Culbertson), as Members they owed the Debtor the duty of good faith and fair dealing in discharging their duties and exercising their rights "under [the LLC Act] or under the operating agreement." 15 Pa.C.S. §8849.1(d). They did not have any other duty to the Debtor "solely by reason of being or acting as a member." Id. at §8849.1(i). The Complaint alleges, among many other things, that Casey and Rittenburg, in breach of their obligations as Members, developed Work Product with the Debtor's resources, in the form of CBDelight, Wynk Seltzer, and other products, but failed to assign it to the Debtor as required by §9.17 of the LLC Agreement, and instead diverted the products and profits to some or all of the Pilfering Entities. These allegations alone, taken as true for present purposes, state a claim for breach of the duty of good faith and fair dealing required of LLC members under the LLC Act. *See Retina Associates,* 176 A.3d at 279 (concluding the trial court erred in dismissing a claim for breach of fiduciary duty against LLC members on the basis that they had no duties as members, finding instead that the allegations sufficiently alleged the members' breach of some type of duty and standard of care by transferring the business's assets to their own company, whether termed a breach of the duty of good faith and fair dealing or otherwise).

Moreover, because the Members are not covered by the limitation on Manager liability

set forth in §5.7 of the LLC Agreement, that provision is inapplicable to the claim. Relatedly, although the Moving Defendants are correct that §5.8 of the LLC Agreement permitted Casey and Rittenburg, among others, to pursue other business ventures without offering participation to the Debtor, it prohibited them from using their positions with the Debtor or the information received as a result to do so. The allegations of the Complaint, taken as true, assert that they did just that. Furthermore, §8849.1(i) of the LLC Act does not serve as a basis for dismissal of Count 1, because the Complaint does not assert Casey and Rittenburg had duties "solely by reason of being or acting as a member"; their duties and their alleged breach stem from the acts they allegedly took to raid the Debtor of assets and profits which could not have been taken consistent with acting as a Member. The Complaint therefore states a claim for breach of fiduciary duty against Casey and Rittenburg, and Count 1 will not be dismissed against them.

Finally, as Managers of the Debtor, Casey and Rittenburg clearly owed fiduciary duties of loyalty, care, and good faith and fair dealing to it. 15 Pa.C.S. §8849.2(b)-(d). While the LLC Act may permit an LLC to alter these duties, and the Moving Defendants point to §§5.7 and 5.8 as having done so, the Debtor's Managers are still liable for breaches of the duty of care that constitute "fraud, deceit, gross negligence or willful misconduct," LLC Agreement, §5.7, and breaches of the duty of loyalty where they used their position and information obtained thereby to harm the Debtor's business, LLC Agreement at §5.8.[20] The allegations of the Complaint, taken as true as this Court must, fall within both of these exceptions to whatever limitation on the duties of care and loyalty the LLC Agreement might otherwise provide. The Complaint

---

[20] As the Court, noted at the Hearing, the Complaint did not have to use the terms "fraud, deceit, gross negligence or willful misconduct" in order to adequately plead that the actions Casey and Rittenburg took fall outside §5.7's protection.

therefore states a breach of fiduciary duty claim against Casey and Rittenburg not only as

Members, but also as Managers.

In sum, Count 1 will not be dismissed against any of the Insider Defendants.

### 3.      Count 2 for Aiding and Abetting Breach of Fiduciary Duty Against All Defendants

Count 2 asserts that all Defendants aided the Insider Defendants' breach of their fiduciary

duties by substantially assisting or encouraging such breaches and serving as the entities through

which the Insider Defendants siphoned money away from the Debtor.

### a.      The Moving Defendants' Arguments

The Moving Defendants first argue that the Pennsylvania Supreme Court has never

recognized a common law cause of action for aiding and abetting a breach of fiduciary duty, but

rather the Commonwealth Court is the highest court to do so.

Even if such a claim exists, however, the Moving Defendants argue the Complaint does

not adequately plead its elements, which are (a) a breach of fiduciary duty owed to another, (b)

knowledge of the breach by the aider and abettor, and (c) substantial assistance or

encouragement by the aider and abettor in effecting the breach.  The Moving Defendants assert

the Complaint fails to plead any breach of fiduciary duty by the Insider Defendants, for the

reasons discussed *supra*.

With respect to knowledge of the breach by the aider and abettor, the Moving Defendants

argue that Pennsylvania law requires <u>actual knowledge</u> of the breach, and the Complaint does not

plead any plausible facts that the Moving Defendants had knowledge of conduct amounting to

breach, pleading only that each of the Defendants "had knowledge that the Insider Defendants'

conduct was a breach of their fiduciary duties owed to the Debtor."

With respect to substantial assistance or encouragement by the aider and abettor, the Moving Defendants argue the Complaint does not plausibly allege that any particular Moving Defendant gave substantial assistance or encouragement in effecting the breach, instead making only conclusory and self-serving statements that (i) if the Insider Defendants did not themselves owe a fiduciary duty, they aided and abetted another Insider Defendant who did, and (ii) the entity Defendants' assistance occurred through their roles as the vehicles through which the Insider Defendants siphoned money away from the Debtor and the improper benefits they received as a result.  Regarding those alleged improper benefits, the Moving Defendants argue that the Complaint asserts that the Defendants received millions of dollars for their roles in aiding and abetting the Insider Defendants' breaches of fiduciary duty, but fails to allege any particular transfer of money to any Defendant (other than a transfer of $75,000 to Boyer as counsel that is subject to an avoidance claim).

In sum, the Moving Defendants argue, naked assertions of aiding and abetting breach of fiduciary duty without factual enhancement do not support the claim, and the Complaint only lobs conclusory statements at buckets of Defendants.

### b.     The Plaintiff's Opposition

The Plaintiff responds that Pennsylvania appellate courts explicitly recognize aiding and abetting a breach of fiduciary duty as a valid cause of action.

Regarding the elements of the claim, the Plaintiff argues that the Complaint adequately pleads a breach of fiduciary duty by the Insider Defendants, as discussed *supra.*  With respect to the knowledge element, the Plaintiff asserts that not only does a defendant's direct knowledge of, or willful ignorance to, a breach of fiduciary duty satisfy the requirement, but the threshold is

even less stringent than that: all that is required is that a defendant's knowledge that the conduct they were aiding and abetting was wrongful, not that it constituted a breach.  Furthermore, because an agent's knowledge is imputed to the principal, the Polebridge Entities are charged with the knowledge of Rittenburg and Baldwin as their officers, and AgTech PA is charged with the knowledge of Casey as an officer, and therefore are properly deemed to have knowledge for purposes of the Complaint's aiding and abetting claim.  The Plaintiff argues the same holds true with respect to the Sheehan, Wynk, and Best Bev Entities; their knowledge of the Insider Defendants' breaches is imputed by virtue of Sheehan's knowledge and substantial assistance. As such, the Plaintiff argues, all Moving Defendants either had personal actual knowledge or are imputed with their agents' actual knowledge that the Insider Defendants were breaching their fiduciary duties.

With respect to the substantial assistance element, the Plaintiff responds that all Defendants substantially assisted in the Insider Defendants' breaches of their fiduciary duties, which the Complaint details throughout its factual allegations (citing ¶¶20, 49-85, 87-89, 115, 125, 128-130, 140, 147, 150, and 195).  The Plaintiff argues that these allegations set forth sufficient facts that raise a reasonable expectation discovery will reveal evidence establishing the aiding and abetting claim against all Defendants.

### c.    The Moving Defendants' Reply

The Moving Defendants reply that the Plaintiff, by her Opposition, seeks to get around the requirement that an aider and abettor had actual knowledge of the fiduciary duty breach by asserting for the first time that such knowledge can be established by the imputation of knowledge to the various entity Defendants.  The Moving Defendants note that this allegation

was not included in the Complaint, and regardless, it presupposes the Insider Defendants' actual

knowledge.  Moreover, the Moving Defendants complain that the Opposition argues the

Defendants' actual knowledge can be inferred, but an allegation that a party "knew or should

have known" does not meet the pleading standard for an aiding and abetting claim.

