## IN THE UNITED STATES BANKRUPTCY COURT FOR
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

MIDNIGHT MADNESS DISTILLING

     Debtor.

_____/

BONNIE B. FINKEL, in her capacity as Chapter
7 Trustee for Midnight Madness Distilling,
     Plaintiff,

v.

CASEY PARZYCH; SHAWN SHEEHAN;
ANGUS RITTENBURG, KELLY FESTA,
ASHLEIGH BALDWIN; MICHAEL BOYER;
R.F. CULBERTSON; GARY PARZYCH; RYAN
USZESNKI; POLEBRIDGE LLC; GOOD
DESIGN, INC.; AGTECH PA LLC; AGTECH VI,
LLC; XO ENERGY WORLDWIDE LLLP; XO
EW, LLC; CAN MAN LLC; BEST BEV, LLC;
ETOH WORLDWIDE, LLC; CANVAS 340, LLC;
FINLAND LEASING CO., INC.; and EUGENE T.
PARZYCH, INC.

     Defendants.

_____/

Case No.: 21-11750-MDC

Chapter 7 Case

Adv. Pro. No.: 23-00047-MDC

JURY TRIAL DEMANDED

## MEMORANDUM OF LAW IN SUPPORT OF MOVING DEFENDANTS' MOTION TO DISMISS AMENDED ADVERSARY COMPLAINT

**TABLE OF CONTENT**

**Page**

MEMORANDUM OF LAW IN SUPPORT OF MOVING DEFENDANTS' MOTION
TO DISMISS AMENDED ADVERSARY COMPLAINT............................................. 1

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.   THE TRUSTEE LACKS STANDING TO PURSUE COUNTS ONE, TWO,
     THREE, FOUR (A), FOUR (B), FIVE, EIGHT, TEN, ELEVEN, AND TWELVE. ............. 4

     A.   Legal Standard for Standing on Motion to Dismiss Under Rule 12(b)(1)............. 5

     B.   The Trustee Lacks Standing to Bring Claims related to the Debtor's
          Business Operations or Assets. ........................................................................ 6

II.  DISMISSAL IS APPROPRIATE AS TO CLAIMS ONE, TWO, FOUR(A),
     FOUR (B), FIVE, EIGHT, TEN, AND ELEVEN UNDER RULE 12(b)(6)
     BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE
     MOVING DEFENDANTS. ............................................................................... 10

     A.   Claims Two, Four (A), Four (B), Five, Eight, and Eleven Should Be
          Dismissed as to the Corporate Entities Because Those Claims Are Based
          on the Ill-Defined Term "Pilfering Entities." ........................................... 12

     B.   Claim One for Breach of Fiduciary Duty Against Defendant Baldwin
          Fails Because Baldwin Owed No Such Duty to the Debtor. ............................... 15

     C.   Claim Two For Aiding & Abetting Breach of Fiduciary Duty Fails to
          Plead with the Requisite Specificity. ....................................................... 17

          i.    The Amended Complaint fails to Specify How Each Defendant
                Aided or Abetted Each Breach of Fiduciary Duty................................... 17

          ii.   The Insider Defendants Cannot Aid and Abet their Own Alleged
                Breach. .................................................................................... 20

          iii.  The Claim for Aiding and Abetting Breach of Fiduciary Duty is
                Barred by Res Judicata and Collateral Estoppel as to Certain
                Defendants Pursuant to the Sale Order. ..................................... 21

     D.   Claim Four (A) For Alter Ego and/or Piercing the Corporate Veil Fails
          Because The Corporate Defendants Were Not Members of the Debtor and
          the Trustee Did Not Adequately Plead Fraud as to the Moving Defendants........ 23

          i.    The Trustee Lacks Standing to Assert a Piercing the Veil Claim............. 24

          ii.   The Trustee Cannot Assert a Piercing the Veil Claim against
                Unaffiliated Entities ................................................................. 25

iii.    The Trustee Fails to Plead the Element of Fraud Necessary to
       Pierce the Corporate Veil........................................................................ 26

E.    Claim Four (B) For Successor Liability Fails as a Matter of Law
      Because the Corporate Entities Are Not the Plaintiff's Successor. ...................... 27

F.    Claim Five for Unjust Enrichment Fails as a Matter of Law Because
      it is Inapplicable When There is a Written Contract.............................................. 30

G.    Claim Ten For Equitable Subordination Fails as a Matter of Law
      Because the Trustee Has Not Adequately Alleged the Elements of the
      Claim Against AgTech VI, EtOH......................................................................... 32

H.    Claim Eleven Fails to State a Claim for Turnover............................................... 35

i.    Legal Standard ........................................................................................ 35

ii.   The Trustee Has Failed to Establish Entitlement to a Turnover. .............. 37

CONCLUSION.................................................................................................................... 38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      **Page(s)**

*In re 31-33 Corp.*,
   100 B.R. 744 (Bankr. E.D. Pa. 1989) ............................................................36, 38

*Accurso v. Infra-Red Services, Inc.*,
   23 F. Supp. 3d 494 (E.D. Pa. 2014) ..............................................................23, 26

*Adelphia Gateway, LLC v. Pa. Environmental Hearing Board*,
   No. 21-CV-1241, 2021 WL 5494286 (M.D. Pa. Nov. 23, 2021) ...........................11

*In re After Six, Inc.*,
   177 B.R. 219 (Bankr. E.D. Pa. 1995) ...................................................................33

*In re American Remanufacturers, Inc.*,
   No. 05-20022 PJW, 2007 WL 2376723 (Bankr. D. Del. Aug. 16, 2007)...............15

*Ansel Props., Inc. v. Nutri-System of Florida Associates (In re Nutri/System of
   Florida Associates)*,
   178 B.R. 645 (E.D. Pa. 1995) ...............................................................................32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................10, 11

*Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*,
   264 B.R. 376 (Bankr. E.D. Pa. 2001) ...................................................................36

*Atlantic Hydrocarbon, LLC v. SWN Production Co., LLC*,
   No. 4:17-CV-02090, 2019 WL 928996 (M.D. Pa. Feb. 26, 2019) ...................25, 29

*B.D.W. Associates v. Busy Beaver Building Centers*,
   865 F.2d 65 (3d Cir. 1989).....................................................................................36

*Baker v. Family Credit Counseling Corp.*,
   440 F. Supp. 2d 392 (E.D. Pa. 2006) ...................................................................31

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007).....................................................................................5

*Bartow v. Barrowclough*,
   251 F. Supp. 3d 855 (E.D. Pa. 2017) ...................................................................14

*Basile v. H&R Block., Inc.*,
   761 A.2d 1115 (Pa. 2000) ......................................................................................16

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
   296 F.3d 164 (3d Cir. 2002)................................................................................25, 29

*Belfi v. USAA F.S.B.*,
   No. 22-2083, 2022 U.S. Dist. LEXIS 161378 (E.D.Pa. Sept. 7, 2022) ...................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................10

*In re Bellanca Aircraft Corp.*,
   850 F.2d 1275 (8th Cir. 1988) ........................................................................................34

*Benefit Trust Life Insurance Co. v. Union National Bank*,
   776 F.2d 1174 (3d Cir. 1985).........................................................................................30

*Berg Chilling Systems, Inc. v. Hull Corp.*,
   435 F.3d 455 (3d Cir. 2006)...........................................................................................28

*Bernstein v. Gailey (In re Gailey, Inc.)*,
   119 B.R. 504 (Bankr. W.D. Pa. 1990) ...........................................................................36

*Burtch v. Ganz (In re Mushroom Transportation Co.)*,
   366 B.R. 414 (Bankr. E.D. Pa. 2007) ............................................................................22

*Chester Upland School District v. Rossi*,
   275 A.3d 1117 (Pa. Commw. Ct. 2022) .........................................................................19

*Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*,
   585 B.R. 850 (B.A.P. 6th Cir. 2018)......................................................................10, 24, 25

*Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*,
   194 A.3d 1010 (Pa. 2018)...............................................................................................19

*Cosby v. American Media, Inc.*,
   197 F. Supp. 3d 735 (E.D. Pa. 2016) .............................................................................31

*Creative Data Forms, Inc. v. Pennsylvania Minority Business Development
   Authority (In re Creative Data Forms, Inc.)*,
   41 B.R. 334 (Bankr.E.D.Pa. 1984), *aff'd*, 72 B.R. 619 (E.D.Pa. 1985), *aff'd,*
   800 F.2d 1132 (3d Cir. 1986)..........................................................................................37

*Dershaw v. Ciardi (In re Rite Way Electric, Inc.)*,
   510 B.R. 471 (Bankr. E.D. Pa. 2014) ............................................................................36

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014).......................................................................................25, 29

*Environmental Equiptment & Service Co. v. Wachovia Bank, N.A.*,
   741 F. Supp. 2d 705 (E.D. Pa. 2010) .............................................................................17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)............................................................................10

*Hill v. Akamai Tech., Inc. (In re MS55, Inc.)*,
    477 F.3d 1131 (10th Cir. 2007) ..........................................................9

*Hollenshead v. New Penn Financial, LLC*,
    447 F. Supp. 3d 283 (E.D. Pa. 2020) .................................................30

*Jiffy Lube International, Inc. v. Jiffy Lube of Pa., Inc.*,
    848 F. Supp. 569 (E.D. Pa. 1994) ......................................................24

*Kaplan v. First Options of Chicago, Inc.*,
    19 F.3d 1503 (3d Cir. 1994)................................................................27

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*,
    908 F.2d 1351 (7th Cir. 1990) ...........................................................33

*Lehman Bros. Holdings v. Gateway Funding Diversified Mortgage Services, L.P.*,
    989 F. Supp. 2d 411 (E.D. Pa. 2013), aff'd, 785 F.3d 96 (3d Cir. 2015)...........................28, 29

*Lichtenstein v. MBNA American Bank, N.A. (In re Computer Personalities
    Systems, Inc.)*,
    284 B.R. 415 (Bankr. E.D. Pa. 2002) ...............................................32, 33

*Liquidation Trust v. Fleet Retail Financial Group (In re Hechinger Investment
    Co. of Delaware)*,
    278 F. App'x 125 (3d Cir. 2008) .......................................................21

*In re LMcD, LLC*,
    405 B.R. 555 (Bankr. M.D. Pa. 2009) ...............................................26

*Lumax Industries, Inc. v. Aultman*,
    669 A.2d 893 (Pa. 1995)....................................................................24, 26

*Maiden Creek Associates, L.P. v. United States Department of Transportation*,
    123 F. Supp. 3d 638 (E.D. Pa. 2015), aff'd 823 F.3d 184 (3d Cir. 2016)................................6

*Marion v. Bryn Mawr Trust Co.*,
    288 A.3d 76 (Pa. 2023) .....................................................................19

*Meehan v. Cheltenham Twp.*,
    189 A.2d 593 (Pa. 1963) ...................................................................31

*Meyer v. Delaware Valley Lift Truck, Inc.*,
    392 F. Supp. 3d 483 (E.D. Pa. 2019) .................................................31

