# EXHIBIT A

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 9-15-21 Transcript pdf Page 2 of 63

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA - PHILADELPHIA

| | | |
|---|---|---|
| IN THE MATTER OF: | . | Case #21-11750-MC |
| | . | |
| MIDNIGHT MADNESS DISTILLING,. | | Philadelphia, PA |
| INC., | . | |
| | . | September 15, 2021 |
| Debtor. | . | 1:52:45 p.m. |

_____


TRANSCRIPT OF HEARING RE:
MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS UNDER SECTION
363(F) AND SOME OTHER RELIEF THAT IS REQUESTED, FILED BY
MIDNIGHT MADNESS DISTILLING, LLC
BEFORE THE HONORABLE MAGELINE D. COLEMAN, J.U.S.B.C.


APPEARANCES:

| | |
|---|---|
| For the Debtor: | WILLIAM BURNETT, ESQ. |
| | HARRY GIACOMETTI, ESQ. |
| | Flaster Greenberg |
| | 1835 Market Street, Suite 1050 |
| | Philadelphia, PA  19103 |
| | |
| For MILLSTONE SPIRITS | JOEL PERRELL,ESQ. |
| GROUP, LLC: | PATRICIA JEFFERSON, ESQ. |
| | Miles and Stockbridge Law |
| | 100 Light Street |
| | Baltimore, MD  21202 |
| | |
| PACCAR FINANCIAL | Howard Gershman, Esq. |
| TTB DEPARTMENT OF TREASURY | Anthony St. Joseph, Esq. |
| BANKSHARES REALTY | Jennifer Maleski, Esq. |
| AGTECH | Matthew Hamermesh, Esq. |
| ISUZU FINANCE OF AMERICA | Edward Sheintoch, Esq. |
| CITY OF PHILADELPHIA | Megan Harper, Esq. |
| U.S. TRUSTEE | Kevin Callahan, Esq. |
| ETOH WORLDWIDE LLC | Carrie Drangula, Esq. |
| MIDNIGHT MADNESS DIST. | Casey Parzych, President |
| WILLIAM F. COMLY & SON | Jim Comly |

ELECTRONIC SOUND RECORDING OPERATOR:  _____

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 915-1 Transcript Page 3 of 63

2

```
1    (At 1:52 p.m.)

2         THE COURT:  So, this is Midnight Madness Distilling.

3    Before the Court today is the motion to sell property free

4    and clear liens under 363(F), and some other related relief

5    that is requested.  I think that is the only matter that is

6    up for today.  Correct?

7         MR. WILLIAM BURNETT:  Yes, Your Honor.

8         THE COURT:  Appearances please.

9         MR. BURNETT:  Your Honor, William Burnett, and Harry

10   Giacometti, Flaster Greenberg, on behalf of the Debtor,

11   Midnight Madness.

12        MR. HOWARD GERSHMAN:  Howard Gershman, on behalf of

13   Paccar Financial Corporation.

14        MR. ANTHONY ST. JOSEPH:  Anthony St. Joseph, on

15   behalf of the TTB, Department of Treasury.

16        THE COURT:  I'm sorry, what did you say, Mr. St.

17   Joseph:

18        MR. ST. JOSEPH:  I'm sorry.  On behalf of the TTB,

19   which is part of the Department of the Treasury, for the

20   United States.

21        THE COURT:  And that's TTPB?  Is that what you said

22   Mr. St. Joseph?

23        MR. ST. JOSEPH:  I'm sorry, Your Honor, I quickly—

24        THE COURT:  -- I know.  I saw that you went on mute.

25   That's fine.
```

Case 21-11750 mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 11521 Transcript of 62 Page 4 of 63

3

1    MR. ST. JOSEPH:  I had gone to mute.  Let me make

2    sure I actually have my client, that I am saying the name

3    correctly.  Yes, T-T-B.  So the – and this is the first time

4    I have represented them.  So, the Alcohol Tobacco, Tax and

5    Trade Bureau, which is a – falls underneath the Department of

6    Treasury, Your Honor.

7    THE COURT:  Okay.  TTB?

8    MR. ST. JOSEPH:  Yes, that is our acronym, TTB.

9    Which there are three t's in the name, but they only use two

10   t's in the acronym, TTB.

11   THE COURT:  Okay.  Hold on one second.  Okay, I'm

12   back.  So, Tobacco – and what is the other T?

13   MR. ST. JOSEPH:  It's Tobacco, Tax, and Trade Bureau.

14   Actually, Alcohol, Tobacco, Tax and Trade Bureau.

15   THE COURT:  All right.

16   MR. ST. JOSEPH:  And we shorten it to TTB.

17   THE COURT:  Okay.  Who else?

18   MS. JENNIFER MALESKI:  Good afternoon, Your Honor,

19   Jennifer Maleski, Dilworth Paxon, on behalf of Bankshares

20   Realty, LLC., which is the successor in interest to PNC Bank,

21   and PNC Equipment Finance, the current holders of the loans

22   given by those entities.  But it is a PNC subsidiary.  So

23   feel free to refer to us at PNC.

24   THE COURT:  Okay, thank you.

25   MR. JOEL PERRELL:  Good afternoon, Your Honor.  Joel

Case 21-10079-mmm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 09-15-21 Transcript of 62 Page 5 of 63

4

1  Perrell, from Miles and Stockbridge, on behalf of Millstone

2  Spirits Group, LLC, the proposed Buyer, under the – pursuant

3  to the sale.  With me today is Patricia Jefferson, also from

4  my firm, who has been admitted pro hac vice, in this case,

5  Your Honor, at docket number 158.

6  MR. MATTHEW HAMERMESH:  Your Honor, Matthew Hamermesh,

7  of Hangley, Aronchick, Segal, Pudlin and Schiller,

8  representing ETOH Worldwide and Agtech.

9  THE COURT:  Who is your second client, Mr. Hamermesh?

10  MR. HAMERMESH:  Agtech, A-G-T-E-C-H.

11  THE COURT:  Okay.  Anyone else?

12  MR. EDWARD SHEINTOCH:  Yes, Your Honor.  Edward

13  Sheintoch, from Sheintoch and Sheintoch Law.  I represent the

14  Isuzu Finance of America on one lease, and Tokyo Century

15  acquired another lease, equipment lease.

16  THE COURT:  So, who do you represent, again?

17  MR. SHEINTOCH:  The original leases, Your Honor, were

18  Isuzu Finance of America.  And on one equipment lease it was

19  acquired by Tokyo Century, USA, Inc.

20  THE COURT:  Counsel, could you hold one second.

21  Counsel, and I will apologize now, there are certain phone

22  calls that – that represent an emergency, that I will have to

23  take, if I receive one of those calls.  Okay.  I apologize,

24  Mr. Sheintoch, who do you represent again?

25  MR. SHEINTOCH:  Thanks, Your Honor, and totally

Case 21-11750 7-mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 9-15-21 Transcript Page 6 of 63

5

1  understood.  One lease it is Isuzu Finance of America, Your

2  Honor.  And the original lease on the other one was Isuzu,

3  but it was assigned to a company called Tokyo Century.

4          THE COURT:  Okay.  Okay.  Anyone else?

5          MS. MEGAN HARPER:  Good afternoon, Your Honor.  Megan

6  Harper for the city of Philadelphia.

7          THE COURT:  Anyone else?

8          MR. KEVIN CALLAHAN:  Your Honor, this is Kevin

9  Callahan, for the United States Trustee.

10         THE COURT:  Anyone else?

11         MS. CARRIE DRANGULA:  Good afternoon, Your Honor.

12 This Carrie Drangula, on behalf of ETOH Worldwide, LLC.

13         THE COURT:  So, you are the representative, or are

14 you – of the company Mr. Hamermesh just is your client?

15         MR. DRANGULA:  I am a representative of the company.

16         THE COURT:  Yes.

17         MR. HAMERMESH:  Yes, Your Honor.

18         THE COURT:  Do we have any other representative of

19 any other parties?

20         MR. BURNETT:  Your Honor, – Your Honor, this is

21 William Burnett again.  I just wanted to say that I have my

22 client who will be testifying, Gary Parzych.  And I have Jim

23 Comly as well, who will also be testifying, of Comly

24 Auctioneers.

25         MS. PATRICIA JEFFERSON:  Your Honor, Patricia

Case 21-11750 nmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 915-21 Transcript of 62 Page 7 of 63

6

1    Jefferson—

2            THE COURT:  Hold on.  Hold on one second.

3            MS. JEFFERSON:  Certainly.

4            THE COURT:  I'm sorry, who was – I interrupted, I

5    apologize.  Who is this?

6            MS. JEFFERSON:  Your Honor, Patricia Jefferson, on

7    behalf of Millstone Spirit Group.  Mr. Perrell already

8    introduced me.  I was admitted pro hac vice and I just wanted

9    to note, for the Court, that Robert Cassell, who is the

10   President of Millstone Spirit Group is appearing at the

11   hearing, although we don't anticipate any testimony from him.

12           THE COURT:  So, you are – you represent the proposed

13   Buyer, together with Mr.—

14           MS. JEFFERSON:  -- Perrell, that is correct.

15           THE COURT:  -- Perrell.  Am I pronouncing that

16   correctly, Perrell?

17           MR. PERRELL:  Yes, Your Honor, Perrell, correct.

18           THE COURT:  And Robert Cassell is the representative

19   of the proposed Buyer?

20           MS. JEFFERSON:  That is correct.

21           THE COURT:  Okay.  So, Mr. Cassell is not on video.

22   Mr. Parzych is not on video.

23           MR. BURNETT:  Your Honor, I think I made a mistake,

24   because I – I saw the box pickup.  Casey Parzych is on video,

25   and he is the one that is testifying.  I guess Gary is also

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Doc 9-15-21 Transcript of 62 Page 8 of 63

7

1    on the line, but he is not with MMD.

2            THE COURT:  And who is Gary?  Parzych right?

3            MR. BURNETT:  Yes.

4            THE COURT:  Who is he and why is he participating?

5            MR. BURNETT:  I don't know why he is participating.

6    I believe he is Casey's father.

7            THE COURT:  Mr. Parzych?  Mr. Parzych, Casey Parzych,

8    is - so, Mr. Gary Parzych is participating because?

9            MR. CASEY PARZYCH:  I'm not actually sure.  He is a

10   leaseholder related to the Debtor.  I wasn't expecting him.

11           THE COURT:  I mean he's - I mean you can - I mean if

12   we were in court he could just come in.  I'm just wanting to

13   know what his role was.  Is he just observing, Mister - Mr.

14   Parzych, Gary Parzych, are you just observing?  What - why

15   are you here today?  Hello?

16           JOHN:  Judge, this is John.  He may be on a desktop

17   computer and does not have  working microphone.  He actually

18   sent a private chat message earlier that he couldn't hear us.

