# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

In re:

MIDNIGHT MADNESS DISTILLING

      Debtor.

_____/

 

BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling,

      Plaintiff,

v.

CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG, KELLY FESTA, ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZESNKI; POLEBRIDGE LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.

      Defendants.

_____/

Case No.: 21-11750-MDC

Chapter 7 Case

Adv. Pro. No.: 23-00047-MDC

JURY TRIAL DEMANDED

## REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOVING DEFENDANTS' MOTION TO DISMISS AMENDED ADVERSARY COMPLAINT

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND** ...................................................................................................... 2

**ARGUMENT** ........................................................................................................... 3

I.     **THIS COURT CANNOT CONSIDER ANY FACTS OR EXHIBITS THE TRUSTEE PLEADS FOR THE FIRST TIME IN HER RESPONSE IN OPPOSITION.** ............................................................................................... 3

    A.    The Court cannot consider facts and exhibits that go "beyond the four corners" of the Amended Complaint. ...................................................... 4

        i.    The new facts go "beyond the four corners" of the Complaint and must be stricken. ................................................................................ 4

        ii.    All the exhibits included with the Response in Opposition must be stricken. ........ 6

        iii.    Exhibit F improperly purports to retroactively transfer back causes of action, such that applicable statutes of limitations would bar most claims. ....................... 6

    B.    The Trustee cannot keep amending her allegations in a futile attempt to fabricate a set of facts that is sufficient. ............................................ 9

II.    **THERE IS NO STANDING BECAUSE THE TRUSTEE DOES NOT POSSESS THE UNDERLYING ASSETS AND THE TRUSTEE CANNOT RETROACTIVELY MANUFACTURE STANDING AFTER THE CASE WAS FILED.** ............................................................................................... 10

    A.    Standing can be raised by any party or the Court at any phase of the litigation through the final disposition. ............................................ 10

    B.    "All assets" other than those specifically excluded were sold as part of the Sale Order. ........................................................................... 12

        i.    The Trustee is bound by the terms of the APA and Sale Order. ....................... 13

        ii.    Nothing said during oral argument modifies the Sale Order. ....................... 17

    C.    Standing is determined at the time of filing and cannot be retroactively cured. ........ 18

III.    **THIS COURT MUST CONSIDER EACH OF THE MOVING DEFENDANTS' ARGUMENTS IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT.** .............................................................. 19

    A.    The "law of the case" doctrine is inapplicable where a party has filed an Amended Complaint. .................................................................... 19

    B.    Claim One for breach of fiduciary duty against Baldwin fails because Baldwin owed no such duty to the Debtor. ........................................... 21

    C.    Claim Two for aiding & abetting breach of fiduciary duty fails because the Trustee did not link any specific actions to specific Defendants. ............... 21

    D.    Claim Four (A) for alter ego and/or piercing the corporate veil fails because the

Corporate Defendants were not members of the Debtor and the Trustee did not
adequately plead fraud as to the Moving Defendants. ................................................ 22

E.   Claim Four (B) for successor liability fails as a matter of law because the
Corporate Defendants are not the Plaintiff's successor. ............................................ 22

F.   Claim Five for unjust enrichment fails because there is a written contract. ............... 23

G.   Claim Ten for equitable subordination fails as a matter of law because the Trustee
has not adequately alleged the elements. .................................................................... 23

H.   Claim Eleven fails to state a claim for turnover. ........................................................ 24

**CONCLUSION** ......................................................................................................................... **24**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1228 Investment Group, L.P. v. Hub Group, Inc.*,
    635 F. Supp. 3d 381 (E.D. Pa. 2022) ...................................................................18

*Appel v. Kaufman*,
    728 F. Supp. 2d 684 (E.D. Pa. 2010) .......................................................................8

*Beltz v. Erie Indem. Co.*,
    279 F. Supp. 3d 569 (W.D. Pa. 2017).......................................................................8

*In re Burlington Coat Factory Security Litigation*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................................4

*Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*,
    585 B.R. 850 (B.A.P. 6th Cir. 2018).......................................................................10

*Cosby v. American Media, Inc.*,
    197 F. Supp. 3d 735 (E.D. Pa. 2016) .....................................................................23

*Cottrell v. Alcon Labratories*,
    874 F.3d 154 (3d Cir. 2017)....................................................................................12

*Creative Data Forms, Inc. v. Pennsylvania Minority Business Development
    Authority (In re Creative Data Forms, Inc.)*,
    41 B.R. 334 (Bankr.E.D.Pa. 1984) ...................................................................4, 24

*In re Emoral, Inc.*,
    740 F.3d 875 (3d Cir. 2014)..............................................................................22, 23

*Hollenshead v. New Penn Financial, LLC*,
    447 F. Supp. 3d 283 (E.D. Pa. 2020) .....................................................................23

*K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*,
    689 F. Supp. 3d 35 (E.D. Pa. 2023) .......................................................................17

*Kenrich Corp. v. Miller*,
    256 F. Supp. 15 (E.D. Pa. 1966) ............................................................................17

*In re Koger*,
    No. 24-21081-GLT, 2024 WL 4177876 (Bankr. W.D. Pa. Sept. 9, 2024)..............14

*Meyer v. Delaware Valley Lift Truck, Inc.*,
    392 F. Supp. 3d 483 (E.D. Pa. 2019) .....................................................................23

*Midwest Athletics & Sports Alliance LLC v. Ricoh USA, Inc.*,
   No. CV 19-514, 2019 WL 3387061 (E.D. Pa. July 25, 2019).................................................18

*In re National Equipment & Mold Corp.*,
   64 B.R. 239 (N.D. Ohio 1986)...............................................................................................15

*Pennsylvania Voters Alliance v. Center County*,
   496 F. Supp. 3d 861 (M.D. Pa. 2020) ..............................................................................11, 12

*Planck v. Anderson*,
   5 T. R. 37, 41, 101 Eng. Rep. 21, 23 (K. B. 1792) ...............................................................12

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
   917 F. Supp. 305 (D. Del. 1995)...........................................................................................18

*Riffin v. Consolidated Rail Corp.*,
   363 F. Supp. 3d 569 (E.D. Pa. 2019) ....................................................................................17

*In re S. Canaan Cellular Investments, LLC*,
   No. 09-10473, 2010 WL 3306907 (E.D. Pa. 2010) ..............................................................21

*Saint-Jean v. Palisades Interstate Park Comm'n*,
   49 F.4th 830 (3d Cir. 2022) .............................................................................................20, 21

*Sansom Comm. v. Lynn*,
   366 F. Supp. 1271 (E.D. Pa. 1973) .....................................................................................5, 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)...............................................................................................................11

