# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re: Midnight Madness Distilling LLC,** | Chapter 7 |
| Debtor. | Bky. No. 21-11750 (PMM) |
| | |
| **Bonnie Finkel, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,** | |
| Plaintiff, | |
| v. | Adv. 23-00047 (PMM) |
| **Casey Parzych, et al.,** | |
| Defendants. | |

## ORDER RESOLVING MOTION TO DISMISS

**AND NOW**, upon consideration of the Moving Defendants'[1] Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (doc. #50, the "Motion to Dismiss"), the Opposition (doc. #58), and the Reply thereto (doc. #59), it is hereby **ordered** that the Motion to Dismiss is **granted in part and denied in part**.*  The Motion to Dismiss is granted with prejudice with respect to all Counts against AgTech VI, LLC and EtOH Worldwide, LLC.  It is denied with respect all other Moving Defendants.

The Moving Defendants, other than AgTech VI, LLC and EtOH Worldwide, LLC, must file an answer on or before **January 10, 2025**.

---

[1] The Moving Defendants are Casey Parzych, Angus Rittenburg, Kelly A. Festa, Ashleigh Baldwin, Michael Boyer, R.F. Culbertson, Polebridge, LLC, Good Design, Inc., AgTech PA LLC, AgTech VI, LLC, XO Energy Worldwide, LLLP, XO EW, LLC, Best Bev, LLC, EtOH Worldwide, LLC, Canvas 340, LLC, and Shawn Sheehan.

**Date: 12/13/24**               *Patricia M. Mayer*
                                          **PATRICIA M. MAYER**
                                          **U.S. BANKRUPTCY JUDGE**

# \* E N D  N O T E[2]

Midnight Madness Distilling, LLC (the "Debtor") filed its chapter 11 bankruptcy petition on June 21, 2021.[3] The Debtor soon thereafter engaged in a Court-approved sale process, seeking to sell substantially all of its assets (the "Sold Assets") pursuant to §363 of the Bankruptcy Code. On September 17, 2021, the Court entered an order (the "Sale Order") approving the sale of the Sold Assets to Millstone Spirits Group, LLC ("Millstone") pursuant to an Asset Purchase Agreement (the "APA") attached thereto.

On October 13, 2021, the Court entered an order converting the Debtor's bankruptcy case to a case under chapter 7, and on October 14, 2021 appointed Bonnie B. Finkel as the chapter 7 trustee (the "Trustee"). On June 15, 2023, the Trustee initiated this Adversary Proceeding by filing a Complaint against the Moving Defendants, as well as certain other non-moving defendants (collectively, the "Defendants"). The Complaint asserted 14 causes of action against 21 individual and entity Defendants. On September 15, 2023, the Moving Defendants filed a motion to dismiss the Complaint (the "First Motion to Dismiss").[4] On July 23, 2024, the Court entered a memorandum and order (together, the "First MTD Ruling"), granting the First Motion to Dismiss in part and denying it in part, without prejudice to the Trustee's ability to amend the Complaint.

On August 22, 2024, the Trustee filed an amended Complaint (the "Amended Complaint"). The Amended Complaint names the same 21 individual and entity Defendants as the original

---

[2] The factual and procedural backgrounds of this bankruptcy case and the above-captioned adversary proceeding (the "Adversary Proceeding") are well-known to the parties, and the Court therefore recites here only the background necessary for resolving the legal issues at hand.

[3] The bankruptcy case and Adversary Proceeding were pending before Judge Magdeline Coleman until her retirement on July 31, 2024, upon which they were transferred to the undersigned.

[4] The non-moving Defendants filed an Answer to the Complaint on September 15, 2023.

Complaint, but has revised certain of the causes of action in response to the Court's findings in the First MTD Ruling. The Amended Complaint's causes of action (the "Counts"), together with the Defendants against which they are asserted (as grouped and defined therein), are as follows:[5]

- Count 1 – Breach of Fiduciary Duty (Insider Defendants)

- Count 2 – Aiding and Abetting Breach of Fiduciary Duty (All Defendants)

- Count 3 – Corporate Waste (Insider Defendants)

- Count 4(a) – Alter Ego and/or Corporate Veil Piercing (Casey Parzych, Rittenburg, Culbertson)

- Count 4(b) – Successor Liability (Pilfering Entities)

- Count 5 – Unjust Enrichment (All Defendants)

- Count 8 – Breach of Contract (Casey Parzych and Rittenburg for Monetary Damages, Pilfering Entities for Declaratory Judgment)

- Count 9 – Breach of Contract (Finland Leasing)

- Count 10 – Equitable Subordination (AgTech VI LLC, EtOH Worldwide LLC, and Michael Boyer)

- Count 11 – Turnover (All Defendants)

- Count 12 – Avoidance and Recovery of Post-Petition Transfers (Best Bev Entities)

- Count 13 – Avoidance and Recovery of Preferential Transfers (Finland Leasing, ETP, Boyer)

- Count 14 – Avoidance and Recovery of Fraudulent Transfers (Finland Leasing, ETP)

\* \* \* \*

---

[5] The First MTD Ruling dismissed Counts 6 and 7 of the Complaint, and the Trustee has not replead those Counts in the Amended Complaint.

