IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: ) | Subchapter V |
| ) | |
| PHILADELPHIA ORTHODONTICS, ) | Case No. 24-11728-PMM |
| P.C., ) | |
| ) | |
| *Debtor*. ) | |
| PHILADELPHIA ORTHODONTICS, ) | |
| P.C., ) | Docket No. |
| ) | |
| *Movant*, ) | Related to Dkt. Nos. 8 and 48 |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA; PARKVIEW ) | |
| ADVANCE; RAPID FINANCE; ) | |
| FORWARD FINANCING, LLC; and ) | |
| Biz2Credit a/k/a ITRIA VENTURES, ) | |
| LLC, ) | |
| ) | |
| *Respondents*. ) | |
| ) | |

**FINAL ORDER
(I) AUTHORIZING THE DEBTOR'S USE OF
CASH COLLATERAL; (II) GRANTING ADEQUATE
PROTECTION; (III) SCHEDULING A FINAL HEARING ON THE
USE OF CASH COLLATERAL; AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of the debtor, Philadelphia Orthodontics, P.C. (the "Debtor") for entry of Interim and Final Orders (I) Authorizing the Debtor's Use of Cash Collateral (II) Granting Adequate Protection; (III) Scheduling a Final Hearing on the Use of Cash Collateral; and (IV) Granting Related Relief; and notice of the Motion appearing to be appropriate; and after a hearing on the motion, it is hereby ORDERED, as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1. <u>Authority to Use Cash Collateral.</u> The Debtor is authorized to use Cash Collateral (as that term is defined in the United States Bankruptcy Code) subject to the terms and conditions contained in this Order in accordance with the budget attached hereto as <u>Exhibit A</u> (as the same may be amended and/or extended from time-to-time as mutually agreed in writing by the Debtor and Bank of America, (the "<u>Budget</u>"), (or as determined by Order of this Court) *provided*, *however*, that, (i) the aggregate disbursements of the Debtor for any two-month period of the Budget shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), and (ii) aggregate receipts for any two-month period of the Budget shall not be less than the amount therefor set forth in the Budget by more than fifteen percent (15%).

2. <u>Adequate Protection Payments</u>. The Debtor shall remit to Bank of America adequate protection payment in the form of the Debtor's normal monthly non-default payment in the amount of $2,808.00 per month. The adequate protection payments shall be timely made to Bank of America on the same day of month as established by the applicable loan documents.

3. <u>Bank of America Post-Petition Lien</u>. The Debtor grants Bank of America a post-petition security interest in, and a lien upon, all categories and types of collateral in which it held a security interest as of the Petition Date. Bank of America's post-petition security interests shall be first priority perfected security interests to the same extent as Bank of America's security interest as of the Petition Date. The Debtor shall not seek to set aside or challenge Bank of America's liens in any way. All security interests to be granted to Bank of America hereunder as adequate protection will be deemed duly perfected under all applicable laws, and no further notice, filing, recordation or Order will be required to perfect such an interest. Any diminution in the value of Bank of America's pre-petition collateral which causes all or any part of the Bank of America's

liens and security interests in the pre-petition collateral to become unsecured shall be a claim entitled to priority pursuant to section 507(b) of the Bankruptcy Code.

4. <u>The MCA Lenders Post-Petition Lien.</u> The Debtor grants each MCA Lender a post-petition security interest in, and a lien upon, all categories and types of collateral in which it held a security interest as of the Petition Date. All security interests to be granted to any MCA Lender as adequate protection will, to the extent they were properly perfected as of the Petition Date, be deemed duly perfected under all applicable laws, and no further notice, filing, recordation or Order will be required to perfect such an interest. Unless an objection is filed within fourteen (14) days of the date of this Order, the post-petition security interests of each MCA Lender shall be subordinate to the post-petition security interests granted to Bank of America. If an MCA Lender timely objects, such MCA Lender shall request in such objection that the Court schedule a hearing to resolve such dispute. To the extent the Court sustains the MCA Lender's objection, either in whole or in part, Bank of America shall be entitled to an administrative expense claim pursuant to section 503 of the Bankruptcy Code for the cash collateral used by the Debtor and the Debtor's right to use Bank of America's cash collateral shall automatically terminate without the need for any notice from Bank of America.