### d.      The Court's Analysis

The Court first dispenses with the Moving Defendants' argument that a common law

cause of action for aiding and abetting breach of fiduciary duty has not been endorsed by

Pennsylvania's highest court.  While that is true, the Moving Defendants acknowledge that the

Pennsylvania Commonwealth Court has recognized the cause of action.  *See Koken v. Steinberg,*

825 A.2d 723, 732 (Pa. Commw. Ct. 2003).  The Pennsylvania Supreme Court, in turn, has noted

*Koken's* recognition of the claim without any indication that it disapproved.  *Off. Comm. of*

*Unsecured Creditors of Allegheny Health Educ. & Research Foundation v. PWC, LLP,* 989 A.2d

313, 327 n.14 (Pa. 2010) (observing that the Pennsylvania Commonwealth Court has recognized

the cause of action).  Federal courts applying Pennsylvania law regularly allow plaintiffs to

pursue such claims.  *Advanced Fluid Sys., Inc. v. Huber,* 2017 WL 2445303, at *18 (M.D. Pa.

June 6, 2017) (citing cases and stating "We join this consensus and conclude that Pennsylvania

law recognizes an independent cause of action for aiding and abetting breach of a fiduciary

duty.").  As such, the Court is not persuaded by the Moving Defendants' argument that Count 2

should be dismissed on the basis that it is not recognized under Pennsylvania law.

Turning to the requirements of the claim, to establish this cause of action a plaintiff must

show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or

abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that

breach. *Adena, Inc. v. Cohn*, 162 F.Supp.2d 351, 357-358 (E.D. Pa. 2001). As discussed *supra,*
the Plaintiff has stated a claim against each of the Insider Defendants for breach of fiduciary
duty, thereby satisfying the first element of a claim for aiding and abetting the breach.

With respect to the knowledge element of the claim, either the defendant's direct
knowledge of, or willful ignorance to, the breach of fiduciary duty may satisfy the requirement.
*Harrison v. Harrison,* 2021 WL 3022416, at *10 (E.D. Pa. July 15, 2021) (*citing Env. Equip. &
Serv. Co. v. Wachovia Bank, N.A.,* 741 F.Supp. 2d 705, 727 (E.D. Pa. 2010)). The Moving
Defendants assert that actual knowledge of the breach is required, citing *Mitchell Partners, L.P.
v. Irex Corp.,* 2010 WL 3825719, at *9 (E.D. Pa. Sept. 29, 2010). That decision, however, cited
caselaw outside the Third Circuit for its actual knowledge requirement, while other decisions
examining Pennsylvania law have concluded direct knowledge is not required. *See Matlack
Leasing, LLC v. Morison Cogen, LLP,* 2010 WL 114883, at *11 (E.D. Pa. 2010); *Adena,* 162
F.Supp.2d 351, 357-58 (E.D. Pa. 2001)). The Court sides with those courts finding that direct
knowledge *or* willful ignorance meets the knowledge requirement, as this slightly relaxed
threshold is consistent with the practical reality that a party can aid and abet another's breach of
fiduciary duty by willfully "sticking their head in the sand" to allow such breach to occur.
Applied here, the Complaint's allegations, taken as true, adequately plead that the Insider
Defendants each played a role in an organized scheme to divert profits and assets from the
Debtor and to depress the Debtor's value in a sale to EtOH or another Sheehan Entity. It also
adequately pleads that Sheehan knew the Insider Defendants were taking various actions in
breach of their duties to the Debtor, including the orchestration of a sale to a Sheehan Entity. On
a motion to dismiss the Court may also draw all reasonable inferences from those well-pleaded

factual allegations, and here the Court finds it a reasonable inference that each of the Insider

Defendants and Sheehan directly knew, or at least willfully ignored, the others' actions

constituting a breach of their duties to the Debtor.

The Plaintiff seeks to extend the Insider Defendants' and Sheehan's knowledge to the

remaining Moving Defendants by imputation, under the law of agency.  The Moving Defendants

assert that this argument in the Opposition constitutes an improper addition to the Complaint, but

the Court disagrees; imputation is the legal theory underlying this component of the Plaintiff's

claim, and as noted *supra,* a plaintiff does not need to identify the specific legal theory

underlying a claim in the complaint.  The Pennsylvania Supreme Court has stated that "[C]ertain

relationships between parties requires the knowledge of one to be imputed to the other.  A

prominent example of this principle is the relationship between a principal and agent.  It is well

settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his

authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the

agent is knowledge of the principal." *W.C.A.B. v. Evening Bulletin,* 445 A.2d 1190, 1192 (Pa.

1982).  The Complaint pleads that (i) Casey was an agent for the Pilfering Entities, (ii)

Rittenburg was an officer or member of the Polebridge Entities, the Best Bev Entities, and the

Wynk Entities, (iii) Festa was an agent of the Polebridge Entities, (iv) Baldwin was an agent of

the Wynk Entities and the Best Bev Entities, (v) Boyer was counsel to the Polebridge Entities

and the Wynk Entities, (vi) Culbertson was an agent of the Polebridge Entities, the Wynk

Entities, and the Best Bev Entities, and (vii) Sheehan owned and operated the Sheehan, Wynk,

and Best Bev Entities.  The Complaint's allegations that each of these individual Defendants

breached their own fiduciary duties and/or had knowledge of each other's breaches sufficiently

pleads facts that would, if true, support the imputation of such knowledge to the entities for which they served as an agent.  Ultimately the existence of an agency relationship and whether these individuals were acting within the scope of any such agency will need to be proved, but not at the pleading stage.  *See, e.g., Heredia v. U.S.,* 887 F.Supp. 77, 80 (S.D.N.Y. 1995) (stating that where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss).

Finally, with respect to the claim's requirement of substantial assistance or encouragement by the aider or abettor in effecting the breach, the Court concludes that the Complaint adequately pleads the role of each of the Insider Defendants and Sheehan in the alleged coordinated effort to deprive the Debtor of resources, products and revenue in breach of the Insider Defendants' fiduciary duties.  Based on the same agency principle that would impute the knowledge of these individuals to the principal entities for which they served as an agent, if any, so too would it render those principal entities liable for the individuals' assistance or encouragement.  *See, e.g., Aiello v. Ed Saxe Real Estate, Inc.,* 499 A.2d 282, 286 (Pa. 1985) ("[A] principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade that acts or disapproved of them, as long as they occurred within the agent's scop of employment.").  Again, the existence and scope of the alleged agency relationship between an Insider Defendant or Sheehan, on the one hand, and an entity Defendant, on the other, will need to be proven, but not at the pleading stage.

In sum, the Complaint adequately pleads sufficient facts to raise a reasonable expectation that discovery may reveal evidence of the elements of the aiding and abetting claim in Count 2, and therefore the Count will not be dismissed.

### 4. Count 3 for Corporate Waste Against Insider Defendants

Count 3 asserts that the Debtor lost significant revenue and profit as a result of the Insider Defendants allowing the Pilfering Entities to use the Debtor's assets and funnel revenue and profits away it.

### a. The Moving Defendants' Arguments

The Moving Defendants argue that a corporate waste claim requires blatant squandering of assets, rendering what remains worthless, and a risky or unsuccessful business decision does not constitute corporate waste. The Complaint alleges the Pilfering Entities were used to siphon revenue and profits that deprived the Debtor of millions of dollars, but contains few allegations of specific transfers to any Defendant. The Moving Defendants further argue that the allegation of corporate waste is at odds with the fact that the Debtor's assets sold for $1.4 million in the bankruptcy sale. Finally, the Moving Defendants argue, the failure to state a claim for breach of fiduciary duty requires dismissal of a claim for corporate waste.

### b. The Plaintiff's Opposition

In response the Plaintiff argues Pennsylvania law holds that a corporate waste claim is supported by allegations that a defendant damaged, converted or gave away company equipment without authorization or regard for financial impact. The Plaintiff argues the Complaint sets forth ample facts alleging this – the Insider Defendants utilized Debtor resources and gave away property belonging to the Debtor for the sole benefit of the Pilfering Entities.

44

### c.    The Moving Defendants' Reply

In reply the Moving Defendants reiterate their position that the Complaint fails to allege a

blatant squandering of assets, as required for a corporate waste claim.  For example, they assert,

use of the Debtor's computer system to send emails related to other ventures and use of the

Debtor's copier and scanner is not blatant squandering.