*Miller v. Jannetta (In re Irwin)*,
  509 B.R. 808 (Bankr. E.D. Pa. 2014) ...................................................................35

*Miners, Inc. v. Alpine Equipment Corp.*,
  722 A.2d 691 (1998) ...........................................................................................25

*Mitchell Partners, L.P. v. Irex Corp.*,
  No. 08-CV-04814, 2010 WL 3825719 (E.D. Pa. Sept. 29, 2010), *rev'd in part
  on other grounds*, 656 F.3d 201 (3d Cir. 2011) .............................................17, 18

*Mojave Desert Holdings v. Crocs Inc.*,
  995 F.3d 969 (Fed. Cir. 2021) ...............................................................................7

*Monge v. University of Pennsylvania*,
  674 F. Supp. 3d 195 (E.D. Pa. 2023) ...................................................................19

*Mortimer v. McCool*,
  255 A.3d 261 (Pa. 2021) .......................................................................................26

*Mortimer v. McCool*,
  No. 3583 EDA 2018, 2019 WL 6769733 (Pa. Super. Ct. Dec. 12, 2019) ........25, 29

*O'Halloran v. Prudential Savings Bank (In re Island View Crossing II, L.P.)*,
  604 B.R. 181 (Bankr. E.D. Pa. 2019) ..............................................................33, 34

*In re OpenPeak, Inc.*,
  No. 16-28464, 2020 WL 7360482 (Bankr. D.N.J. Dec. 14, 2020) .........................31

*In re PA Co-Man, Inc.*,
  644 B.R. 553 (Bankr. W.D. Pa. 2022) ...............................................................7, 29

*Pearson v. Component Technology Corp.*,
  247 F.3d 471 (3d Cir. 2001) ..................................................................................23

*Pierce v. Rossetta Corp.*,
  No. 88-5873, 1992 WL 165817 (E.D. Pa. June 12, 1992) .....................................17

*Polvay v. B.O. Acquisitions (In re Betty Owens Sch.)*,
  No. 98 Civ. 3576, 1997 U.S. Dist. LEXIS 5977 (Bankr. S.D.N.Y. April 18,
  1997) .....................................................................................................................22

*Rahemtulla v. Hassam*,
  539 F. Supp. 2d 755 (M.D. Pa. 2008) ...................................................................31

*Regions Bank v. J.R. Oil Co., LLC*,
  387 F.3d 721 (8th Cir. 2004) .................................................................................22

*Royal Primo Corp. v. Whitewater West Industries, Ltd.*
No. 15-cv-04391, 2016 U.S. Dist. LEXIS 57529 (N.D. Cal. Apr. 29, 2016) ......................... 14

*In re South Canaan Cellular Investments, LLC,*
No. 09-10473, 2010 WL 3306907 (E.D. Pa. Aug. 16, 2010) ........................................... 16, 17

*Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.),*
137 B.R. 134 (Bankr. S.D.N.Y. 2005) ............................................................................ 35, 37

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
678 F.3d 235 (3d Cir. 2012) .................................................................................................. 6

*Sprint Communications Co. v. APCC Services, Inc.,*
544 U.S. 269 (2008) ............................................................................................................... 8

*Sugartown Worldwide LLC v. Shanks,*
150 F. Supp. 3d 470 (E.D. Pa. 2015) ................................................................................. 28

*Tender Touch Rehab Services, LLC v. Brighten at Bryn Mawr,*
26 F. Supp. 3d 376 (E.D. Pa. 2014) ................................................................................... 29

*Thompson v. Glenmede Trust Co.,*
No. 92-5233, 1993 WL 197031 (E.D. Pa. June 8, 1993) ...................................................... 20

*In re Total Containment, Inc.,*
335 B.R. 589 (Bankr. E.D. Pa. 2005) ............................................................................ 16, 18

*Trans Union LLC v. Ramirez,*
594 U.S. 413 (2021) (June 25, 2021) ................................................................................ 5, 6

*Twitter, Inc. v. Taamneh,*
598 U.S. 471 (2023) ............................................................................................................. 20

*United States v. Whiting Pools Inc.,*
462 U.S. 198 (1983) ............................................................................................................... 7

*In Re Virgin Orbit, LLC,*
659 B.R. 36 (Bankr. D. Del. 2024) ................................................................................. 21, 22

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................................................... 5

*Washington v. Jadczak (In re Jadczak),*
Nos. 10-11804, 10-0230, 2011 Bankr. LEXIS 45 (Bankr. E.D. Pa. Jan. 4,
2011) .................................................................................................................................... 24

*Zubik v. Zubik,*
384 F.2d 267 (3d Cir.1967), *aff'd* 514 U.S. 938 (1995) .................................................... 27

**Statutes**

11 U.S.C. § 105 ................................................................................................................7

11 U.S.C. § 1541(a)(1) ......................................................................................................8

11 U.S.C. § 363 ........................................................................................................ *passim*

11 U.S.C. § 365 ..........................................................................................................3, 5, 7

11 U.S.C. § 503 ..............................................................................................................24

11 U.S.C. § 510(c)(1) ......................................................................................................32

11 U.S.C. § 522 ..........................................................................................................37, 38

11 U.S.C. § 541(a) ......................................................................................................7, 8

11 U.S.C. § 542 ............................................................................................35, 36, 37, 38

11 U.S.C. § 544 ..........................................................................................................9, 32

11 U.S.C. § 547 ..........................................................................................................9, 32

11 U.S.C. § 548 ..........................................................................................................9, 32

11 U.S.C. § 549 ......................................................................................................9, 32, 36

11 U.S.C. § 550 ..........................................................................................................9, 32

Bankruptcy Code Chapter 11 ................................................................................. *passim*

**Other Authorities**

15 Pa. Code § 8815(d)(3) ................................................................................................16

15 Pa. Code § 8849.2 ......................................................................................................16

Fed. R. Bankr. P. 7008 ..............................................................................................12, 14

Fed. R. Bankr. P. 7009 ....................................................................................................14

Fed. R. Bankr. P. 7012 ..............................................................................................5, 10

H.R. Rep. No. 95-595 (1977)............................................................................................7

Restatement (Second) of Torts § 876 (1979) ................................................................17

Fed. R. Civ. P. 8 ....................................................................................................12, 14, 15

Fed. R. Civ. P. 9 ................................................................................................................14

Fed. R. Civ. P. 12 .................................................................................................... *passim*

S. Rep. Mo. 95-989 (1978) ...............................................................................................7

**MEMORANDUM OF LAW IN SUPPORT OF MOVING DEFENDANTS' MOTION TO
DISMISS AMENDED ADVERSARY COMPLAINT**

Defendants, Casey Parzych ("**Casey**"); Angus Rittenburg; Ashleigh Baldwin; Michael
Boyer; Kelly Festa; and R.F. Culbertson (collectively, the "**Individual Defendants**"); Polebridge,
LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC ("**AgTech VI**"); XO Energy
Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; EtOH Worldwide, LLC ("**EtOH**"); and Canvas
340 LLC (Canvas 340 LLC, with Polebridge, LLC, Good Design, Inc., AgTech PA LLC, AgTech
VI, XO Energy Worldwide, LLLP, XO EW, LLC, Best Bev, LLC and EtOH the "**Corporate
Defendants**"); and Shawn Sheehan (collectively, with the Individual Defendants and the
Corporate Defendants, the "**Moving Defendants**"), file this memorandum of law in support of
their motion to dismiss ("**Motion to Dismiss**") the Amended Adversary Complaint, AP D.E. #44,[1]
("**Amended Complaint**" or "**Am. Compl.**") filed against them by Plaintiff, Bonnie B. Finkel
("**Trustee**"), the Chapter 7 Trustee for the debtor, Midnight Madness Distilling LLC f/k/a
Theobald and Oppenheimer, LLC d/b/a Faber Distilling ("**Debtor**"). In support of their Motion to
Dismiss, the Moving Defendants respectfully state as follows:

**PRELIMINARY STATEMENT**

The Amended Complaint is the product of extreme reverse engineering. Starting with the
goal of extorting money from 21 disparate defendants ("**Defendants**"), which include the Moving
Defendants, the Trustee then went searching for potential causes of action, then attempted to
identify "injuries" to meet the elements of the causes of action, and lastly sought to identify any
Defendant the Trustee could allege caused the injury. As a result, the Amended Complaint suffers
from multiple fatal pleading flaws that include impermissible group pleading, making it impossible

---

[1] All references to the Main Proceeding docket, Case No. 21-11750, are designated by "MP" whereas all references
to the Adversary Proceeding docket, Case No. 23-00047, are designated by "AP".

to determine which of the 21 defendants committed which alleged act in violation of a specific cause of action. Equally troubling, the Trustee disregards binding Court Orders and conduct by the Debtor that, as a matter of law, prevent the Trustee from pursuing almost all of the causes of action in the Amended Complaint.

The gravamen for each of the causes of action in the Amended Complaint is the theory that all 21 defendants conspired to collectively divert the Debtor's business opportunities for their own personal gain. Contrary to Trustee's story of greed and deception harming the Debtor, the record paints a much more simplistic picture. The Debtor operated a moderately successful distillery, but due to COVID-19, ill-timed expansions, litigation, and the breakdown of negotiations with its lender, the Debtor was forced to file for Chapter 11 protection. MP D.E. #1. As part of the Chapter 11 process, the Debtor sold substantially all its assets to an unrelated third-party in a Court-approved sale pursuant to Section 363 of the Bankruptcy Code. *See* Order Granting Motion to Sell Assets (the "**Sale Order**"). MP D.E. #178. Unfortunately, the sale proceeds were not sufficient to satisfy all the Debtor's outstanding debts, and the case was converted to Chapter 7. *See* Order Granting Motion to Convert Case to Chapter 7. MP D.E. #191.

At no point during the bankruptcy process were the Defendants found to have improperly interfered with the administration of the Debtor's estate or the sale process, which occurred under the watchful eye of the secured creditor, this Court, and the U.S. Trustee's Office. To suggest 21 Defendants coordinated to pilfer the Debtor's estate, unnoticed and in real time, strains credulity. In fact, Millstone Spirits Group, LLC ("**Millstone**") raised concerns similar to those alleged by the Trustee in its objection to a motion by ETOH Worldwide, LLC and AgTech VI seeking allowance of administrative expenses, MP D.E. #214, but eventually agreed to pay the full amounts due, MP D.E. #291. The Court even entered a consent order after opportunity for a hearing and being aware

of the issues raised by Millstone. *Id.*

More importantly, the Trustee's theory was squarely refuted by its predecessor and by the language of this Court's Orders—particularly the Sale Order transferring the Debtor's assets pursuant to Section 363 and 365. The Trustee's efforts to overcome this record by relying on creative fiction and group accusations devoid of the required specificity fail. Even if the Trustee could sufficiently plead claims satisfying the pleading requirements, the Trustee still lacks standing to assert the vast majority of her claims, because causes of action tied to the business operations of the Debtor belong solely to the purchaser in the Court-approved Section 363 Sale.