19   So, I am wondering if it is because of something like that.

20           THE COURT:  Okay.  All right.  I mean you can come in

21   the court and observe.  I just like to know who is here and

22   why, that's all.  Okay.  All right.  So, is there anybody

23   else?  Let's see, Mr. Cassell is for, representing the

24   proposed Buyer.  Did everybody enter their appearance or been

25   identified?  I think so.  Okay.  All right.  Mr. Burnett are

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 915-1 Transcript of 62 Page 9 of 63

8

1    you or Mr. Giacometti handling the sale motion?

2         MR. BURNETT:  Your Honor, I will be principally,

3    maybe exclusively, but principally for certain.

4         THE COURT:  Okay.

5         MR. BURNETT:  May I proceed?

6         THE COURT:  Well, first tell me where are we, because

7    I know there were some limited objections filed.  And I am

8    not quite sure [inaudible] with them.  I didn't see anything

9    [inaudible].  So, tell me where we are.

10        MR. BURNETT:  Your Honor, I am – we are generally –

11   have what I believe is an uncontested sale hearing, virtually

12   uncontested.  I think all of the objections have been

13   resolved.  If I might, if I could give about a five minute

14   sort of overview of where we are in the process.

15        THE COURT:  Okay.

16        MR. BURNETT:  My thought process is to give a slight

17   overview, and then to yield to Ms. Jefferson, who represents

18   the Buyer, to talk about all the work that she has done

19   resolving the objections.  And then to go to the proffers.

20   If – if appropriate.  I mean obvious—

21        THE COURT:  -- Okay.  That's fine.

22        MR. BURNETT:  Okay.  So, Your Honor, like I said,

23   William Burnett, Flaster Greenberg, on behalf of MMD, the

24   Debtor, Chapter 11 Debtor here.  So, Your Honor, as I said,

25   we had largely an uncontested sale hearing today.  There have

Case 21-11750-mm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. A - Sale Tr. Transcript of Page 10 of 63

9

1    been several objections that have been filed, over the last

2    several weeks.  Most notably PNC, the U.S. Trustee, TTB,

3    Isuzu and Paccar.  And those have been fully resolved, or

4    largely resolved, as I understand it, and we can go through

5    that as this goes on.

6         What this sale hearing really is, Your Honor, is a

7    363 sale process that worked really as bankruptcy has

8    intended it to work.  We had a stalking horse bid that was

9    marked very widely by Comly and the good work that Jim Comly

10   has done.  And it yielded many expressions of interest, which

11   resulted in an auction that – that had three bidders,

12   including the stalking horse.  And the price, for the

13   purchase price of the assets went from 1.025 million to 1.4

14   million dollars, plus a substantial other consideration that

15   the winning bidder, Millstone, is offering.

16        All parties worked together showing flexibility, hard

17   work and willingness to get this done.  The objectors and

18   most notably the successful bidder, Millstone, and their

19   counsel, Patty Jefferson.

20        So, what we have done, Your Honor, is, just to back

21   up, we filed the sale motion on the first day.  Some of the

22   deadlines got pushed back a bit.  We needed to do that to

23   accommodate the bidders, to accommodate the process.  We did

24   that on notice to the creditors, on notice to potential

25   interested parties, and so, we had an auction on the 25th of

Case 21-11750-mmm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 1521 Transcript of 62 Page 11 of 63

10

1    August, which yielded this result, which I will go through in

2    a minute.  The stalking horse bid, which was originally filed

3    with an APA needed to be changed to, in order to harmonize

4    the bids between the stalking horse and the  ultimate

5    successor, Millstone.  A lot of that was done on the record,

6    at the auction.  And then had to be memorialized and tweaked

7    a bit to adjust for all of the subsequent objections, which

8    were filed and or on record.

9         And I am going to give a very brief highlight, very

10   high level overview of where we are with the objections.  The

11   documents, of course, speak for themselves.  And some of the

12   details are a lot more specific.

13        But basically what we have the sale, as I said, is

14   for 1.4 million.  And the – what it does is the sale gives

15   $50,000.00 available to the estate, which Millstone has

16   agreed to carve out, to make available for creditors.  And

17   PNC is backstopping this to ensure that it occurs.  And we

18   can go through the details, but I am just giving you a high –

19   high level view.

20        There is a provision, in the Millstone agreement that

21   pays for the Agtech and ETOH leases.  There were post-

22   petition charges that were accruing but not being paid.  And

23   there is a provision that Millstone will pay those

24   administrative claims of Agtech and ETOH subject to a court

25   order, from this Court, subject to a Motion Court Order, and

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 05/21 Transcript Page 12 of 63

11

1    you know, whatever hearing and objection process there is.

2    That is specified in the document.

3         There is also a carve out provided, in the – in the

4    Sale Order and purchase agreement, for up to $300,000.00 to

5    pay trailing administrative claims.  And the concept here is,

6    Your Honor, that after the closing of the sale, there won't

7    be administrative claims, Chapter 11 accrued administrative

8    claims left unpaid.  The concept is that, you know, the trade

9    creditors will be paid, the administrative claim creditors

10   will be paid, and this will not be an administratively

11   insolvent case.  PNC and Millstone, as well as the U.S.

12   Trustee worked hard to have that happen.

13        Also, there is a closing schedule to occur by the

14   30th of September.  And there are some other bits and pieces,

15   details where the Debtor is providing a vendor list and

16   employee list, and the TTB has the – excuse me, the Debtor is

17   also providing TTB formulas as well, a list of those.  Those

18   are new provisions from the – from the original stalking

19   horse.  Of course this is an "as is" "where is" sale, as

20   provided in the APA.  And there were a couple changes to the

21   assumed contracts that were made from the stalking horse to

22   today.

23        But basically, through the changes that were made,

24   through discussions that were had, that, you know, we can go

25   through each of the objections that were lodged and – and I

Case 21-10047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 0 1521 Transcript page 12 of 62 Page 13 of 63

12

1    would like to yield to Ms. Jefferson to kind of go through

2    all the hard work that she did, to iron all those things out,

3    as represented in the Sale Order and the, to a lesser extent,

4    in the APA.  If I might.

5            THE COURT:  Okay.

6            MS. JEFFERSON:  Thank you, Your Honor.  Patricia

7    Jefferson, again, on behalf of the proposed Buyer, Millstone

8    Spirits Group.  Your Honor, I thought it might be most

9    efficient for me to just walk through the various objections

10   that were filed, explain how they have been resolved, and

11   then, to the extent that I have not accurately represented

12   anything, I believe each of those objecting parties is

13   represented on the record here today, and they can - they can

14   correct me if need be.

15           THE COURT:  Okay.

16           MS. JEFFERSON:  The first objection was the limited

17   objection file by Paccar Financial Corporation, docket 75.

18   They filed a supplemental objection at docket number 134.

19   The basis for that objection is that Paccar is a secured

20   creditor and holds a purchase money security interest in two

21   vehicles that were included in the sale.  The contract gave

22   its assignment, and Paccar did not consent, absent a credit

23   application.

24           By way of resolution, Millstone has submitted the

25   requested credit applications and has been approved by Paccar

Case 21-10757-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 14 of 63

13

1   for credit.  And so, between now and the closing date,

2   Millstone and Paccar will finalized and execute any necessary

3   paperwork for new documentation.  But I believe that

4   objection is resolved.  The --

5           MR. GERSHMAN:    -- If you want me to confirm, on

6   behalf of Paccar, yes, Ms. Jefferson is correct. And to that

7   extent, we concur with the sale, and withdraw or objection.

8           THE COURT:  Okay.  So, that is withdrawn.  Are you

9   withdrawing the objection 75 and – is it 134, the supplement?

10          MS. JEFFERSON:  Yes, 134.

11          THE COURT:  Okay.  Okay.

12          MS. JEFFERSON:  The next objection that was filed was

13  the objection by PNC Bank, NA, and PNC Equipment Finance LLC,

14  which was docket number 76.  That was filed prior to the

15  auction.  And many of the issues that were raised related to

16  the form of the auction itself, and the original proposed

17  sale to the stalking horse bidder.  It is my understanding

18  that all of the remaining issues have been resolved, to PNC's

19  satisfaction, and that the PNC objection is being deemed

20  withdrawn as well.

21          MS. MALESKI:  Your Honor, Jennifer Maleski, on behalf

22  of, I'll just say, PNC.  I can confirm that we have resolved

23  all issues, with Ms. Jefferson's client, through language in

24  the proposed Sale Order, and Asset Purchase Agreement,

25  subject to approval of that order and Asset Purchase

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 1-21 Transcript Page 14 of 62 Page 15 of 63

14

1    Agreement as proposed, PNC's objection can be deemed

2    withdrawn.  We do reserve the rights, if there is any changes

3    to the language that has been negotiated.

4         THE COURT:  Okay.

5         MS. JEFFERSON:  The next objection that was filed is

6    the objection of the United States of America, on behalf of

7    the Alcohol, Tobacco, Tax and Trade Bureau, which we are

8    referring to today as the TTB.  That is docket 139.  The

9    basis for that objection was twofold.

10        First, they objected because the original proposed

11   sale to the stalking horse bidder, they argued, violated

12   27CFR1.80 that prohibits the sale of distilled spirits in

13   bulk, except to certain enumerated classes of parties.  And

14   the second basis for the objection, by the TTB, was that the

15   sale of the inventory was proposed to be free and clear of

16   all liens.  However, the government holds a lien for excise

17   tax that comes into existence at the time the spirit is

18   created, and is not payable until the sprits are withdrawn

19   from a bonded premises.

20        In order to address both of those issues, Millstone

21   provided counsel to the United States, and the TTB, a copy of

22   Millstones' TTB permit that has satisfied the TTB that

23   Millstone is a party that is approved as a matter of federal

24   law, to receive possession of distilled spirits in bulk.

25        With respect to the issue of the sale clear and free

Case 21-11750-MFW Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document Transcript Page 16 of 63

15

1   of liens, the Asset Purchase Agreement, and the proposed Sale

2   Order, specifically decretal paragraph five, provide that any

3   inventory to which a lien for excise tax has attached, shall

4   be sold to Millstone subject to that lien.  And the United

5   States has been added to Schedule 103 of the Asset Purchase

6   Agreement, as an assumed liability.

7        With those changes, I believe that the objection of

8   the TTB has been resolved.  And counsel to the TTB has

9   reviewed and signed off on the proposed language.

10       MR. ST. JOHN:  Your Honor, this is Anthony St. Joseph,

11  for the TTB.  Just concurring and withdrawing our objection

12  based on the agreement we have reached with counsel for the

13  purchaser.

14       THE COURT:  Okay.

15       MS. JEFFERSON:  Thank you, Your Honor.  For a moment,

16  I am going to – I am going to skip, chronologically, the

17  objection of the United States Trustee, and if it is okay,

18  take that one last.