*Sunrise Medical HHG, Inc. v. AirSep Corp.*,
   95 F. Supp. 2d 348 (W.D. Pa. 2000)....................................................................................17

*T.R. v. School District of Philadelphia*,
   458 F. Supp. 3d 274 (E.D. Pa. 2020) ....................................................................................20

*United States v. $39,557.00, More or Less, in U.S. Currency*,
   683 F. Supp. 2d 335 (D.N.J. 2010) .......................................................................................10

*United States v. Contents of Accts. Numbers 3034504504 & 144-07143 at Merrill
   Lynch, Pierce, Fenner & Smith, Inc.*,
   971 F.2d 974 (3d Cir. 1992)..................................................................................................14

*Virginia House of Delegates v. Bethune-Hill*,
   587 U.S. 658 (2019)...............................................................................................................11

*Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*,
   959 F.3d 569 (2020)...............................................................................................................11

*Wiest v. Lynch*,
    15 F. Supp. 3d 543 (E.D. Pa. 2014) ..........................................................................20

*Yaw v. Delaware River Basin Commission*,
    49 F.4th 302 (3d Cir. 2022) ...........................................................................11, 18

*Zane v. Friends Hospital*,
    836 A.2d 25 (Pa. 2003) ..........................................................................................20

**Statutes**

42 Pa. C.S. § 5524(7) .........................................................................................................8

15 Pa. Code § 8815(d)(3) ................................................................................................21

15 Pa. Code § 8849.2 .......................................................................................................21

11 U.S.C.A. § 549(d) .........................................................................................................9

**Other Authorities**

18B Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure*
    § 4478 (3d ed.) ..................................................................................................20

Fed. R. Civ. P. 15(a)(2).......................................................................................................9

U.S. Const. art. III, § 2, cl. 1 ............................................................................................11

**REPLY TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOVING
DEFENDANTS' MOTION TO DISMISS AMENDED ADVERSARY COMPLAINT**

Defendants, Casey Parzych ("**Casey**"); Angus Rittenburg; Ashleigh Baldwin; Michael
Boyer; Kelly Festa; and R.F. Culbertson (collectively, the "**Individual Defendants**"); Polebridge,
LLC; Good Design, Inc.; AgTech PA LLC; AgTech VI, LLC ("**AgTech VI**"); XO Energy
Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; EtOH Worldwide, LLC ("**EtOH**"); and Canvas
340 LLC (Canvas 340 LLC, with Polebridge, LLC, Good Design, Inc., AgTech PA LLC, AgTech
VI, XO Energy Worldwide, LLLP, XO EW, LLC, Best Bev, LLC and EtOH the "**Corporate
Defendants**"); and Shawn Sheehan (collectively, with the Individual Defendants and the
Corporate Defendants, the "**Moving Defendants**"), file this Reply ("**Reply**") to Plaintiff's
Memorandum of Law in Opposition ("**Response in Opposition**") to Moving Defendants' Motion
to Dismiss ("**Motion to Dismiss**") the Amended Adversary Complaint, AP D.E. #44,[1] ("**Amended
Complaint**" or "**Am. Compl.**") filed against them by Plaintiff, Bonnie B. Finkel ("**Trustee**"), the
Chapter 7 Trustee for the debtor, Midnight Madness Distilling LLC f/k/a Theobald and
Oppenheimer, LLC d/b/a Faber Distilling ("**Debtor**"). In support of their Reply, the Moving
Defendants respectfully state as follows:

**PRELIMINARY STATEMENT**

As stated in the Moving Defendant's Motion to Dismiss, the Amended Complaint suffers
from multiple fatal pleading flaws, wherein the Trustee plead vague and unclear causes of action
against 21 disparate defendants ("**Defendants**"), making it impossible to determine which of the
21 Defendants committed which alleged act in violation of a specific cause of action. Despite the
Debtor selling substantially all its assets to Millstone Spirits Group, LLC ("**Millstone**"), an

---

[1] All references to the Main Proceeding docket, Case No. 21-11750, are designated by "MP" whereas all references
to the Adversary Proceeding docket, Case No. 23-00047, are designated by "AP".

unrelated third-party in a Court-approved sale pursuant to Section 363 of the Bankruptcy Code, via the Order Granting Motion to Sell Assets (the "**Sale Order**"), MP D.E. #178, the Trustee attempts to allege that 21 Defendants somehow coordinated to pilfer the Debtor's estate, unnoticed and in real time. Each of the Trustee's claims discussed below fail as a matter of law, but even if the Trustee could sufficiently plead claims, the Trustee still lacks standing to assert the vast majority of her claims.

## **BACKGROUND**

The Debtor was a member-managed limited liability company ("**LLC**") that operated a distillery and co-packaging plant in Bucks County, Pennsylvania. The Debtor predominately concentrated on manufacturing its own spirits, but also manufactured and packaged products for other parties, including some of the Moving Defendants. *See e.g.* Am. Compl. ¶ 7. For several reasons, including the COVID-19 pandemic, the Debtor defaulted on its loan obligations on February 28, 2021. Am. Compl. ¶ 106. The Debtor spent months attempting to negotiate with its lenders, but ultimately filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 21, 2021 (the "**Petition Date**"). *See* Am. Compl. ¶ 7.

At the time the Debtor filed its petition, it had negotiated an offer from EtOH to purchase substantially all the Debtor's assets for a cash purchase price of $1,025,000.00, plus the assumption of the Debtor's trade debt, cure costs, and first lien mortgage, plus continued employment for substantially all the Debtor's employees. MP D.E. #4, ¶ 12. The Debtor conducted a competitive sale process and auction. After several rounds of bidding, Millstone, a competitor of the Debtor, made the successful bid to purchase substantially all of the Debtor's assets for more than $1.4 million in cash, plus other consideration. The sale to Millstone was approved by order of this Court on September 17, 2021 via the Sale Order. MP D.E. #178. On October 13, 2021, the case was

converted to Chapter 7. *See* Order Granting Motion to Convert Case to Chapter 7. MP D.E. #191.

On June 15, 2023, the Trustee commenced this adversary proceeding by filing her initial Complaint ("**Complaint**"). AP D.E. #1. The Complaint spanned 75 pages and alleged 14 claims against 21 separate defendants.[2] The Moving Defendants moved to dismiss the Complaint for a variety of deficiencies under Fed. R. Civ. P. ("**Rule**") 8 and 12(b)(6). *See* Motion to Dismiss Adversary Complaint ("**First Motion to Dismiss**"). AP D.E. #17. The Court entered an Order granting in part and denying in part the First Motion to Dismiss. *See* AP D.E. #40. That Order dismissed five claims without prejudice. The Trustee filed an Amended Complaint on August 22, 2024, including 12 of the 14 original claims from its Complaint. *See* Amended Complaint. AP D.E. #44. On September 30, 2024, the Moving Defendants filed a Motion to Dismiss the Amended Complaint, raising new arguments responsive to the allegations in the Amended Complaint and challenging the Trustee's standing to bring the claims. The Trustee then filed her Response in Opposition on October 29, 2024, which spans 84 pages—more than half of which *contain new facts* not included in either the initial Complaint or the amended Complaint—and attaches an additional *6 new exhibits* provided to Moving Defendants and this Court for the first time.