2

The Moving Defendants have moved to dismiss Counts 1 through 5, 8, and 10 through 12 of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(B)(1)") based on the Trustee's alleged lack of standing to bring them, and Counts 1, 2, 4(a) and (b), 5, 8, 10 and 11 pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim for which relief can be granted.[6]

With respect to their argument under Rule 12(b)(1), the Moving Defendants assert that all of the Debtor's business-related assets, including any and all causes of action related to the business operations and assets of the Debtor, were sold to Millstone pursuant to both the Sale Order and the APA. The APA, approved by the Sale Order, sold all tangible and intangible assets of the Debtor other than the "Excluded Assets,"[7] including causes of action that could have been asserted by the Debtor relating or used in any way in connection with the Debtor's defined "Business" of distilling and producing spirits. The Moving Defendants argue that, with the exception of Counts 12 and 13, all Counts asserted in the Amended Complaint (the "Common Law Claims") seek relief for alleged conduct that relates or was connected to the operation of the Debtor's business, and are therefore the exclusive property of Millstone. Consequently, the Moving Defendants argue, the Common Law Claims must be dismissed pursuant to Rule 12(b)(1) because the Trustee lacks standing to bring them, depriving this Court of jurisdiction over them (the "General Standing Argument").

In addition to this General Standing Argument, the Moving Defendants also make a

---

[6] Certain of the Defendants have filed an answer to the Amended Complaint, and therefore the Motion to Dismiss does not implicate claims against those answering Defendants.

[7] Under the APA, Excluded Assets was comprised of only (i) liquor licenses, (ii) contracts and leases of real property, and (iii) the Debtor's interest in its subsidiaries.

3

discrete standing argument with respect to AgTech VI, LLC ("AgTech VI") and ETOH Worldwide, LLC ("EtOH"). They argue that under the APA, Millstone expressly purchased all claims and causes of action against any holder of an "Assumed Liability," which was defined to include the Debtor's obligations under its equipment lease with AgTech VI and EtOH. Therefore, the Moving Defendants argue, because AgTech VI and EtOH were holders of Assumed Liabilities, the only party with standing to bring claims against AgTech VI and EtOH is Millstone (the "AgTech/EtOH Standing Argument").

With respect to their argument under Rule 12(b)(6), the Moving Defendants largely reiterate the arguments made in their First Motion to Dismiss (the "Reiterated Arguments"). They first point to purported global problems with the allegations in the Amended Complaint, which they assert represent impermissible group pleading, making it impossible to determine which of the 21 Defendants committed which alleged act in violation of a specific cause of action. As they did with the original Complaint, the Moving Defendants also take issue with the Amended Complaint's definition of the term "Pilfering Entities," which they assert makes it impossible for the entity Defendants to know which allegations and claims relate to or are asserted against them. Finally, the Moving Defendants argue that the Amended Complaint employs impermissible shotgun pleading, with each Count incorporating all prior allegations by reference, making it unclear what allegations underlie each claim, compounded by the use of definitions that lump large groups together, thereby making it unclear which Defendants allegedly undertook which actions. In addition to these asserted global problems, the Moving Defendants allege that each Count fails as against one or more of them either because it asserts liability where none can exist as a matter of law, fails to plead the necessary elements of the claim, or is precluded by the Court's prior findings in the Sale Order.

*   *   *   *

The standard on a motion to dismiss is well known. Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the factual allegations of the complaint. The Court is required to accept as true all allegations in the complaint and all reasonable inferences drawn from them. Allegations that are mere conclusions are not entitled to the assumption of truth. See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); In re Island View Crossing II, L.P., 604 B.R. 181, 189 (Bankr. E.D. Pa. 2019). The Defendant is entitled to relief only if the Amended Complaint does not state a claim that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In determining a motion to dismiss, the court uses its common sense and judicial experience.

The standard of review for a Rule 12(b)(1) facial challenge to the court's subject matter jurisdiction is the same as the standard governing review of a Rule 12(b)(6) motion. See, e.g., In re Marchese, 2018 WL 3472823, at *3 (Bankr. E.D. Pa. July 16, 2018) (citing cases); see also In re Merritt, 529 B.R. 845, 858 (Bankr. E.D. Pa. 2015) (generally when a party challenges a court's subject matter jurisdiction before filing an answer to the complaint, its challenge is viewed as a facial attack on jurisdiction) (citing Constitution Party of Penn. v. Aichele, 757 F.3d 347, 358-59 (3d Cir. 2014)).