5. <u>Revocation of Lender Notices</u>. Any Notices sent by any third party, including any Lender to insurance reimbursement companies, clients, or other third parties of the Debtor (collectively, the "<u>Obligors</u>") instructing the Obligors to pay their respective obligations and other amounts due to the Debtor (collectively, the "<u>A/R</u>") to such Lender are hereby revoked and released and the Obligors are authorized and directed to immediately pay and turnover to the Debtor all outstanding A/R and shall continue to pay future A/R to the Debtor (without any liability to such Lender), which A/R may be used by the Debtor in accordance with this Order.

6. <u>Turnover of A/R</u>. Unless an objection is filed within fourteen (14) days of the date of this Order, any Lender who received any A/R pursuant to a Notice as referenced in the preceding paragraph shall turnover to the Debtor such A/R, which may then be used by the Debtor in accordance with this Order.

7. <u>Termination of Right to Use Cash Collateral</u>. Upon the occurrence of an Event of Default (as defined below) and Bank of America providing five (5) business days written notice (the "<u>Remedies Notice Period</u>") to the Debtor, its counsel, the U.S. Trustee, and the Subchapter V Trustee, the Debtor's right to use cash collateral shall be terminated (the date of any such termination, the "<u>Termination Date</u>"). During the Remedies Notice Period or thereafter, the Debtor, the U.S. Trustee or the Subchapter V Trustee may seek an emergency hearing before this Court for the purpose of obtaining an order authorizing the Debtor's continued use of cash collateral or to contest whether an Event of Default has occurred. The Remedies Notice Period shall be extended until the Court issues an order with respect to any expedited motion as described in the preceding sentence, and the Debtor or any party in interest shall be permitted to use of cash collateral in accordance with the applicable Budget during the Remedies Notice Period. An "<u>Event of Default</u>" shall occur if: (a) the Debtor fails to timely make the adequate protection payments to Bank of America as required by this Order; (b) the use of cash collateral in any way which deviates from the Budget (other than the permitted variance) unless otherwise agreed by Bank of America in writing; (c) the Debtor fails to comply with the terms and conditions of this Order unless otherwise waived by Bank of America in writing; (d) the failure to comply with any applicable deadline established by the Bankruptcy Code or court order for the filing, confirmation or effective date of a plan (as such deadlines may be extended by this Court); (e) the appointment of an examiner with any powers other than those set forth in section 1106(a)(3)-(4), unless Bank of

4

America consents to such powers in writing; (f) the conversion of the Debtor's case to chapter 7; (g) the dismissal of the Debtor's case; (h) the granting of relief from the automatic stay to permit any party to recover possession of any property used in the operation of the Debtor's business except with Bank of America's consent which consent will not be unreasonably withheld; (i) one or more Events of Default under the loan documents between the Debtor and Bank of America related to the secured loan (other than any event of default triggered by or related to the filing of this bankruptcy case or the bankruptcy case filed by Joshua Davis);  (j) the entry of an order pursuant to Section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtor's assets; (k) the effective date of any plan of reorganization or liquidation for the Debtor; (l) entry of any order pursuant to Section 364 of the Bankruptcy Code authorizing the Debtor to obtain credit which in any way primes Bank of America; or (m) the automatic stay is lifted as to any party in order to permit foreclosure on the Bank of America's collateral. Notwithstanding the foregoing, the Remedies Notice Period shall not apply to any Event of Default identified in subparagraphs  (f), (g), (j), (k), (l) or (m) of this paragraph and upon the occurrence of an Event of Default pursuant to one or more of these subparagraphs, the Debtor's right to Bank of America's cash collateral shall automatically terminate without the right of any party to cure and without the necessity of Bank of America providing any notice to any party.

8. <u>No Impairment of Rights Granted by this Order</u>. Except upon the written consent of Bank of America, the rights and remedies granted under this Order to Bank of America shall not be modified, altered or impaired in any manner by any subsequent order, plan or confirmation or by any financing or extensions of credit or incurring of debt or any trustee or successor-in-interest, whether pursuant to section 364 of the Bankruptcy Code or otherwise.