### d.    The Court's Analysis

The Moving Defendants correctly state the standard for corporate waste under

Pennsylvania law: "[A] claim for corporate waste and mismanagement is defined under

Pennsylvania law as: 'a blatant squandering of assets to the detriment of assets to the detriment

of the business entity, as if the sole purpose was to harm the entity and render what little might

be left to the remaining shareholders worthless.  Importantly, waste must 'be something more

than a decision adverse to petitioner, or a business decision that proves to be risky or

unsuccessful." *Francis v. Francis,* 2023 WL 2994667, at *25 (E.D. Pa. Apr. 18, 2023) (*citing*

*Simms v. Exeter Architectural Prods., Inc.,* 868 F.Supp. 668, 673 (M.D. Pa. 1994)).

The Moving Defendants' argument that the Complaint fails to allege blatant squandering

of assets, however, ignores the entirety of the Complaint's allegations, which when taken as a

whole, allege that the Defendants used Debtor personnel, equipment, funds, and relationships not

for the benefit of the Debtor, but rather for the benefit of the Pilfering Entities, leaving the

Debtor unable to pay its debts and ultimately bankrupt.  Those allegations, taken as true,

adequately plead a blatant squandering of corporate assets.  Moreover, contrary to the Moving

Defendants' argument, the Complaint does not allege that the Defendants simply made decisions

that ultimately proved adverse, risky or unsuccessful; it alleges that the Defendants acted in

concert and with intent to deprive the Debtor of assets and profits.  The Court finds that the

Complaint's allegations, taken as a whole and as true for present purposes, states a claim for

corporate waste under Pennsylvania law.

Count 3 will therefore not be dismissed.

### 4. Count 4 for Alter Ego, Veil Piercing, and Successor Liability Against All Defendants[21]

Count 4 claims the corporate form should be disregarded with respect to the Pilfering

Entities and the Insider Defendants because the Defendants ignored corporate boundaries to

enrich themselves.  It further alleges the Defendants exercised control over the Debtor to such a

degree that it operated as nothing more than their alter ego, and operated the Pilfering Entities as

if they were a mere continuation of the Debtor, with the Debtor's management making all

decisions for and conducting the daily operations of the Pilfering Entities using the Debtor's

facility and equipment to do so.

### a. The Moving Defendants' Arguments

The Moving Defendants argue that Pennsylvania law recognizes a strong presumption

against piercing the corporate veil, employing a multi-factor analysis to determine (i) whether the

entity was insufficiently capitalized at the outset, (ii) whether there was an intermingling of

funds between the entity and the shareholder's personal assets, (iii) whether other fiduciaries

were not functioning, (iv) whether corporate formalities were observed, (v) whether the entity

did not pay dividends in the regular and ordinary course, and (vi) whether the defendant

consistently held itself out as conducting the affairs of the business without use of the corporate

---

[21] As noted *supra,* the Court has already instructed the Plaintiff to set forth its successor liability claim in a separate count in an amended Complaint, and therefore will not address that claim further here.

name and without identifying that actions were taken as an officer or employee of the

corporation.  Furthermore, in Pennsylvania the corporate veil can only be pierced to access the

assets of a corporation's shareholders or LLC members.

In light of these principles, the Moving Defendants assert Count 4's claim is barred as a

matter of law against the entity Defendants and Sheehan, Festa, Baldwin, and Boyer.  With

respect to Casey, Rittenburg, and Culbertson, each of whom was a Member of the Debtor, the

Complaint fails to plead factual allegations overcoming Pennsylvania's presumption against veil

piercing.  It does not plead inadequate capitalization at the Debtor's outset.  It does not plead the

Members' funds were intermingled with the Debtor's.  And while it does plead that regular

meetings of the Debtor's board of Managers were not held, it does not connect this allegation to

the veil piercing claim.

### b.    The Plaintiff's Opposition

The Plaintiff responds that Pennsylvania recognizes two types of veil-piercing doctrines:

(i) alter ego, under which owners of a company may be held liable for the company's debts, and

(ii) enterprise theory, under which companies with some common level of ownership or control

may be held liable for each other's debts.  Successor liability may be appropriate under

Pennsylvania law where there has been a consolidation or de facto merger through which the

purchasing corporation is merely a continuation of the transferor corporation or the transaction is

fraudulently entered into to escape liability.  The Plaintiff asserts that these doctrines are fact

specific and are typically inappropriate at the motion to dismiss stage, but the Complaint pleads

plausible facts supporting the conclusion that discovery will reveal evidence of each of the above

doctrines.

The Plaintiff points to numerous facts pleaded supporting holding Casey, Rittenburg, and Culbertson liable for the Debtor's debts under the alter ego and veil piercing theories based on their Member status with the Debtor, including that (i) the Debtor was undercapitalized and insolvent (¶¶106, 127); (ii) the Debtor failed to adhere to corporate formalities (¶204(f)-(k)); (iii) the Debtor had a failed accounting function (¶174); and (iv) Casey and Rittenburg used Debtor funds for personal expenses (¶178).  The Plaintiff asserts that all three Members committed numerous acts to use the Debtor's resources and personnel for the benefit of the Polebridge, Wynk, and Best Bev Entities, such that the affairs of the entities were intermingled with the Debtor's and the Debtor was their mere instrumentality.

The Plaintiff further argues that the facts pleaded support an enterprise veil piercing theory because the Defendants used ownership and control over the Debtor to commit fraud on the Debtor and its creditors via the Pilfering Entities, and that discovery will reveal evidence of common ownership and control of the Debtor and the Pilfering Entities.  The Complaint also makes allegations of each Insider Defendant's overlapping ownership and/or officer or management roles with Debtor and other entities.  As such, the facts pleaded support successor liability of the Pilfering Entities because they are simply the continuation of the Debtor via continuity of management, personnel, assets, and business operations.

### c.    The Moving Defendants' Reply

The Moving Defendants reply that the Plaintiff is attempting to introduce the enterprise theory of veil-piercing for the first time in the Opposition as a basis for the alter ego claim.  No fact-intensive inquiry is needed, however, with respect to the entity Defendants or Defendants Sheehan, Festa, Baldwin, and Boyer, because under Pennsylvania law those alter ego, veil

piercing and successor liability can never be asserted against a party that is not a shareholder or

member.  The Moving Defendants assert that the Plaintiff concedes this by focusing in the

Opposition on the claim against Casey, Rittenburg and Culbertson.  The Moving Defendants also

argue that the Opposition seeks to amend or supplement the allegations in the Complaint by

alleging the existence of a corporate structure spreadsheet not attached to the Complaint (¶69)

and adding a claim for corporate merger (¶71), but fails to address all factors relevant to the veil

piercing analysis.  In sum, the Moving Defendants argue, the factual allegations of the Complaint

do not plead the complete disregard of the corporate form needed for a veil piercing claim.

### d.     The Court's Analysis

There is a strong presumption in Pennsylvania against piercing the corporate veil, which

requires upholding the corporate entity unless specific, unusual circumstances call for an

exception.  *Mortimer v. McCool,* 255 A.3d 261, 266 (Pa. 2021) ("*McCool II*").  It may be

disregarded "whenever one in control of a corporation uses that control, or uses the corporate

assets, to further his or her own personal interests."  *Id.*  The Pennsylvania Supreme Court has

cited favorably certain factors relevant to the inquiry: "undercapitalization, failure to adhere to

corporate formalities, substantial intermingling of corporate and personal affairs, and use of the

corporate form to perpetuate a fraud."  *Id.*  It has also recognized, however, that as an equitable

doctrine, veil piercing lacks clarity and "resists reduction to prescriptive tests, tending by

historical design toward holistic, case-by-case analyses."  *Id.*

The Moving Defendants are correct that as a mode of veil-piercing, the alter ego theory

only applies where an individual or corporate owner controls the corporation to be pierced and

the controlling owner is to be held liable.  *Id.; see also Miners Inc. v. Alpine Equip Corp.,* 722

A.2d 691, 695 (Pa. Super. Ct. 1998).  The alter ego theory of liability therefore would not be

applicable to any Defendant other than Casey, Rittenburg, and Culbertson.  The Moving

Defendants are also correct that the Plaintiff concedes this point in the Opposition, setting forth

pleaded facts that support the alter ego theory against those three Defendants in particular.