## **BACKGROUND**

The Debtor was a limited liability company ("**LLC**") that filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 21, 2021 (the "**Petition Date**"). *See* Am. Compl. ¶ 7. The Debtor was a member managed LLC. A copy of the *Amended and Restated Operating Agreement of Midnight Madness Distilling LLC* that was operative as of the Petition Date is attached to this Motion to Dismiss as **Exhibit A** ("**Operating Agreement**").

The Debtor operated a distillery and co-packaging plant in Bucks County, Pennsylvania. The Debtor predominately concentrated on manufacturing its own spirits but also manufactured and packaged products for other parties, including some of the Moving Defendants. *See e.g.* Am. Compl. ¶ 7. However, for several reasons, including the COVID-19 pandemic, the Debtor defaulted on its loan obligations on February 28, 2021. Am. Compl. ¶ 106. The Debtor spent months attempting to negotiate with its lenders, but the resulting bankruptcy ensued.

At the time the Debtor filed its petition, it had negotiated an offer from EtOH to purchase substantially all the Debtor's assets for a cash purchase price of $1,025,000.00, plus the assumption of the Debtor's trade debt, cure costs, and first lien mortgage, plus continued employment for

- 3 -

substantially all the Debtor's employees. MP D.E. #4, ¶ 12. The Debtor conducted a competitive sale process and auction. After several rounds of bidding, Millstone, a competitor of the Debtor, made the successful bid to purchase substantially all of the Debtor's assets for more than $1.4 million in cash, plus other consideration. The sale to Millstone was approved by order of this Court on September 17, 2021 via the Sale Order. MP D.E. #178. On October 13, 2021, the case was converted to Chapter 7. *See* Order Granting Motion to Convert Case to Chapter 7. MP D.E. #191.

On June 15, 2023, the Trustee commenced this adversary proceeding by filing her initial Complaint ("**Complaint**"). AP D.E. #1. The Complaint, which spanned 75 pages, alleged 14 claims against 21 separate defendants.[2] The Moving Defendants moved to dismiss the Complaint for a variety of deficiencies under Fed. R. Civ. P. ("**Rule**") 8 and 12(b)(6). *See* Motion to Dismiss Adversary Complaint ("**First Motion to Dismiss**"). AP D.E. #17. The Court entered an Order granting in part and denying in part the First Motion to Dismiss. *See* AP D.E. #40. That Order dismissed five claims without prejudice. The Trustee filed an Amended Complaint on August 22, 2024, including 12 of the 14 original claims from its Complaint. *See* Amended Complaint. AP D.E. #44. As discussed below, the Trustee does not have standing to bring most of these claims and the allegations are woefully deficient.

## **ARGUMENT**

## I.  **THE TRUSTEE LACKS STANDING TO PURSUE COUNTS ONE, TWO, THREE, FOUR (A), FOUR (B), FIVE, EIGHT, TEN, ELEVEN, AND TWELVE.**

The causes of action in the Amended Complaint can be broadly broken into two distinct buckets. The first consisting of Claims One through Five, Eight, and Ten through Twelve, all seek redress under common law causes of action for harms allegedly suffered by the Debtor's

---

[2] The summaries and quotations of the facts herin are taken directly from the Complaint and Amended Complaint. The Moving Defendants do not concede any of these allegations unless otherwise indicated.

"Business" ("**Common Law Claims**"). The remaining Claims, such as Claim Thirteen, seeking recovery of preference payments and Claim Fourteen, seeking recovery of fraudulent transfers, are statutory claims under specific sections of the Bankruptcy Code. Regarding the Common Law Claims, it is undisputed that on September 20, 2021, the Court entered an Order approving the sale of **all** of the Debtor's business-related assets pursuant to Sections 363 and 365. Both the Sale Order and the incorporated Asset Purchase Agreement ("**APA**") unequivocally state that any and all causes of action related to the business operations and assets of the Debtor were sold free and clear to Millstone. As a result, the Trustee lacks standing to bring any claim—including the Common Law Claims—related to the Debtor's business operations or assets.

### A.    Legal Standard for Standing on Motion to Dismiss Under Rule 12(b)(1).

A motion to dismiss for lack of standing is a jurisdictional question. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (jurisdictional issue decided under Rule 12(b)(1), which is incorporated into Fed. R. Bankr. P. 7012). A federal court may only adjudicate an actual case or controversy. U.S. art. III, § 2, cl. 1. It is presumed to "lack jurisdiction 'unless the contrary affirmatively appears from the record.'" *Belfi v. USAA F.S.B.*, No. 22-2083, 2022 U.S. Dist. LEXIS 161378, *6 (E.D.Pa. Sept. 7, 2022). To meet the burden of establishing standing, the plaintiff must have a personal stake in the outcome of the controversy to invoke jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) ("As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.").

The constitutional underpinnings of standing require that a plaintiff's injury be "concrete," especially where the harm allegedly suffered is "intangible." *TransUnion LLC v. Ramirez*, 594

U.S. 413, 425 (2021). Importantly, the Court further held that the burden is on the plaintiff to establish standing "for <u>each</u> claim that they press and for <u>each</u> form of relief that they seek (for example, injunctive relief and damages)." *Id.* (emphasis added). The Third Circuit has noted that, to establish standing, the plaintiff has the burden of establishing the "irreducible constitutional minimum" of Article III standing by demonstrating three elements: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that is not merely speculative that the injury will be redressed by a favorable judicial decision. *Maiden Creek Assocs., L.P. v. United States Dep't of Transportation*, 123 F. Supp. 3d 638 (E.D. Pa. 2015), *aff'd* 823 F.3d 184 (3d Cir. 2016); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012).

**B.      The Trustee Lacks Standing to Bring Claims related to the Debtor's Business Operations or Assets.**

Prior to the conversion to Chapter 7, the Debtor's estate was operated under Chapter 11. During this period the Debtor pursued a sale of all its assets, except for a few Excluded Assets. Sale Order ¶ 5. In 2021, the Court entered the Sale Procedures Order, MP D.E. #110, approving the procedures for the bidding and the auction, as well as approved a stalking horse bidder. Sale Procedures Order ¶¶ 3–11. The sale process included an open and fair auction involving multiple bidders on August 25, 2021. Following the auction, the Debtor entered into the APA with Millstone, which was filed with the Court on September 15, 2021. *Id.* Regarding the sale process, the Court found that:

> [t]he Sale Procedures were non-collusive, duly noticed, substantially and procedurally fair to all parties, and were the result of arm's length negotiations. The Sale Procedure Order has been complied with in all material respects.

Sale Order at F.

Pursuant to the APA, Millstone acquired all the Debtor's assets related to the Debtor's

"Business." As defined in the APA, the "Business" of the Debtor was the "business of distilling and producing spirits." APA at pg. 1. Pursuant to Section 1.01, Millstone acquired

> [all] right, title, and interest in, to, and under all of the tangible and intangible assets, properties, and rights of every kind and nature and wherever located (other than the Excluded Assets), which relate to, or are used or held for the use in connection with the Business (collectively, the "Purchased Assets")[.]

APA. The Excluded Assets are themselves defined by reference to Schedule 1.02 of the Disclosure Schedules and include only: (i) liquor licenses; (ii) contracts and leases of real property; (iii) the Debtor's interest in its subsidiaries. *Id.*

After the auction and execution of the APA, the Debtor and Millstone sought an Order authorizing and approving the sale of the Debtor's assets and other relief pursuant to Sections 105, 363 and 365 of Title 11 of the United States Bankruptcy Code. Sale Order ¶¶ 5, 7. This means that any and all assets of the Debtor—tangible and intangible—that "relate[d] to or [were] used or held for use in connection" with the "business of distilling and producing spirits" became the sole property of Millstone. The only exception are the Excluded Assets.

As debtor-in-possession, "all assets" included any causes of action that could have been asserted by the Debtor that in any way relate to or were used in connection with the "business of distilling and producing spirits," which includes those arising pre- or post-petition. As noted in *In re PA Co-Man, Inc.*:

> Under applicable law, when the Debtor commenced its bankruptcy case an estate was created that was comprised of all "legal and equitable interests" of the debtor, "wherever located and by whomever held." 11 U.S.C. § 541(a). Included in property of the Debtor's estate are causes of action that the Debtor may have had prior to the commencement of the case. *United States v. Whiting Pools Inc.*, 462 U.S. 198, 205 n.9 (1983) (citing H.R. Rep. No. 95-595, at 367 (1977); S. Rep. Mo. 95-989, at 82 (1978)).

644 B.R. 553, 598 (Bankr. W.D. Pa. 2022) (cleaned up); *see also Mojave Desert Holdings v. Crocs Inc.*, 995 F.3d 969, 976 (Fed. Cir. 2021) (finding that causes of action are property of a debtor's

estate under 11 U.S.C. Section 1541(a)(1) and the sale of all of a debtors' assets includes causes of action, which need not be individually enumerated); *Sprint Communications Co. v. APCC Services, Inc.*, 544 U.S. 269 (2008) (recognizing that causes of action are generally assignable and such assignments are compatible with Article III Standing).

All causes of action in the Amended Complaint other than Claims Twelve and Thirteen seek relief for alleged conduct that relates or was connected to the operation of the Debtor's Business—whether that be redress for the pre- or post-petition improper use/possession/operation of the Debtor's Business or its assets, diversion of intellectual property, interference with the sale of assets, or the aiding and abetting of the forging. These causes of action, to the extent they exist, are the exclusive property of Millstone and not the Trustee. Thus, the Trustee lacks Article III standing to assert the Common Law Claims.

The Trustee may seek to argue causes of action against the Defendants were not expressly transferred under the APA and Sale Order, but any such argument is unavailing for three reasons.

First, As noted above, the APA approved by the Sale Order expressly transferred all causes of action by defining the assets transferred as "**all of the tangible and intangible assets, properties, and rights of every kind and nature and wherever located[.]**" *See* APA §1.01 (emphasis added); Sale Order ¶ 3. Furthermore, the APA explicitly defined the only basket of assets the Debtor retained (the Excluded Assets) and that basket did not include causes of action related to the Debtor's Business. It is undisputed that the causes of action at issue do not relate to the three items comprising the Excluded Assets.

Second, Section 1.01(k) of the APA also confirms the Debtor was not retaining causes of action. Millstone purchased "any claims or causes of action the Seller or its bankruptcy estate *have, had, or may have* against . . . any holder of an Assumed Liability, including, without limitation,

any claims or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy

Code," and "all intellectual property owned by the Seller" as well as "all goodwill" (emphasis

added). The term "Assumed Liability" as defined in the APA includes the liabilities of Agtech IV

and EtOH, because Millstone assumed the obligation to pay their administrative claims.[3]

Third, the APA contains various representation and affirmative statements by the Debtor

confirming that no causes of action related to the Business existed. Specifically, Section 3.07 of

the APA warrants there were "no claims, actions, causes of action, demands, lawsuits, arbitrations,

inquiries, audits, notices of violation, proceedings, . . . ***pending or, to Seller's knowledge***,

***threatened against* or *by Seller*** relating to or affecting the Business, the Purchased Assets, or the

Assumed Liabilities" (emphasis added). The Trustee cannot now bring claims the Debtor

previously disclaimed and confirmed did not exist, including in submissions to this Court when

seeking approval of the Sale Order. Upon the conversion to a Chapter 7, a trustee cannot assert

any rights previously waived by the debtor-in-possession prior to the conversion. *See Hill v.*

*Akamai Tech., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1134–35 (10th Cir. 2007) (noting if debtor-

in-possession waived its right to bring an avoidance action against a creditor, the trustee's right to

do so was also waived post conversion).