19       THE COURT:  Okay.

20       MS. JEFFERSON:  And so, the next objection was docket

21  144, the limited objection of Isuzu Finance of America, Inc.

22  The basis for that objection was similar to the objection

23  filed by Paccar, except that the Isuzu term of its agreement

24  expired in August.  We have agreed that Isuzu can pick up its

25  truck and that that particular vehicle will be carved out of

Case 21-11750-mmm  Doc 1398-2  Filed 10/29/24  Entered 10/29/24 23:26:32  Desc Main
Exhibit Ex. Document 151 21 Transcript Page 16 of 62  Page 17 of 63

16

1    the sale, which I believe resolves Isuzu's objection.

2         And coupled with that is the objection filed at

3    docket 145, which is the limited objection of Tokyo Century

4    USA, Inc., an affiliated party.  The same basis for the

5    objection, except that with respect to that particular truck

6    Millstone will be submitting the necessary credit

7    applications and between now and the closing date, we will

8    either allow Tokyo Century USA to – we will have an agreement

9    that they can pick the truck up, or they will approve our

10   credit application and – and we will move forward in the same

11   way that we are moving forward with Paccar.

12        THE COURT:  Okay.

13        MS. JEFFERSON:  Mr. Sheintoch, I think you are on

14   mute.  I don't know if you wanted to weigh in.

15        MR. SHEINTOCH:  Your Honor, Ms. Jefferson has

16   properly stated our agreement, and we will withdraw our two

17   limited objections.  Thank you.

18        THE COURT:  Okay.

19        MS. JEFFERSON:  The next objection is the limited

20   objection filed at docket 170, by Agtech IV LLC and ETOH

21   Worldwide LLC.  Agtech and ETOH were the stalking horse

22   bidders.  They objected to the extent that the Asset Purchase

23   Agreement and Sale Order don't provide for payment of their

24   administrative expense claims and payment of their expense

25   reimbursements.

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:30:32 Desc Main
Exhibit Ex. Document 5-21 Transcript of Page 18 of 63

17

1           By way of resolution, Section 103(d) of the Asset

2    Purchase Agreement does provide that Millstone shall pay the

3    administrative expense claims of Agtech and ETOH, upon them

4    filing a motion, and entry of an order allowing the claim.

5    Section 105 of the Asset Purchase Agreement provides for

6    payment of the expense reimbursement up to $100,000.00 once

7    that expense reimbursement is approved by the Court.

8           And so, while I have not had direct conversation,

9    with Agtech and ETOH's counsel, regarding their objection, I

10   do believe that the terms of the Asset Purchase Agreement,

11   and the proposed Order should resolve their concerns about

12   payment of those claims.

13          MR. HAMERMESH:  Your Honor, this is Mr. Hamermesh.

14   So, though the proposed order and the Asset Purchase

15   Agreement do address those two issues, there was another

16   issue we raised in our limited objection, which is that the

17   expense reimbursement provision, in the bidding order,

18   requires that we file a request for expense reimbursement

19   shortly after the closing happens.  So, I just wanted to –

20   what I was – wanted to ask Ms. Jefferson and Mr. Burnett, for

21   assurance that I would be advised when the hearing – when the

22   closing is scheduled, and within 24 hours that it happened,

23   so that we can meet the deadline in the bidding procedures.

24          MS. JEFFERSON:  You will – we will certainly agree to

25   provide written notice, to Mr. Hamermesh, of the proposed

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 1521 Transcript of Page 19 of 63

18

1   closing date, and then, on the closing date confirming that

2   it has actually occurred.

3           MR. HAMERMESH:  That's fine, thank you.

4           MR. BURNETT:  Is that enough?  We don't need to

5   change the Order to reflect that?

6           MR. HAMERMESH:  No.

7           MR. BURNETT:  Okay.

8           MS. JEFFERSON:  So, with that, Your Honor, I believe

9   the objections filed at docket 170 can be deemed satisfied.

10          THE COURT:  Mr. Hamermesh?  That's – she said that—

11          MR. HAMERMESH:  -- Yes.

12          THE COURT:  -- [inaudible] deemed satisfied.  Which

13  one?

14          MR. HAMERMESH:  We will withdraw it, with the

15  assurance – give the form of the purchase order and the Asset

16  Purchase Agreement, and the assurance about notice of the

17  closing, we will withdraw it.

18          THE COURT:  Okay.

19          MS. JEFFERSON:  Your Honor, the final objection is

20  the objection filed by the United States Trustee, at docket

21  140.  There were a number of issues raised in that objection,

22  three specifically.

23          The first being a concern regarding the sale of the

24  Debtors Chapter 5 causes of action.  The second concern being

25  whether or not the sale would render the estate

Case 21-11750-mmm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex.D Document 15-21 Transcript Page 19 of Page 20 of 63

19

1    administratively insolvent.  The third concern being whether

2    there was sufficient information to determine whether there

3    is a legitimate bankruptcy purpose to the sale.

4        Addressing each of those in turn, Section 1.01k of

5    the Asset Purchase Agreement, and decretal paragraph 10 of

6    the Sale Order, limit the Chapter 5 causes of action being

7    sold to the Buyer to those actions against the Buyer, its

8    affiliates, and the holder of any assumed liability.  There

9    should not be any cause of action against the Buyer or its

10   affiliates, because they had no prebankruptcy business

11   relationship with the Debtor.  The holder of the assumed

12   liabilities is a very limited list.  And I think it is

13   entirely normal and appropriate that a buyer requests that

14   the parties it intends to do business with going forward not

15   be potentially rendered insolvent by a cause of action.

16       The respect to the second concern, regarding the

17   administrative expenses of the estate, the Buyer has agreed

18   to a cash holdback mechanism found in Section 109 of the

19   Asset Purchase Agreement, and addressed in decretal paragraph

20   of the Sale Order.  The original sale, to the stalking horse

21   bidder, proposed the sale of the Debtor's cash and cash

22   equivalents.  Millstone has agreed to provide for an amount

23   up to $300,000.00 of the Debtor's cash.  And when I say up to,

24   because if there is less than $300,000.00 of cash on hand, it

25   would be whatever that amount is.

1          So, up to $300,000.00 of cash shall remain in the

2    Debtors DIV account, subject to an administrative hold, by

3    PNC, for payment of administrative claims.  We have built in

4    a procedure whereby requests for payment of those claims be

5    submitted to the Debtor.  The Debtor will request Millstone's

6    approval.  Within two business days, we will either approve

7    or disapprove, with a reason.  If we disapprove payment of

8    the claim, that party is free to avail itself of Section 503

9    and can come to the court and seek payment of the claim.  But

10   that money is frozen and available for payment of those

11   claims.

12        Based on my conversations, with PNC, who has been

13   monitoring the historic levels of the DIV account, as well as

14   my conversations with Debtor's counsel, we believe that the

15   $300,000.00 cushion should be more than sufficient to address

16   all of the trailing administrative expense claims that need

17   to be paid.  That amount is not being applied to the ETOH and

18   Agtech claims.  Those are separate liabilities being assumed

19   by the Buyer.

20        Additionally, there was concern raised, by the U.S.

21   Trustee, about the bankrupt – legitimate bankruptcy purpose

22   of the sale.  Your Honor, through the Asset Purchase

23   Agreement and decretal paragraph 17 of the Sale Order,

24   Millstone and PNC have agree to provide a $50,000.00 carve

25   out to the estate.  I say Millstone and PNC because while

Case 21-11750 Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 5 Tr Page 21 of 62    Page 22 of 63

21

1    Millstone has agree to provide the $50,000.00 carve out,

2    there is a $200,000.00 available cash threshold.

3        If the $200,000.00 available cash threshold is not

4    met, PNC has agree to backstaff that $50,000.00 carve out.

5    So that regardless of the Debtor's cash situation, $50,000.00

6    will be made available to unsecured creditors, to be

7    distributed in accordance with the Bankruptcy Code's priority

8    scheme.

9        As evidence by the objection filed by the TTB, there

10   is a limited universe of buyers to whom the assets can

11   legally be transferred, given the nature of the business and

12   the nature of the assets.  And the value of the business

13   decreases precipitously if it is sold in a liquidation.  We

14   believe the current sale does provide the best outcome for

15   the estate, because absent a sale, the only alternative would

16   be conversion of the case.  And a presale closing conversion

17   is problematic, for numerous reasons, and not in anyone's

18   interests, and is likely to result in an estate where no

19   money is available for unsecured creditors.  PNC receives far

20   less than it is getting under the sale.  And significant

21   value is lost.

22       Your Honor, with those explanations and changes to

23   the Asset Purchase Agreement and Sale Order, it is our belief

24   that we have addressed all of the concerns raised by the

25   United States Trustee.

Case 21-11750-amc Doc 898-2 Filed 10/29/24 Entered 10/29/24 24:26:32 Desc Main
Exhibit Ex. Doc 015.21 Transcript Page 23 of 63

22

1          THE COURT:  Mr. Callahan?

2          MR. BURNETT:  And Your Honor, if I might, I just

3     wanted to chime in and say I agree with all of the comments

4     that Ms. Jefferson made, especially as it relates to the –

5     the Debtor's position vis a vis the U.S. Trustee and the

6     bankruptcy purpose of the sale.  I do concur that she

7     accurately stated also MMD's position on that issue.

8          THE COURT:  Mr. Callahan?

9          MR. CALLAHAN:  Yes, Judge.  Kevin Callahan, on behalf

10    of the United States Trustee.  Ms. Jefferson has adequately

11    summarized the concerns of the United States Trustee in our

12    objection.  Maybe I need to go back a little bit, with the

13    history of this case.  And of course, Your Honor was aware

14    that upon filing the petition, the Debtor filed a motion

15    seeking approval of bidding procedures and attached an

16    Agreement of Sale.

17         THE COURT:  Mister – I'm going to have to put you on

18    hold.

19         [PAUSE IN PROCEEDINGS]

20         THE COURT:  I'm sorry.  Okay.  So, Mr. Callahan, you

21    were saying that the U.S. Trustee, you believe that its

22    objection had been adequately summarized by Ms. Jefferson,

23    correct?

24         MR. CALLAHAN:  Yes, Your Honor.

25         THE COURT:  Okay.

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 15-21 Transcript Page 24 of 63

23

1            MR. CALLAHAN:  So, I was – I was referring to when

2       the case was filed there was a motion filed to approve

3       bidding procedures and there was a stalking horse identified

4       as ETOH, Mr. Hamermesh's client.  The relevant provision,

5       from my perspective, at the time, was that it proposed to pay

6       trade creditors in full, suggesting that the unsecureds would

7       be paid.  PNC ultimately, or eventually objected to that APA,

8       and the Agreement was revised, and that revision indicated

9       that unsecured creditors would not be treated, at least in

10      terms of the Purchase Agreement.