## ARGUMENT

### I.   THIS COURT CANNOT CONSIDER ANY FACTS OR EXHIBITS THE TRUSTEE PLEADS FOR THE FIRST TIME IN HER RESPONSE IN OPPOSITION.

The Trustee bases her Response in Opposition on impermissible 'facts' and exhibits that were not part of the Amended Complaint, but were disclosed for the first time in the Response in Opposition. Facts and exhibits that go "beyond the four corners" of the Amended Complaint

---

[2] The summaries and quotations of the facts herein are taken directly from the Complaint, Amended Complaint, and Response in Opposition. The Moving Defendants do not concede any of these allegations unless otherwise indicated.

cannot be considered at the motion to dismiss stage. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, the Trustee cannot keep amending her Complaint—or attempting to plead additional facts in motions to dismiss—in an attempt to cobble together a set of facts that simply does not exist.

A.    **The Court cannot consider facts and exhibits that go "beyond the four corners" of the Amended Complaint.**

When deciding a motion to dismiss, courts may not consider extraneous facts not contained in the four corners of the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). Here, more than half of the Response in Opposition contains new facts and allegations that cannot be considered by the Court. Likewise, the Trustee attached new exhibits that also cannot be considered by the Court. Most troubling is Exhibit F, which purports to be a conditional assignment from Millstone to the Trustee intended to "cure" the defects in standing discussed at length in Moving Defendants Motion to Dismiss. Putting aside the inability of a *ex post facto* assignment to create standing, if accepted by this Court, Exhibit F would actually conclusively prove that many of the causes of action would be subject to dismissal for having been asserted outside the applicable statute of limitations.

Because the Trustee's Response in Opposition is based wholly on impermissible 'facts' and exhibits that fall outside the operative pleading, this Court should disregard the Trustee's Response in Opposition and grant the Moving Defendants' Motion to Dismiss in its entirety.

i.    **The new facts go "beyond the four corners" of the Complaint and must be stricken.**

The first 38 pages of the Trustee's Response in Opposition is a veiled attempt to rewrite the facts of a severely deficient Amended Complaint by adding additional facts that go "beyond the four corners" of the Amended Complaint. As if the 198 paragraphs comprising 56 pages of

facts in the Amended Complaint were not enough, the Trustee added an additional 38 pages to the

Response in Opposition. There is no way to determine the full extent of the new factual information

the Trustee included within the Response in Opposition, but none of the facts included in the

Response in Opposition can be considered by the Court for purposes of this Motion to Dismiss.

*See In re Burlington*, 114 F.3d at 1426.

Moreover, the Trustee attempts to bolster the allegations in the Amended Complaint by

weaving in her new 'facts' throughout the argument sections of the Response in Opposition in an

attempt to cure the otherwise deficient claims. A plaintiff cannot use a brief in opposition a motion

to dismiss to effectually amend their complaint and include additional factual information or

claims not in the initial pleading. *See Sansom Comm. v. Lynn*, 366 F. Supp. 1271, 1278 (E.D. Pa.

1973) ("The Court is faced here with a literal failure to state a claim. It would be unfair to

defendants to make them infer all claims that could possibly arise from the law or facts set forth

in the complaint. The proper means of raising claims that have inadvertently not been raised in the

complaint is an amended complaint, not a brief in opposition to a motion to dismiss. Plaintiffs'

claim will therefore be dismissed.").

For example, beginning on page 62 of the Response in Opposition, the Trustee creates a

chart that spans 4 pages and categorizes otherwise vague allegations by the Defendant to which

they allegedly pertain. On those same pages, the Trustee provides additional factual information

about each of the Defendants. None of this information was organized and pled in this manner in

the Amended Complaint, and it certainly cannot be pled in the Response in Opposition to cure the

deficiencies in the Amended Complaint. Because this case is presently at the motion to dismiss

stage, this Court cannot consider any of the 'facts' contained in the Response in Opposition and

must look only to the facts contained in Amended Complaint.

**ii.      All the exhibits included with the Response in Opposition must be stricken.**

Despite not attaching a single substantive exhibit to the Amended Complaint, the Trustee improperly attached never-before-seen exhibits to the Response in Opposition. The Trustee does not make even a passing argument as to why these exhibits should be considered when they were absent from the initial pleadings. For the same reasons as set forth above, all the exhibits included with the Response in Opposition must be stricken and not considered by this Court at this motion to dismiss stage, because they fall outside of the "four corners" of the Amended Complaint.

Indeed, the only document that may be considered by this Court is the APA, which Moving Defendants included with their Motion to Dismiss and that the Trustee quoted throughout the Amended Complaint. The remainder of the exhibits in the Response in Opposition should not be considered by the Court. *See, e.g.*, *In re Burlington*, 114 F.3d at 1426; *Sansom Communication*, 366 F. Supp. at 1278

**iii.      Exhibit F improperly purports to retroactively transfer back causes of action, such that applicable statutes of limitations would bar most claims.**

As argued in the Motion to Dismiss, following the execution of the Sale Order, all the assets, and by extension causes of action pertaining to those assets, were sold to Millstone. Thus, at the time the Trustee initiated this action, the estate did not own any of the assets that were a predicate for filing the causes of action alleged. To cure this defect, the Trustee manufactured Exhibit F, a Conditional Assignment of Claims and Declaration of Robert Cassell executed October 25, 2024 ("**Conditional Assignment**") after the Trustee filed the Complaint, Amended Complaint, and the Moving Defendants filed their Motion to Dismiss. The Trustee argues that "causes of action" were not sold to Millstone but, if they were transferred, the "causes of action" have been transferred back by the Conditional Assignment.

As a threshold matter, the flaws in the half-baked effort to retroactively confer standing are

discussed in detail in § 2(c) of this Reply. In this section, Defendants focus on the impact of the Conditional Assignment on the merits of the various claims at issue. Specifically, the fact that the Conditional Assignment fails to address the arguments raised in Motion to Dismiss and, if accepted, raises fatal statute of limitations issues for the Trustee.