\*     \*     \*     \*

The Court turns first to the Moving Defendants' Reiterated Arguments requesting dismissal under Rule 12(b)(6) based on the Amended Complaint's alleged pleading deficiencies. These arguments have already been rejected by the First MTD Ruling. Based on the Court's review, the Amended Complaint's 196 paragraphs of factual allegations are identical to those set forth in the original Complaint. Judge Coleman determined that those allegations were sufficient to meet applicable pleading standards for the Counts asserted, subject to certain clarifications

5

needed. Those clarifications were made by discrete amendments to certain Counts of the Amended Complaint, specifically with respect to (a) which Defendants against whom they are asserted, and (b) subdivision of Count 4. Those minimal differences, however, do not constitute new allegations supporting reconsideration or visiting anew the arguments the Moving Defendants previously made. Cf., Shinano Kenshi Corp. v. Honeywell Int'l Inc., 2024 U.S. Dist. LEXIS 11558, at *11-12 (S.D.N.Y. Jan. 23, 2024) (sufficiency of the complaint was not appropriate subject for interlocutory review where plaintiff simply repeated arguments made and rejected on the defendant's motion to dismiss); Church Joint Venture v. Blasingame, 2016 U.S. Dist. LEXIS 159359, at *38 (W.D. Tenn. Nov. 17, 2016) (treating defendants' summary judgment motion as a motion for reconsideration of arguments raised in their motion to dismiss and finding that the arguments were not materially different than those already considered and rejected and therefore would not be reconsidered). The Court therefore relies on its analysis of the Moving Defendants' arguments as set forth in the First MTD Ruling, and again finds that dismissal under Rule 12(b)(6) is not warranted.

With respect to the Moving Defendants' General Standing Argument, the Court rejects their position that the Trustee's claims were sold to Millstone under the APA and Sale Order. The Court agrees with the Trustee that the claims set forth in the Amended Complaint fall outside the universe of "Purchased Assets" as defined in §1.01 of the APA. That definition encompassed only those "tangible and intangible assets, properties, and rights … which relate to, or are used or held for use in connection with, the Business," defined in the Recital Paragraphs to mean "the business of distilling and producing spirits." The claims set forth in the Amended Complaint allege actions and activities undertaken by the Defendants to build and promote *their own* business activities or

the business activities of others, *not* the Debtor's business of distilling and producing spirits. The Amended Complaint's claims therefore do not relate to the Debtor's "Business" and fall outside the scope of the Purchased Assets under the APA. The Court consequently rejects the Moving Defendants' argument that the Common Law Claims are the exclusive property of Millstone and should be dismissed under Rule 12(b)(1) for the Trustee's lack of standing.

Finally, turning to the AgTech/EtOH Standing Argument, the Court agrees with the Moving Defendants. Section 1.01(k) of the APA lists among the Purchased Assets "any claims or causes of action the Seller or its bankruptcy estate have, had, or may have against . . . any holder of an Assumed Liability . . . ." APA, §1.01(k). Section 1.03(d) identifies as, among the Assumed Liabilities, "those monetary obligations of the Seller under the Seller's Equipment Leases with [AgTech VI] and [EtOH]," subject to certain conditions. APA, §1.03(d). AgTech VI and EtOH are therefore holders of Assumed Liabilities, and the claims against them were purchased by Millstone. The Trustee thus lacks standing to assert claims against those two entities. The Court is not persuaded by the Trustee's argument that AgTech VI and EtOH were not truly holders of Assumed Liabilities, against whom Millstone would not want actions to be pursued, because their leases were rejected and Millstone therefore was not relying on them as future business partners. The APA's terms are clear, and under them AgTech VI and EtOH are holders of Assumed Liabilities. Moreover, the Conditional Assignment of Claims from Millstone to the Trustee does not confer standing retroactively that did not exist at the time the Adversary Proceeding was commenced. See, e.g., Reisinger v. Seneca Specialty Ins. Co., 2011 U.S. Dist. LEXIS 62914, at *14 (M.D. Pa. June 14, 2011) (standing is determined and must exist at the time an action is filed, and post-filing events supplying standing that did not exist upon filing may be disregarded). As such, all Counts

against AgTech VI and EtOH will be dismissed with prejudice. This does not mean, however, that those two entities' alleged acts or omissions cannot form the basis for claims against other Defendants.

For these reasons, the Motion to Dismiss is granted with prejudice with respect to all Counts against AgTech VI and EtOH, and denied with respect to all other Moving Defendants.