9. <u>Cash Collateral May Not Be Used Against Bank of America</u>. Notwithstanding anything in this Order, no amounts of the proceeds of Bank of America's collateral or the cash collateral, shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the pre-Petition Date indebtedness due to Bank of America or any liens or security interests with respect thereto, or any other rights or interests of Bank of America, or in asserting any claims or causes of action against Bank of America, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code against Bank of America; (b) selling any of Bank of America's collateral, except in the ordinary course of business at normal retail prices (the Debtor may not discount the sales price of the collateral outside the ordinary course of the Debtor's business or engage in any "sale", liquidation sale or going out of business sale); or (c) incurring any new indebtedness which seeks to prime any lien or interest of Bank of America or obligation owed to Bank of America.

10. <u>Section 506(c) Waiver</u>. Neither the Debtor, any trustee or any third party shall assert any rights or claims under section 506(c) of the Bankruptcy Code with respect to Bank of America.

**Date: July 10, 2024**

*Patricia M. Mayer*

PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE

# Exhibit A

**PHILADELPHIA ORTHODONTICS, P.C. – 6-Month Cash Flow Projections/Budget**

| | Month 1 | | Month 2 | | Month 3 | | Month 4 | | Month 5 | | Month 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | $ 165,000.00 | | $ 165,000.00 | | $ 165,000.00 | | $ 165,000.00 | | $ 165,000.00 | | $ 165,000.00 | |
| **Operating Expenses** | | | | | | | | | | | | |
| Bookkeeping | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% |
| Advertising | $ - | 0.00% | $ - | 0.00% | $ 1,500.00 | 0.91% | $ - | 0.00% | $ 1,500.00 | 0.91% | $ - | 0.00% |
| Bank Fees | $ 50.00 | 0.03% | $ 50.00 | 0.03% | $ 50.00 | 0.03% | $ 50.00 | 0.03% | $ 50.00 | 0.03% | $ 50.00 | 0.03% |
| Billing fees (Patient's cc) | $ 1,150.00 | 0.70% | $ 1,150.00 | 0.70% | $ 1,150.00 | 0.70% | $ 1,150.00 | 0.70% | $ 1,150.00 | 0.70% | $ 1,150.00 | 0.70% |
| Cleaning Supplies | $ 400.00 | 0.24% | $ - | 0.00% | $ 100.00 | 0.06% | $ 400.00 | 0.24% | $ - | 0.00% | $ 100.00 | 0.06% |
| Computer Expense | $ 1,300.00 | 0.79% | $ 1,300.00 | 0.79% | $ 1,300.00 | 0.79% | $ 1,300.00 | 0.79% | $ 1,300.00 | 0.79% | $ 1,300.00 | 0.79% |
| Consulting - HR Service | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% |
| Contributions | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| Credit Card Fees | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| Secured Debt - BOA/Clarion | $ 5,836.39 | 3.54% | $ 5,836.39 | 3.54% | $ 5,836.39 | 3.54% | $ 5,836.39 | 3.54% | $ 5,836.39 | 3.54% | $ 5,836.39 | 3.54% |
| Dues & Subscriptions | $ 583.00 | 0.35% | $ 583.00 | 0.35% | $ 584.00 | 0.35% | $ 583.00 | 0.35% | $ 583.00 | 0.35% | $ 584.00 | 0.35% |
| Health Insurance | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% |
| Insurance (Gen. Liability) | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% |
| Insurance (Other) | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| Insurance (Property) | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% | $ 425.00 | 0.26% |
| Itero Expense | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% |
| Legal Fees | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% | $ - | 0.00% |