Opposition at 67-68.  However, when viewed in light of the considerations the *McCool II* court

endorsed for an alter ego veil-piercing analysis, the Court finds the Complaint alleges sufficient

facts to survive dismissal.  As the Plaintiff points out, the Complaint alleges (i) the Debtor was

undercapitalized and insolvent (¶¶106, 127); (ii) the Debtor failed to adhere to corporate

formalities (¶204(f)-(k)); (iii) the Debtor had a failed accounting function (¶174); and (iv) Casey

and Rittenburg used Debtor funds for personal expenses (¶178).  These allegations, when taken

as true together with all reasonable inferences arising therefrom, sufficiently plead the elements

of an alter ego claim against the Casey, Rittenburg, and Culbertson as Members.

   The *Miners* case recognized that the alter ego theory of liability is distinct from the veil-

piercing vehicle known as enterprise entity legal theory or single entity theory.  *Id.*  ("[The alter

ego theory] is quite distinct from the situation where two or more corporations share common

ownership and are, in reality, operating as a corporate combine.  This latter theory has been

labeled the *enterprise entity* theory or the *single entity* theory.") (emphasis in original).  It is this

theory under which the Plaintiff seeks to hold the other Moving Defendants liable, and while the

Moving Defendants argue that the enterprise theory was not pleaded in the Complaint, as the

Court has noted *supra,* the Complaint did not have to plead the legal theory underpinning its

factual allegations and claims.

   The Pennsylvania Supreme Court has described enterprise entity legal theory as follows:

"The thrust of the doctrine is that, just as a corporation's owners may be held liable for judgments against the corporation when equity requires, so may affiliated or 'sister' corporations – corporations with common ownership, engaged in a unitary commercial endeavor – be held liable for each other's debts or judgments."  *McCool II,* 255 A.3d at 266.  The *McCool II* court declined to adopt a test with "an ever-increasing number of predefined factors," instead adopting what it termed a "narrow form" of enterprise liability guide by a two-prong test: "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice."  *Id.* at 286-87; *see also Epsilon-NDT Endustriyel Kontrol Sistemleri Sanayi Ve Ticaret, A.S. v. Powerrail Distrib., Inc.,* 2024 WL 1258666, at \*5 (M.D. Pa. Mar. 25, 2024) (citing *McCool II*).

The *McCool II* court stressed the requirement of substantial common ownership, stating that "enterprise liability in its most logical form requires an alter ego component, and it is this that at least substantial common ownership ensures."  *Id.* at 284.  However, in the same breath it also allowed for a common "administrative nexus" above the sister corporations, without which veil-piercing the assets of the sister corporation cannot be just.  *Id.* ("[E]nterprise liability requires that the affiliates that the enterprise comprises have common owners and/or an administrative nexus above the sister corporations.  Without that nexus, piercing the veil to reach a sister corporation cannot be just.").  The Court therefore disagrees with the Moving Defendants' argument that in Pennsylvania the corporate veil is only allowed to be pierced to access the assets of the corporation's shareholders or, as here, the limited liability company's members.  There certainly have been courts that have so stated.  *Mortimer v. McCool,* 2019 WL

51

6769733, at *6 (Pa. Super. Ct. Dec. 12, 2019); *see also, e.g., Mark Hershey Farms, Inc. v. Robinson,* 171 A.3d 810, 816 (Pa. Super. Ct. Sept. 27, 2017) ("[W]hen it is appropriate to pierce the corporate veil, it is the shareholder, and not some other entity, who is held liable.").  In light of *McCool II*, however, this Court understands Pennsylvania law to permit the veil of non-owner affiliates to be pierced as well, at least in the context of enterprise entity liability.

The *McCool II* court then explained the mechanics of the veil-piercing of a common enterprise: "[E]nterprise liability in any tenable form must run up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s).  As set forth above, in this frame, enterprise piercing is aptly described as triangular.  But this requires a mechanism by which liability passes through the common owner to the sibling corporation.  This brings us to 'reverse piercing,' which this Court has not had prior occasion to consider."  *Id.* at 285.  The Court then concluded that reverse piercing should not be ruled out by Pennsylvania courts as a viable equitable doctrine.  *Id.*

In light of *McCool II's* guidance on Pennsylvania law, the Court concludes that, at the pleading stage, the Complaint states a claim for veil piercing under Pennsylvania's enterprise liability doctrine against the Pilfering Entities.  The Complaint adequately alleges that the Debtor and these entities either had common ownership or a common administrative nexus, which was used to perpetrate a wrong on the Debtor and its creditors by siloing assets, profits, personnel, resources, and opportunities with the Pilfering Entities rather than the Debtor.  The Complaint does not, however, state a claim under this theory of liability with respect to the non-Member Insider Defendants Festa, Baldwin, Boyer, or Sheehan.  Those individuals may have been part of the common administrative nexus between the Debtor and the Pilfering Entities, but they are not

themselves the affiliates who would be pierced.  Count 4 will therefore be dismissed as against

Festa, Baldwin, Boyer, and Sheehan.

### 5.    Count 5 for Unjust Enrichment Against All Defendants

Count 5 alleges that each of the Defendants was enriched to the detriment of the Debtor's

estate.  The Pilfering Entities were enriched by the use of Debtor's facility, equipment,

personnel, inventory, and intellectual property, and revenue from sale of CBDelight, Faber Hand

Sanitizer, Wynk Seltzer, and other products manufactured by the Debtor or with Debtor's

resources.  Finland Leasing and ETP were enriched by the receipt of extracontractual and

unjustified payments from the Debtor.  Casey and Rittenburg were enriched by the Debtor's

payment of their personal expenses.  And all Defendants were enriched by receiving benefits

from the Pilfering Entities that were derived from the Debtor's resources.

### a.    The Moving Defendants' Arguments

The Moving Defendants argue that Pennsylvania law requires three elements be proven

for an unjust enrichment claim, in addition to the Plaintiff having no adequate remedy at law: (i)

benefits conferred on the defendant by the plaintiff, (ii) appreciation of such benefits by the

defendant, and (iii) retention of those benefits under circumstances that would make it

inequitable for the defendant to retain the benefit without payment of value.  Moreover, because

the claim sounds in quasi-contract, it is inapplicable where the relationship between the parties is

founded on a written agreement.

In light of these principles, the Moving Defendants assert the unjust enrichment claim

fails against Casey, Culbertson, and Rittenburg because the LLC Agreement is a written, valid

contract governing the relationship between the Debtor and its Managers and Members.  The

claim also fails as against AgTech VI and EtOH because they had equipment leases with the
Debtor, and as against the other entity Defendants that were parties to invoices and other written
agreements with the Debtor.  With respect to all of them, the Moving Defendants argue the
Complaint fails to state plausible facts supporting the claim.  It does not allege the threshold
requirement that there is no adequate remedy at law, which alone is grounds for dismissal.  It
also fails to plead the elements with respect to each Moving Defendant, *i.e.,* the benefits each
Moving Defendant received, the appreciation of such benefit, and the specific circumstances
existing that make retention of that benefit inequitable.  Instead, the Moving Defendants assert,
the Complaint makes conclusory allegations about the Pilfering Entities, Finland Leasing, ETP,
and certain individual defendants, then alleges that each of them received monetary payments
from the Pilfering Entities derived from the Debtor's resources, "without connecting the dots."

### b.  The Plaintiff's Opposition

The Plaintiff agrees with the Moving Defendants' statement of the requirements under
Pennsylvania law for an unjust enrichment claim, but disagrees that the Complaint fails to plead
these elements with respect to each of the Moving Defendants.  The claim is based on the
Moving Defendants' receipt of benefits at the expense of the Debtor and its creditors, and the
Moving Defendants' argument that the claim should be dismissed because there are contracts
governing the relationship between the Debtor and certain of the Defendants and because there is
an adequate remedy at law is without merit.  The Plaintiff argues that it is entirely appropriate to
plead unjust enrichment in the alternative at the pleading stage even where there is a contract-
based claim.  Moreover, the Plaintiff argues, courts within the Third Circuit have held that a

claim for unjust enrichment survives a motion to dismiss where it is plausible the plaintiff could otherwise be left without a remedy at law.