Anything sold to Millstone pursuant to the APA is no longer an asset of the Debtor's estate

---

[3] Section 1.03(d) of the APA defined "Assumed Liability" to include the liability that

> Buyer shall assume and perform those monetary obligations of the Seller under the Seller's
> Equipment Leases with Agtech IV, LLC and EtOH Worldwide LLC (the "**Rejected Leases**") that
> arise on or after the Petition Date, to the extent that (i) such obligations are administrative claims
> (the "**Agtech/ETOH Admin Claims**") allowed pursuant to Section 503 of the Bankruptcy Code
> by a final, non-appealable order of the Bankruptcy Court; (ii) the Buyer shall be entitled, and have
> standing to object to any such Motion seeking allowance of the Agtech/ETOH Admin Claims; (iii)
> the Buyer shall have no obligations with respect to the Rejected Leases or the Agtech/ETOH
> Admin Claims other than as expressly provided herein.

The Consent Order Resolving ECF 211 allowed the Agtech/ETOH Admin Claims.

within the control of the Trustee. Accordingly, the Trustee cannot assert an injury-in-fact, as required to establish standing for any claims relating to the Debtor's Business operations or assets, because all such claims were sold as part of the Section 363 Sale. This principle was confirmed in *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 585 B.R. 850 (B.A.P. 6th Cir. 2018), where a creditor brought claims derivatively on the trustee's behalf but was deemed to lack standing because the trustee had previously sold the claims and cause of action. Because the trustee sold the claims, the trustee no longer owned the claims and the debtor lacked standing to bring the claims even though the theory under which the creditor was bringing claims on the trustee's behalf differed from the exact claims sold. *Id.* at 864 ("The Trustee assigned the claims asserted in the 2017 Complaint to Creditor upon entry of the Sale Order. Thus, the Trustee transferred away the right to pursue the claims asserted in the 2017 Complaint in 2011. When this occurred, Trustee lost legal standing to asset those claims.").

Since the Trustee lacks standing to assert any cause of action related to or that arises in connection with the operation of the Debtor's Business, this Court lacks Article III jurisdiction to adjudicate the Common Law Claims: Claims One through Five, Eight, and Ten through Twelve.

## II.  DISMISSAL IS APPROPRIATE AS TO CLAIMS ONE, TWO, FOUR(A), FOUR (B), FIVE, EIGHT, TEN, AND ELEVEN UNDER RULE 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS.

Rule 12(b)(6) is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Rule 12(b)(6) is incorporated into Fed. R. Bankr. P. 7012. Pursuant to Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face," and these facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). Plaintiffs may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are "merely consistent"

with unlawful conduct, but are also consistent with lawful conduct, are insufficient. *See id.*

Rule 12(b)(6) may also be used to obtain dismissal where an action is barred by the doctrines of collateral estoppel and/or issue preclusion. *See Adelphia Gateway, LLC v. Pa. Enviro. Hearing Bd.*, No. 21-CV-1241, 2021 WL 5494286, at *3 (M.D. Pa. Nov. 23, 2021) (granting a motion to dismiss and holding plaintiff was "collaterally estopped from relitigating the issue of . . . jurisdiction after unsuccessfully pressing its case before [Pennsylvania's] Commonwealth Court."). In other words, a defendant may utilize Rule 12(b)(6) to obtain dismissal of any cause of action on which relief cannot be granted as a matter of law.

As shown in the following sections, each of the following claims is fatally flawed and contain nothing more than "[t]hreadbare recitals of the elements" and "mere conclusory statements":

- <u>Claim One</u> fails as to Baldwin because there are no facts alleging that Baldwin was a manager, director, or officer who owed a fiduciary duty to Debtor.

- <u>Claim Two</u> fails as to all of the Moving Defendants because Trustee failed to identify on a breach-by-breach basis how each Moving Defendant individually had both actual knowledge of the breach of fiduciary duty and then provided substantial assistance in furtherance of the breach.

- <u>Claim Four (A)</u> fails as to the Corporate Defendants, who were not members of the Debtor, and the Moving Defendants, because the Trustee did not adequately plead fraud.

- <u>Claim Four (B)</u> fails as to the Corporate Defendants because a successor liability claim cannot be brought by the Trustee and the sale of Debtor was approved by the Court.

- <u>Claim Five</u> for unjust enrichment fails because there is a valid, written contract.

- <u>Claim Ten</u> fails as to AgTech VI, EtOH and Boyer because the Trustee fails to specify who would constitute an "innocent" member.

- <u>Claim Eleven</u> fails because the property which the Trustee is seeking to have turned over no longer belongs to the estate, demands documents that do not belong to the Debtor, and the alleged transfer occurred after the Debtor filed for bankruptcy.

- 11 -

For these reasons, as outlined more fully below these Common Law Claims should be dismissed for failure to state a claim.

> **A.    Claims Two, Four (A), Four (B), Five, Eight, and Eleven Should Be Dismissed as to the Corporate Entities Because Those Claims Are Based on the Ill-Defined Term "Pilfering Entities."**

The Amended Complaint suffers from systemic flaws and facial defects, which the Trustee attempts to mask by lumping together groups of the 21 differently situated Defendants into broadly and inconsistently defined "buckets." Despite the 74 page Complaint, the Trustee utterly fails to plead plausible and particularized allegations against each Defendant—highlighted particularly by the fact that allegations against the defined "buckets" of Defendants are vague and oftentimes unclear as to which Defendants the Trustee alleges is responsible for each act. This facial defect not only requires dismissal under Rule 12(b)(6), but also under Rule 8[4] because of the "shotgun style" pleading.

Nowhere is the inadequacy of the pleading more obvious and prejudicial to Moving Defendants than in the Amended Complaint's use of the term "Pilfering Entities," which the Trustee relies upon nearly 50 times. Given the heavy reliance on the term, one would expect the Trustee to clearly define which Defendants are included in the phrase "Pilfering Entities." Unfortunately, no such clear definition exists and the definitions (plural) for this term change throughout the Amended Complaint. As a result, it is impossible for each of the Corporate Defendants to tell whether any given allegation is being levied against it, as opposed to one of the other 11 corporate entities.

"Pilfering Entities" shows up for the first time in Paragraph 2 of the Amended Complaint, which states:

In a brazen scheme to loot the Debtor, the Defendants formed shadow entities—a

---

[4] Fed. R. Bankr. P.7008 incorporates Rule 8.

number of which were "offshore"—to which Debtor opportunities, property and
profits were diverted (the "Pilfering entities")[.]

Here, the Amended Complaint defines the term "Pilfering Entities" by relying on yet another
undefined term: "shadow entities." Not knowing which—if any—of the corporate entities are
"shadow entities," it is impossible to tell which of the Corporate Defendants are being accused of
taking the actions ascribed to the "Pilfering Entities."

After using the defined term "Pilfering Entity" a handful of times over 35 paragraphs, the
Amended Complaint, without explanation or even recognition of the definition in Paragraph 2,
adopts a *completely new* definition of "Pilfering Entities" in Paragraph 38. It defines the "Pilfering
Entities" as the "Polebridge Entities, the Wynk Entities, and the Best Bev Entities," collectively.
For the remaining 248 paragraphs of the Amended Complaint, wherein "Pilfering Entities" appears
44 times, it is impossible to tell which definition of "Pilfering Entities" is being used, and which
entity is alleged to have committed any of the acts alleged in the Amended Complaint.

For example, the Amended Complaint alleges that certain "entities arranged for the
shipment of industrial equipment" to a location "paid for by the Debtor but which, upon
information and belief, was used solely by the Pilfering Entities." Am. Compl. ¶ 97; *see also* Am.
Compl. ¶ 119. Given the unclear definition of "Pilfering Entities," it is impossible to determine
which entity (or entities) the Trustee alleges used the equipment and whether that entity is a
Pilfering Entity. The Trustee alleges various other acts allegedly perpetrated for the benefit of the
amorphous "Pilfering Entities," including: "hiring efforts" (Am. Compl. ¶ 121), development of a
proposal (Am. Compl. ¶ 123), acquisition of undefined "goods and services" (Am. Compl. ¶ 151),
accounting work (Am. Compl. ¶ 173), and more. None of these allegations clarifies which entity
or entities the Trustee is referring when using the term "Pilfering Entities." Rather, the inconsistent
used of a defined term that lumps together multiple unaffiliated parties makes the Amended

- 13 -

Complaint impermissibly opaque.

Since it is impossible to determine which entities the Trustee is actually alleging undertook which wrongful acts when referring to the "Pilfering Entities," all causes of action asserting actions by the "Pilfering Entities" should be dismissed. *See Royal Primo Corp. v. Whitewater W. Indus., Ltd.* No. 15-cv-04391, 2016 U.S. Dist. LEXIS 57529, *2–3 n.3 (N.D. Cal. Apr. 29, 2016) (noting the court's previous Order Granting First Motion to Dismiss required plaintiff to use a single defined term in its amended complaint to correct ambiguity where same term was defined twice in its initial complaint).

Furthermore, Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[5] This standard is more stringent when making allegations of fraud. Rule 9[6] requires a party to "state with particularity the circumstances constituting fraud or mistake." A complaint is an improper shotgun pleading if it is:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; or (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Bartow v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (finding a 54 page complaint with 13 claims against a combination of multiple distinct defendants, most of which claims incorporated all prior allegations without tailoring them to the claim, constituted an improper shotgun pleading) (internal citations omitted).

The Amended Complaint is a classic impermissible shotgun pleading. Of the 12 remaining claims in the Amended Complaint, each claim incorporates all prior allegations by reference "as

---

[5] Fed. R. Bankr. P.7008 incorporates Rule 8.
[6] Fed. R. Bankr. P. 7009 incorporates Rule 9.

if set forth a length." By time the Defendants get to the last claim—over 279 paragraphs have been incorporated by reference, thus making it unclear what allegations underlie each claim. Similarly, as noted above, the Amended Complaint's definitions are unclear making it hard to tell which of the Defendants allegedly undertook which actions. This ambiguity is compounded by the use of broad, inconstantly defined definitions. Instead of separating allegations or even claims by each defendant, the Amended Complaint lumps large groups of defendants together. For example, three (3) of the claims (Claims Two, Five, and Eleven) are against all Defendants. Additional claims seek relief against groups of ten (10) or more Defendants each (Claims Four (A), Four (B), and Eight).