11           So, up until the – the auction, the only information

12      new had was with respect to the Agreement that was presently

13      on the table.  On the day of the auction, I was – I spoke to

14      counsel for PNC who informed me of some of the terms of the

15      Agreement which – which referenced a potential payout of

16      fifty – or a potential fund, carve out, if you will, of

17      $50,000.00 for unsecured creditors.

18           We filed the objection, Your Honor, not only on that

19      basis, but in our view there was no articulated exit strategy,

20      by the Debtor, with respect to what it would do once the sale

21      was approved, and the sale closed.  There did not appear to

22      be any legitimate bankruptcy purpose.  That is to say there

23      was no plan accompanying the motion, and no indication, at

24      least formal indication, from the Debtor, of what it intended

25      to do after the sale was completed.

Case 21-11750-7mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Doc 015 21 Tr Page 24 of 62 Page 25 of 63

24

1         With the objection, I also filed a motion to convert

2    or dismiss the case, citing some of the same reasons and

3    concerns we had with the sale objection, as well as informing

4    the Court that the Debtor was delinquent with respect to

5    filing financial information. That as we understood it,

6    officers were being paid, despite not having filed notice of

7    their compensation. And that again, did not seem that the

8    Debtor would be there after once the sale is completed. So,

9    there is a hearing scheduled next week on this.

10         THE COURT: Right.

11         MR. CALLAHAN: That wasn't coincidental We wanted to

12    see how this hearing would proceed. And after the sale –

13    after the – after the auction, we had extensive discussions,

14    with Ms. Jefferson, who represents the potential Buyer, as

15    well as Ms. Maleski and some conversations with counsel for

16    the Debtor. It has been suggested, although it has not been

17    formally recognized, that conversion of the case to a Chapter

18    7 may be the appropriate, if you will exit strategy.

19         The revised, or I guess it is the second revised, or

20    the third agreement that – the first agreement, I should say,

21    between Millstone and the Debtor does have a provision that

22    offers a carve out for – potential carve out for unsecured

23    creditors in the amount of $50,000.00. And PNC, Ms.

24    Maleski's client, has agree to set up some framework to

25    protect that money, if the sale was approved, and if for

Case 21-11607-pmm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:30:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 26 of 63

25

1    example the Debtor or the Debtor's principles were no longer

2    seeking to operate the entity, or were – or there was an

3    entity to operate.

4         So, they have met, I suppose, most of our objections.

5    The revised or the agreement has – was filed, I think,

6    yesterday.  That is the Agreement that they are asking Your

7    Honor to approve.  And under Third Circuit law, you have to

8    make the findings, with respect to whether there is a good

9    faith, and the other, of course, factors important in this.

10   So, regardless of my objection, I am simply asking you to

11   decide based upon what they are offering today, and of course,

12   the Revised Agreement of Sale that has been filed, whether

13   this sale meets the appropriate criteria under the Third

14   Circuit standards.

15        I understand that the proposed closing date is now

16   September 30th.  I presume we will have further discussions

17   whether the U.S. Trustee will go forward next week, or wait

18   until after closing.  But I think it is also appropriate,

19   when we come back to Mr. Burnett, for him to at least give us

20   a coming attraction of what the Debtor's intentions would be

21   if this Court were to approve the sale.

22        MR. BURNETT:  Your Honor, what I wanted to do is, I

23   think what is relevant to Mr. Callahan's –

24        THE COURT:  -- Hold on again, counsel.

25        MR. BURNETT:  I'm sorry.

Case 21-10047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Document 21 Trial Page 26 of 62 Page 27 of 63

26

1          THE COURT:  Mr. Burnett, before you start with the,

2     as Mr. Callahan said, coming attractions, I am going to need

3     a 10 minute break.  Can we come back at, it is 20 of right

4     now, I think.  Hold on.  It is 20 of.  Can we come back at

5     three, I mean 2:50?

6          MR. HAMERMESH:  Your Honor, this Mr. Hamermesh.  I

7     was just going to ask, my client, - my client's issues have

8     been addressed.  Could I be excused please, because I have

9     another hearing that is starting up shortly.

10          THE COURT:  Yes, I mean if you feel that they have

11     addressed, and you have withdrawn your objection, and you are

12     satisfied with the Order, yes, you may be excused.

13          MR. HAMERMESH:  Thank you, Your Honor.

14          THE COURT:  Anybody else?

15          MR. GERSHMAN:   Yes, Your Honor.  Howard Gershman,

16     our objection has been addressed and withdrawn, and I would

17     also ask permission to be excused from --.

18          THE COURT:  Unless I hear some objection, I don't

19     know why, you may be excused too, Mr. Gershman.

20          MR. GERSHMAN:  Thank you, Your Honor.

21          THE COURT:  Anybody else?

22          MR. ST. JOSEPH:  Yes, Your Honor, I guess that just

23     goes for the objections.  TTB has also withdrawn their

24     objection.

25          THE COURT:  Okay.  So, Mr. Joseph, if you want to be

Case 21-10670-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 015-21 Transcript of Page 28 of 63

27

1    excused, you may be excused also.  I think you said that you

2    were satisfied, both Mr. – Mr. Hamermesh and Mr. Gershman

3    said that they were satisfied with the Order, so that's fine.

4         MR. ST. JOSEPH:  Yes, thank you, Your Honor.

5         THE COURT:  All right.  Anybody else?  I'll be right

6    back.  Thank you for your indulgence, counsel.

7         MR. BURNETT:  Thank you, Your Honor.

8         [BREAK]

9         THE COURT:  Counsel?

10        MR. BURNETT:  Yes, Your Honor.

11        THE COURT:  All right.  I think, Mr. Burnett, you

12   were going to, I guess what Mr. Callahan had described as a

13   coming attraction.  So, you're up.

14        MR. BURNETT:  Well, so, Your Honor, I would like to

15   respond in a couple ways, to what Mr. Callahan to say, well,

16   and I would certainly like to get the proffers of Mr. Parzych

17   and Mr. Comly, as they will give context and allow you to

18   make findings on the sale hearing.

19        As to the coming attractions issue, obviously, the

20   U.S. Trustee has a pending motion, which is – which, you know,

21   we are going to file a response to.  And frankly, we have

22   been really concentrating on consummating the sale, for the

23   benefit of the estate and its creditors, as outlined

24   previously in this hearing.

25        You know, we don't know at this time, what we are

Case 21-11750-mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Document 1-21 Transcript of 62 Page 29 of 63

28

1  going to do.  We haven't made a decision.  We are not, you

2  know, trying to, you know, do anything other than to proceed

3  to do this sale and to evaluate the what is in the best

4  interest of the estate and its creditors, subsequent to

5  closing.  But of course, you know, the U.S. Trustee's

6  objection, excuse me, motion is pending.  You know, we have a

7  hearing set up for that.  And we will certainly consult with

8  the U.S. Trustee's Office and all parties in interest as it

9  is appropriate as to what the next steps are.

10          I can't say anything better than that, because that

11 is really the exact state of the knowledge that we are in at

12 this time.  This is just a 363 sale hearing.  So, I think it

13 might be best, Your Honor, if we could wrap it in context so

14 that you have the benefit of the proffers that allows you to

15 kind of get a sense of, you know, what was done in the sale

16 hearing process, and the like.  And then it may allow you to

17 give a, you know, more complete view.

18          THE COURT:  Okay.

19          MR. BURNETT:  Is that okay?  May I proceed with the

20 proffers?

21          THE COURT:  Yes, I am sorry, counsel.  Yes, if you

22 are going to make a proffer that you believe would satisfy

23 the various elements that I need to find exist in order to

24 approve the sale, correct?

25          MR. BURNETT:  Yes, Your Honor.

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document Transcript Page 30 of 63

29

1          THE COURT:  All right.  And you are going to proffer

2     the testimony of Mr. Parzych, and you said also Mr. Comly,

3     correct?

4          MR. BURNETT:  That is correct, Your Honor.

5          THE COURT:  All right.  You may proceed.

6          MR. BURNETT:  Thank you, Your Honor.  Let me just

7     note also that we have filed an exhibit list, consistent with

8     the Court's Order on zoom hearings, that was served on

9     chambers and parties in interest, and so, we will be

10    referencing those – there is five exhibits there, and I will

11    be referencing them very briefly, in—

12         THE COURT:  -- Okay.

13         MR. BURNETT:  -- in the proffer.  So, I'll – I'll

14    first start with the proffer of Mr. Parzych.  If Mr. Parzych

15    was called to testify, he would testify as following, that he

16    is a member and sole officer of Midnight Madness, in a

17    limited liability organized under the laws of the

18    Commonwealth of Pennsylvania, and the Debtor in this case.

19         MR. CALLAHAN:  Excuse me, Judge.

20         THE COURT:  Which Parzych?

21         MR. CALLAHAN:  I'm sorry, Mr. Barnett – Burnett, is

22    Mr. Parzych here?  Is he present?

23         MR. BURNETT:  Oh, Your Honor, thank you Mr. Callahan,

24    I apologize.  He was on video.  I think he has called in,

25    because he had trouble with his video connection.  And I

Case 21-11750-mdc   Doc 898-2   Filed 10/29/24   Entered 10/29/24 23:20:32   Desc Main
Exhibit Ex. Doc 015-21 Trial Tr. Page 31 of 63

30

1    think he is that 267 number on the bottom.  So, he is here,

2    and Mr. Parzych could you verify that you are here?

3            MR. CASEY PARZYCH:  I am here.

4            THE COURT:  And which Mr. Parzych is this?

5            MR. PARZYCH:  Casey Parzych.

6            THE COURT:  All right.  Okay.

7            MR. BURNETT:  Thank you, Your Honor.  I apologize for

8    that.  So, as such, Casey Parzych oversees all aspects of the

9    business of MMD.  Mr. Parzych has been a member and officer

10   of MMD since its inception in May of 2012, and he is

11   generally familiar with the Debtor's day to day operations,

12   business and financial affairs and books and records.

13           On the petition date of June 21st, 2021, MMD filed a

14   voluntary petition for a Chapter 11 under the Bankruptcy Code.

15   MMD operates a distillery and packing plant in Bucks County,

16   Pennsylvania.  It employs approximately 80 individuals on a

17   full and part time basis.  As of the petition date, MMD was

18   in default of its primary lender, PNC, and its business

19   operations were losing money.  Without an outside investment,

20   Mr. Parzych believed that MMD would be unable to pay debt

21   service and to continue operations.