As an initial matter, the Conditional Assignment wholly misses the mark. Through the Motion to Dismiss, the Defendants noted the APA transferred the "business" of the Debtor, including all "business" related assets. Defendants further noted that once the assets were transferred, the right to assert claims related to those assets belonged to Millstone. For example, prior the APA, the Trustee could theoretically initiate a turnover action to recover, for example, equipment. Following the APA, that equipment was transferred to and owned by Millstone. Meaning Millstone then possessed the right to file a conversion claim to recover the equipment, but the Trustee no longer had an interest in the equipment and, by extension, the right to assert a turnover claim. The Trustee misunderstood the Defendants position and concluded the Motion to Dismiss argued the APA transferred "causes of action."  To "cure" this issue, the Conditional Assignment purports to transfer back certain "causes of action." The document does not, however, even contemplate transferring back the underlying assets that serve as the predicate for those causes of actions. In that regard, the Conditional Assignment fails to address Defendants argument in the Motion to Dismiss.

Additionally and assuming causes of action were transferred to Millstone and then transferred back to the Trustee, the Conditional Assignment is ineffective because it fails to relate back to the initial filing date. As a result, the statute of limitations associated with the various cause of action expired during the period the assets and, by extension the causes of action, were owned by Millstone. No amount of creating drafting and no language in a conditional assignment can

revive claims transferred to the Trustee that had expired prior to the date of the Transfer. Since the claims expired when held by Millstone, the Trustee cannot rely upon the relation back doctrine to revive the clearly lifeless claims.

So even if this Court were to find that the APA transferred the Trustee's causes of action and all related assets (it should) and that the Conditional Assignment is effective (it should not), the Conditional Assignment was not executed by Millstone until October 25, 2024. *See* Response in Opposition, Exhibit F. Due to the date of the assignment, the following claims are time-barred under the relevant two-year statutes of limitations, because these claims are based on events that took place between June 21, 2021 and September 20, 2021, over three years prior to the execution of the Conditional Assignment on October 25, 2024:

- <u>Claim One</u>:  Breach of Fiduciary Duty. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort); *see also Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 581 (W.D. Pa. 2017), *aff'd*, 733 F. App'x 595 (3d Cir. 2018).

- <u>Claim Two</u>:  Aiding and Abetting Breach of Fiduciary Duty. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort); *see also Beltz*, 279 F. Supp. 3d at 581.

- <u>Claim Three</u>:  Corporate Waste. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort); *see also Beltz*, 279 F. Supp. 3d at 581.

- <u>Claim Four A</u>: Alter Ego/Piercing the Corporate Veil. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort).

- <u>Claim Four B</u>: Declaratory Relief. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort); *see also Appel v. Kaufman*, 728 F. Supp. 2d 684, 700 (E.D. Pa. 2010), *aff'd*, 481 F. App'x 774 (3d Cir. 2012) ("[D]eclaratory claims are subject to the two-year statute of limitations for fraud under 42 Pa.C.S. § 5524(7)").

- <u>Claim Ten</u>: Equitable Subordination. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations for general tort claims and claims that are based in tort);

*Appel*, 728 F. Supp. 2d at 698("[I]t is well established that equity will frequently adopt and apply the statute of limitations which controls analogous proceedings at law.").

- <u>Claim Twelve</u>:  Avoidance and Recovery of Postpetition Transfers. 11 U.S.C.A. § 549(d) (establishing that the statute of limitations runs two years after the date of the transfer sought to be avoided or the time the case is closed or dismissed, whichever is earlier).

For the foregoing reasons, Claims One, Two, Three, Four A, Four B, Ten, Eleven, and Twelve are barred by applicable two-year statutes of limitations and must be dismissed, because the causes of action and/or the assets relating thereto belonged to Millstone at the time the Trustee initiated this action, and the applicable statute of limitations passed before the claims were purportedly transferred back to the Trustee.

**B.      The Trustee cannot keep amending her allegations in a futile attempt to fabricate a set of facts that is sufficient.**

The Trustee argues in her Response in Opposition that, should the Court grant the Motion to Dismiss in whole or in part, the "dismissal [should be] be without prejudice so that the Trustee may amend the complaint with respect to any claim deemed insufficient." Response in Opposition pg. 84 n.20.  At this stage in the litigation, the Trustee already had the opportunity to amend the complaint once, and Fed. R. Civ. Proc. 15(a)(1) prohibits the Trustee from further amending the complaint as a matter of course. Any further amendments require leave of court following a motion or the consent of the opposing party - the Trustee sought neither, *see* Fed. R. Civ. Proc. 15(a)(2). Additionally, the Trustee cannot continue to amend its complaint in an attempt to manufacturer the facts necessary to survive a motion to dismiss because such attempts would be futile. *See Parker v. Google, Inc.*, 242 F. App'x 833, 839 (3d Cir. 2007) (internals omitted) (affirming the denial of the plaintiff's motion for leave to file a second amended complaint). *Borough of Quakertown v. Verizon Commc'ns, Inc.*, 380 F. Supp. 3d 461, 462 (E.D. Pa. 2019) ("repeated failure to cure deficiencies in previous amendments can also be a reason for denial.").

## II.     THERE IS NO STANDING BECAUSE THE TRUSTEE DOES NOT POSSESS THE UNDERLYING ASSETS AND THE TRUSTEE CANNOT RETROACTIVELY MANUFACTURE STANDING AFTER THE CASE WAS FILED.

The Trustee has no standing to bring in the Amended Complaint claims relating to the business or business assets of the Debtor that were transferred through the APA. Any efforts by the Trustee to manufacture standing after the outset of this action must be rejected by the Court as too little too late. Moreover, contrary to the Trustee's assertions, an issue of standing can be raised by any party or the Court at any phase of the litigation. Because all assets other than those specifically excluded were sold as part of the Sale Order, the Trustee has no standing to bring causes of action related to those assets. Lastly, because standing is determined at the time of filing, Exhibit F is an improper attempt to manufacture standing where none exists.

The key requirement for establishing standing under Article III is that the party demonstrate a substantial, immediate, and direct interest in the property or subject matter to have standing to sue. *See, e.g. United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F. Supp. 2d 335, 341 (D.N.J. 2010) ("To perfect Article III standing, a potential claimant must demonstrate ownership or interest in the [property] sufficient to create a 'case or controversy.' The potential claimant bears the burden of proving ownership by a preponderance of the evidence." (internals omitted)). This typically involves showing ownership, a possessory interest, or a concrete and particularized injury. The Trustee must demonstrate standing for each asset and cause of action. *See Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 585 B.R. 850 (B.A.P. 6th Cir. 2018) ("The Trustee assigned the claims asserted in the 2017 Complaint to Creditor upon entry of the Sale Order. Thus, the Trustee transferred away the right to pursue the claims asserted in the 2017 Complaint in 2011. When this occurred, Trustee lost legal standing to asset those claims.").