| Meals and Entertainment | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% |
| Office Expense/Supplies | $ 3,000.00 | 1.82% | $ 3,000.00 | 1.82% | $ 3,000.00 | 1.82% | $ 3,000.00 | 1.82% | $ 3,000.00 | 1.82% | $ 3,000.00 | 1.82% |
| Ortho Supplies | $ 22,000.00 | 13.33% | $ 22,000.00 | 13.33% | $ 22,000.00 | 13.33% | $ 22,000.00 | 13.33% | $ 22,000.00 | 13.33% | $ 22,000.00 | 13.33% |
| Payroll | $ 74,167.00 | 44.95% | $ 74,166.00 | 44.95% | $ 74,166.00 | 44.95% | $ 74,167.00 | 44.95% | $ 74,166.00 | 44.95% | $ 74,166.00 | 44.95% |
| Payroll Processing | $ 417.00 | 0.25% | $ 416.00 | 0.25% | $ 416.00 | 0.25% | $ 417.00 | 0.25% | $ 416.00 | 0.25% | $ 416.00 | 0.25% |
| Payroll Taxes | $ 14,833.40 | 8.99% | $ 14,833.20 | 8.99% | $ 14,833.20 | 8.99% | $ 14,833.40 | 8.99% | $ 14,833.20 | 8.99% | $ 14,833.20 | 8.99% |
| Philadelphia BIRT | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% |
| Professional Development | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 500.00 | 0.30% |
| Professional Fees | $ 417.00 | 0.25% | $ 416.00 | 0.25% | $ 416.00 | 0.25% | $ 417.00 | 0.25% | $ 416.00 | 0.25% | $ 416.00 | 0.25% |
| Rent | $ 8,207.25 | 4.97% | $ 8,207.25 | 4.97% | $ 8,207.25 | 4.97% | $ 8,207.25 | 4.97% | $ 8,207.25 | 4.97% | $ 8,202.25 | 4.97% |
| Repairs & Maintenance | $ 1,000.00 | 0.61% | $ 500.00 | 0.30% | $ 500.00 | 0.30% | $ 1,000.00 | 0.61% | $ 500.00 | 0.30% | $ 500.00 | 0.30% |
| Simple IRA Match | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% |
| Storage Expense | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% | $ 225.00 | 0.14% |
| Telephone/Cable/Verve | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% | $ 1,500.00 | 0.91% |
| Travel Expense | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 600.00 | 0.36% | $ 1,000.00 | 0.61% |
| Uniform Expense | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% | $ 800.00 | 0.48% |
| **Total Operating Expense** | $ 142,461.04 | 86.34% | $ 141,557.84 | 85.79% | $ 143,158.84 | 86.76% | $ 142,461.04 | 86.34% | $ 143,057.84 | 86.70% | $ 142,053.84 | 86.09% |
| **Bankruptcy Expenses** | | | | | | | | | | | | |
| Estate Professional Fees | $ - | | $ 25,000.00 | | $ 20,000.00 | | $ 20,000.00 | | $ 25,000.00 | | $ 20,000.00 | |
| Subchapter V Trustee Fees | $ - | | $ 2,000.00 | | $ 2,000.00 | | $ 2,000.00 | | $ 2,000.00 | | $ 2,000.00 | |
| **Totaal Bankrupcy Expenses** | $ - | | $ 27,000.00 | | $ 22,000.00 | | $ 22,000.00 | | $ 27,000.00 | | $ 22,000.00 | |
| **Pre-Tax Profit/(Loss)** | $ 22,538.96 | 13.66% | $ (3,557.84) | -2.16% | $ (158.84) | -0.10% | $ 538.96 | 0.33% | $ (5,057.84) | -3.07% | $ 946.16 | 0.57% |
| **Tax Distributions/Expense*** | $ 5,000.00 | | $ - | | $ - | | $ 5,000.00 | | $ - | | $ - | |
| **Net Cash Flow** | $ 17,538.96 | 10.63% | $ (3,557.84) | -2.16% | $ (158.84) | -0.10% | $ (4,461.04) | -2.70% | $ (5,057.84) | -3.07% | $ 946.16 | 0.57% |
| **Cash Collateral Anaysis** | | | | | | | | | | | | |
| Beginning Cash | $ 20,000.00 | | $ 37,538.96 | | $ 33,981.12 | | $ 33,822.28 | | $ 29,361.24 | | $ 24,303.40 | |
| Net Cash Flow | $ 17,538.96 | | $ (3,557.84) | | $ (158.84) | | $ (4,461.04) | | $ (5,057.84) | | $ 946.16 | |
| Ending Cash | $ 37,538.96 | | $ 33,981.12 | | $ 33,822.28 | | $ 29,361.24 | | $ 24,303.40 | | $ 25,249.56 | |

*Tax Distribution to Shareholder Made Directly to Taxing Bodies Related to Taxable Income of Philadelphia Orthodontics, P.C.