### c. The Moving Defendants' Reply

The Moving Defendants reassert their position that an unjust enrichment claim in a complaint should be dismissed where it is paired with a breach of contract claim based on a defendant's failure to abide by the terms of the agreement, as courts in this district and Pennsylvania have done. They also repeat their argument that the failure to plead no adequate remedy at law alone is enough to dismiss. Finally, they again argue that the Complaint fails to make specific allegations with respect to each Moving Defendant that satisfy the elements of an unjust enrichment claim.

### d. The Court's Analysis

The Moving Defendants are correct that an unjust enrichment claim is quasi-contractual. *Seitz v. 6130 West, LLC (In re Joey's Steakhouse, LLC),* 474 B.R. 167, 186 (Bankr. E.D. Pa. 2012) (citing *Sevast v. Kakouras,* 915 A.2d 1147, 1153 n.7 (Pa. 2007)). They also correctly cite the elements of the claim: benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits by defendant under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Id.* (citing *Stoeckinger v. Pres. Fin. Corp. of Delaware Valley,* 948 A.2d 828, 833 (Pa. Super. 2008)). And as the Moving Defendants argue, it is not available where there is an adequate remedy at law. *See, e.g., Steele v. Chase Manhattan Mortg. Corp.,* 2005 WL 2077271, at *4 (E.D. Pa. Aug. 26, 2005).

The Court finds that the Complaint adequately pleads an unjust enrichment claim against

all Defendants.  The Complaint's allegations, taken as a whole and as true, allege that each

Defendant improperly received benefit, if not actual transfers of funds, from the Debtor through

the actions of the Insider Defendants and Sheehan, the appreciation of which was the profit,

sales, and retention of other benefits that belonged to the Debtor, and the inequity of which is

evidenced by the Debtor's resulting insolvency.  These allegations state a claim for unjust

enrichment.

The Court rejects the Moving Defendants' argument that the claim is precluded by the

Complaint's claims sounding in contract, providing an adequate remedy at law.  Federal Rule of

Civil Procedure 8(d) provides that a party "may set out two or more statements of a claim or

defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If

a party makes alternative statements, the pleading is sufficient if any of them is sufficient.  A

party may state as many separate claims or defenses as it has, regardless of consistency."

F.R.C.P. 8(d)(1)-(2) (internal headings omitted).  Courts confronting this issue have found that,

given Rule 8(d)'s leniency, pleading an unjust enrichment claim as an alternative to contractual

remedies that may be available is not problematic and does not require dismissal simply because

there may be an adequate remedy at law.  *See Sandee's Catering v. Agri Stats, Inc.,* 2021 WL

963812, at *7 (N.D. Ill. Mar. 15, 2021) (collecting cases).  There is a difference between

*pleading* contractual claims and unjust enrichment, on the one hand, and *recovering* under both

claims, on the other.  The former is permitted, the latter is not.  *See In re Sears, Roebuck & Co.

Tools Marketing and Sales Practice Litig.,* 2009 WL 937256, at *11 (N.D. Ill. Apr. 6, 2009)

(interpreting Pennsylvania caselaw).  Moreover, a claim for unjust enrichment is not barred if the

legal remedy would not offer "a full and complete remedy." *Vautar v. First Nat. Bank of Pa.,*

133 A.3d 6, 13 (Pa. Super. Ct. 2016).  As such, the Court finds that the Plaintiff was not

precluded from asserting an unjust enrichment claim as an alternative to any contractual claims.

Because the Complaint adequately states a claim for unjust enrichment against all

Defendants, and such claim is not precluded at the pleading stage by the Complaint's contract-

based claims, the Court will not dismiss Count 5.

### 6.     Count 6 for Accounting Against All Defendants

Count 6 seeks the remedy of an accounting from all Defendants setting forth the Debtor's

transfers to and transactions with the Defendants, as well as all Debtor resources diverted to or

for the benefit of the Defendants.  The Complaint alleges this relief is needed because the

Defendants took extraordinary measures to destroy the Debtor's books and records.

### a.     The Moving Defendants' Arguments

The Moving Defendants argue the Complaint fails to plead the elements of an accounting

claim at law, which requires a valid express or implied contract between the parties whereby the

contract or the relationship created by the contract imposed a legal obligation upon the defendant

to account to the plaintiff for monies received.  The Complaint identifies no contractual or other

right to an accounting the Debtor had.  The Moving Defendants also assert that the Complaint

fails to plead that an equitable accounting is required due to the lack of an adequate remedy at

law.  Rather, the Moving Defendants argue, because discovery is an adequate remedy, no

grounds for an equitable accounting claim exist.

### b.     The Plaintiff's Opposition

The Plaintiff counters that Pennsylvania has long recognized an equitable accounting

claim for wrongful possession of property.  Here the facts alleged support an equitable

accounting claim because they assert the Insider Defendants breached their fiduciary duties to

the Plaintiff with the full knowledge of and participation by all Defendants, then actively

concealed their misconduct, making it impossible for the Plaintiff to account for the rightful

property of the Debtor's estate.

### c.      The Moving Defendants' Reply

In their Reply the Moving Defendants simply reiterate that the Complaint and the

Opposition fail to identify any contractual or legal right to an accounting, leaving the Plaintiff to

seek one on equitable grounds.  Because equitable accounting claims require that the plaintiff

plead and show no adequate remedy at law, and here discovery is an adequate remedy at law, the

accounting claim must fail.

### d.      The Court's Analysis

Under Pennsylvania law, entitlement to an accounting may be legal or equitable.

*Chalepis v. Karloutsos,* 2023 WL 2976277, at *5 (E.D. Pa. Apr. 18, 2023).  Count 6 does not

expressly state whether it seeks a legal or equitable accounting, but does assert that an

accounting is an "equitable remedy."  Complaint at ¶243.  Moreover, the Opposition argues for

an equitable accounting, rather than an accounting at law.  The Court will therefore address

whether the Complaint states a claim for an equitable accounting.[22]

The necessary prerequisite to the right to maintain a suit for an equitable accounting is

---

[22] The briefing on this Count of the Complaint was not helpful.  The Motion to Dismiss argues that Count
6 does not state a claim for a legal accounting and is not proper where the information can be obtained
through discovery.  The Opposition does not address either argument, instead asserting the right to an
equitable accounting and asserting that whether an adequate legal remedy is available is not properly
determined at the pleading stage because the Plaintiff is entitled to plead contractual and equitable
remedies in the alternative.  The Plaintiff does not respond to the argument that the information sought
can be obtained through discovery.

the absence of a remedy at law.  *Id*.  An equitable accounting should not be used as a vehicle to obtain information that would be subject to discovery in a separate civil action.  *Pollock v. Energy Corp. of Am.,* 2011 WL 5977422, at *2 (W.D. Pa. Nov. 29, 2011) (citing *Buczek v. First Nat'l Bank of Mifflintown,* 531 A.2d 1122, 1123 (Pa. Super. 1987)).  The Moving Defendants argue that the information the Plaintiff seeks can be obtained through discovery under the Federal Rules.  The Plaintiff has not challenged this assertion, and the Court agrees.  Count 6 asserts the Defendants "possess certain books, records, and other electronic data of the Debtor," but does not address why that information cannot be obtained through discovery.  The Plaintiff does assert that the Defendants have either destroyed or stolen certain of the Debtor's records, but to the extent discovery supports that allegation, the Trustee may have a claim for spoliation.

Count 6 fails to state a claim for an equitable accounting against any of the Moving Defendants, and will be dismissed as against all Moving Defendants.

### 7.    Count 7 for Constructive Trust Against All Defendants

Count 7 seeks the imposition of a constructive trust with respect to the Pilfering Entities' assets because they were financed using the Debtor's resources to the detriment of the Debtor and its creditors.

### a.    The Moving Defendants' Arguments

The Moving Defendants first argue that the caption of this claim states it is against all Defendants, but the allegations relate only to the Pilfering Entities, and it therefore should be dismissed as against all individual Defendants.  Moreover, it fails to state a claim against any entity Defendants.  A constructive trust cannot be used to impose personal liability, and the plaintiff is required to identify a specific trust *res* upon which a constructive trust may be

imposed.  The Complaint fails to identify any specific trust *res* over which a trust would be imposed.  Furthermore, it fails to overcome the strong presumption in constructive trust claims in favor of the party holding title to the assets.  Here the entity Defendants hold title to their assets, and as discussed *supra* with respect to CBDelight and Wynk Seltzer, the Debtor never could have held those assets based on the financing, insurance and other restrictions imposed on it.