The Amended Complaint simply does not comply with Rule 8. *See In re Am. Remanufacturers, Inc*., No. 05-20022 PJW, 2007 WL 2376723, at *5 (Bankr. D. Del. Aug. 16, 2007). As noted in *In re Am. Remanufacturers, Inc.*:

> the Court must be sensitive to a defendant's entitlement to understand the basis of the claims it faces. At some point, the Court must exercise its authority to insist that a plaintiff provide enough facts to enable a defendant to defend itself without assuming the entire burden of disproving plaintiff's case instead of the plaintiff proving its case.

*Id.* Thus, Claims Two, Four (A), Four (B), Five, Eight, and Eleven should be dismissed.

**B.    Claim One for Breach of Fiduciary Duty Against Defendant Baldwin Fails Because Baldwin Owed No Such Duty to the Debtor.**

Claim One of the Amended Complaint fails to state a claim against Baldwin because the Trustee fails to plead any facts alleging Baldwin was a manager, director, or officer of Debtor who owed a fiduciary duty. The Amended Complaint alleges only that the "Insider Defendants breached their fiduciary duties to the Debtor" in various ways. Am. Compl. ¶ 204. But Baldwin owed no fiduciary duties to Debtor because she was at most a "spokesperson and agent." Am. Compl. ¶ 13. Because neither spokespeople nor agents can have fiduciary duties, Claim One must

be dismissed.

It is well settled that a court must dismiss a breach of fiduciary duty claim at the pleading stage where, as here, the plaintiff failed to allege that a defendant owes a fiduciary duty to the debtor. *See, e.g., In re S. Canaan Cellular Invs.*, LLC, No. 09-10473, 2010 WL 3306907, at *8 (E.D. Pa. Aug. 16, 2010). Pennsylvania law "establishes a fiduciary duty owed by directors and officers to their corporation[.]" *In re Total Containment, Inc.*, 335 B.R. 589, 602 (Bankr. E.D. Pa. 2005). A court must dismiss a breach of fiduciary duty claim when the plaintiff has failed to allege that a defendant owes a fiduciary duty to the debtor. *See, e.g., In re S. Canaan Cellular Invs.*, LLC, No. 09-10473, 2010 WL 3306907, at *8 (affirming the bankruptcy court's dismissal of breach of fiduciary duty and aiding and abetting claims and holding that "[s]ince nowhere in the complaint do the debtor-plaintiffs ever specifically aver that [defendant] was a manager, director or controlling member . . . the complaint therefore fails to plead viable claims for relief against Defendant").

The Amended Complaint fails to plead any facts alleging Baldwin was a manager, director, or officer of the Debtor who owed a fiduciary duty. While the Amended Complaint alleges Baldwin was a "spokesperson" and "agent," it provides no factual basis to create an agency relationship between the Debtor and Baldwin—let alone a fiduciary relationship. *See* Am. Compl. ¶ 13; *Basile v. H&R Block., Inc.*, 761 A.2d 1115, 1121 (Pa. 2000) (noting that to create an agency relationship, the principal must manifest an intention that the agent act on the principal's behalf).

Because both Pennsylvania law and the Operating Agreement provide that only managers, directors, or officers owe fiduciary duties to the Debtor, and because the Trustee fails to allege any facts that show that Baldwin occupied one of those fiduciary positions, Claim One of the Complaint must be dismissed. *See, e.g.,* 15 Pa. Code §§ 8849.2; 8815(d)(3); *In re S. Canaan*

*Cellular Invs.*, LLC, No. 09-10473, 2010 WL 3306907, at *8; Operating Agreement §§ 5.1, 5.7, 5.8.

### C.    Claim Two For Aiding & Abetting Breach of Fiduciary Duty Fails to Plead with the Requisite Specificity.

Claim One of the Amended Complaint lays out 17 purported breaches of fiduciary duty against the "Insider Defendants"—without connecting any of those breaches to any specific Defendant. Claim Two then alleges that all the Defendants "aided and abetted these breaches of fiduciary duty." Am. Compl. ¶ 211. These allegations are flawed for at least three reasons: *First*, the Trustee once again does not link any specific allegation to any specific Defendant. In fact the Trustee does not identify which of the 17 alleged breaches of fiduciary duties from Claim One are implicated by the aiding and abetting claim in Claim Two. *Second*, the "Insider Defendants" cannot possibly be liable for both the initial breach of fiduciary duty and also aiding and abetting a breach of the same duty. *Third*, this claim is collaterally estopped by the Sale Order, because the Sale Order made findings that the sale process was fair and complete. For these reasons, Claim Two must be dismissed.

### i.    The Amended Complaint fails to Specify How Each Defendant Aided or Abetted Each Breach of Fiduciary Duty.

"The elements of a claim for aiding and abetting the breach of a fiduciary duty under Pennsylvania law are: (1) a breach of a fiduciary duty owed to another, (2) knowledge of the breach by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach." *Mitchell Partners, L.P. v. Irex Corp.*, No. 08-CV-04814, 2010 WL 3825719, at *9–10 (E.D. Pa. Sept. 29, 2010), *rev'd in part on other grounds*, 656 F.3d 201 (3d Cir. 2011); *see also Pierce v. Rossetta Corp.*, No. 88-5873, 1992 WL 165817, at *8 (E.D. Pa. June 12, 1992) (citing Restatement (Second) of Torts § 876 (1979) (outlining the elements)); *Env't Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 725 (E.D. Pa. 2010) (same); *In re Total*

- 17 -

*Containment, Inc.*, 335 B.R. 589, 610 (Bankr. E.D. Pa. 2005) (following *Pierce*).

The Amended Complaint does not establish any of these elements with specificity, but rather, makes "threadbare recitals of the elements [that] do not set forth sufficient factual matter to survive a motion to dismiss." *Mitchell Partners*, 2010 WL 3825719, at *10

In Claim One the Trustee lays out 17 purported breaches of fiduciary duty against the "Insider Defendants" without identifying what specific act or series of actions caused the alleged breach. *See* Am. Compl. ¶ 204 (a)–(q). For example, the Amended Complaint alleges with a wholesale lack of detail 17 separate alleged breaches, including:

- Making or allowing to be made, significant unauthorized or improper transfers;
- Causing the debtor to operate in an illegal fashion in violation of tax laws and other regulatory obligations;
- Engaging in other acts of fraud, gross negligence, or other material breaches of their fiduciary duties as set forth herein.

Am. Compl. ¶ 204. Completely absent is any specificity as to what action constituted or caused each breach. What was the transfer that resulted in a breach? What activity was illegal and a violation of which tax law or "other regulatory obligation"? Which act or failures to act constituted fraud gross negligence? Nowhere are the deficiencies more evident than in Paragraph 204(q), where the Trustee alleges the Insider Defendants "breached their fiduciary duties" by committing "other material breaches of their fiduciary duties[.]" The Trustee simply defines the word (or offending conduct as the case may be) by itself. This type of circular reasoning is not sufficient to meet the pleading standard in any jurisdiction.

Even if one could decipher from Claim One the specific act[s] constituting a breach of fiduciary duty, one cannot not identify which fiduciary committed that act. Rather, Claim One identifies five separate individuals as "Insider Defendants" and then rattles off a list of 17 separate purported fiduciary breaches with no indication as to who allegedly did what, when, and how.

Which Insider Defendant facilitated which transfer that resulted in a breach? Which Insider Defendant engaged in which acts that were illegal and a violation of tax law or "other regulatory obligation[s]"? Which Insider Defendant's actions or failures to act constituted fraud gross negligence?

Regarding Claim Two, even if one could identify in Claim One the act constituting a breach and who committed the act, the Trustee still has failed to adequately plead knowledge and substantial assistance on the part of any specific Defendant. Aiding and abetting a breach of fiduciary duty is an individualized tort that focusses on the mental state and actions of each defendant. *Monge v. Univ. of Pennsylvania*, 674 F. Supp. 3d 195, 213 (E.D. Pa. 2023). A plaintiff must plead allegations showing *each* defendant satisfies *each* element of the claim. *See Chester Upland Sch. Dist. v. Rossi*, 275 A.3d 1117, 1128 (Pa. Commw. Ct. 2022) (citing *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010 (Pa. 2018)) ("[E]very act or performance essential to [a cause of action] must be set forth in the complaint."). Knowledge of a breach by one defendant is not imputed onto the other. *Id.*

Compounding the lack of specificity in Claim One is the fact that Claim Two simply states that *one or more* of the 21 Defendants aided and abetted *one or more* of the alleged breaches. Not knowing which act committed by which Defendant constituted a breach of fiduciary duty in Claim One, it is impossible to determine in Claim Two which of the 21 Defendants are guilty of aiding and abetting. With five possible fiduciaries, 17 possible breaches (at least) and 21 possible aider and abettors, there are nearly 2,000 possible combinations. The Trustee has failed to identify on a breach-by-breach basis how each defendant individually had both actual knowledge of the breach of fiduciary duty. *See Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 90 (Pa. 2023) (noting actual knowledge exists only where the specific targeted defendant "knows that the other's conduct

constitutes a breach of duty.").

Regarding the substantial assistance or encouragement element, the Trustee is stet required to plead with specificity on a breach-by-breach and defendant-by-defendant basis. The Amended Complaint must specifically allege that an identifiable party's "substantial assistance or encouragement [resulted] in effecting the breach." *Thompson v. Glenmede Trust Co.*, No. 92-5233, 1993 WL 197031, at *9 (E.D. Pa. June 8, 1993) (dismissing aiding and abetting claim where plaintiff failed to allege either actual knowledge of or substantial assistance or encouragement in effecting the alleged breach of fiduciary duty). Substantial assistance by one defendant is not attributable to another defendant. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023) ("The point of aiding and abetting is to impose liability on those who consciously and culpably participated in the tort at issue.").

The Trustee cannot simply lump all defendants into one large and diverse group and then assert that some amorphous portion of that group aided and abetted the breach of an unspecified fiduciary duty by providing substantial assistance in some unspecified form. Yet, that is exactly what the Trustee has done. The allegations of Claim Two, independently and when combined with the structural defects in Claim One, fail to meet the pleading requirements under Pennsylvania law for aiding and abetting a breach of fiduciary duty sufficient to survive a motion to dismiss.

### ii.    The Insider Defendants Cannot Aid and Abet their Own Alleged Breach.

Claim Two is asserted "Against All Defendants," which would include the "Insider Defendants." The Insider Defendants, however, cannot be liable for both breaching their fiduciary duty and also aiding and abetting their breach of fiduciary duty. Accordingly, Claim Two must be dismissed as to the Insider Defendants.

- 20 -

    **iii.**      **The Claim for Aiding and Abetting Breach of Fiduciary Duty is Barred by Res Judicata and Collateral Estoppel as to Certain Defendants Pursuant to the Sale Order.**

One facet of the aiding and abetting claim is the assertion that Defendants "mismanaged the Debtor's Chapter 11 Case" and "conspired with the Sheehan Entities, Finland Leasing, and Gary Parzych to chill the bidding at the Debtor's Section 363 Sale," which resulted in a depressed sale price for the Debtor's assets. Any challenge to the operation of the Debtor's estate and/or the character of the Section 363 Sale process is precluded by this Court's contrary findings in the Sale Order and is collaterally estopped.