22           ETOH, at that time, had expressed interest in

23   purchasing the assets of MMD.  It was Mr. Parzych's view that

24   MMD could not survive without ETOH, or another purchaser,

25   buying its assets.  And that is absent a consummation of a

Case 21-11750 mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Document 5 - 21 Trial Page 1 of 62 Page 32 of 63

31

1    sale, MMD would likely be liquidating, leaving the Debtor's

2    secured lenders with far less than their portion of the

3    purchase price, trade creditors with nothing, and

4    approximately 80 employees out of jobs, in a small town.

5          At that time then MMD proceeded with a stalking horse

6    bid to ETOH.  The ETOH asset purchase agreement, the original

7    stalking horse, as revised, and as referenced by Mr. Callahan,

8    the – the last iteration of the ETOH Asset Purchase Agreement,

9    generally provided for a purchase price of 1.025 dollars in

10   cash – excuse me, 1.025 million in cash, plus the assumption

11   of certain secured debt, for all or substantially all of the

12   Debtor's assets free and clear of liens.  The assumption and

13   cure of substantially all leases and contracts needed for the

14   Debtor's business operations.  And specifically the

15   assumption of secured debt such as the first mortgage.  And

16   the opportunity for continue employment of substantially of

17   the Debtor's employees.

18         So, the stalking horse bid, of ETOH, was marked by

19   Comly.  MMD worked extensively with Comly to assist Comly in

20   its marketing efforts, setting up the data room,

21   supplementing it with information, as requested by various

22   bidders and PNC and facilitated tours with Comly, etcetera.

23   As a result, of the efforts of Comly, the Parzych would

24   testify that the Debtor and his professional – and with the –

25   in consultation with the Debtor and his professionals, two

Case 21-10760-7mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 9-15-21 Transcript Page 33 of 63

32

1    new bids were received prior to the deadline – Millstone

2    Spirits, LLC, and Bankshares Realty, LLC, which is

3    essentially a successor by assignment of PNC.  It was a

4    credit bid by Bankshares.

5          The auction took place via zoom, on August 25th,

6    where the three bidders were in attendance:  Millstone, PNC,

7    and a stalking horse bidder, ETOH.  And it was conducted, the

8    – the – the zoom auction was conducted by MMD's counsel, Mr.

9    Burnett, and Mr. Giacometti.  Mr. Parzych would further

10   testify that his counsel filed and served a Notice of Sale,

11   which is Exhibit 3 on the exhibit list, Docket Number 133.

12         THE COURT:  Hold on.  All right.  Pull that up for me,

13   John.

14         JOHN:  I'm sorry, Mr. Burnett, what was it labeled as

15   again?

16         MR. BURNETT:  It is the Notice of Sale.  Revised

17   Notice of Sale.

18         THE COURT:  And that is Exhibit what?

19         MR. BURNETT:  Three.  I am sorry this is out of order,

20   Your Honor, but it is Exhibit 3.

21         THE COURT:  That's fine.

22         MR. BURNETT:  So, that basically just says we were

23   giving folks notice of the dates.  So, I don't need it any

24   further than that.

25         So, Mr. Parzych would testify that MMD's counsel

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 0151 21 Trans. pg 33 of 62   Page 34 of 63

33

1    served that notice, and that Mr. Parzych was in attendance at

2    all times at the zoom auction.  Mr. Parzych would testify

3    that after negotiations, at the auction, during the auction,

4    all bids were normalized and deemed to be capital Q Qualified

5    Bids, and were able to be matched fairly on an apples to

6    apples basis, as competing bids, for MMD's assets, in

7    accordance with the bid procedures order.

8         Mr. Parzych would testify that in his view the

9    auction that took place was spirited and conducted in good

10   faith by all parties, including the winning bidder, and was

11   conducted in accordance with the Bidding Procedures Order

12   approved by this Court.  In Mr. Parzych's view, the process

13   yielded the successful winning bid from Millstone, in the

14   amount of 1.4 million dollars, plus other consideration,

15   including assumption of cure costs and certain administrative

16   liabilities, per the terms of the administrative – excuse me,

17   of the Asset Purchase Agreement filed with this Court.  And

18   that is Exhibit 1, docket number 172, and also the black line

19   to the stalking horse bid, which is Exhibit 2, docket number

20   173.

21        Although those could be pulled up, I don't really

22   have much to say about them, other than we filed them of

23   record, and they – the Exhibit 2, which is up now, and –

24   right Exhibit 2 is the stalking horse bid comparison.  So,

25   the full bid and the final APA comparison between the

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 015-21 Transcript Page 35 of 63

34

1    stalking horse and the AAPA, which is being submitted to Your

2    Honor, for approval today.

3         And Exhibit 1, which is docket 172, but the – 172-1,

4    which is the exhibit to that Order, if you will.  And that is

5    the claim of the APA.  Yes, there it is, yes.  Oh, right.  So,

6    those – that is the reference to those two exhibits.  And –

7    and this item – yes, thank you.

8         Mr. Parzych would further testify that the has

9    reviewed the Millstone Asset Purchase Agreement, as revised,

10   and as filed with this Court this morning, and believes that

11   it represents the highest and best offer for the assets.  Mr.

12   Parzych would testify that he has considered the impact of

13   the potential sale on the post-petition operations of MMD.

14   And based on his review of the business operations, and the

15   cash position, of MMD, as well as the provisions in the

16   Millstone Asset Purchase Agreement and the Sale Order, Mr.

17   Parzych believes that there will be sufficient funds to pay

18   all current and trailing administrative expenses of MMD,

19   incurred from the petition date through to the closing of the

20   sale.

21        And in general conclusion, Mr. Parzych believes that

22   the Asset Purchase Agreement, from Millstone, is fair and

23   reasonable under the circumstances overall.  Mr. Parzych

24   would testify that he believes that the sales transaction is

25   the highest and best offer that can be obtained for the

Case 21-10047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 36 of 63

35

1    assets here.  Mr. Parzych believes that the consummation of

2    the transaction with Millstone is in the best interest of the

3    estate, and is a valid exercise of his sound business

4    judgement.  Mr. Parzych believes that to his knowledge – and

5    believes that there is no collusion between Millstone and any

6    other potential bidder.  Mr. Parzych would testify that the

7    negotiations with his professionals and the purchaser, were

8    at all times conducted in good faith and at arm's length, and

9    that the purchaser is a good faith purchaser with respect to

10    the transaction contemplated by the sale – through the sale

11    documents.  Mr. Parzych would lastly testify that he believes

12    that based on his experience, and upon reliance of advice

13    from his professionals, that the entry of the proposed order

14    approving the transaction and authorization of the Asset

15    Purchase Agreement, with Millstone, is justified and should

16    be approved.

17        And that would be the conclusion of the proffer of Mr.

18    Casey.  I don't know if you would like me to break here and—

19        THE COURT:  -- Yes.

20        MR. BURNETT:  -- Or if you just want me to proceed

21    with Mr. Comly.

22        THE COURT:  No, break here.  Does anyone wish to – to

23    cross examine, Mr. Parzych, based on the proffer that was

24    made by Mr. Burnett?

25        MR. CALLAHAN:  Judge, Kevin Callahan, from the U.S.

Case 2:23-07047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Trial Page 36 of 62 Page 37 of 63

36

1    Trustee.  I have a few questions for Mr. Parzych.

2           THE COURT:  Okay.  Wait, we have to swear him in.

3           THE COURT DEPUTY:  Mr. Parzych, do you swear that the

4    testimony you are about to give to the Court will be the

5    truth, the whole truth, and nothing but the truth?

6           MR. PARZYCH:  I do.

7           THE COURT DEPUTY:  Could you please state and spell

8    your name for the record.

9           MR. PARZYCH:  Casey Parzych, C-A-S-E-Y  P-A-R-Z-Y-C-H.

10          THE COURT DEPUTY:  And I just need you to please

11   state your address for the record.

12          MR. PARZYCH:  138 North Main Street, Trumbauersville,

13   PA.

14          THE COURT:  What – what town or city was that?

15          MR. PARZYCH:  Trumbauersville.

16          THE COURT:  Could you spell that, I'm not – I'm not

17   understanding you.

18          MR. PARZYCH:  T-R-U-M-B-A-U-E-R-S-V-I-L-L-E.

19          THE COURT DEPUTY:  Trumbauersville.

20          THE COURT:  Trumbauersville, okay.  Okay.  You can

21   proceed.  Wait, did you swear him in?  I'm sorry, I - did you

22   say –

23          THE COURT DEPUTY:  -- Yes, we did, Judge.

24          THE COURT:  All right.

25          THE COURT DEPUTY;  Thank you, Mr. Parzych.

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Document 15-21 Transcript Page 37 of 62 Page 38 of 63

37

1          THE COURT:  I'm sorry.

2          MR. CALLAHAN:  Mr. Parzych could you please state

3     your relationship with Midnight Madness Distillery?

4          MR. PARZYCH:  I am the president, currently, and sole

5     officer.

6          MR. CALLAHAN:  And Mr. Burnett just made what is

7     called a proffer, to the Court.  Were you present during that

8     proffer, at least over the phone?

9          MR. PARZYCH:  Yes.

10         MR. CALLAHAN:  And do you agree with the information

11    that he presented to the Court?

12         MR. PARZYCH:  I do.

13         MR. CALLAHAN:  And if this – if this agreement is

14    approved by the Court, do you have any personal agreements

15    with Millstone, or anyone acting on their behalf?

16         MR. PARZYCH:  I do not.

17         MR. CALLAHAN:  Do any of your family members have any

18    agreements with Millstone or anyone on Millstone's behalf?

19         MR. PARZYCH:  None that I am aware of, no.

20         MR. CALLAHAN:  Okay.  And if this agree – if this

21    sale is approved, what – what is your intentions for

22    employment?

23         MR. PARZYCH:  I will be looking for employment.

24         MR. CALLAHAN:  Has anyone made any offers of

25    employment to you?

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Trial Page 39 of 63

38

1       MR. PARZYCH:  No.

2       MR. CALLAHAN:  Okay.  And if the Court approves this

3  agreement, what do you see your role as over the next several

4  weeks, at least through September 30th, with the company?

5       MR. PARZYCH:  Basically maintaining it to be

6  delivered to Millstone.

7       MR. CALLAHAN:  And is it your intent to comply with

8  all the – with the cash collateral agreement that has been

9  reached with PNC?

10      MR. PARZYCH:  It is.

11      MR. CALLAHAN:  Okay.  Your Honor, thank you.  I, and

12  thank you, Mr. Parzych.  I have no further questions.

13      THE COURT:  Anyone else have any questions for Mr.

14  Parzych?  Any follow up, Mr. Burnett, based on the questions

15  that were raised by Mr. Callahan?

16      MR. BURNETT:  I do not, and I appreciate the

17  questions raised by Mr. Callahan.

18      THE COURT:  Okay.  All right.

19      MR. BURNETT:  So, if – with Your Honor's permission,

20  if I may proceed to the testimony of Mr. Jim Comly.