### A.     Standing can be raised by any party or the Court at any phase of the litigation through the final disposition.

The Trustee has not and cannot establish standing for the causes of action in the Amended Complaint, so she instead makes an argument that the Moving Defendants "belatedly—over fifteen months after this adversary proceeding was filed—argue that the Trustee lacks standing." Response in Opposition at pg. 2. The Trustee's strong rhetoric is just that—rhetoric used in an attempt to persuade the Court that the Moving Defendants are somehow in the wrong for raising the issue of standing. It is well settled, however, that lack of standing can be raised by any party, or *sua sponte* by the Court, at any phase of litigation through final disposition of the case. *See Pennsylvania Voters*, 496 F. Supp. 3d at 867 ("[F]ederal courts 'have an obligation to assure themselves of litigants' standing under Article III.' As the United States Court of Appeals for the Third Circuit has explained, the 'continuing obligation to assure that [courts] have jurisdiction requires that [they] raise the issue of standing sua sponte.'").

To establish Article III standing, the Constitution requires a plaintiff to identify an injury in fact that is fairly traceable to the challenged conduct and to seek a remedy likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016). Federal courts have a continuing obligation to assure themselves of litigants' standing under Article III, which requires them to raise the issue of standing sua sponte if necessary. *Pennsylvania Voters Alliance v. Centre County*, 496 F.Supp.3d 861 (2020); *Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*, 959 F.3d 569 (2020). This obligation persists throughout all stages of litigation, including appellate review. *See Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019).

The burden of establishing standing falls on the plaintiff, as the party invoking federal jurisdiction, and the plaintiff must clearly allege facts demonstrating each element of Article III standing. U.S. Const. art. 3, § 2, cl. 1; *see also Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310–11 (3d Cir. 2022). Those three elements of Article III standing are: (1) an injury in fact,

(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See, e.g.*, *Pennsylvania Voters Alliance v. Centre County*, 496 F.Supp.3d 861 (M.D. Pa. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)); *Cottrell v. Alcon Lab'ys*, 874 F.3d 154 (3d Cir. 2017). Importantly, standing is a claim-by-claim analysis. *See, e.g.*, *Planck v. Anderson*, 5 T. R. 37, 41, 101 Eng. Rep. 21, 23 (K. B. 1792) ("'If no [actual] damage be sustained, the creditor has no cause of action' for some claims"), *quoted in Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).

Here, the Moving Defendant's raised the issue of standing while the parties are still in the initial pleading stage, in the interest of judicial economy and efficiency. *See* Motion to Dismiss pgs. 6–10. As previously explained, all the assets sold to Millstone[3] pursuant to the APA are no longer assets of the Debtor's estate within the control of the Trustee. Therefore, the Trustee cannot assert an injury-in-fact that is fairly traceable—as required to establish standing—to any claims relating to the Debtor's Business operations or assets.

**B.    "All assets" other than those specifically excluded were sold as part of the Sale Order.**

As laid out in the Motion to Dismiss, all the business-related assets were sold as part of the Sale Order, and therefore, the Trustee lacks standing to bring her causes of action. The Trustee misconstrues the Moving Defendants' arguments regarding Chapter Five claims. Unable to refute this with the clear language of the APA, the trustee tries misdirection. The Moving Defendants are not arguing that all Chapter Five causes of action were sold. Rather, as the Moving Defendants argued at length in their Motion to Dismiss, "all assets" that would serve as the underlying basis to recover under any cause of action or Chapter Five cause of action, other than those assets that

---

[3] The Moving Defendants dispute that any assets related to CBD or cannabis-related activities were part of the estate; however, for purposes of this Motion to Dismiss, the Moving Defendants must take all allegations in the Amended Complaint as true.

were specifically excluded, were sold as part of the Sale Order.[4] Neither the Conditional

Assignment, nor the Response in Opposition, nor any of the Trustee's other attempts to misdirect

this Court create standing because: (i) the Trustee is bound by the terms of the APA and Sale

Order, and all the assets and causes of action were sold to Millstone under the APA; (ii) the Trustee

cannot rewrite APA with a Conditional Assignment; and (iii) nothing said during oral argument

modifies the Sale Order or APA.

### i.   The Trustee is bound by the terms of the APA and Sale Order.

The APA and Sale Order are both unambiguous documents which bind both parties.

Nowhere in the Trustee's briefing does she assert those documents are ambiguous, invalid, or

flawed in anyway. Thus, the Trustee cannot now ask that this Court reinterpret or rewrite terms to

which both parties already agreed, in attempt to circumvent one of the most fundamental

requirements for bringing a cause of action—standing. Particularly when that effort involves a

conditional assignment with a retroactive effective date.

The APA is replete with provisions detailing the transfer of assets and related claims. The

Conditional Assignment cannot retrospectively write these transfers out of the APA when those

assets were expressly sold to Millstone. In Moving Defendants' Motion to Dismiss, they went to

great length to show that all underlying assets and causes of actions related to the assets were

transferred. The Trustee, realizing the language of the APA is not helpful to its shaky legal

position, seeks to amend the APA and its Amended Complaint with the Conditional Assignment

---

[4] The Trustee alleges the Moving Defendants are taking a different position than previously advocated because the
Moving Defendants previously argued certain assets were not part of the estate. The Moving Defendants are not
conceding that point and, if the case is not dismissed, will show at summary judgment that any assets related to CBD
or cannabis-related activities were not and could not be part of the estate; however, for purposes of this Motion to
Dismiss, the Moving Defendants must take all allegations in the Amended Complaint as true.

to make the facts more favorable to her positions.

It is undisputed that ownership of a cause of action absent the underlying asset does not imbue a party with standing to sue because "courts have uniformly rejected standing claims put forward by nominal or straw owners. Thus, even possession of legal title to the res may be insufficient to establish standing[.]" *See United States v. Contents of Accts. Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 985 (3d Cir. 1992). The plaintiff in a bankruptcy action, therefore, has the burden of showing a possessory interest in the property protected by the Bankruptcy Code. *See, e.g.*, *In re Koger*, No. 24-21081-GLT, 2024 WL 4177876, at *3–4 (Bankr. W.D. Pa. Sept. 9, 2024) (holding that there was no possessory interest in the property at issue, in a case marked by the "continuous recharacterization of the property's ownership"). A "bare possessory interest is insufficient," and the plaintiff can only "meet his burden by showing a more substantial, protectable interest" in the property at issue. *Id.*

In this case, Section 1.01(k) of the APA confirms the Debtor was not retaining causes of action because Millstone purchased "any claims or causes of action the Seller or its bankruptcy estate **have, had, or may have** against . . . any holder of an Assumed Liability, including, without limitation, any claims or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy Code," and "all intellectual property owned by the Seller" as well as "all goodwill" (emphasis added). And Section 3.07 of the APA warrants there were "no claims, actions, causes of action, demands, lawsuits, arbitrations, inquiries, audits, notices of violation, proceedings, . . . ***pending or, to Seller's knowledge***, ***threatened against*** **or** *by Seller* relating to or affecting the Business, the Purchased Assets, or the Assumed Liabilities" (emphasis added).