### b.      The Plaintiff's Opposition

The Plaintiff responds that Third Circuit caselaw holds that where a fiduciary profits personally from a breach of fiduciary duty or disloyalty, a court may impose a constructive trust on the profit.  Breach of the duty of loyalty and unjust enrichment are grounds to impose a constructive trust, and the Complaint adequately pleads breach of fiduciary duty, aiding and abetting, and unjust enrichment claims, thereby also pleading the grounds for a constructive trust claim.

### c.      The Moving Defendants' Reply

The Moving Defendants reply that the Opposition fails to address the Complaint's defect in asserting the constructive trust claim against all Defendants in the caption of Count 7 but asserting allegations against only the Pilfering Entities, warranting dismissal against all individual Defendants.  The Moving Defendants also argue that the Opposition adds allegations that the fruits of the Insider Defendants' breaches of fiduciary duty are subject to a constructive trust, but this fails to qualify as a specific trust *res* upon which a constructive trust may be imposed.  Moreover, Pennsylvania does not recognize a separate cause of action for a constructive trust.

### d.       The Court's Analysis

The Court begins by agreeing with the Moving Defendants' argument that Count 7 should be dismissed as against the Insider Defendants and Sheehan.  The substance of the Count is lodged against only the Pilfering Entities, notwithstanding that it is purportedly asserted against all Defendants per its heading.  See Complaint, at ¶¶253, 254.  Failure to make any substantive allegations against the Insider Defendants and Sheehan with respect to this Count does not give them notice of the claim against them and its basis.  *See In re Harris Agency, LLC,* 477 B.R. 590, 594 n.7 (Bankr. E.D. Pa. 2012).

The Moving Defendants are also correct that a constructive trust claim requires that a plaintiff identify a *specific* trust res upon which the constructive trust may be imposed.  *In re Kamand Constr., Inc.,* 298 B.R. 251, 255 (Bankr. M.D. Pa. 2003) (citing *Gee v. Eberle,* 420 A.2d 1050, 1061 n. 9 (Pa. Super. May 9, 1980) and *Louis Dolente & Sons v. U.S. Fidelity and Guar. Corp.,* 252 F.Supp.2d 178, 183 (E.D. Pa. 2003)).  The Complaint fails to do so, merely alleging that a constructive trust should be imposed "on the assets of the Pilfering Entities for the benefit of the Debtor's bankruptcy estate," without asserting why all such assets are properly the subject of a constructive trust.  Complaint, at ¶254.  This does not satisfy the Plaintiff's pleading obligations with respect to a constructive trust claim.  Count 7 will therefore be dismissed against all Moving Defendants.

### 8.       Count 8 for Breach of Contract Against Casey and Rittenburg and for Declaratory Relief Against the Pilfering Entities

The Plaintiff's claim in Count 8 is based on alleged violation of §9.17 of the LLC Agreement, which provides that the Members agreed to assign all "Work Product" to the Debtor. The Plaintiff alleges that Casey and Rittenburg generated Work Product, including Wynk Seltzer,

CBDelight, Best Bev brands, and various patent applications for the benefit of the Pilfering

Entities, but were obligated to assign that Work Product to the Debtor.  The claim seeks damages

from Casey and and Rittenburg and declaratory judgment against the Pilfering Entities seeking

the assignment back to the Debtor of all Work Product in their possession and control.

### a.      The Moving Defendants' Arguments

The Moving Defendants argue that "Work Product" is defined under the LLC Agreement

to mean intellectual property created "in the course of providing services to the Company."  The

Moving Defendants assert, however, that CBDelight, Wynk Seltzer, and "the other assets that lie

at the heart of the Trustee's Complaint" were never property of the Debtor's bankruptcy estate,

because the Debtor was prohibited by "lending, regulatory, and insurance considerations" from

engaging in any business involving CBD or cannabis products.  Therefore these products could

never be Work Product under the LLC Agreement, and in fact were a permissible part of "other

business ventures" in which Casey and Rittenburg could engage under §5.8 of the LLC

Agreement.

With respect to the declaratory judgment claim against the Pilfering Entities, the Moving

Defendants argue that relief is inappropriate where the Parties are in "full blown litigation" and

each side is clear as to what its respective rights are.  Here the Moving Defendants are clear in

their position that the Debtor never had any interest in CBDelight, Wynk Seltzer, or the other

alleged Work Product, and the Debtor is clear in its position that these products should be

assigned to the Debtor's estate.

### b.      The Plaintiff's Opposition

The Plaintiff responds that the Complaint alleges in detail how Casey and Rittenburg breached the LLC Agreement's assignment provision by using their roles and the Debtor's resources to create Work Product, such as CBDelight and Wynk Seltzer, for the benefit of other entities and persons.  These allegations clearly set forth a claim for breach of §9.17 of the LLC Agreement, and the Moving Defendants' argument that these products cannot qualify as Work Product because the Debtor was restricted from producing these products requires turning a willful blind eye to the Complaint's allegations that this is precisely what happened, notwithstanding any restrictions that may have existed.  Moreover, the Moving Defendants' argument that §5.8 of the LLC Agreement allowed Casey and Rittenburg to engage in other business ventures is off base because it did not permit them to operate other business ventures in which the Debtor has no formal ownership interest by theft of the Debtor's property and resources.

### c.      The Moving Defendants' Reply

The Moving Defendants restate their argument that the CBDelight and Wynk Seltzer products were separate ventures Casey and Rittenburg were entitled to undertake, and they do not qualify as Work Product because they were not made in the course of providing services to the Debtor.  The Moving Defendants also reiterate their argument that the Plaintiff's claim for declaratory judgment is moot because it is only appropriate where it will terminate the controversy giving rise to the proceeding, not where the parties are in full blown litigation.

### d.      The Court's Analysis

Count 8 states a claim for breach of contract against Casey and Rittenburg.  It adequately

puts those Defendants on notice of the Plaintiff's claim that they breached §9.17 of the LLC

Agreement by developing CBDelight, Wynk Seltzer, and possibly other products without

assigning such products to the Debtor.  The Moving Defendants' argument that the Debtor was

precluded from owning such assets based on "lending, regulatory, and insurance considerations"

is a factual issue not properly resolved at the motion to dismiss stage.

With respect to the Moving Defendants' argument that Count 8's claim for declaratory

judgment against the Pilfering Entities is moot because it will not terminate the litigation

between the Parties, the Court is not persuaded.  Count 8's claim seeks declaratory judgment on

a discrete aspect of the Parties' dispute, *i.e.,* that the Pilfering Entities benefitted from Casey and

Rittenburg's breach of §9.17 of the LLC Agreement and must return Work Product in their

possession and control.  Resolution of that particular issue is not mooted by the presence of other

issues to be litigated.  *See Chester Comm. Charter Sch. v. Commw'lth Dept. of Ed.*, 996 A.2d 68,

(Pa. Comm Ct. 2010) (overruling preliminary objection to declaratory judgment count because it

presented a discrete dispute that could be adjudicated in the context of a complaint seeking

broader relief and remedies).  Count 8 will not be dismissed against any Moving Defendant.

**9.      Count 10 for Equitable Subordination Against All Defendants**

Count 10 of the Complaint seeks equitable subordination of any and all claims of the

Defendants based on their alleged inequitable conduct resulting in injury to the Debtor's

creditors and unfair advantage to the Defendants.

**a.      The Moving Defendants' Arguments**

The Moving Defendants argue Count 10 fails as a matter of law because none of them

hold a claim that could be subject to subordination.  To wit, none of the Moving Defendants have

filed claims other than EtOH and AgTech VI, both of which previously filed motions for

allowance of administrative expenses that have already been allowed.  The Moving Defendants

argue that allowance is now law of the case.

### b.      The Plaintiff's Opposition

The Plaintiff responds that the Moving Defendants are plainly incorrect that this claim

should be dismissed on the grounds that no Moving Defendants hold a claim that could be

equitably subordinated.  The Plaintiff points to the Debtor's bankruptcy schedules, which

identify Boyer, AgTech VI, and EtOH as having undisputed, noncontingent, and liquidated pre-

petition claims against the Debtor.  The Plaintiff argues that a scheduled claim is subject to

equitable subordination to the same extent as a filed claim.