Res judicata precludes parties from relitigating claims that could have been litigated or raised in an earlier action. *See In Re Virgin Orbit, LLC*, 659 B.R. 36, 41 (Bankr. D. Del. 2024). The doctrine is applicable where there was (1) a final judgment on the merits in a prior suit; (2) the prior suit involved the same parties; and (3) a subsequent suit is brought on the same causes of action. *See id.* at 41 ("[a]ny arguments that the Debtors did not undertake a fair and proper marketing and sales process and did not sell assets for appropriate value are barred by res judicata."). Similarly, A claim is collaterally estopped if (1) the issue sought to be precluded is the same as the issue involved in the prior order; (2) the issue was actually litigated (3) the court made a determination regarding the issue in a valid and final order; and (4) the determination was essential to the prior order. *See Liquidation Trust v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 278 F. App'x 125, 129 (3d Cir. 2008).

Here, the Trustee makes arguments that go to the heart of the sale challenging the process and fairness of the sale. But the Sale Order found "[t]he Sale Procedures were non-collusive, duly noticed, substantively and procedurally fair to all parties, and were the result of arm's length negotiations" and that the Sale Procedures Order was materially complied with. In Paragraph I of the Sale Order, the Court further found that "[t]he Asset Purchase Agreement was negotiated,

proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and from

arm's length bargaining positions." In Paragraph J of the Sale Order the Court also found that

"[t]he sale price in respect of the Purchase Assets was not controlled by any agreement among

potential acquirers of the Purchased Assets and neither the Debtor nor the Buyer engaged in

collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale

Transaction to be avoided[.]"

The Sale Order and its explicit findings are a final non-appealable order subject to res

judicata and collateral estoppel. *Id.* at 42 ("The orders were not appealed and are

final…Accordingly, [the creditors] are bound by the results."). Additionally, the Trustee is in

privity with the Debtor. *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 366 B.R. 414, 453

(Bankr. E.D. Pa. 2007) (finding Chapter 7 trustee became the successor to the Chapter 11 debtor

in possession).

It is well established that claims attacking a bankruptcy sale are impermissible collateral

attacks because the Sale Order confers rights against the world, not merely rights as against parties

to the sale. *See Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731–32 (8th Cir. 2004) (finding

claims relating to the sale of collateral, including injury caused by fraud or misappropriation of

assets, were estopped when not raised with the bankruptcy court at the time of sale); *see also In

Re Virgin Orbit*,659 B.R. at 41–42 (noting that equity holders could not challenge whether the

marketing process for a Section 363 Sale was fair and proper at the debtor's confirmation hearing).

The Trustee's efforts to challenge the integrity of the sale process are too little too late. The

remedy for collusion or fraud relating to an underlying sale is to move to set aside the sale. *See

Polvay v. B.O. Acquisitions (In re Betty Owens Sch.)*, No. 98 Civ. 3576, 1997 U.S. Dist. LEXIS

5977, n.1 (Bankr. S.D.N.Y. April 18, 1997). Several parties objected to the sale and/or related

procedures. The timely Objections that were raised were overruled in Paragraph 2 of the Sale

Order. No creditor or party-in-interest ever moved to set aside or appeal the sale, including the

U.S. Trustee, who was already involved in the case at the time of the Sale and had filed the Motion

to Convert three weeks prior to the sale.

Because the Trustee's challenge to the administration of the Debtor's estate and the sale

process is untimely and rests on allegation explicitly refuted in the Sale Order, these aspects of

Claim Two must be dismissed.

> **D.    Claim Four (A) For Alter Ego and/or Piercing the Corporate Veil Fails
> Because The Corporate Defendants Were Not Members of the Debtor and
> the Trustee Did Not Adequately Plead Fraud as to the Moving Defendants.**

Claim Four (A) of the Amended Complaint alleges "alter ego and/or piercing the corporate

veil" against the ill-defined "Pilfering Entities," as well as Casey, Rittenburg, and Culbertson. Am.

Compl. ¶ 225. The Amended Complaint alleges the "corporate form should be disregarded as

between" the aforementioned and the Debtor. This claim fails to adequately state a claim for relief

because a trustee cannot pierce the veil of its own entity, the named Defendants are not the alter

ego of the debtor because they are not members of the Debtor, and the Trustee did not adequately

plead fraud.

Under Pennsylvania law, piercing the corporate veil is an equitable remedy appropriate

only to prevent fraud or illegality. The standard a party must meet for a court to pierce the corporate

veil is a "stringent one." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)

("Such a burden is notoriously difficult for plaintiffs to meet."). "Pennsylvania courts presume the

legitimacy of the corporate form and will not pierce the veil unless exceptional circumstances

warrant such an exceptional remedy." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 509–

10 (E.D. Pa. 2014) (emphasis added). Moreover, "there is a **strong presumption against piercing**

**the veil**. . . . [unless necessary to] 'prevent fraud, illegality, or injustice[.]'" *Washington v. Jadczak*

- 23 -

*(In re Jadczak)*, Nos. 10-11804, 10-0230, 2011 Bankr. LEXIS 45, at *19 (Bankr. E.D. Pa. Jan. 4, 2011) (emphasis added). To be liable under alter ego liability, there must be "a very high showing of domination and control." *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 580 (E.D. Pa. 1994) (emphasis added).

The Amended Complaint does not remotely plead sufficient facts to surmount this high bar.

### i.    The Trustee Lacks Standing to Assert a Piercing the Veil Claim.

The primary purpose of forming a corporation is to shield its owners from direct liability – i.e. the debts of the entity are not the obligation of its owners. Piercing the corporate veil permits the Court to disregard the corporate separateness in the rare circumstances when doing so is necessary due to an egregious misuse of the corporate form. *Lumax Indus., Inc. v. Aultman,* 669 A.2d 893, 895 (Pa. 1995). In those instances, parties who have a claim against the corporate debtor (i.e. creditors) can seek to recover their loss from the entities' owners.

Given the logic underpinning the claim, it is not surprising there are no cases in Pennsylvania permitting a trustee to pierce the veil of its own entity in post-petition bankruptcy proceedings—which is exactly what the Trustee of the Debtor seeks to do here. Creditors, not trustees, are the only parties who have standing to bring such a claim to recover pre-petition debts. *See Blasingame*, 585 B.R. at 864. Once a bankruptcy is filed, any new obligations (debts) are incurred by the post-petition estate, administered by the Bankruptcy Code, and approved by the Court. *See* 11 U.S.C. § 503(b) (allowing payment of necessary post-petition costs and expenses of preserving the estate after notice and a hearing). To the extent the estate incurs additional debts post-petition over which a trustee may have control, those debts were incurred for the benefit of the estate and are not the obligation of the stockholders of the pre-petition debtor. *See Blasingame*,

- 24 -

585 B.R. at 864

As explained in Section I, even if the Trustee had standing to pierce the corporate veil

regarding post-petition actions of the Debtor, any right to bring a claim was "property of the estate"

and was sold to Millstone pursuant to Section 363 of the Bankruptcy Code. MP D.E. #178.

Therefore, following entry of the Sale Order, Millstone—not the Trustee—would be the only party

with theoretical standing to assert a piercing the veil claim. *In re Emoral, Inc.*, 740 F.3d 875, 879

(3d Cir. 2014) (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,

296 F.3d 164, 169 (3d Cir. 2002)) ("After a company files for bankruptcy, 'creditors lack standing

to assert claims' that are 'property of the estate.'").

Here, the Trustee is neither a creditor of the Debtor nor is she seeking to hold the Debtor's

owners liable for pre-petition obligations that were not sold to Millstone. *See, e.g.*, *Atl. Atl.

Hydrocarbon, LLC v. SWN Prod. Co., LLC*, No. 4:17-CV-02090, 2019 WL 928996, at *1 (M.D.

Pa. Feb. 26, 2019); *Mortimer v. McCool*, No. 3583 EDA 2018, 2019 WL 6769733, at *6 (Pa.

Super. Ct. Dec. 12, 2019). For these reasons, the Trustee does not have standing to maintain a

claim for piercing the corporate veil.

### ii.     The Trustee Cannot Assert a Piercing the Veil Claim against Unaffiliated Entities

Even if the Trustee had standing to assert a piercing the veil claim, the Trustee could only

move to pierce through the Debtor to reach members (owners) of the Debtor. *Atl. Hydrocarbon*,

2019 WL 928996, at *1 (quoting *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 695

(1998)); *see Mortimer*, 2019 WL 6769733, at *6 ("In Pennsylvania, unlike in some other

jurisdictions, the corporate veil is only allowed to be pierced to access the assets of the . . . limited

liability company's members[.]"). That is not at all what the Trustee appears to argue here. Rather,

the Trustee is attempting to pierce the veil of the Debtor to reach the owners of unaffiliated entities.

- 25 -

There is simply no precedent to support such a claim. The Trustee has not pled that any of the Corporate Defendants targeted by Claim Four (A) are or ever were at any time members of the Debtor. This is fatal to the Trustee's claim.

Even if the Trustee could persuade this Court to adopt the novel concept that one may pierce the veil of the debtor to hold unaffiliated entities and their owners liable, the Trustee fails to identify which entities or individuals should be liable and for which obligations. Traditional piercing the veil is a vertical endeavor that moves "up" the ownership chain. *See Mortimer v. McCool*, 255 A.3d 261, 286 (Pa. 2021) (discussing how, under Pennsylvania law, "[p]iercing law exists because it long has been recognized that an individual or corporation may abuse the corporate form . . . vertically"). For example, the creditors of Company A can hold the owners liable for entity debts. If the owner of Company A is another entity (i.e. Company B) the creditor needs an independent basis to pierce the veil of Company B to hold its owners liable. As shown extensively above, the Trustee only alleges that the ambiguous "Pilfering Entities" should be liable. The Trustee fails to allege which of the Corporate Defendants holds an ownership interest in which other Corporate Defendant—if any—or why piercing the veil at each ownership level is warranted. Without more, it is impossible to know which entity or entities the Trustee is attempting to hold liable by piercing the veil of which other entity.

### iii.    The Trustee Fails to Plead the Element of Fraud Necessary to Pierce the Corporate Veil.

Alter ego/veil piercing "is applicable when the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable—the party that seeks to pierce the corporate veil must show that the lack of [corporate] formalities led to some misuse of the corporate form." *Accurso*, 23 F. Supp. 3d at 509–10 (internals omitted) (quoting *Lumax,* 669 A.2d at 895). Under Pennsylvania law, a court will only pierce the corporate veil of a fraudulent

company or one that was formed solely to perpetrate a fraud. *See In re LMcD, LLC*, 405 B.R. 555,

563 (Bankr. M.D. Pa. 2009) ("Making the leap to the alter ego/piercing conclusion requires much

more than is present on this record. . . . While the [the company] may not have run their businesses

strictly separate, these facts do not seem to overcome the **strong presumption against piercing**."

(emphasis added)); *see also Kaplan v. First Options of Chi., Inc.,* 19 F.3d 1503, 1521 (3d Cir.