21      THE COURT:  Okay.

22      MR. BURNETT:  Your Honor, to proffer the testimony of

23  Jim Comly, if called to testify, Mr. Comly would testify that

24  he is the Vice President of William F. Comly and Son, Inc.

25  William F. Comly and – he would testify that William F. Comly

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:36:32 Desc Main
Exhibit Ex. Doc 1521 Transcript Page 40 of 63

39

1  and Son, Inc. is one of the oldest auction companies in the

2  United States, founded in 1934.  And that Comly was – has

3  flourished to become a leading regional, industrial auction

4  firm serving the needs of manufacturing companies, industrial

5  plants, secured lenders, lawyers, bankruptcy courts, and

6  owners, for seven generations.

7       Mr. Comly would testify that he has extensive

8  experience in brokering and marketing distressed assets for

9  over 15 years, in the region, and elsewhere, and also before

10  this Court for Chapter 11 cases, as well as Chapter 7 cases.

11  Mr. Comly would testify that he is familiar with the Chapter

12  11, 363 sales process, and with the procedures.

13       In terms of MMD, Mr. Comly would testify that Comly,

14  William F. Comly and Son has been retained, by this Court, to

15  be the broker and marketer, sales agent for the proposed sale.

16  And that Comly was hired, by the Debtor, due to Comly's

17  extensive experience in the – with similar sales in the

18  industry, geographic area, and will assist MMD in realizing

19  the highest and best prices – price for the assets.

20       Comly, and Mr. Comly specifically, prepared and

21  implemented a marketing program to promote the sale of the

22  assets.  And as reference to that there is Exhibit 5, which

23  is the Comly exhibit of the marketing material, which is

24  essentially a list of Mr. Comly's expense – or excuse me,

25  Comly's expenses, as well as a copy of the ad and the

Case 21-11750 Case 21-11750 mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document Doc 115-1 Transcript Page 40 of 62 Page 41 of 63

40

1  brochure.  The prices are not relevant.  What is relevant is
2  the different activity and the nice little glossy picture
3  there, with the assets.  Thank you for that, Exhibit 5.
4  Exhibit 5 is representative of what Mr. Comly, excuse me,
5  what Comly has done.

6      So, in terms of the compensation structure, which is
7  relevant in connection with Comly's actions here, subject to
8  further order of the Court, Comly will be compensated as
9  follows.  They receive $6,500.00 for a marketing fee and
10 labor and travel expenses for $2,500.00.  But most
11 importantly, although – although Mr. Comly would testify that
12 although Comly is paid a flat fee to market the assets, Comly
13 is incentivized here to find a new bidder.  If another party
14 submitted an offer that is higher and better, and acceptable
15 to the Debtor, and this Court, Comly would be entitled to
16 receive a ten percent (10%) commission of the difference
17 between the initial stalking horse bid and the final
18 successful bid.  This is relevant just to show – we are not
19 here to hear Mr. Comly's commission today, but it is relevant
20 to show the incentive – the incentive that Comly was given to
21 market.

22     So, pursuant to their engagement, Mr. Comly would
23 testify that their marketing efforts included direct mail
24 solicitation, over 500 colored postcards mailed on July the
25 15th, to an acquired mailing list comprising of distilleries,

Case 21-10640-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 1 Transcript of 62 Page 42 of 63

41

1    alcohol distributors, bar restaurant owners, business brokers,

2    and liquor license attorneys in Philadelphia, Pennsylvania,

3    and surrounding areas, as well as members of various food and

4    beverage associations.  Comly also did advertisement placed

5    in regional newspapers, *Philadelphia Enquirer*, *Daily News*,

6    *Lancaster Farming* and internet direct mail postcard and

7    details were placed on the website, along with photographs of

8    the assets being offered for sale.

9         Mr. Comly would testify that in addition, they placed

10   advertisements of the sale on the business and restaurant

11   trade websites, included websites Biz Buy Sell, BizQuest,

12   Businesses for Sale, Restaurant for Sale, as well as auction

13   websites, Comly.com and AuctionZip, as well as various

14   association websites, social media sites, Craigs List,

15   Facebook, Google, Business LinkedIn, and Twitter.  And also

16   email blast professional prepared electronic sale notice was

17   sent to Comly's extensive inhouse mailing list of over 18,920

18   opt in subscribers, as well as bidders in prevable [sic]

19   comparable – previous comparable auction sales of opt in

20   subscribers under various categories such as business brokers,

21   attorneys, bar and restaurant owners, distilleries, and

22   alcohol distributors.

23        Mr. Comly would testify that through all of that

24   marketing efforts it generated the following types of

25   interest.  They received 25 interested parties that contacted

Case 21-11750-amc Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 915 21 Transcript of Page 43 of 63

42

1    Comly, 14 returned signed NDAs, including PNC.  Seventeen

2    different people were granted access to the data room.  Four

3    tours and inspections were – were conducted onsite.  Comly

4    would testify that he and Comly fielded bidder questions all

5    throughout the process.

6         Mr. Comly would testify that as a result of the

7    efforts of Comly, and MMD, and MMD's professionals, that two

8    new bids were received prior to the deadline – Millstone

9    Spirits Group, LLC, as well as Bankshares Realty, LLC, which

10   is PNC, which was a credit bid.

11        Mr. Comly would testify that the auction took place

12   on August 25th, 2021, via zoom, with the three bidders:

13   Millstone, PNC, and the stalking horse bidder.  And that it

14   was conducted by counsel to MMD.  Mr. Comly would testify

15   that he was in attendance at all times during the – during

16   the zoom auction.  Mr. Comly would testify that, after

17   negotiations at the auction, all bids were normalized and

18   deemed to be qualified bids, and able to be matched fairly,

19   on an apples to apples basis, as competing bids for MMD's

20   assets, in accordance with the Bid Procedures Order.

21        Mr. Comly would testify that in his view, the auction

22   that took place was spirited and conducted in good faith, by

23   all parties, including the winning bidder, and was conducted

24   in accordance with the Bid Procedures Order approved by this

25   Court.  Mr. Comly would testify that the process that yielded

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex.D - 9-15-21 Transcript Page 44 of 63

43

1    the successful winning bid, from Millstone, in the amount of

2    $1.4 million plus other consideration, per the terms of the

3    Asset Purchase Agreement, files with this Court, is the

4    highest and best offer at the auction.

5           And Mr. Comly would testify that based on his years

6    of experience in the industry, that he believes that Comly's

7    efforts marketing the assets were reasonable and appropriate

8    for a transaction of this size in this industry.  Mr. Comly

9    would testify that, at all times, his interactions with the

10   bidders were in good faith, at arm's length, and conducted

11   for the purpose of maximizing the sale of the assets being

12   sold here.

13          Lastly, Mr. Comly would testify that based on his

14   years of experience in the industry, that he believes that

15   Comly's work marketing these assets helped yield the highest

16   and best offer that could be obtained for these assets under

17   the circumstances.  And that is the conclusion of this

18   proffer.

19          THE COURT:  Any cross examination of Mr. Comly?  Mr.

20   Callahan?  Anyone?

21          MR. CALLAHAN:  Judge, I have no questions for this

22   gentleman.

23          THE COURT:  Okay.  Anything else, counsel?

24          MR. BURNETT:  Your Honor, certainly subject to any

25   questions Your Honor may have, that concludes the Debtor's

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 015 21 Transcript Page 45 of 63

44

1     presentation.

2           THE COURT:  And I – just a quick look.  So, the

3     Debtor is selling this real estate, equipment, and the entire

4     business, correct?

5           MR. BURNETT:  Basically, yes, Your Honor.  Obviously,

6     the – the purchased assets are specifically listed, but

7     essentially that is correct.

8           THE COURT:  Right, I just looked at the flyer and it

9     just says – on one of the exhibits that you had, there was a

10    quick – I looked at it and it said real estate, distillery,

11    and something else.  And it was like a quick look at it.

12          MR. BURNETT:  Yes, that is correct, Your Honor.  Yes.

13          THE COURT:  So, - so, they were selling it as a going

14    concern, correct?

15          MR. BURNETT:  That is correct.

16          THE COURT:  Okay.  Okay.  anything else that you

17    would like to submit – well, you made the proffer.  The

18    proffer of Mr. Comly was accepted.  No one did any – any

19    additional questions.  Are there any exhibits that you would

20    like to introduce into evidence in support of the sale?

21          MR. BURNETT:  I would like to move exhibits 1 through

22    5 into evidence.

23          THE COURT:  Did we talk about all of them?

24          MR. BURNETT:  We did, Your Honor.  We did touch upon

25    them.  They – they – essentially, they are, the first four

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 5-21 Transcript Page 46 of 63

45

1      are all filed documents on the docket.  And the last one is

2      Comly's marketing materials.

3              THE COURT:  Any objection to the admission of Exhibit

4      1 through 5?  Okay.  Hearing no objections, which is Exhibit

5      1 – whoop, back up John.  Exhibit 1 which is the Asset

6      Purchase Agreement between Midnight and Millstone.  The clean

7      version is being submitted.  I don't think we need to admit

8      the red ones, just on the docket.  Number 3 was the Bid

9      Procedures Order that was entered by the Court on docket

10     number 110.  That is admitted.  The Revised Notice of Sale of

11     Assets, docket number 133, that is admitted.  And number 5,

12     the Comly Auctioneer Marketing Materials are admitted.

13     Anything else Mr. Burnett?

14             MR. BURNETT:  No, Your Honor.  Nothing else.

15             THE COURT:  Okay.  So, are you going to give once –

16     we have made a record.  You have offered in evidence.  Any

17     conclusion as to how this sale should – why this sale should

18     be approved in that it satisfies the standard for approval of

19     a sale under 363, a summary of why it meets the – the

20     adequate notice requirement, good faith, sound business

21     judgement, fair and reasonable price?  Conclusion counsel?

22     Why you think I should approve all of that?

23             MR. BURNETT:  You said it better than I could, Your

24     Honor, but for all of those reasons, I am happy to articulate

25     them, but the – the sale was, in fact, conducted in good

Case 21-11750-rmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:30:32 Desc Main
Exhibit Ex. Doc 0 of 1521 Transcript of Page 47 of 63

46

1      faith and at arm's length.  It was the product of, you know,

2      spirited negotiation that yielded the highest and best offer

3      through a fully marketed process.  Under the circumstances,

4      it seems uncontested, from an evidentiary standpoint, that it

5      is in the best interest of the estate and its creditors to

6      have this sale be consummated, based on the terms as

7      articulated previously on the record.  For those reasons, we

8      respectfully request that Your Honor enter the Order and

9      authorized us to enter into the Asset Purchase Agreement and

10     consummate the closing of the sale.