Thus, for example, the Trustee did not "transfer" Chapter Five causes of action through the APA. Rather, the estate lacks standing to request turnover of assets because those assets were

already sold to Millstone through the APA. As a result, the estate no longer has an interest in that asset and therefore lacks standing. *See In re National Equipment & Mold Corp.*, 64 B.R. 239, 245 (N.D. Ohio 1986) (noting it is implicit in the turnover statute that the debtor have an interest in the property sought). Millstone now owns the underlying asset and had the right to recover the property via a claim for conversion. Thus, the Trustee does not have standing to bring the claim because the estate sold the underlying asset that would serve as the basis to bring a claim.

Based on the Trustee's representations, one would think only a few assets were sold to Millstone. But the text of the APA itself tells a very different story. The assets included as "Purchased Assets" in the sale, pursuant to the APA, are as follows:

(a) all cash and cash equivalents, with the exception that, to the extent the Available Cash (as defined in Section 1.09(d) herein) on the Closing Date (as defined herein) exceeds $200,000, Buyer agrees to a carve-out of fifty-thousand dollars ($50,000) (the "**Carve Out**") for the Seller's bankruptcy estate, to be disbursed in accordance with the priority scheme provided by the Bankruptcy Code.

(b) all accounts receivable held by Seller ("**Accounts Receivable**");

(c) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts, and other inventories ("**Inventory**");

(d) all Contracts (the "**Assigned Contracts**") that are either (i) set forth on S**chedule 1.01** hereto or (ii) Buyer elects, in its sole discretion, to assume prior to Closing. The term "**Contracts**" means all contracts, purchase orders, equipment and real property leases, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures, and all other agreements, commitments, and legally binding arrangements, whether written or oral;

(e) the following real estate of Seller (collectively, the "**Real Property**"):

[ . . . ]

(f) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones, and other tangible personal property (the "**Tangible Personal Property**");

(g) all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums, and

- 15 –

fees (including any such item relating to the payment of Taxes);

(h) all of Seller's rights under warranties, indemnities, and all similar rights against third parties to the extent related to any Purchased Assets;

(i) all insurance benefits, including rights and proceeds, arising from or relating to the Business, the Purchased Assets, or the Assumed Liabilities and including, without limitation, the benefits accruing to Seller;

(j) originals or, where not available, copies, of all books and records, including books of account, ledgers, and general, financial, and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records, and data (including all correspondence with any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any arbitrator, court, or tribunal of competent jurisdiction (collectively, "**Governmental Authority**")), sales material and records, strategic plans and marketing, and promotional surveys, material, and research ("**Books and Records**");

(k) any claims or causes of action the Seller or its bankruptcy estate have, had, or may have against Buyer or any of its affiliates, or any holder of an Assumed Liability, including, without limitation, any claims or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy Code;

(l) all goodwill and the going concern value of the Purchased Assets and the Business; and

(m) all intellectual property owned by Seller and/or the Seller Subs, including, but not limited to, trademarks, tradenames, copyrights, patents and trade secrets, product formulas, blending formulas and recipes, any TTB approved formulas, and any licenses of any intellectual property.

APA § 1.01.

In short, <u>nearly everything</u> related in any way to the Debtor's business was transferred to Millstone. Again, the only Excluded Assets were liquor licenses, all contracts not assigned, and the "Seller's interest in the Seller Subs." *See* APA Disclosure Schedule 1.02. Because Claims One, Two, Three, Four, Five, Eight, Nine, Ten, and Eleven, and Twelve all relate to the assets detailed above, and because none of those claims related to liquor licenses, all contracts not assigned, and the "Seller's interest in the Seller Subs," *see* APA Disclosure Schedule 1.02, the

claims must be dismissed, *see* APA § 1.01 (listing all assets sold).

Moreover, as a general rule, an assignment of **claims** (as opposed to assets) offends the public policy in Pennsylvania and is unenforceable if the assignee has no interest in the underlying litigation. *See Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 576 (E.D. Pa. 2019), *aff'd*, 783 F. App'x 246 (3d Cir. 2019). Where an attempted assignment ineffectively transfers the right to pursue a cause of action to a transferee, the Court will dismiss the case. *See Kenrich Corp. v. Miller*, 256 F. Supp. 15, 18 (E.D. Pa. 1966), *aff'd*, 377 F.2d 312 (3d Cir. 1967). Because all of the underlying assets were transferred via the Sale Order, the Trustee has no interest in the litigation and any assignment of claims would offend the public policy in Pennsylvania and is therefore unenforceable. The Trustee cannot now bring claims based on those transferred assets, where the Debtor confirmed that no claims existed, including in submissions to this Court when seeking approval of the Sale Order. *See Sunrise Med. HHG, Inc. v. AirSep Corp.*, 95 F. Supp. 2d 348, 436 (W.D. Pa. 2000). There is simply no standing. *See MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1219 (11th Cir. 2020).

### ii.    Nothing said during oral argument modifies the Sale Order.

The Trustee alleges that representations made during the hearing to approve the APA are binding on the parties. As established above, the only controlling documents are the unambiguous Sale Order and APA. The Trustee does not get to redefine the Court-approved APA after the fact. The Trustee does not point to anything in the APA to refute the fact that all assets, other than specifically excluded assets were sold. Nor does the trustee point to specific language in the APA that establishes any of the claims were specifically reserved. Thus, the Trustee is improperly attempting to revise an agreement that is unambiguous on its face using banter during an oral argument. *K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.,* 689 F. Supp. 3d 35, 44 (E.D. Pa. 2023) (explaining that neither written nor oral evidence can be used to augment or modify

terms of an unambiguous contract). Furthermore, even if the Court takes what was said at the hearing into account and finds that the causes of action were not transferred, the underlying assets providing the Trustee with standing were undisputedly transferred, as is expressly clear from § 1.01 of the APA. Thus, nothing said during oral argument changes the fact that the Estate no longer has a property right in the underlying assets, and therefore, the Trustee does not have standing to bring claims based on those assets against the Debtor.