### c.      The Moving Defendants' Reply

The Moving Defendants respond that the debts the Debtor scheduled are irrelevant to

equitable subordination, as application of the doctrine requires an underlying claim.

### d.      The Court's Analysis

Equitable subordination proceedings ultimately establish the respective rights of creditors

to participate in the distribution of the estate, invariably affecting the priority of claims in

bankruptcy.  *In re N. Parent, Inc.,* 221 B.R. 609, 629 (Bankr. D. Mass. 1998) (citing *Am. Cigar.*

*Co. v. MNC Comm. Corp. (In re M. Paolella & Sons, Inc.)*, 85 B.R. 965, 968 (Bankr. E.D. Pa.

1988)).  The Court disagrees with the Moving Defendants that debts the Debtor scheduled as

undisputed, noncontingent, and liquidated are irrelevant to equitable subordination.  Pursuant to

Bankruptcy Rule 3003(b)(1), a debtor's schedule of liabilities "constitute[s] prima facie evidence

of the validity and amount of the claims of creditors, unless they are scheduled as disputed,

contingent, or unliquidated.  It shall not be necessary for a creditor or equity security holder to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule." F.R.B.P. 3003(b)(1).  Moreover, the Debtor filed its bankruptcy case under chapter 11, and as such the debts it scheduled as undisputed, noncontingent, and liquidated are deemed to be filed proofs of claim under §501 of the Bankruptcy Code.  11 U.S.C. §1111(a).  Any debt to a Moving Defendant that the Debtor scheduled as undisputed, noncontingent and liquidated is therefore deemed a filed proof of claim entitled to a prima facie presumption of validity and amount.[23]

The Debtor scheduled the following Moving Defendants as having undisputed, noncontingent, liquidated nonpriority unsecured claims: (i) AgTech VI, in the amount of $106,922.00, (ii) EtOH, in the amount of $37,896.00, and (iii) Boyer, in the amount of $525,000.00.[24]  Each of these claims are therefore subject to equitable subordination, regardless of the fact that none of the claimants filed a proof of claim.  *See, e.g., In re Meadowbrook Estates,* 246 B.R. 898, 905 (Bankr. E.D. Cal. 2000) (a predicate to equitable subordination under §510(c) is an allowed claim either by virtue of being scheduled as undisputed, liquidated, and noncontingent or by the filing of a proof of claim).

However, there is no equitable subordination claim at this stage against the Moving Defendants that have neither filed a proof of claim nor had an undisputed, noncontingent, liquidated claim scheduled by the Debtor.  *See N. Parent Inc.,* 221 B.R. at 630 (dismissing

---

[23] The Court acknowledges that some courts have interpreted Bankruptcy Rule 1019(3) as requiring a claimant to file a post-conversion proof of claim even if the debtor scheduled their debt as undisputed, noncontingent, and unliquidated.  *See, e.g., In re Tri-State Ethanol Co. LLC,* 2008 Bankr. LEXIS 36, at *10 (Bankr. S.D. Jan. 3, 2008)*.  The Court, however, sides with the reasoning of *Jasinski v. Mongolia Gen. Hosp. (In re Jasinski)*, 406 B.R. 653, 655 (Bankr. W.D. Pa. 2009), finding that the Rule does not expressly address it and requiring a creditor whose claim the debtor has scheduled as undisputed to re-file the claim post-conversion undermines the efficiency the Bankruptcy Rules are meant to promote.

[24] See Debtor's Schedule E/F at Bankr. Docket No. 60, lines 3.3, 3.20, and 3.34.

equitable subordination count against defendant that had not filed a proof of claim nor had an undisputed, noncontingent, liquidated claim scheduled, and therefore "there [was] nothing to equitably subordinate"); *Meadowbrook Estates,* 246 B.R. at 905 (because defendant's claim was scheduled as disputed and no proof of claim had been filed, "there [was] nothing to subordinate).

The Court will not dismiss Count 10 against AgTech VI, EtOH, or Boyer.  The Court will dismiss Count 10 against all other Moving Defendants, none of which has filed a proof of claim or had a claim scheduled as undisputed, noncontingent, and liquidated.

### 10.    Count 11 for Turnover Under §542 Against All Defendants

Count 11 seeks turnover, pursuant to §542 of the Bankruptcy Code, of various Debtor records, the overpayments the Debtor allegedly made to Finland Leasing and ETP, intellectual property and alleged Work Product under the LLC Agreement, and all other property belonging to the Debtor.

### a.    The Moving Defendants' Arguments

The Moving Defendants argue that §542(a) only applies (i) to property in the possession of a Moving Defendant that (ii) the trustee may use, sell, or lease, that (iii) is not of inconsequential value or benefit to the estate.  The property for which turnover is sought must be property of the estate.  Here, the email and other electronic records the Plaintiff seeks, to the extent they exist, would be in the possession, custody or control of a third party.  Likewise, the CBDelight, Wynk Seltzer, and other alleged Work Product were not and never could be property of the estate because the Debtor was restricted from owning or selling them. The Moving Defendants further argue that any claim for turnover is premature because the Trustee has not sought avoidance of any alleged transfer, and a bona fide dispute exists as to title.  Finally, to the

extent any property is properly the subject of turnover, the Complaint fails to allege that the

property is available to be administered by the Trustee or that it is not of inconsequential value.

### b.    The Plaintiff's Opposition

The Plaintiff responds that §§542(a) and (e) set forth the turnover requirements for estate

property and books and records, and the Complaint pleads that the Moving Defendants are in

possession of both.  The Plaintiff further responds that, although the Moving Defendants argue a

dispute exists as to proper title, no bona fide dispute exists for purposes of a motion to dismiss

because the Complaint's allegations must be taken as true.

### c.    The Moving Defendants' Reply

The Moving Defendants reiterate that a claim sounding in turnover is not proper where

there is a bona fide dispute regarding title between the Parties, and the Plaintiff's position that

there is no dispute at this stage because the allegations in the Complaint must be taken as true at

the pleading stage conflates well-pleaded facts being taken as true for purposes of the motion to

dismiss with those facts being undisputed.  The Moving Defendants argue that facts can be taken

as true at the pleading stage but the claim can still be improper as a matter of law because, once

the motion to dismiss stage has passed, the facts are contested.

### d.    The Court's Analysis

The Moving Defendants are correct that a turnover action cannot be used to demand

assets the title to which is in dispute.  *See, e.g., In re Allegheny Health, Educ., and Research

Found.,* 233 B.R. 671, 677 (Bankr. W.D. Pa. 1999) (citing cases).  The dispute to title must be

bona fide in order for a turnover action to be considered premature.  *In re Stancil,* 473 B.R. 478,

483 (Bankr. D.C. 2012) (citing, *inter alia, Krasny v. Bagga (In re Jamuna Real Estate, LLC),*

357 B.R. 324, 333-34 (Bankr. E.D. Pa. 2006)).  The Court finds that, even at the pleading stage

when all well-pleaded facts are taken as true for purposes of resolving the Motion to Dismiss, a

bona fide dispute regarding title exists with respect to the payments to Finland Leasing and ETP

and the intellectual property and Work Product that the Plaintiff seeks turned over as stated in

¶271(c) and (d) of the Complaint.  A turnover claim with respect to that property is therefore

premature, and will be dismissed.

The Complaint, however, adequately states a claim for turnover of the Debtor's

electronic records, emails, etc. as stated in ¶271(a) and (b), as the title to them cannot be subject

to bona fide dispute.  The Moving Defendants have not argued that they legitimately hold title to

such assets.  Furthermore, their claim that the records the Plaintiff seeks, to the extent they exist,

would be in the possession, custody or control of a third party, is a factual dispute not subject to

determination at the motion to dismiss stage.  The Plaintiff has also adequately alleged its need

to use such assets and information in administration of the Debtor's estate, and consequently that

such assets and information are not of inconsequential value or benefit to the estate.

Count 11 of the Complaint will therefore be dismissed only to the extent it seeks

turnover of asserted extracontractual payments to Finland Leasing and ETP and intellectual

property and Work Product.