1994) ("That remedy is available only if it is also shown that a corporation's affairs and personnel

were manipulated to such an extent that it became nothing more than a sham used to disguise the

alter ego's use of its assets for his own benefit in fraud of its creditors.") (citing *Zubik v. Zubik,*

384 F.2d 267 (3d Cir.1967), *aff'd* 514 U.S. 938 (1995)).

    Aside from threadbare assertions that the Corporate Defendants "disregard[ed] corporate

formalities," the Amended Complaint does not plead that the Corporate Defendants are illegitimate

or formed merely to effectuate a fraudulent scheme, let alone describe the fraudulent scheme with

particularity. Thus, even if the Corporate Defendants did not "run their businesses strictly

separate," the Amended Complaint does not plead enough facts "to overcome the strong

presumption against piercing." *See In re LMcD, LLC*, 405 B.R. at 563.

    Claim Four (A) for declaratory relief for alter ego and/or piercing the corporate veil fails

as a matter of law because none of the Corporate Defendants were members of the Debtor and the

Trustee did not plead fraud as to the moving defendants.

    **E.    Claim Four (B) For Successor Liability Fails as a Matter of Law Because the
           Corporate Entities Are Not the Plaintiff's Successor.**

    Claim Four (B) of the Amended Complaint for successor liability alleges the "Pilfering

Entities operate as the mere continuation of the Debtor," and that they "have common ownership"

that resulted in a host of alleged wrongs including the "siloing assets, profits, personnel, resources,

and opportunities[.]" Am. Compl. ¶ 237–38. As an initial matter, this cannot be—Millstone

purchased all the business assets of the Debtor. But even if the Corporate Entities were somehow

"siloing assets, profits, personnel, resources, and opportunities" that were sold to Millstone, any

claim to assert for those activities would be Millstone's claim and not that of the Trustee.

Separately, as detailed above, none of the Corporate Entities are or were a member of the Debtor,

which is a necessary element of the claim under Pennsylvania law.

Successor liability arises under one of two main theories: (1) mere continuation or (2) "de

facto" merger. *See, e.g., Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 465 (3d Cir. 2006);

*Sugartown Worldwide LLC v. Shanks*, 150 F. Supp. 3d 470 (E.D. Pa. 2015). "The mere

continuation analysis 'focuses on whether the new corporation is merely restructured from the old,

while de facto merger analysis inquires whether a transaction—though structured as an asset

purchase—factually amounts to a consolidation or merger.'" *Sugartown*, 150 F. Supp. 3d at 476.

Mere continuation and de facto merger "are identical." *Berg Chilling Sys.*, 435 F.3d at 465. Thus,

the elements for either theory are the same:

     i.  **continuation of the enterprise** of the seller corporation so there is continuity in management, personnel, physical location, assets and general business operations;

    ii.  **continuity of shareholders** resulting from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation;

    iii.  **the seller corporation ceases its ordinary business operations**, liquidates, and dissolves as soon as legally and practically possible; and,

    iv.  **the purchaser assumes the obligations of the seller** ordinarily necessary for the uninterrupted continuation of normal business operations of the seller.

*Sugartown*, 150 F. Supp. 3d at 476–77 (citing *Berg Chilling Sys.*, 435 F.3d at 468) (emphasis

added); *see also Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 989

F. Supp. 2d 411, 431 (E.D. Pa. 2013), *aff'd*, 785 F.3d 96 (3d Cir. 2015).

- 28 -

Regarding the first element of the test, to the extent the Debtor's operations continued post 363 Sale, Millstone—as the purchaser under the Sale Order—continued that enterprise. To the extent the Trustee is claiming there were pre-petition or pre-Section 363 Sale actions giving rise to a successor liability claim, such a claim would have been the "property of the estate." Meaning the claim is the sole right of Millstone, the entity which purchased all of the business assets of the Debtor and de facto continued the enterprise. *In re Emoral*, 740 F.3d at 879 (quoting *Bd. of Trustees of Teamsters Local 863*, 296 F.3d at 169) ("After a company files for bankruptcy, 'creditors lack standing to assert claims' that are 'property of the estate.'"); *contra In re PA Co-Man, Inc.*, 644 B.R. at 635 (noting that for *pre-petition* transactions, a trustee may have standing to bring a claim for successor liability). For these reasons, the Trustee also does not have standing to maintain a claim for successor liability.

Regarding element two, the Amended Complaint fails to allege a continuity of ownership. Under Pennsylvania law, a claim for successor liability cannot be asserted against a party that is not a member of the Debtor. It is undisputed that none of the Corporate Defendants are members of the Debtor. *See, e.g.*, *Atl. Atl. Hydrocarbon, LLC*, 2019 WL 928996, at *1; *Mortimer*, 2019 WL 6769733, at *6. "[E]ven if one corporation sells to another all of its business operations, assets, and good will, the two corporations remain as distinct entities that are strangers—unless there is a continuity of shareholder interest." *Lehman Bros.*, 989 F. Supp. 2d at 433–34. A single common officer or director is not sufficient for showing continuity of ownership. *See Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 394 (E.D. Pa. 2014).

The Trustee has not sufficiently established any common ownership or shareholder/member interest between the entities. As explained above, the only Defendants that were members of the Debtor were Casey, Rittenburg, and Culbertson. *See* Am. Compl. ¶ 200. The

only Corporate Entity with a common owner to the Debtor is Polebridge Entities, of which Rittenberg holds an ownership interest along with two other members—neither of which had a membership interest in the Debtor. *See* Am. Compl. ¶ 18.

The third and fourth element are immaterial to the analysis in this case. The Debtor is no longer in business, as it ceased its operations and transferred its Business to Millstone. Because the Debtor transferred all operations to Millstone, any obligations of the Debtor would normally belong to Millstone, but they do not because all assets of the Debtor were transferred free and clear. Thus, the estate, Trustee and creditors lost all right to enforce claims—including successor liability—related to the assets. The Amended Complaint fails to plead any contrary facts relevant to elements three and four.

Because the Amended Complaint only contains two substantive allegations under Claim Four (B), and neither of them sufficiently support any of the successor liability elements necessary to survive a motion to dismiss, Claim Four (B) fails as a matter of law.

**F.    Claim Five for Unjust Enrichment Fails as a Matter of Law Because it is Inapplicable When There is a Written Contract.**

The Trustee alleges that "each of the Defendants was enriched and received economic and other benefits from the Debtor without justification." Am. Compl. ¶ 240. But a claim for unjust enrichment is precluded under Pennsylvania law because of the written contract governing the parties' relationships.

Under Pennsylvania law, a claim for unjust enrichment is "inapplicable when the relationship between the parties is founded upon written agreements." *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 293 (E.D. Pa. 2020) (quoting *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (holding that plaintiffs may not plead an alternative claim for unjust enrichment when a valid contract exists)); *see also Meyer v. Delaware Valley Lift*

*Truck, Inc.,* 392 F. Supp. 3d 483, 495 (E.D. Pa. 2019) ("dismiss[ing] a claim for unjust enrichment when it was based on a defendant's purported failure to abide by the terms of a shareholder agreement") (quoting *Rahemtulla v. Hassam,* 539 F. Supp. 2d 755, 780 (M.D. Pa. 2008)); *see also Cosby v. American Media, Inc.,* 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016) (same).

Here, the Trustee's unjust enrichment claim fails as against Casey, Rittenburg, and Culbertson because the Debtor's Operating Agreement is a written, valid contract governing their relationship with the Debtor. Am. Compl. 249. Moreover, AgTech VI and EtOH were parties to equipment leases with the Debtor and various Corporate Defendants were parties to invoices and other written agreements with the Debtor. Therefore, the Trustee's unjust enrichment claim is barred against these Moving Defendants and must be dismissed. *See Meyer,* 392 F. Supp. 3d at 495.

With respect to all Moving Defendants, Trustee has also failed to plead the elements of a claim for unjust enrichment. Principally, the Trustee failed to allege there is no adequate remedy at law. *See* Compl. ¶¶ 236–241; *In re OpenPeak, Inc.*, No. 16-28464, 2020 WL 7360482, at *27 (Bankr. D.N.J. Dec. 14, 2020) ("[T]the Trustee failed to allege that there is no remedy available at law. The failure to plead a necessary element is grounds for dismissal."); *Meehan v. Cheltenham Twp.*, 189 A.2d 593, 595 (Pa. 1963). Rather, the Trustee makes only conclusory allegations, which are insufficient as a matter of law. *See* Compl. ¶ 237(a)–(e). The Trustee has not alleged that "benefits" were conferred on each Moving Defendant by the Debtor, any "appreciation of such benefit" by that Moving Defendant, and that specific "circumstances" exist whereby "it would be inequitable for [that Moving Defendant] to retain the benefit without payment of value." *See Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392, 419 (E.D. Pa. 2006).

The allegations of Claim Five, fail to meet the pleading requirements under Pennsylvania

law for unjust enrichment sufficient to survive a motion to dismiss pursuant.

> **G.    Claim Ten For Equitable Subordination Fails as a Matter of Law Because the Trustee Has Not Adequately Alleged the Elements of the Claim Against AgTech VI, EtOH or Boyer.**

As noted above in Section I, the Trustee does not have standing to bring claims against AgTech VI LLC, and EtOH since those claims were sold to Millstone pursuant to Section 1.01(k) of the APA. Specifically, under the APA, Millstone purchased "any claims or causes of action the Seller or its bankruptcy estate have, had, or may have against Buyer or any of its affiliates, or any holder of an Assumed Liability, including, without limitation, any claim or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy Code." Section 1.03 defines "Assumed Liabilities" to include "those monetary obligations of the Seller under the Seller's Equipment Lease with Agtech IV (sic), LLC and ETOH Worldwide LLC[.]" Thus, the proper party with standing to bring claims against AgTech VI and EtOH is Millstone.

Even if the Trustee had the right to assert a claim, she has failed to do so in a manner that survives a Rule 12 motion to dismiss. In general, to equitably subordinate a claim pursuant to Section 510(c) of the Bankruptcy Code courts require the movant establish that: (1) the claimant has engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to the creditors of the estate or conferred an unfair advantage on the claimant; and (3) subordination of the claim must not be inconsistent with the Bankruptcy Code. 11 U.S.C. § 510(c)(1); A*nsel Props., Inc. v. Nutri-Sys. of Fla. Assocs. (In re Nutri/Sys. of Fla. Assocs.)*, 178 B.R. 645, 657 (E.D. Pa. 1995). Even when properly pled, the courts warn that "equitable subordination is an unusual remedy which should only be applied in limited circumstances." *Id.*

"The purpose of equitable subordination is to undo or to offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Lichtenstein v. MBNA Am. Bank, N.A. (In re Computer Personalities Sys.,*

*Inc.)*, 284 B.R. 415, 427 (Bankr. E.D. Pa. 2002) (internal quotations marks and citations omitted).

Importantly, equitable subordination "is remedial, not penal," with the aim of "correct[ing] harms,

not … provid[ing] a windfall to uninjured creditors." *O'Halloran v. Prudential Savs. Bank (In re*

*Island View Crossing II, L.P.)*, 604 B.R. 181, 204 (Bankr. E.D. Pa. 2019).