11            THE COURT:  Okay.  Anyone else – any comments before

12     the Court issues its findings?  Okay.  In connection with the

13     standard that the Debtors have to establish in order for the

14     Court to approve the sale under 363, the first thing that the

15     Court must find that there was adequate notice.  I think

16     Exhibit 4 was the Notice of Revised Hearing of Sale.  The

17     Debtor has provided adequate notice.  The sale was the result

18     of good faith negotiations, as evidenced by the auction, and

19     the proffered testimony of Mr. Parzych and Mr. Comly, who

20     both participated in the negotiation and the sale, plus the

21     auction.

22            That the sale is supported by evidence of a sound

23     business justification, namely Mr. Parzych, his proffered

24     testimony is that if a sale did not occur, that given the

25     financial condition of the business, that it would result in

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 5 21 Transcript of Page 48 of 63

47

1    a liquidation, because they apparently had insufficient

2    assets to continue as a going concern.

3            The next is that the purchaser will pay a fair and

4    reasonable price.  I think that the – I find that the price

5    is fair and reasonable.  It was a result of negotiations and

6    at an auction.  The Debtor originally had a stalking horse

7    agreement for $1.04 million plus some other – some other

8    assumed liabilities.  The successful bidder is paying

9    approximately $1.4 plus some other additional amounts.

10           I also find that the – that the sale is in the best –

11   is a proper exercise of good business judgement.  I also find

12   that there was no collusion between the bidders, and that

13   the proposed purchaser, Millstone, is a good faith purchaser.

14   Based on all of those findings, I will issue an Order

15   approving the sale of the Debtor's business to Millstone.

16   And with that said, counsel, I think we need to take a look

17   at the proposed Order.

18           MR. BURNETT:  Thank you very much, Your Honor.  Yes,

19   the proposed Order was filed this morning.  And it was also,

20   I should note that, as Ms. Jefferson noted, that this was the

21   product of discussion among the parties and is a –

22   essentially a resolution of a lot of the issues here, and was

23   reviewed, substantially, by all the parties in interest.  So,

24   it reflects both a resolution of some of the objections, as

25   well as dovetails in with the revised APA.  So,--

Case 21-30457mm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 49 of 63

48

1     THE COURT:  -- Yes.  So, so, all of the objections

2     having been withdrawn, there was really nothing the Court

3     could consider, in terms of resolving any objections.

4     THE COURT:  Correct.

5     THE COURT:  So, I guess I should state that on the

6     record, which is why I didn't address them, because they are

7     all withdrawn.  There is really nothing for me to address,

8     with respect to objections.

9     MR. BURNETT:  Correct.  I guess I wanted to say, Your

10    Honor, that the Order incorporates the resolutions that

11    resolve those objections, but yes.

12    THE COURT:  Okay.  All right.  Let's pull that up.

13    All right.  Is there anything specific that you think – I

14    mean the first couple of pages are background.  Let's get to

15    – John, let's scroll through this.  I think we probably –

16    well, okay.  Move that on down farther.

17    MR. BURNETT:  -- And if I – if I might, I may also

18    invite Ms. Jefferson to unmute and – and speak in too,

19    because she did such a laboring war on the Order as well.

20    We—

21    THE COURT:  -- Right.  Right.  No, the – John, go

22    back up.  Go back up, because the first thing it says is that

23    the Court has jurisdiction on a statutory basis.  We know

24    that.  Go down.  I think the D, Due Proper Timely Adequate

25    and Sufficient Notice and a Reasonable Opportunity has been

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 50 of 63

49

1    provided, which the Court has found.  Because adequate notice

2    is when you provide a reference to the sale, a description of

3    the assets, the terms and condition of the proposed sale, the

4    means by which a party could obtain a copy of it, and the

5    time and place of the hearing on the sale motion, the

6    deadline for objecting to sales, all of that was provided.

7    And I think it referenced that – that those paragraph E sets

8    forth and satisfied the adequate notice provision.

9         And then we are at F.  It says that based on the –

10   the evidence adduced at the hearing, Debtor determined that

11   the Asset Purchase Agreement, which you are going to fill in

12   the docket number, represents the highest and best offer.

13   [Inaudible] pay.  A non-collusive, duly notice, I have

14   already found that.  And that all of the sale procedures have

15   been complied with in all materials respects.

16        Next, let's see what G says.  Shall have the

17   authority to consummate, includes sufficient and sound

18   business justification, which I have already described as

19   being able to – to avoid the business being liquidated and

20   being able to be sold as a going concern, plus there would be

21   sufficient funds to pay PNC, I think is the [inaudible]

22   creditors, and there is sufficient money being carved out for

23   unsecured creditors.  Was negotiated and that is a good faith

24   negotiations.  I have made that finding, based on the – the

25   record that was made.  The Buyer is not an insider.  Although

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 015-21 Transcript Page 51 of 63

50

1    I'm not really sure that you said that.  I don't know, I

2    think the focus of Mr. Callahan's questions was what was the

3    Debtor's principle's post-sale relationship with the – with

4    the Buyer.  I don't really think there was any specific

5    information regarding Millstone, the owners of Millstone.

6    But there wasn't anything in the record that would suggest

7    that they were anything other than a disinterested party in

8    this instance and not an insider, based on the proffer that

9    the interest from Millstone was the result of the marketing

10   efforts of Comly.  And that, so based on that, I find that –

11   that they are a good faith purchaser, and I have to find that

12   they are not an insider as defined in Section 1v1.  Okay.

13         MR. BURNETT:  Your Honor, if I could just supplement.

14   I mean they – they are a competitor, and they – they aren't

15   an insider.  I can testify to that.  And I could have Mr.

16   Parzych's testify to that, but they are not an insider.

17         THE COURT:  Right, I – well, I think I am satisfied,

18   based on the fact that they, my understanding is they came to

19   this deal through the efforts of Comly and their marketing.

20   At least I didn't hear anything to the contrary.

21         MR. BURNETT:  Correct.

22         THE COURT:  And I am basing my conclusion based on

23   that.  Yes, we didn't talk about them not being an insider,

24   but there wasn't anything that would suggest that they were.

25   And that their interest was other than as a disinterested

Case 21-11750-amm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. Doc 1521 Trans 51 Page 52 of 63

51

1    party brought in through the marketing efforts.  Okay.

2        Then J, I have already found that it was not

3    controlled, it was the result of an auction.  Based on the

4    proffered testimony of Mr. Parzych and Mr. Comly, that it was

5    the result of a "spirited auction" where all parties, three

6    bidders were there, and it was the highest and best offer as

7    a result of that, and it wasn't – there isn't any evidence of

8    any collusion.  Okay.

9        And then K, I did find that the Buyer is a good faith

10   purchaser, and that the Buyer is acting in good faith within

11   the meaning of Section 363M.  I didn't say that specifically,

12   but I did find that it was a good faith purchaser, based on

13   the fact that this was the result of an auction.  It was the

14   result of negotiation, and it was – appeared to be the

15   highest and best offer.  Okay.

16       Which I think I already kind of jumped into L, which

17   it was a fair and reasonable, and that I have already said,

18   with respect to recovery to the creditors, that absent this

19   sale there would be some recovery to secured creditor, but

20   none for the unsecured creditors.  Plus it is in the best

21   interest of the – the Debtor in the sense, that I understand

22   there is 80 employees.  So, although it says best interest of

23   creditors, I think sometimes we have to take that into

24   consideration.

25       All right, and the rest is just what happens to the

Case 21-10047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 1 Trans Page 53 of 63

52

1    assets.  I don't really need to make any findings with

2    respect to that.  All those other things, I think with

3    respect to my finding, it was only that it was proper notice,

4    good faith negotiations, sound business justification, and a

5    fair and reasonable price, and that the purchaser is a good

6    faith purchaser.  All of which has been set out in the

7    preamble.  At least I am assuming these paragraphs are the

8    preamble.  Keep going down, John.

9         Okay.  And then there is going to be a cure and

10   assumption as set forth in Exhibit B.  Are there any other

11   things that have to be added, counsel, other than the docket

12   entry number that we saw at the very beginning?

13        MR. BURNETT:  No, Your Honor.  I believe that is the

14   only - the only blank, in the - in the document.

15        THE COURT:  John, can you just - sale is granted.

16   Had not been withdrawn.  I do not have to deny or overrule

17   because they have all been withdrawn, or approved.  To

18   address [inaudible] nexus number.  I am assuming there is a

19   five.  There is probably all sorts of language which you want

20   me to make a finding of.  That there is authorized to execute,

21   deliver, and perform [inaudible] Asset Purchase Agreement.

22   John, go down to five.  Okay.

23        I don't think there was any substantive or real

24   changes other than dollar, with respect to the original  that

25   was filed, and the black line.  Is that correct, Mr. Burnett?

Case 21-11750-mmm Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Doc 1521 Transcript Page 54 of 63

53

1        MR. BURNETT:  Regarding?

2        THE COURT:  The – this Agreement, the proposed Order.

3        MR. BURNETT:  This proposed Order was filed first,

4   just now.  So, there wasn't a prior proposed Order.  This is

5   our Sale Order that was filed.

6        THE COURT:  Oh, okay.  You know what, it was the

7   black line Asset Purchase redline as you called it.

8        MR. BURNETT:  Correct.  Correct.

9        THE COURT:  Okay.  I thought there was one with the

10  original sale motion, but maybe I – maybe I might have

11  thought I – because often when I get a proposed – a request

12  to approve bidding procedures and process, typically I will

13  see an Order attached.  And I thought I did.  But I—

14       MR. BURNETT:  -- Just the bid procedures.  Yes, given

15  the complexity, we did the bid procedures, and this is the

16  Sale Order.

17       THE COURT:  All right.  Look, John, put it back up

18  and let me make sure, because I thought I saw this.

19  Apparently, I didn't.  I thought I – I have seen enough of

20  them that I – I guess I thought I saw one.  Because as I said,

21  --

22       MR. BURNETT:  -- No,--

23       THE COURT:  -- they are often attached, and then I

24  have to make sure I don't sign that when I sign the Bid

25  Procedures Order.

Case 21-10047-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 21 Transcript Page 55 of 63

54

```
1           MR. BURNETT:  Right.

2           THE COURT:  Okay.  See they did the Purchase

3    Agreement, yes.  Uh oh, it kicked you back out, John?

4           THE COURT DEPUTY:  Of course.

5           THE COURT:  Eileen, was that also sent to you?  I

6    think you said you got an Order from Mr. Giacometti.  Is that

7    – is that the same thing we are talking about?  So, no, we're

8    not – we don't want that.  I thought attached to that had

9    been a proposed Order, and it wasn't.  So, it is going to be

10   the most latest – it should be one of the later entry on the

11   – on the docket, which is what we are looking at now.  So,

12   there wasn't one.  [Inaudible] for me to look, because I

13   thought I saw one.  But all right, let me just keep going

14   down.  I don't – I want to make sure that there is nothing in

15   here that I would not want to be included.  All right.

16          Yes, as provided.  And the TTB has been whatever it

17   is that you guys have agreed.  Then there are some exhibits

18   that have been attached, that reference whatever that

19   agreement is with respect to the excise tax.  I know there

20   was a reference to a paragraph.  What paragraph was that?

21          MS. JEFFERSON:  Your Honor it is to paragraph 5.

22          THE COURT:  All right.  Did I miss that.  Go back up,

23   John.

24          MS. JEFFERSON:  If you go back up, it's the – it's

25   the very bottom of page seven that provides that the sale is
```

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Doc 01521 Transcript Page 56 of 63

55

1    free and clear of all liens and encumbrances of any kind,

2    other than federal excise tax—

3        THE COURT:  -- Which may be attached to inventory

4    concerning the specifically [inaudible].  Okay.  And then,

5    there was another reference, I guess, to paragraph five.  I

6    just wanted to make sure.