**C.      Standing is determined at the time of filing and cannot be retroactively cured.**

Despite clear precedent that a plaintiff must establish standing at the time of filing, the Trustee did not meet that burden and instead tries to retroactively cure the lack of standing in the Response in Opposition. *See, e.g.*, U.S. Const. art. 3, § 2, cl. 1; *Lujan*, 504 U.S. at 55; *Yaw*, 49 F.4th at 310–11. To that end, the Trustee asks the Court to manufacture standing for the case by (1) recognizing there was no standing initially, but that Conditional Assignment establishes standing, or (2) recognizing that there was standing at the outset and this Conditional Assignment is therefore invalid.

The Trustee must have possessed the assigned right on the day the complaint is filed for the assignment to be valid for standing purposes. *See Sunrise*, 95 F. Supp. 2d at 436. A plaintiff cannot cure a lack of standing with a retroactive assignment of claims if the assignment was executed after the lawsuit was filed. *See, e.g.*, *1228 Inv. Grp., L.P. v. Hub Grp., Inc.*, 635 F. Supp. 3d 381, 388 (E.D. Pa. 2022); *Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, No. CV 19-514, 2019 WL 3387061, at *3 (E.D. Pa. July 25, 2019). Indeed, "*[n]unc pro tunc* agreements entered into after the commencement of litigation are invalid and do not work to confer standing retroactively." *Sunrise*, 95 F. Supp. 2d at 436; *see also Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305 (D. Del. 1995) (a subsequent assignment to cure a standing defect

is improper because a party must possess rights before seeking to have them vindicated in court, and a subsequent assignment would unjustifiably expand the number of people authorized to sue and lead to delays and increased litigation expenses); *MSP Recovery*, 965 F.3d 1210 at 1219 ("In order for an assignment with a retroactive effective date to be valid for standing purposes, the assignee must possess the assigned right 'on the day it filed the complaint.'").

In essence, the Trustee wants the Court to do whatever it can do to find standing for the Trustee's Amended Complaint to move forward. This sort of judicial mongering is not permissible, again, because standing is a prerequisite to initiating a lawsuit. As outlined at length above, the Trustee's attempts to retroactively cure standing through Exhibit F fail. For the reasons described in this section and the sections earlier in this Reply, the Trustee had no standing at the time of filing to maintain this lawsuit and standing cannot retroactively cure that fatal deficiency in her pleading.

### III.  THIS COURT MUST CONSIDER EACH OF THE MOVING DEFENDANTS' ARGUMENTS IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT.

Instead of properly addressing the actual sufficiency of her claims, the Trustee attempts to misdirect the Court that the "law of the case" doctrine applies to prevent the Moving Defendants from raising certain arguments. However, the law of the case doctrine is inapplicable at the motion to dismiss stage where an Amended Complaint has been filed, and, thus, the Court must consider whether the Trustee adequately plead One, Two, Three, Four, Five, Eight, Nine, Ten, and Eleven, which she did not.

### A.  The "law of the case" doctrine is inapplicable where a party has filed an Amended Complaint.

The Trustee asks this Court to ignore the Moving Defendants' good-faith arguments based on the "law of the case" doctrine. That doctrine, which typically applies in the context of an

*appellate* court's determination of a legal issue, is discretionary and is totally inapplicable in the present matter because this case is at the motion to dismiss stage and none of the canons of the doctrine apply. *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir. 2022) ("Because it is discretionary, law of the case does not compel the same outcome as before for the officers' now pending motion to dismiss the amended complaint.") And even if this Court does find that that law of the case doctrine is somehow applicable, the doctrine does not preclude this Court from considering all the Moving Defendants' arguments. *See id.* (quoting 18B Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 4478 (3d ed.) (noting that the law of the case doctrine does not preclude a federal court from hearing an argument because "all federal courts retain power to reconsider if they wish.")).

The law of the case doctrine is generally composed of three canons, which all point to the fact that a federal court is free to consider legal arguments until a final determination is made. *See Zane v. Friends Hospital*, 836 A.2d 25, 29 (Pa. 2003) (quoting *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995)) (noting that the three canons for law of the case doctrine involve (1) cases on remand, (2) cases on appeal, and (3) transferred cases); *see also T.R. v. Sch. Dist. of Philadelphia*, 458 F. Supp. 3d 274, 291 (E.D. Pa. 2020), *aff'd*, 4 F.4th 179 (3d Cir. 2021) (noting that the law of the case doctrine does not bind a federal court to follow a prior motion to dismiss opinion because at the motion to dismiss stage, "a court must accept allegations of a plaintiff's complaint as true"); *Wiest v. Lynch*, 15 F. Supp. 3d 543, 553 (E.D. Pa. 2014) (holding that the law of the case doctrine did not bar defendants' renewed motion).

Here, the Moving Defendants filed an entirely new Amended Complaint which asserted new facts as well as revised causes of action. Regardless of any prior motion to dismiss opinion, this Court must consider the arguments raised by Moving Defendants in response to the new

Amended Complaint filed by the Trustee. *See Saint-Jean*, 49 F.4th at 836. This case has not reached final disposition, the case is not on remand, there are no legal questions that were decided by an appellate court, and the case has not been transferred. Thus, the law of the case doctrine is totally inapplicable, and this Court should fully and completely consider all of the Moving Defendants' arguments in support of its Motion to Dismiss.

**B.      Claim One for breach of fiduciary duty against Baldwin fails because Baldwin owed no such duty to the Debtor.**

As stated in Moving Defendants' Motion to Dismiss, Claim One fails as to Baldwin because there are no facts alleging that Baldwin was a manager, director, or officer who owed a fiduciary duty to Debtor. Although the Trustee argues that Moving Defendants "ignore[] black letter Pennsylvania law," Response in Opposition pg. 57, Pennsylvania law is clear that a "spokesperson and agent" can owe no fiduciary duties, *see, e.g.,* 15 Pa. Code §§ 8849.2 (establishing fiduciaries for managers only); 8815(d)(3) (providing that an operating agreement may alter certain fiduciary duties); *In re S. Canaan Cellular Invs.*, LLC, No. 09-10473, 2010 WL 3306907 (E.D. Pa. 2010), at *8; Operating Agreement §§ 5.1, 5.7, 5.8 (applying only to managers, and not to agents, as Trustee concedes). Because neither spokespeople nor agents can have fiduciary duties, and those are the sole allegations made in the Amended Complaint, Claim One must be dismissed. *See* Am. Compl. ¶ 13.