### 11.    Count 12 for Avoidance and Recovery Under §§549 and 550 Against the "Best Bev Defendants"

Count 12 seeks avoidance and recovery of the post-petition Best Bev Transfers, which

are the alleged transfer of certain of the Debtor's equipment and payments the Debtor allegedly

made for products and services benefitting Best Bev, as detailed at ¶150 of the Complaint.

69

### a.    The Moving Defendants' Arguments

The Moving Defendants argue that this claim fails on its face in that it is asserted against the "Best Bev Defendants," which is not a defined term in the Complaint.  The claim also uses the term "Best Bev" but that term is not defined anywhere in the Complaint either.  The Moving Defendants then argue that to the extent the Plaintiff means Best Bev LLC, the Complaint acknowledges that entity was formed in June 2022, whereas the post-petition transfers are alleged to have been made between July and September 2021.  Moreover, the allegation that certain other entity Defendants had a passive direct or indirect ownership relationship to Best Bev, LLC is not sufficient to plausibly allege these entities benefited from any alleged post-petition transfer to that entity.  Finally, the Complaint fails to identify a single transferee or immediate or mediate transferee of any alleged post-petition transfers, rendering the claim fatally deficient.

### b.    The Plaintiff's Opposition

The Plaintiff responds that the Moving Defendants' chief basis for dismissal of Count 12 is that the claim is asserted against the "Best Bev Defendants", which is an undefined term, but the term Best Bev Entities is defined in detail and their history described in detail.  As such, the Plaintiff asserts, it is clear what was intended.  The Plaintiff also responds that Moving Defendants' argument that the Complaint alleges the transfers were made to "Best Bev" but does not identify the mediate or immediate transferee as required ignores that the Complaint alleges the Best Bev Entities operated as if they were a unified entity.

### c.      The Moving Defendants' Reply

The Moving Defendants reply that the Plaintiff's attempt to gloss over the use of

undefined terms for the Defendants against which this claim is asserted is improper, as the error

requires amendment.  Moreover, the Plaintiff fails in the Opposition to address the inconsistent

allegations that Best Bev LLC was formed nearly a year after the alleged Post-Petition Best Bev

Transfers.

### d.      The Court's Analysis

As stated on the record at the Hearing, the Court agrees with the Moving Defendants that

Count 12 must be dismissed, as it does not assert a claim against any named Defendant or group

of Defendants.  The Plaintiff is, however, granted leave to replead Count 12 against the intended

Defendants.

### 12.      Count 13 for Avoidance and Recovery Under §§547 and 550

Count 13 asserts that Finland Leasing, ETP, and Boyer are all insiders, and seeks the

avoidance and recovery of the following as preferences: (i) lease payments to Finland Leasing

and other payments for the benefit of ETP, made within one year of the Debtor's bankruptcy

filing, and (ii) the payment to Boyer of $75,000 on March 19, 2021, approximately four months

prior to the bankruptcy.

### a.      The Moving Defendants' Arguments

The Moving Defendants argue that the Complaint fails to plead facts with respect to

Boyer touching on all statutory elements of the claim.  It does not plead that (i) Boyer was a

creditor, (ii) the Debtor was insolvent at the time the transfer was made, more than 90 days prior

to the petition date, and no statutory presumption of insolvency exists, and (iii) the transfer

allowed Boyer to receive more than he would have if he had received payment as provided by

Bankruptcy Code.  The Moving Defendants argue that this failure alone requires dismissal.  The

transfer was outside the 90-day preference period, and nowhere does the Complaint allege that

Boyer was a statutory insider or otherwise exercised control such that a greater look-back period

of one year is proper.

### b.      The Plaintiff's Opposition

The Plaintiff responds that §547 preference claims have five elements: the transfer was

(i) to or for the benefit of a creditor, (ii) for or on account of an antecedent debt, (iii) made when

the debtor was insolvent, (iv) made within 90 days pre-petition or one year if an insider

transferee, (v) which enabled the transferee to receive more than he would have in a chapter 7.

Here all elements are pleaded or the Court can take judicial notice of them.  The transfer

was made to Boyer as a creditor on account of an antecedent debt (¶285).  The Debtor was

unable to pay its debts as of February 2021, whereas the transfer occurred in March 2021 (¶¶106,

285).  With respect to the requirement that Boyer received more than he would have in a chapter

7 liquidation, the Court can take judicial notice that the Debtor listed in its schedules assets of

$2.7 million against liabilities of $10.1 million, and the current claims register shows liabilities

of $4.4 million.  Boyer was a non-statutory insider, which is a fact-specific inquiry, defined to

exist where "there is a close relationship between the debtor and creditor and anything other than

closeness to suggest that any transactions were not at arms' length."  The Complaint alleges that

the Debtor's relationship with Boyer went well beyond the normal attorney-client boundaries: he

is alleged to have served as general counsel and to have done so while also counseling the

Polebridge and Wynk Entities, to the point of being admonished by the Debtor's bankruptcy

counsel for having painted the Debtor in an unfavorable light to potential purchasers (¶¶14, 111-112, 176-177).

### c.      The Moving Defendants' Reply

The Moving Defendants reply that the Plaintiff alleges for the first time in the Opposition that Boyer was a creditor, and attempts to characterize him as an insider to invoke the one-year look back period for preference actions rather than the default 90-day period.  The Moving Defendants argue that attorneys are generally not considered insiders of their clients, and the exceptions the Plaintiff offers to this rule are not pleaded in the Complaint.  Furthermore, the allegation that Boyer represented the Debtor and certain other entities does not serve as a basis for insider status.

### d.      The Court's Analysis

The Court finds that the Complaint adequately pleads a claim against Boyer under §547 of the Bankruptcy Code.  As the Plaintiff points out, the Complaint alleges that Boyer was an insider, based on his role with and actions on behalf of the Debtor.   The Third Circuit has held that the question of insider status is directed by the closeness of the debtor and creditor's relationship and whether there "is anything other than closeness to suggest that the transactions were not conducted at arm's length." *See In re Winstar Comm'ns., Inc.*, 554 F.3d 382, 397 (3d Cir. 2009). The allegations here are sufficient to allege nonstatutory insider status.  The Complaint also alleges that Boyer received a payment on account of an antecedent debt within the statutory look-back period for insiders.  The Complaint also adequately alleges the Debtor's insolvency at the time of, and in fact predating, the payment to Boyer.  With respect to whether Boyer received more than he would have in a chapter 7 liquidation, the Court can take judicial

notice of the Debtor's schedules, which make clear that its liabilities far outweighed its assets,

and there has been no suggestion by any of the Parties that the creditors in this chapter 7 case

stand to receive 100% recovery on their prepetition claims.  As such, the Complaint adequately

alleges, at the pleading stage, a §547 preference claim against Boyer.  Count 13 will therefore

not be dismissed against Boyer.

**VI.    CONCLUSION**

For the reasons set forth *supra,* the Court will grant the Motion to Dismiss in part and

deny it in part, as follows:

1.    Count 1 is not dismissed as against any Moving Defendant.

2.    Count 2 is not dismissed as against any Moving Defendant.

3.    Count 3 is not dismissed as against any Moving Defendant.

4.    Count 4 is dismissed without prejudice as against Festa, Baldwin, Boyer, and Sheehan only, and is not dismissed as against all other Moving Defendants.

5.    Count 5 is not dismissed as against any Moving Defendant.

6.    Count 6 is dismissed without prejudice as against all Moving Defendants.

7.    Count 7 is dismissed without prejudice as against all Moving Defendants.

8.    Count 8 is not dismissed as against any Moving Defendant.

9.    Count 10 is dismissed without prejudice against all Moving Defendants other than AgTech VI, EtOH, and Boyer, against whom Count 10 is not dismissed.

10.    Count 11 is dismissed without prejudice as against all Moving Defendants solely to extent it seeks turnover of (i) payments the Debtor allegedly made to Finland Leasing and ETP, and (ii) intellectual property and Work Product, as defined in the LLC Agreement.

11.    Count 12 is dismissed without prejudice as against all Moving Defendants.

12.    Count 13 is not dismissed as against Boyer.

The Court shall issue an Order consistent with this Memorandum contemporaneous

herewith.

Dated:  July 23, 2024

_____
MAGDELINE D. COLEMAN
U.S. BANKRUPTCY JUDGE