The inequitable conduct that justifies equitable subordination depends upon the

relationship between the debtor and the claimant whose claim is subject to attack. "Where the

claimant is an insider or fiduciary of the debtor, the trustee must present evidence of unfair

conduct," after which time the burden shifts to the insider to prove the fairness of the transaction.

*See Computer Personalities*, 284 B.R. at 427–28. For non-insiders and non-fiduciaries, "the

plaintiff must establish the claimant engaged in gross or egregious misconduct, such as fraud,

spoliation or overreaching." *Id.* at 428 (internal citations and quotation marks omitted). Such

conduct need not fall into one of those three buckets; any "very substantial misconduct involving

moral turpitude or some breach of duty or some misrepresentation whereby other creditors were

deceived to their damage can justify subordination." *Island View*, 604 B.R. at 203 (internals

omitted).

Importantly, "[t]he exercise of contractual rights is not inequitable, even if the rights are

exercised harshly and cause harm to other creditors." *Id.* "Firms that have negotiated contracts are

entitled to enforce them to the letter, even to the great discomfort of their trading partners, without

being mulcted for their lack of 'good faith.'" *Id.* (quoting K*ham & Nate's Shoes No. 2, Inc. v. First*

*Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)). Relatedly, a creditor's alleged failure to

put other creditors' interests ahead of its own cannot constitute "inequitable conduct"—even if

such "interests were contrary to those of other creditors." *In re After Six, Inc.*, 177 B.R. 219, 232

(Bankr. E.D. Pa. 1995).

As noted above in Section II.C, the Trustee has not adequately plead egregious or gross inequitable conduct on the part of AgTech VI and EtOH. The Amended Complaint acknowledges the Debtor entered into formal lease agreements with EtOH and AgTech VI on June 1, 2021. Am. Compl. ¶ 128. To the extent the Trustee's equitable subordination claim is based on allegations that AgTech VI and EtOH had leasing contracts with the Debtors that placed them in a better position, their administrative claim was approved by the Court, after objection by Millstone. *See* Consent Order Resolving ECF 211. MP D.E. #291. Furthermore, enforcing a contract does not constitute inequitable conduct even if it results in the creditor receiving more than it otherwise would. *Island View*, 604 B.R. at 203 (noting creditor's enforcement of contractual rights, even if harshly exercised and the cause of harm to other creditors, does not support a claim for equitable subordination).

Finally, with respect to Boyer, the Trustee admits the Debtor retained and utilized Boyer as the Debtor's non-bankruptcy General Counsel. Am. Compl. ¶ 176. There is no allegation that the claim for which Boyer is seeking payment was made on behalf of, or to further the interest of the Corporate Defendants. The Trustee also raises a preference claim against Boyer; however, an insider's preference claim, without more, does not constitute inequitable conduct warranting the subordination of the claim. *See In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1282 (8th Cir. 1988) (declining to hold that receipt of a preference, without more, warrants subordination of a claim; also noting failure to disclose certain dealings between the debtor and third parties relating to the debtor's financial condition also did not affect creditors when there was no evidence the nondisclosure further injured creditors). Nor does the representation of multiple parties. Thus, Boyer's claim cannot be equitably subordinated.

The Trustee has alleged no egregious or grossly inequitable conduct on the part of AgTech

- 34 -

IV or EtOH, nor unfair conduct on the part of Boyer, that prejudiced the unsecured creditors or improperly advanced these three defendants' position relative to other creditors. Thus, Claim Ten should be dismissed in its entirety.

### H.    Claim Eleven Fails to State a Claim for Turnover.

Claim Eleven seeks the turnover of the Debtor's emails, records, and other records that relate to the Debtor's property and financial affairs, as well as all Debtor emails and other documents being stored by all Defendants. The claim is deficient for several reasons. *First*, the Trustee does not define what it is seeking to have turned over, other than emails, so the Moving Defendants are unable to determine if they possess that property. *Second*, the emails the Trustee is seeking belong to Millstone, not the Debtor's estate. *Third*, as to the turnover of emails, section 542(a) is the inappropriate remedy because the Trustee alleges the emails were taken post-petition. Therefore, Claim Eleven should be dismissed with prejudice.

### i.    Legal Standard

Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). In order to prevail on an action under Section 542(a), a movant must establish that (a) the defendant is in possession, custody, or control, (b) of property that may be used, sold, or leased under Section 363 of the Bankruptcy Code, (c) during the pendency of the case, and (d) such property is not of inconsequential value. *See Miller v. Jannetta (In re Irwin)*, 509 B.R. 808, 815–16 (Bankr. E.D. Pa. 2014). Additionally, the property at issue must be specifically identified. *See Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 137 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (granting summary judgment where "plaintiff has not identified property of the

estate that is subject to turnover").

Bankruptcy courts within Pennsylvania require that a defendant must have actual possession, custody, or control of such estate property "on the date of the filing of the petition." *See In re 31-33 Corp.*, 100 B.R. 744, 747 (Bankr. E.D. Pa. 1989) (contrasting Section 549 turnover actions for post-petition transfers with Section 542 turnover actions related to transfers occurring prior to the petition date); *Bernstein v. Gailey (In re Gailey, Inc.)*, 119 B.R. 504, 514 (Bankr. W.D. Pa. 1990) ("Actual or constructive possession by a defendant is required as a predicate to a turnover action."). Thus, courts have found that although a defendant had possession of estate property at one time, if such property was disbursed or distributed prior to the petition date, "no action for turnover of the funds could have been brought against [defendant]." *Gailey*, 119 B.R. at 514.

Moreover, "[t]urnover under 11 U.S.C. § 542 is a remedy available to debtors to obtain what *is acknowledged to be* property of the bankruptcy estate." *Asousa P'ship v. Pinnacle Foods, Inc. (In re Asousa P'ship)*, 264 B.R. 376, 384 (Bankr. E.D. Pa. 2001) (emphasis added). Section 542 "cannot be used to determine the rights of parties in legitimate contract disputes." *Id.* As such, courts in the Eastern District of Pennsylvania "have held that turnover is not proper where a bona fide dispute exists." *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510 B.R. 471, 484 (Bankr. E.D. Pa. 2014). A "bona fide dispute" exists when there is "a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assocs. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3d Cir. 1989). Accordingly, to the extent there is a dispute over the title or ownership of property, a claim for turnover under Section 542(a) is improper and should be dismissed. *See Right Way*, 510 B.R. at 485 ("By definition there is a dispute over the ownership of that asset [subject to a plaintiff's 542 action]. Without belaboring the merits of the question the Court holds simply that no turnover

- 36 -

claim is stated on these facts.").

     **ii.**     **The Trustee Has Failed to Establish Entitlement to a Turnover.**

     The Trustee has failed to state a claim upon which any relief can be granted against the Defendants. Other than emails, the Trustee has not specified what Property he is requesting be turned over. *See Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 137 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (granting summary judgment where "plaintiff has not identified property of the estate that is subject to turnover"). Claim Eleven is seeking turnover of "other documents which are being stored on or otherwise in the possession of the Defendants" without qualifying it is the ***Debtor's*** "other documents." The claim also seeks "other records which relate to the Debtor's property and financial affairs" but without clarifying that this does not include documents owned and/or prepared by the Defendants or third parties. A request for turnover of documents is only appropriate as to documents that belonged to the Debtor—not documents relating to the Debtor that a Moving Defendant may have prepared for their own purposes, or documents of which the ownership is in dispute. *See Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.),* 41 B.R. 334, 336 (Bankr.E.D.Pa. 1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), *aff'd,* 72 B.R. 619 (E.D.Pa. 1985), *aff'd,* 800 F.2d 1132 (3d Cir. 1986).

     Even if the Debtor was the owner of documents on the petition date, those documents were sold in a Court-approved Section 363 Sale to Millstone. As noted above in Section I, the Debtor sold "all assets" except for "Excluded Assets" to Millstone. The definition of Excluded Assets in the APA does not include emails. *See* APA, Schedule 1.02. Section 542(a) only allows the Trustee to seek turnover of property that it may "use, sell or lease under section 363 of [title 11], or that the debtor may exempt under section 522[.]" *See* 11 U.S.C. § 542. The trustee cannot "use, lease,

- 37 -

or sell" property the Debtor has already sold to Millstone pursuant to a Court-approved sale, and

the Trustee makes no allegations that the property is seeking qualifies for an exemption under 11

U.S.C. § 522. Therefore, the emails on the Debtors' email system would belong to Millstone, not

the estate as would any asset the Trustee is seeking to have turned over other than the Excluded

Assets.

Lastly, the alleged transfer of the Debtor's emails occurred on September 21, 2021—well

after the Debtor filed for bankruptcy. *See* Am. Comp. ¶ 154; *see also In re 31-33 Corp.*, 100 B.R.

744, 747 (Bankr. E.D. Pa. 1989) (turnovers pursuant to section 542 are reserved for transfers

occurring prior to the petition date). Thus, the claim fails as to the emails because the alleged

transfer took place after the petition date.

Accordingly, Claim Eleven fails to state a claim upon which any relief may be granted

against the Moving Defendants and, therefore, should be dismissed.

## <u>CONCLUSION</u>

The Trustee cannot bring Claims One–Five, Eight, and Ten–Twelve because those claims

and/or the property the Trustee is attempting to claw back are now owned by Millstone, the

purchaser in the Court-approved sale of substantially all of the Debtor's assets. Thus, Claims One–

Five, Eight, and Ten–Twelve should be dismissed for lack of standing. Furthermore, as discussed

above, even if the Trustee did have standing to bring Claims One, Two, Four (A), Four (B), Five,

Eight, Ten, and Eleven, the Trustee failed to adequately plead those claims and they should be

dismissed pursuant to Rule 12(b)(6).

WHEREFORE, the Moving Defendants respectfully request that this Court dismiss Claims

One through Five, Eight, and Ten through Twelve with prejudice, and for any such further relief

the Court finds appropriate.

Dated: September 30, 2024

Respectfully,

/s/ *Steven L. Caponi*

Steven L. Caponi
**K&L GATES LLP**
600 N. King Street, Suite 901
Wilmington, DE  19801
Phone:  (302) 416-7000
Fax:  (302) 416-7020
Steven.Caponi@klgates.com

Carly S. Everhardt (*pro hac* pending)
**K&L GATES LLP**
Southeast Financial Center, Suite 3900
200 South Biscayne Boulevard
Miami, FL  33131
Phone:  (305) 539-3300
Fax:  (305) 358-7095
Carly.Everhardt@klgates.com

Falco A. Muscante II
**K&L GATES LLP**
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA  15222
Phone:  (412) 355-6500
Fax:  (412) 471-8868
Falco.MusacnteII@klgates.com

***Attorneys for Casey Parzych; Shawn Sheehan; Angus Rittenburg; Ashleigh Baldwin; R.F. Culbertson; Michael Boyer; Kelly Festa, Ryan Uszesnki; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC; XO Energy Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; Can Man LLC; EtOH Worldwide, LLC; and Canvas 340 LLC***