7        There was a reference to Mr. Hamermesh's client.  Was

8    that – what paragraph was that?

9        MS. JEFFERSON:  Yes, Your Honor.  That is – I'm sorry.

10   That – that is specifically in the Asset Purchase Agreement.

11       THE COURT:  Okay.  I thought it—

12       MS. JEFFERSON:  Payment of [inaudible].

13       THE COURT:  Right.  I know you, at some point, were

14   referencing certain sections of the Asset Purchase Agreement.

15   And then also the paragraphs where, in the Sale Order, that

16   was.

17       MS. JEFFERSON:  Yes.

18       THE COURT:  Right.

19       MS. JEFFERSON:  Your Honor, that's what –

20       THE COURT:  -- [Inaudible].

21       MS. JEFFERSON:  Yes.  That was with respect to the

22   $300,000.00 cash holdback and the $50,000.00 carve out.

23   Those are addressed in paragraphs 17 and 18 of the Order.

24       THE COURT:  Okay.  Let's see that.

25       MS. JEFFERSON:  Paragraph 17 addresses PNC's backstop,

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Docment 21 Transcript Page 57 of 63

56

1   of the carve out.  Carve out is as defined in the Asset

2   Purchase Agreement, and it is prefunded by PNC.

3           THE COURT:  Right.  And we talked about the pre's so

4   that PNC would not – would not release funds or claims for –

5   without the Debtor's approval.  That is that process in – in

6   18?

7           MS. JEFFERSON:  That is correct, Your Honor.

8           THE COURT:  Okay.  Let me see the next one.  Well, we

9   kind of skipped around, but offering of the Buyer, subject to

10  the conditions [inaudible] unpaid administrative claims, all

11  of which are defined in the Asset Purchase Agreement.

12  Correct, counsel?

13          MS. JEFFERSON:  That is correct.

14          THE COURT:  Okay.  Next paragraph, John.  All right,

15  363f protection, this is the [inaudible].  Okay.  Keep going.

16  So, counsel, is there anything other than the standard

17  language that says, you know, what is supposed to happen with

18  this – what the terms – what the effect is, or any other

19  terms, other than just basically saying what the legal

20  consequences are, after the paragraph 24?  Because it seems

21  like where do we – John, go down.  Because I am assuming

22  there are some exhibits.  That's why we are all the way up

23  here.  Okay.  Same Order.  Keep going.  Yup.  Okay.  So,

24  that's the end of the Order.  And then there is the Asset

25  Purchase Agreement, of which we have seen the black line and

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:20:32 Desc Main
Exhibit Ex. D Document 21 Transcript Page 58 of 63

57

1    the clean copy, which was Exhibit 2 and 3, I think.

2            MR. BURNETT:  Correct, Judge.

3            THE COURT:  All right.  All right.  And then, I think,

4    are there – are there any other exhibits to the Agreement,

5    other than I – there were some references to certain

6    agreements, I mean certain documents.  That's the Asset

7    Purchase Agreement.  What – there's the schedules that the

8    parties were referring to, because I think, at one point, Ms.

9    Jefferson made a – something was added to 1.03.  What was it

10   that was added?

11           MS. JEFFERSON:  That is correct, Your Honor.  The

12   United States of America, on behalf of the TTB, was added as

13   an assumed liability, at the end of Schedule 1.03.

14           THE COURT:  Okay.

15           MS. JEFFERSON:  And they are at the very bottom.

16           MR. BURNETT:  But it's there.  Yes, correct.

17           THE COURT:  Counsel, I am going to have to apologize.

18   I have to hold again, once.

19           [PAUSE IN PROCEEDING]

20           THE COURT:  All right, counsel, I promise this is the

21   last interruption for today.  And so, they were – they were

22   added at 1.03.  Okay.  And their lien is secured by the

23   inventory.  And that is the inventory as of – you negotiated

24   whatever that time period, or is the inventory that is being

25   sold pursuant to the Asset Purchase Agreement?

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:28:32 Desc Main
Exhibit Ex. Doc 1521 Transcript Page 59 of 63

58

1          MS. JEFFERSON:  Your Honor, it is the inventory that

2     is being sold pursuant to the Asset Purchase Agreement, that

3     would be the inventory that the lien is still attached to.

4          THE COURT:  Okay.  Because obviously, if there is any

5     other excise, it will be post-sale and from what I understand,

6     the Purchaser also has – is an approved distributor or

7     approved by the TTB.

8          MS. JEFFERSON:  That's – that is correct, Your Honor.

9     And I've – I've learned a little about this process

10    throughout the case.  But because Millstone is a licensed

11    distiller of distilled spirits, and has a TTB license on file,

12    they are permitted to take – take possession of and title to

13    the distilled spirits under bond, which means that the excise

14    tax will not be payable until we actually sell it to a third

15    party.

16         THE COURT:  So, okay.  All right.  And so, the other

17    paragraphs relates to the mortgage, and the real property,

18    correct?

19         MS. JEFFERSON:  Those are the – yes, those are the

20    title exceptions.

21         THE COURT:  Okay.  Scheduled for disclosure,

22    perpended exceptions.  Is there anything else?  I mean

23    because we didn't talk about that.  But that - that's why I

24    asked what was being sold.  And then, the exceptions are the

25    liens, the different vehicles,  pay care, okay.  And what is

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc 01521 Transcript Page 59 of 62    Page 60 of 63

59

1    the next exhibit is – and that related to the – there were

2    none.  And the Chapter 5 issue that Mr. Callahan raised,

3    related to claims against the purchaser or their affiliates,

4    correct?

5         MS. JEFFERSON:  That is correct, Your Honor.  And

6    that is Section 101k of the Asset Purchase Agreement, and

7    decretal paragraph 10 of the Order, that makes very clear

8    that the only Chapter 5 causes of action being sold to the

9    Buyer relate to those claims that would be against the Buyer,

10   its affiliates, and the holders of assumed liabilities.  So,

11   a very limited universe of parties.

12        THE COURT:  Are there any other Chapter 5 claims?

13   Because I think Mr. Callahan was satisfied there aren't any

14   claims under 547, 548, are any of those things?  And if they

15   are, they are not being sold, if they are, correct?

16        MS. JEFFERSON:  Correct.  There – there may be some.

17   They will remain with the estate.

18        THE COURT:  Okay.  Okay.

19        MR. BURNETT:  Correct.

20        THE COURT:  And those are the only agreements.  And

21   they have agreed, I think something about they are going to

22   retain, to an extent, I guess, I'm not sure of the process,

23   the – there is approximately 80 employees.  Eighty composed –

24   comprised of full and part time employees, correct?

25        MS. JEFFERSON:  That is correct, Your Honor.  It is

Case 21-11750 Doc 1898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Document 1521 Transcript Page 61 of Page 61 of 63

60

1    the – the Asset Purchase Agreement does not obligate the

2    Buyer to retain all those employees.  But it is our intention

3    to do so, to the greatest extent possible.  And it – it was

4    an item that we have teed up for the period in between entry

5    of the Sale Order and closing, to – to figure out exactly how

6    we are going to handle that, with the Debtor.  But it is our

7    intention to keep as many of the employees as we possibly can,

8    and keep this as a—

9         THE COURT:  -- One of the questions – one of the

10   questions that no one asked, and I guess I sort of thought

11   about it in a – in a passing [inaudible].  I understand that

12   the principle of the company is not being retained.  Is any

13   of his family members being retained as employees, or have

14   any post-sale agreements, with the Buyer?

15        MS. JEFFERSON:  There are none.

16        MR. BURNETT:  Your Honor, I believe he testified – oh,

17   I'm sorry.  Go ahead, Ms. Jefferson.  I believe he testified

18   the answer to those questions are no.  And the answer – the

19   answer that counsel—

20        THE COURT:  -- Well, no, it was as to him.  I don't

21   think – did Mr. Callahan ask him about his family?

22        MR. BURNETT:  He – he did, Your Honor.

23        THE COURT:  Oh, okay.  I must have missed it.  I'm

24   sorry.  All right.  Anybody, I mean I think the Order is fine.

25   I don't have any other questions.  Does anyone else have any

1    issue with respect to the proposed Order, since it was filed

2    this morning?  Did every – I am assuming everybody had an

3    opportunity to review.  Is there any comment, questions,

4    concerns, that anyone has with respect to the Order that I

5    would be entering approving the sale?

6          Okay, hearing no comments, I will approve the sale

7    and issue – and sign the Order, the proposed Order that has

8    been submitted by the Debtor.  Is there anything else that

9    anyone else wish to bring to the Court's attention, or think

10   that the Court needs to address, with respect to this matter

11   – for today?

12         MS. JEFFERSON:  None from the Buyer.  Thank you for

13   your time, Your Honor.

14         MR. BURNETT:  Thank you very much, Your Honor.  We

15   greatly appreciate your time.

16         THE COURT:  Okay.  Having – having heard no comments,

17   this will conclude the matters that are scheduled before the

18   Court today.  Court is adjourned until tomorrow at 9:30.

19   Thank you counsel, and thank you for your indulgence.

20         MS. JEFFERSON:  Thank you.

21         MR. BURNETT:  Thank you very much.

22         FEMALE VOICE:  Thank  you, Your Honor.

23         THE COURT:  All right.  Bye bye.

24   (Proceedings concluded at 3:47 p.m.)

25

Case 21-11750-mmm Doc 898-2 Filed 10/29/24 Entered 10/29/24 23:26:32 Desc Main
Exhibit Ex. Doc Ex 21 Transcript Page 62 of 63 Page 63 of 63

62

```
 1                              CERTIFICATE

 2     I, Joyce A. Waser, court approved transcriber, certify that

 3     the foregoing is a correct transcript from the official

 4     electronic sound recording of the proceedings in the above-

 5     entitled matter.

 6

 7

 8

 9     _____              October 11, 2021

10       JOYCE A. WASER                       DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```