**C.      Claim Two for aiding & abetting breach of fiduciary duty fails because the Trustee did not link any specific actions to specific Defendants.**

As stated in Moving Defendants' Motion to Dismiss, Claim Two fails because the Trustee has not linked any specific allegation to any specific Defendant. The Trustee failed to identify on a breach-by-breach basis how each Moving Defendant individually had both actual knowledge of the breach of fiduciary duty and then provided substantial assistance in furtherance of the breach;

the Trustee does not identify which of the 17 alleged breaches of fiduciary duties from Claim One

are implicated by the aiding and abetting claim in Claim Two. To the extent that the Trustee

attempts to introduce new factual information to cure the deficiency in the Amended Complaint,

this Court should entirely disregard that information and dismiss Claim Two.[5] The "Insider

Defendants" cannot possibly be liable for both the initial breach of fiduciary duty and also aiding

and abetting a breach of the same duty. And, as argued in Moving Defendants' Motion to Dismiss,

this claim is collaterally estopped by the Sale Order, which made findings that the sale process was

fair and complete. *See* Motion to Dismiss pgs. 21–23.

> **D.    Claim Four (A) for alter ego and/or piercing the corporate veil fails because the Corporate Defendants were not members of the Debtor and the Trustee did not adequately plead fraud as to the Moving Defendants.**

Claim Four (A) fails because the Trustee does not have standing to pierce the corporate

veil and did not adequately plead fraud, as argued at length in the Motion to Dismiss. Any right to

bring a claim for piercing the corporate veil was "property of the estate" and was sold to Millstone

pursuant to Section 363 of the Bankruptcy Code such that Millstone—not the Trustee—is the only

party with standing to assert a piercing the veil claim. MP D.E. #178; *In re Emoral, Inc.*, 740 F.3d

875, 879 (3d Cir. 2014) (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v.

Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002)) ("After a company files for bankruptcy,

'creditors lack standing to assert claims' that are 'property of the estate.'").

> **E.    Claim Four (B) for successor liability fails as a matter of law because the Corporate Defendants are not the Plaintiff's successor.**

Claim Four (B) fails as to the Corporate Defendants because a successor liability claim

---

[5] As noted in Section I(A)(i) of this Reply, the brand new chart created by the Trustee that spans 4 pages and provides additional factual information about each of the Defendants was not pled in the Amended Complaint, and cannot be pled in the Response in Opposition to cure the deficiencies in the Amended Complaint.

cannot be brought by the Trustee and the sale of Debtor was approved by the Court. Millstone

purchased all the business assets of the Debtor. But even if the Corporate Defendants were

somehow "siloing assets, profits, personnel, resources, and opportunities" that were sold to

Millstone, any claim to assert for those activities would be Millstone's claim and not that of the

Trustee. *See In re Emoral*, 740 F.3d at 879 (quoting *Bd. of Trustees of Teamsters Local 863*, 296

F.3d at 169) (holding that once a company files for bankruptcy, creditors lack standing to assert

claims that are "property of the estate").

**F.    Claim Five for unjust enrichment fails because there is a written contract.**

Claim Five for unjust enrichment fails because there is a valid, written contract governing

the parties' relationships. *See Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 293 (E.D.

Pa. 2020) (quoting *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir.

1985) (holding that plaintiffs may not plead an alternative claim for unjust enrichment when a

valid contract exists)) (holding that a claim for unjust enrichment is "inapplicable when the

relationship between the parties is founded upon written agreements"); *see also Meyer v. Delaware

Valley Lift Truck, Inc.,* 392 F. Supp. 3d 483, 495 (E.D. Pa. 2019) ("dismiss[ing] a claim for unjust

enrichment when it was based on a defendant's purported failure to abide by the terms of a

shareholder agreement") (quoting *Rahemtulla v. Hassam,* 539 F. Supp. 2d 755, 780 (M.D. Pa.

2008)); *see also Cosby v. American Media, Inc.,* 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016) (same).

**G.    Claim Ten for equitable subordination fails as a matter of law because the
Trustee has not adequately alleged the elements.**

Claim Ten fails as to AgTech VI, EtOH and Boyer because the Trustee has alleged no

egregious or grossly inequitable conduct on the part of AgTech IV or EtOH, nor unfair conduct on

the part of Boyer, that prejudiced the unsecured creditors or improperly advanced these three

defendants' position relative to other creditors. Again, the Trustee does not have standing to bring

claims against AgTech VI LLC, and EtOH since those claims were sold to Millstone pursuant to Section 1.01(k) of the APA. Specifically, under the APA, Millstone purchased "any claims or causes of action the Seller or its bankruptcy estate have, had, or may have against Buyer or any of its affiliates, or any holder of an Assumed Liability, including, without limitation, any claim or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy Code." Thus, Claim Ten should be dismissed in its entirety.

**H.    Claim Eleven fails to state a claim for turnover.**

Claim Eleven fails because the property which the Trustee is seeking to have turned over no longer belongs to the Debtor and the alleged transfer occurred after the Debtor filed for bankruptcy. *See Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority (In re Creative Data Forms, Inc.),* 41 B.R. 334, 336 (Bankr.E.D.Pa. 1984) ("[I]f the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights."), *aff'd,* 72 B.R. 619 (E.D.Pa. 1985), *aff'd,* 800 F.2d 1132 (3d Cir. 1986). Contrary to the Trustee's assertion that Moving Defendants' arguments are facts that "cannot [b] dispute[d] via a motion to dismiss," Moving Defendants argument is purely a legal argument. To the extent that the Debtor was the owner of any documents, those documents were sold in a Court-approved Section 363 Sale to Millstone. The Debtor sold "all assets" except for "Excluded Assets" to Millstone. Claim Eleven should be dismissed.

## CONCLUSION

WHEREFORE, the Moving Defendants respectfully request that this Court grant the Moving Defendants' Motion to Dismiss the Amended Complaint, thereby dismissing Claims One through Five, Eight, and Ten through Twelve with prejudice, and grant any such further relief the Court finds appropriate.

Dated: November 12, 2024

**K&L GATES LLP**

/s/ *Steven L. Caponi*
Steven L. Caponi
600 N. King Street, Suite 901
Wilmington, DE  19801
Phone:  (302) 416-7000
Fax:  (302) 416-7020
Steven.Caponi@klgates.com

Carly S. Everhardt (*pro hac* pending)
**K&L GATES LLP**
Southeast Financial Center, Suite 3900
200 South Biscayne Boulevard
Miami, FL  33131
Phone:  (305) 539-3300
Fax:  (305) 358-7095
Carly.Everhardt@klgates.com

Falco A. Muscante II
**K&L GATES LLP**
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA  15222
Phone:  (412) 355-6500
Fax:  (412) 471-8868
Falco.MuscanteII@klgates.com

*Attorneys for Casey Parzych; Shawn Sheehan;
Angus Rittenburg; Ashleigh Baldwin; R.F.
Culbertson; Michael Boyer; Kelly Festa,
Polebridge, LLC; Good Design, Inc.; AgTech
PA LLC; AgTech VI, LLC; XO Energy
Worldwide, LLLP; XO EW, LLC; Best Bev,
LLC; EtOH Worldwide, LLC; and Canvas 340
LLC*