## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re:**<br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>          **Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-PMM** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7**<br>**Trustee for Midnight Madness Distilling LLC,**<br><br>               **Plaintiff,**<br>     **v.**<br><br>**CASEY PARZYCH, et al.,**<br><br>               **Defendants.** | **Adv. No. 23-00047-PMM** |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY

## Table of Contents

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................... 2

   A.  Procedural History and Adversary Proceeding Allegations ................................ 2

   B.  The Trustee's RFPs and Subsequent Efforts to Obtain Documents .................... 4

BASIS FOR RELIEF ....................................................................................................... 10

   A.  Legal Standard ................................................................................................... 10

   B.  The RFPs Seek Relevant Information Proportional To The Needs Of The Case ............ 11

   C.  The Nonproducing Defendants' Written Responses Do Not Justify The Withholding Of Documents ...................................................................................... 12

       i.  Misuse of General Objections ...................................................................... 13

       ii.  Improper General, Boilerplate, and Blanket Objections ............................. 13

       iii.  Documents Allegedly In The Possession of the Trustee or Millstone ......... 15

       iv.  Collection from Specific Repositories .......................................................... 16

       v.  Overly Narrow Temporal Limitation ........................................................... 16

       vi.  "Entity Formation" Materials ....................................................................... 17

       vii.  Lack of a "Purportedly Wrongful Act" ........................................................ 17

   D.  Prompt Production Should Be Ordered .............................................................. 18

CONCLUSION ................................................................................................................. 19

# Table of Authorities

**Cases**

*Harding v. Dana Transp., Inc.*,
  914 F. Supp. 1084 (D.N.J. 1996) ............................................................................. 13

*Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*,
  320 F.R.D. 168 (N.D. Iowa 2017) ........................................................................... 17

*Packer v. Glenn O. Hawbaker, Inc.*,
  2026 WL 227152 (M.D. Pa. Jan. 28, 2026) ............................................................ 11

*Parisi v. State Farm Mut. Auto. Ins. Co.*,
  2017 WL 4403326 (W.D. Pa. Oct. 2, 2017) ............................................................ 14

*Rimoni v. Commonwealth Land Title Insurance Company*,
  2026 WL 206217 (W.D. Pa. Jan. 27, 2026) ............................................................ 11

*St. Paul Reinsurance Co. v. Com. Fin. Corp.*,
  198 F.R.D. 508 (N.D. Iowa 2000) ........................................................................... 16

*Younes v. 7-Eleven, Inc.*,
  312 F.R.D. 692 (D.N.J. 2015) ................................................................................. 14

Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of Debtor Midnight Madness Distilling, LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling (the "Debtor"), hereby brings this motion (the "Motion") for entry of an order, substantially in the form submitted contemporaneously herewith, compelling production of documents from Defendants Casey Parzych, Shawn Sheehan, Angus Rittenburg, Kelly Festa, Ashleigh Baldwin, Michael Boyer, R.F. Culbertson, Polebridge, LLC, Good Design, Inc., AgTech PA LLC, XO Energy Worldwide, LLLP, XO EW, LLC, Best Bev, LLC, and Canvas 340, LLC (collectively, the "Nonproducing Defendants"). In support hereof, the Trustee respectfully states:

## PRELIMINARY STATEMENT

This Motion arises from Nonproducing Defendants' persistent failure to produce discovery despite months of extensions, repeated meet-and-confer efforts, and their K&L Gates counsel's commitment to begin production on a rolling basis. Nonproducing Defendants' written discovery responses consist almost entirely of boilerplate objections, unilateral limitations, and refusals to search for documents at all. The vast majority of responses to particular requests state outright that Defendants "will not search for or produce documents" absent the Trustee substantially limiting her requests and a meet and confer process which undersigned counsel has repeatedly attempted to engage in to no avail. The responses invoke the very same boilerplate language to virtually every request and assert privilege as to nearly every request without producing any privilege log. After months of delay and assurances that preparations for production were being made, Nonproducing Defendants still have not produced a single document responsive to the Trustee's Requests for Production, have not implemented ESI search protocols that the Trustee provided at their suggestion, and have not identified any concrete burden preventing compliance.

1

By contrast, the Trustee has produced over 500,000 pages of documents to Nonproducing Defendants. The Trustee respectfully requests that this Court order production as expediently as possible.

## **BACKGROUND**

### A.    **Procedural History and Adversary Proceeding Allegations**

The Trustee instituted the instant adversary proceeding by filing her original Complaint on June 15, 2023. *See* Adv. D.I. 1. Nonproducing Defendants, via their counsel at Archer & Greiner, filed a motion to dismiss on September 15, 2023 (Adv. D.I. 17), which was granted in part and denied in part on July 23, 2024 (*see* Adv. D.I. 39 and 40). On August 22, 2024, the Trustee filed an Amended Complaint (Adv. D.I. 44), making only limited changes specifically contemplated by this Court's opinion disposing of the motion to dismiss. On September 30, 2024, the Archer & Greiner attorneys withdrew their appearance on behalf of the Nonproducing Defendants and were replaced by attorneys at K&L Gates (Adv. D.I. 49), who filed a motion to dismiss the Trustee's Amended Complaint (Adv. D.I. 50). On December 16, 2024, this Court entered a footnoted order (Adv. D.I. 64) granting in part and denying in part the second motion to dismiss, noting that the Nonproducing Defendants "largely reiterate[d] the arguments made in their First Motion to Dismiss," and allowing all of the Trustee's claims to proceed against the Nonproducing Defendants.

The Trustee's Amended Complaint details a brazen scheme to loot the Debtor through a number of entities to which Debtor opportunities, property, and profits were diverted with the purpose, intent, and effect of enriching the Defendants at the expense of the Debtor and its creditors. The Amended Complaint alleges in detail how Debtor resources, employees, and equipment were used for the benefit of three groups of these shadow entities – the "Polebridge

Entities," the "Wynk Entities," and the "Best Bev Entities" – to avoid paying the legitimate

creditors of the Debtor.  The Polebridge Entities used Debtor resources to manufacture and sell

CBDelight cannabis seltzer and Faber Hand Sanitizer, with all profits flowing not to the Debtor,

but instead to the Defendants.  The Wynk Entities, which a Debtor representative described as

"one and the same" as the Debtor, similarly used Debtor resources to manufacture and sell Wynk

cannabis seltzer, with all profits flowing not to the Debtor, but instead to the Defendants.  And the

Best Bev Entities were formed by outright theft from the Debtor and held out as the mere

continuation of the Debtor.[1]

    After disposition of the motions to dismiss, the following claims remain against the

Nonproducing Defendants: breach of fiduciary duty (against Nonproducing Defendants Casey

Parzych, Rittenburg, Festa, Baldwin, Boyer, and Culbertson), aiding and abetting breach of

fiduciary duty (against all Defendants), corporate waste (against Nonproducing Defendants Casey

Parzych, Rittenburg, Festa, Baldwin, Boyer, and Culbertson), declaratory relief for alter

ego/piercing the corporate veil (against Nonproducing Defendants Parzych, Rittenburg,

Culbertson, Polebridge LLC, Good Design, Inc., AGTech PA LLC, Best Bev LLC, XO Energy

Worldwide LLLP, XO EW LLC, and Canvas 340 LLC), declaratory relief for successor liability

(against Nonproducing Defendants Polebridge LLC, Good Design, Inc., AGTech PA LLC, Best

Bev LLC, XO Energy Worldwide LLLP, XO EW LLC, and Canvas 340 LLC), unjust enrichment

(against all Defendants), breach of contract (against Nonproducing Defendants Parzych and

Rittenburg for monetary damages and against Polebridge LLC, Good Design, Inc., AGTech PA

---

[1] A more detailed summary of the allegations of the Amended Complaint is set forth in the Trustee's
brief in opposition to the second motion to dismiss (Adv. D.I. 58), which is incorporated herein by
reference.  Capitalized terms not defined herein shall have the meaning ascribed to them in the
Amended Complaint.

LLC, Best Bev LLC, XO Energy Worldwide LLLP, XO EW LLC, and Canvas 340 LLC for a
declaratory judgment), equitable subordination (against Nonproducing Defendant Boyer),
turnover (against all Defendants), avoidance and recovery of unauthorized postpetition transfers
(against Nonproducing Defendants Best Bev LLC, XO Energy Worldwide LLLP, and XO EW
LLC), and avoidance and recovery of preferential transfers (against Nonproducing Defendant
Boyer).

**B.      The Trustee's RFPs and Subsequent Efforts to Obtain Documents**

On March 21, 2025**,** the Trustee served her First Requests for Production on Nonproducing
Defendants, seeking documents squarely relevant to the claims asserted in the Amended
Complaint, including Nonproducing Defendants' use of Debtor assets, operation of businesses
related to the Debtor's line of business, intercompany transactions, communications among
Defendants, and destruction or transfer of Debtor records.  *See* Exhibit A-1[2] (Trustee RFP to
individual Defendants) (the "Individual RFPs"); Exhibit A-2 (Trustee RFP to entity Defendants)
(the "Entity RFPs" and, with the Individual RFPs, the "RFPs").  The Trustee's RFPs were narrowly
tailored, limited to a defined time period based on the allegations of the Amended Complaint
(generally January 1, 2018 through the present), and directed to specific categories of documents
central to the Trustee's claims.

On June 20, 2025, after the Trustee agreed to multiple extensions at Nonproducing
Defendants' request, the Nonproducing Defendants provided written responses (the "Written
Responses") to the RFPs.  *See* Exhibits B-1 through B-14.  The Written Responses relied almost
exclusively on boilerplate general objections, imposed unilateral and unsupported limitations on

---

[2] References herein to "Exhibit ___" refer to exhibits to the Declaration of Andrew J. Belli ("Belli
Dec.") filed contemporaneously herewith.

scope and time period, and repeatedly stated that Defendants would not search for or produce
responsive materials absent arbitrary limitations on time period and scope.   Indeed, each
Nonproducing Defendant's response to the vast majority of requests contains the following
language without any effort whatsoever to explain the pertinence of the objections to the individual
requests:

> Select [Nonproducing] Defendant incorporates by reference the
> foregoing general objections as though fully set forth herein. Select
> [Nonproducing] Defendant further objects to this Request as
> overbroad, unduly burdensome, because it seeks irrelevant
> information, because it is not proportional to the needs of the case,
> and because it is not reasonably calculated to lead to the discovery
> of admissible evidence.  Select Individual Defendant further objects
> to this Request on the grounds that it is vague and ambiguous and
> because the Trustee made no effort to tailor this Request to specific
> documents, categories of documents, specific claims, or relevant
> time periods.

*See, e.g.,* Exhibit B1 at Responses ## 1-21, 23, 24, 26, 27.  The bulk of responses conclude by
dictating that the Nonproducing Defendants "will not search for or produce documents which may
be responsive to this Request unless and until the parties agree on appropriate limitation and
restrictions reducing the scope of this Request, and Select [Nonproducing] Defendant's counsel
are prepared to meet and confer regarding this Request and its scope." *See, e.g., id.* at Responses
##1-9, 11-21, 23, 26.

On July 30, 2025, undersigned counsel held a meet and confer telephone conference with
Robert Beste, Esquire, who at that time served as counsel for all Nonproducing Defendants.
During that call, undersigned counsel stated that the Written Responses were deficient and that a
formal deficiency letter would be forthcoming.  Attorney Beste suggested that, in lieu of discussing
and attempting to resolve all of the Trustee's issues with the Written Responses seriatim, the
Trustee provide search parameters for the Nonproducing Defendants' electronically stored

information (e.g., emails, documents, text messages), and that, after generating a hit report, the

parties could engage in a more productive discussion regarding the scope of production and any

remaining disputes.  Despite the Written Responses' blanket refusal to produce documents absent

the Trustee's agreement to unspecified restrictions on scope, Attorney Beste stated that documents

would ultimately be produced, after which the parties could narrow the issues actually in dispute

and, if necessary, approach the Court with those disputes in a productive fashion.  *See* Belli Dec.

at ¶ 3.

Consistent with that discussion, on August 6, 2025, undersigned counsel sent Attorney

Beste a proposed ESI search protocol along with an email stating "It was nice talking with you last

week.  Per your request, attached is a search protocol for Defendants' ESI.  In addition to the

protocol, I want to be sure I am picking up all of Defendants' communications with each other – I

was unable to nail this down sufficiently because I don't have all of their email/cell numbers/other

electronic messaging account info.  Please let me know your thoughts."  *See* Exhibit C.

On August 19, 2025, the Trustee sent Nonproducing Defendants a letter detailing numerous

deficiencies with the Written Responses, including improper boilerplate objections, refusal to

search for documents, unsupported possession-and-control objections, improper privilege

assertions without a privilege log, and unilateral temporal limitations.  *See* Exhibit D.

On August 21, 2025, after undersigned counsel inquired as to the status of Nonproducing

Defendants' review of the search protocol, Attorney Beste emailed undersigned counsel stating

"We are coordinating with our clients to identify potential document repositories to allow a

comprehensive discussion about esi collection and searching. Given the number of people and

entities, this process is taking time."  *See* Exhibit E.

Over the ensuing weeks and months, however, Nonproducing Defendants still failed to produce any hit reports or documents.  On September 16, 2025, undersigned counsel contacted Attorney Beste and inquired as to the status of Nonproducing Defendants' document production, stating that "[i]t has been six months since the RFP was served and I don't have anything yet.  I will have to get the Court involved very soon if there is not movement here."  *See* Exhibit F.

Attorney Beste responded on September 19, 2025, requesting a telephone call "to discuss the current status of [Nonproducing Defendants'] document production."  *See* Exhibit F.  During the telephone call, which occurred on September 25, 2025, Attorney Beste outlined a process whereby Nonproducing Defendants agreed to run the search terms previously circulated by undersigned counsel (subject to Nonproducing Defendants' right to raise issues as to particular terms, which the parties agreed to work out as issues arose) and would prioritize certain productions on a Defendant-by-Defendant basis and start producing documents on a rolling basis. Attorney Beste again suggested that letting the process play out would allow the parties to identify those discovery points which were truly in dispute, which could then be presented to this Court in an efficient manner.  *See* Belli Dec. at ¶ 4.

Undersigned counsel requested updates on the status of Nonproducing Defendants' document production in emails dated October 10, 2025, October 17, 2025, and October 22, 2025, with the October 22nd email stating as follows: "[A]re we still proceeding via the route you described on our last call?  It has been nearly a month since then, and many months since my document requests were served – I expected to see something by now."  *See* Exhibits F and G.

Undersigned counsel made additional follow up efforts via emails dated November 12, 2025, November 14, 2025, and November 18, 2025, after which he was contacted by Joseph Williams, who identified himself as general counsel for certain of the Nonproducing Defendants.

*See* Exhibit G.   Undersigned counsel contacted Attorney Beste concerning the email from Attorney Williams and Attorney Beste stated that he would be withdrawing his representation and gave undersigned counsel permission to speak directly with Attorney Williams.   Attorney Williams suggested that, rather than focus on discovery efforts which would be expensive and time consuming, the parties should meet to discuss a potential resolution of the matter.   Undersigned counsel responded that the Trustee was always amenable to discussing a productive resolution of the matter and wanted to set up an in person meeting as soon as possible.  *See* Belli Dec. at ¶ 5.

On December 3, 2025, the parties filed a stipulation providing for a six-month extension to the discovery deadline and stating that fact discovery must be completed by July 19, 2026.  Adv. D.I. 101; *see also* Adv. D.I. 102 (Amended Pretrial Order effectuating stipulation).  The stipulation acknowledged that the Trustee has produced over 500,000 pages of documents but that "certain Defendants have experienced delays in gathering and producing documents and ESI."  Adv. D.I. 101.

Despite repeated efforts by undersigned counsel to schedule the meeting suggested by Attorney Williams, no meeting occurred.  On January 8, 2026—more than nine months after the Trustee served the RFPs—Ballard Spahr attorneys entered their appearance for Nonproducing Defendants Best Bev, LLC, Canvas 340, LLC, Shawn Sheehan, XO EW, LLC, and XO Energy Worldwide, LLLP (the "Ballard Defendants"), with Nonproducing Defendants Casey Parzych, Angus Rittenburg, Ashleigh Baldwin, R.F. Culbertson, Michael Boyer, Kelly Festa, Polebridge, LLC, Good Design, Inc., and Agtech PA LLC (the "K&L Gates Defendants") continuing to be formally represented by Attorney Beste at K&L Gates.  Adv. D.I. 104.

On January 14, 2026, undersigned counsel emailed the Ballard attorneys seeking confirmation that they would honor prior counsel's commitment to running the proposed search

terms and promptly beginning document production, noting that the Trustee relied on prior counsel's repeated representations for months in continuing to hold off on motion practice. *See* Exhibit H. On January 23, 2026, after receiving no response to his email, undersigned counsel called Ballard attorney Leslie Heilman, who stated that she was still getting up to speed on the case. Undersigned counsel suggested that they speak the following week and a telephone conference was held on January 28, 2026 at which the Ballard attorneys refused to commit to the prompt production of responsive documents. Undersigned counsel stated that he intended to file the instant motion but remained hopeful that the parties could work their issues out prior to the hearing date. *See* Belli Dec. at ¶ 6.

The K&L Gates Defendants have not discussed the merits of discovery with undersigned counsel since late September 2025, with Attorney Beste stating in mid-November 2025 that the firm would be withdrawing as counsel. On February 5, 2026, as undersigned counsel was drafting the instant motion, K&L Gates filed its motion to withdraw as counsel (Adv. D.I. 105). The Trustee has been patient with respect to Nonproducing Defendants' intentions with respect to their counsel (which is now being changed for the third time), but feels constrained to file the instant motion to ensure that Nonproducing Defendants will honor their discovery obligations, especially given the multiple changes of counsel and the resulting delay, and substantial evidence indicating that certain Nonproducing Defendants have already destroyed relevant documents.[3]

---

[3] Numerous sources of evidence substantiate the Trustee's allegations concerning Defendants' destruction of documents, including internal text messages between Defendant Casey Parzych and his father, Defendant Gary Parzych, with Casey Parzych instructing his father (who was also the Debtor's landlord) on May 18, 2021 "Please no emails about a lease being available to MMD it's a critical part of our law suits that you are not willing to rent to MMD . . . Going to delete the one you just sent," and his father responding "Ok understood. Make sure [Defendant] Kelly [Festa] deletes too." *See* Belli Dec. at ¶ 7.

**BASIS FOR RELIEF**

The Trustee is entitled to relief because Nonproducing Defendants have failed to comply with their discovery obligations despite months of extensions, repeated meet-and-confer efforts, and their counsel's representations that production would proceed. The Trustee's Requests for Production seek plainly relevant, proportional, and non-privileged information that goes to the heart of the claims that survived two motions to dismiss. Yet Nonproducing Defendants have produced no documents at all, have failed to even conduct reasonable searches of their ESI, and have relied on boilerplate objections and unilateral limitations that are facially improper under the Federal Rules and so deficient as to constitute waiver of the ability to object. Court intervention is now required to compel compliance and prevent further prejudice to the Trustee.

## A.      Legal Standard

Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, which states that "[a] party seeking discovery may move for an order compelling . . . production . . . if a party fails to produce documents . . . as requested under Rule 34." The Trustee's RFPs were served pursuant to Federal Rule of Civil Procedure 34, which provides that "a party may serve on any other party a request within the scope of Rule 26(b)." It is well established under Federal Rule of Civil Procedure 26(b) that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

10

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[4]

"Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial.  The discovery rules are meant to be construed quite liberally so as to permit the discovery of any information which is relevant and is reasonably calculated to lead to the discovery of admissible evidence." *Packer v. Glenn O. Hawbaker, Inc.*, No. 4:21-CV-01747, 2026 WL 227152, at *1 (M.D. Pa. Jan. 28, 2026) (internal quotation marks, alteration marks, and citations omitted).  "[T]the relevancy requirement in this setting is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation."  *Rimoni v. Commonwealth Land Title Insurance Company*, 2026 WL 206217, at *1 (W.D. Pa. Jan. 27, 2026).

### B.    The RFPs Seek Relevant Information Proportional To The Needs Of The Case

As set forth in detail on a request-by-request basis in Appendices A (for the individual Nonproducing Defendants) and B (for the entity Nonproducing Defendants) hereto, the Trustee's RFPs seek information that is directly relevant to the claims and defenses in this adversary proceeding and proportional to the needs of the case.  The requested documents concern, among other things, Defendants' communications with one another concerning the allegations of the Amended Complaint, the formation and operation of affiliated entities through which Defendants usurped the resources of the Debtor, the transfer or continuation of the Debtor's business activities, the use or disposition of the Debtor's assets, and Defendants' knowledge and intent concerning the allegations of the Amended Complaint.  Such discovery goes to the heart of the Trustee's

---

[4] The Federal Rules of Civil Procedure cited in this paragraph apply to this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001, 7026, 7034, and 7037.

allegations of insider misconduct, coordinated diversion of assets, and successor liability.  It is also uniquely within Defendants' possession, custody, or control.  Without discovery of Defendants' internal communications, financial records, and entity-formation materials, the Trustee cannot fairly litigate this matter.  Given the number of Defendants, the complexity of the alleged scheme, and the fact that many of the relevant records were never turned over to the Trustee, the discovery sought is not only relevant but essential to the issues raised in the Amended Complaint.

Each of the proportionality factors under Rule 26(b)(1) favors production.  The issues at stake — breach of fiduciary duty, looting of a bankruptcy estate, and coordinated diversion of assets from creditors — are of the highest importance.  The Trustee's relative access to relevant information is severely limited: many of the Debtor's records were destroyed or not turned over to the Trustee, and crucial evidence resides in the Nonproducing Defendants' own files, communications, and financial records.  As to resources, the Nonproducing Defendants are sophisticated long time players in the beverage and energy industries and there is no suggestion that they lack the capacity to respond to discovery.  The importance of the requested discovery cannot be overstated: Defendants' internal communications and financial records are the primary evidence concerning the allegations of the Amended Complaint.  Finally, Nonproducing Defendants have never articulated any specific burden or expense associated with compliance.  A party asserting undue burden must provide specific, concrete evidence — not mere conclusory assertions.

## C.    The Nonproducing Defendants' Written Responses Do Not Justify The Withholding Of Documents

Nonproducing Defendants' Written Responses are woefully deficient in that they reflexively invoke general objections and refuse to search for or produce responsive materials absent arbitrary and self-imposed limitations on time periods and scope.  Specifically, the

Written Responses do not justify the failure to produce responsive material for the following reasons:

     i.     *Misuse of General Objections* – Each Nonproducing Defendant's response contains a lengthy section entitled "General Objections and Reservations."  "The federal courts have held time and again that '[g]eneral objections are not proper [and] without more [are] an insufficient basis for refusal to answer.'"  *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1102 (D.N.J. 1996) (quoted reference omitted).

     ii.     *Improper General, Boilerplate, and Blanket Objections* – Each Nonproducing Defendant's response contains identical boilerplate general objections, both under a heading explicitly titled "general objections" and in the virtually identical responses to nearly every single request lodged by the Trustee, including: irrelevance; overbreadth; undue burden; vague and ambiguous requests; disproportionality; lack of possession, custody, or control; availability from other sources; undefined or improperly defined terms; improper grouping of defendants; requests for legal conclusions; and privilege.

Each Nonproducing Defendant's response to the vast majority of requests contains the following language without any effort whatsoever to explain the pertinence of the objection to the individual requests: "Select [Nonproducing] Defendant incorporates by reference the foregoing general objections as though fully set forth herein. Select [Nonproducing] Defendant further objects to this Request as overbroad, unduly burdensome, because it seeks irrelevant information, because it is not proportional to the needs of the case, and because it is not reasonably calculated to lead to the discovery of admissible evidence.  Select Individual Defendant further objects to this Request on the grounds that it is vague and ambiguous and because the Trustee made no effort to

tailor this Request to specific documents, categories of documents, specific claims, or relevant time periods." *See, e.g.,* Exhibit B1 at Responses ## 1-21, 23, 24, 26, 27.

To the contrary, none of the Trustee's requests are ambiguous, all seek a specific category of document, and, unless otherwise indicated in an individual request, all requests are limited to the time period of January 1, 2018 through the present.  Nonproducing Defendants' use of such objections, stated in a boilerplate fashion to each request without specificity or supporting detail, are facially deficient under Federal Rule of Civil Procedure 34(b)(2) and applicable case law.  *See, e.g., Parisi v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient.").

Indeed, it is well-settled that the use of boilerplate objections

> is inappropriate and results in the waiver of the objection. *NE Technologies, Inc. v. Evolving Systems, Inc.*, 2008 WL 4277668, at *5 (D.N.J. Sept. 12, 2008) ("When objecting to a discovery request, an objecting party must state with specificity the grounds for the objection, and not the familiar litany that an interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant.") (citation and quotation omitted). As noted in *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084, 1102 (D.N.J.1996), "[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request"; *see also Weems v. Hodnett*, 2011 WL 3100554, at **1–2 (W.D.La. July 25, 2011) ("General objections such as the ones asserted ... are meaningless and constitute a waste of time for opposing counsel and the court . . . .[).]

*Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704–05 (D.N.J. 2015) (citations cleaned up; all but last of the parentheticals in original).

Egregiously, many responses cite this obstructive boilerplate in support of the statement that Nonproducing Defendants "will not search for or produce documents which may be responsive to this Request unless and until the parties agree on appropriate limitation and restrictions reducing the scope of this Request, and Select [Nonproducing] Defendant's counsel are prepared to meet and confer regarding this Request and its scope." *See, e.g.,* Exhibit B-1 at Responses ##1-9, 11-21, 23, 26.  As described in detail above, undersigned counsel  attempted to engage in the meet and confer process and it was fruitless.  The blanket refusal to produce documents is directly contrary to Rule 34(b), which requires production of all responsive, nonprivileged documents in the responding party's possession, custody, or control, and to interpose  any  objections with specificity.  Each of the Trustee's requests is plainly stated, clearly relevant to the issues raised by the Trustee's claims, and appropriately tailored to elicit information in a manner proportional to the needs of this case.  Nonproducing Defendants' pervasive use of boilerplate objections is a frivolous attempt to dodge their discovery obligations, and should result in waiver of their ability to object to the RFPs.

    iii.     *Documents Allegedly In The Possession of the Trustee or Millstone –*

Nonproducing Defendants object to virtually all requests on the grounds that they "seek information outside the possession, custody, or control" of the defendants because "all relevant records are primarily located with" the Debtor or Millstone.  While the Trustee obviously does not expect Nonproducing Defendants to produce a document not in their possession, custody, or control, the objection is otherwise factually baseless, as Nonproducing Defendants have been aware since this case was filed that the Trustee is missing many records of the Debtor (most notably, the Debtor's emails).  Legally, the fact that the documents sought might be publicly available or simultaneously in the possession of the Trustee or a third party does not absolve

Defendants from the responsibility of producing those responsive documents in their possession, custody, or control. *See, e.g., St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000) (objection "based on the ground that [a discovery request] seeks information and documents equally available to the propounding parties from their own records or from records which are equally available to the propounding parties . . . is insufficient to resist a discovery request").

iv.   *Collection from Specific Repositories* – Virtually every response "reserves the right to object to collection from specific document repositories under Civil Rule 26(b)(2)(B)." This boilerplate reservation of rights without further explanation is inappropriate.

v.   *Overly Narrow Temporal Limitation* – Many of Nonproducing Defendants' responses to individual requests impose arbitrary temporal limitations allegedly based on dates mentioned in the Amended Complaint. *See, e.g.,* Exhibit B-1 at Responses #1, 3-13, 15-21, 23, 26 ("At a minimum, any requests for production to Select Individual Defendant must be limited to documents and communications created on or after November 25, 2020, the earliest mention of any wrongdoing purportedly attributable to Select Individual Defendant in the amended complaint, and before September 17, 2021, the date the amended complaint alleges that the Court approved the Debtor's asset sale.").

There is no legal basis for such restrictions. The Trustee is entitled to discovery concerning the full course of conduct relevant to her claims—including planning, concealment, and ongoing impact. The Trustee alleges that Nonproducing Defendants' conduct relevant to this suit continued not only past the date of approval of the Debtor's asset sale, but to this day through the continued operation of Best Bev and the continued sale of Wynk seltzer. Defendants are not permitted to unilaterally narrow the scope of discovery based on their own view of when their misconduct

16

began or ended. *See, e.g., Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) ("Rule 26(b)(1) does not give any party 'the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case,' because '[l]itigation in general and discovery in particular . . . are not one sided.'" (citation omitted; alterations in original)).  Other responses impose similarly baseless limitations based on the date of entity formation.  *See, e.g.,* Exhibit B-13 at Responses 2-32, 34, 35 ("Select Entity Defendant further objects because, according to the amended complaint, it did not exist until June 2022").  To the extent that any entity Defendant is in possession of responsive documents which predate its formal date of formation, the Rules require their production.

vi.        *"Entity Formation" Materials* – Certain responses object to the production of documents and communications concerning entity formation with the boilerplate objection that requests encompassing such information do "not seek relevant information and [are] not tailored to, or proportional to, the Trustee's specific needs in this matter, and . . . seek[] privileged material."  *See, e.g.,* Exhibit B-13 at Responses 4, 5, 16.  Given the Trustee's allegations of alter ego, veil piercing, and successor liability (which survived Nonproducing Defendants' motions to dismiss), the objection is baseless.

vii.        *Lack of a "Purportedly Wrongful Act"* – Certain of the entity Nonproducing Defendants object to certain of the requests on the basis that "the amended complaint does not detail even a single purportedly wrongful act which it attributes to Select Entity Defendant."  *See, e.g.,* Exhibit B-14 at Responses 1-9, 11-32, 34-35.  The objection is baseless, as each Nonproducing Defendant filed two motions to dismiss, both of which were denied.  All Nonproducing Defendants are part of this case and have the obligation to respond to discovery.

**D.**    **Prompt Production Should Be Ordered**

Immediate production of the documents responsive to the Trustee's RFPs is warranted. The Trustee served the RFPs nearly a year ago.  Since that time, the Trustee has granted multiple extensions, engaged in repeated meet-and-confer efforts, provided proposed ESI search terms at Defendants' request, and refrained from seeking Court intervention in reliance on Nonproducing Defendants' representations that production was forthcoming.

Nonproducing Defendants have now exhausted any reasonable claim to additional delay. They have not identified any concrete burden preventing production, have not provided hit reports or custodian lists, and have not meaningfully engaged in the meet and confer process.  Moreover, the Trustee is concerned that Nonproducing Defendants are attempting to further prolong their nonproduction of documents via yet another change of counsel (for the Ballard Defendants) or by creating circumstances which necessitate their current counsel's withdrawal (for the K&L Gates Defendants).  Allowing further delay would reward obstruction and prejudice the Trustee's ability to prosecute this case efficiently.

Under these circumstances, Rule 37 authorizes the Court to compel prompt compliance to ensure that discovery proceeds in an orderly and fair manner.  Absent such relief, the Trustee will continue to be prejudiced by Nonproducing Defendants' refusal to participate meaningfully in discovery.

## <u>CONCLUSION</u>

WHEREFORE, as set forth herein, the Trustee respectfully requests entry of an order substantially in the form submitted contemporaneously herewith: (i) granting the Trustee's Motion; (ii) compelling the Nonproducing Defendants to produce documents responsive to the Trustee's RFPs in a timely manner; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: February 13, 2026

**COREN & RESS, P.C.**

/s/ Andrew J. Belli
STEVEN M. COREN
ANDREW J. BELLI
JANICE D. FELIX
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
abelli@kcr-law.com
jfelix@kcr-law.com

*Counsel for Plaintiff*
*Bonnie Finkel, Chapter 7 Trustee*

**Appendix A – RFPs to Individual Defendants**

| RFP No. | RFP Language | Relevance |
|---|---|---|
| 1 | All documents and communications with or concerning the Debtor or its subsidiaries. | Establishes the nature, scope, and timing of Defendants' interactions with the Debtor for the purpose of demonstrating Defendants' involvement in using Debtor resources, diverting business opportunities, and misappropriating revenues. |
| 2 | All documents and communications concerning the Bankruptcy Proceeding. | Directly relevant to allegations that Defendants conspired to manipulate the Debtor's bankruptcy process, rigged the Section 363 sale in favor of the Sheehan Entities, provided false testimony at the Section 341 meeting, caused the filing of inaccurate documents, and allowed the Sheehan Entities to manage the bankruptcy process to the Debtor's detriment. |
| 3 | All documents and communications with or concerning the following entities: Polebridge LLC; Good Design  Inc.; AgTech PA LLC f/k/a American  Cannabis LLC; Ag Tech VI LLC; AGTech VI LLLP; AgTVI LLC; Can Man LLC; Best Bev LLC; EtOH Worldwide LLC; XO Energy Worldwide LLLP; XO EW LLC; Canvas 340 LLC; XO Energy MA, LP; XO Energy MA, Inc.; XO Energy Worldwide, LLC; Maho, LLC; Splint LLC; Crutch LLC; Cane LLC; Brace LLC; Walker LLC; Spectre Distributing LLC; Millstone Spirits Group LLC; Faber Foundation; Unattended 2.0 LLC; kglobal; DPG Management, LLC; and Wherehouse Beverage Co. | Establishes the nature, scope, and timing of Defendants' interactions with entities implicated in the diversion of Debtor resources, as set forth in detail in the Amended Complaint.  These entities are the vehicles through which Defendants allegedly siphoned Debtor resources and profits. Documents will show the alter ego relationships, the flow of funds and resources, and the interconnected web of entities controlled by Defendants Parzych and Sheehan. Also targets kglobal (the PR firm jointly retained by Parzych and Sheehan) and DPG (the HR consulting firm whose "Wynk – Proposal" was billed to the Debtor). |
| 4 | All documents and communications with or concerning any of the current or former | Essential to demonstrate the interaction of Defendants with |

| | defendants in this litigation that relate to any of the allegations in the Amended Complaint or your answer thereto. | respect to the allegations of the Amended Complaint. |
|---|---|---|
| 5 | All documents and communications concerning the ethanol, copackaging and/or beverage industries, including, but not limited to, entity formation, site leasing/construction, storage, formulation, production, canning, packaging, co-packing, labeling, sourcing, marketing, staffing, and sale of ethanol products (including, but not limited to liquor, alcoholic beverages, hand sanitizer, and raw ethanol) and beverages (including, but not limited to, alcoholic beverages and/or beverages containing CBD and/or THC). | Request targets the substantive business activities that form the core of the Trustee's claims. The Debtor was in the business of manufacturing, canning, and selling spirits, hand sanitizer, and beverages; the Pilfering Entities operated in the same lines of business using Debtor resources. This request will capture evidence of the Defendants' parallel business activities, the use of Debtor resources for non-Debtor products (e.g., CBDelight, Wynk Seltzer, Well Rebellion), and the breach of the Work Product Assignment provision. |
| 6 | All documents and communications relating to any contract, agreement, or understanding between you and the Debtor, or between you and any of the other defendants in this litigation. | Demonstrates the relationship between the Debtor and the Defendants in this litigation, and among the Defendants in this litigation and each other, and squarely relevant to the Amended Complaint's allegations concerning profit sharing and successor liability/alter ego.  Also relevant to demonstrating that intercompany transactions were not at arm's length. |
| 7 | All documents and communications relating to any payments received by you from the Debtor or from any of the other defendants in this litigation. | Directly relevant to the unjust enrichment claim and the Trustee's efforts to trace diverted funds. Also relevant to the Parzych/Rittenburg Purchases, the Boyer Payment, and any distributions the individual Defendants received from the Entity Defendants. |
| 8 | All documents and communications concerning Faber Hand Sanitizer, CBDelight, Wynk Seltzer, and liquor products branded Well Rebellion, Best Bev, or Pour Brothers, including, but not limited to, documents and communications concerning entity formation, | Directly relevant to allegations concerning product lines diverted from the Debtor or created using Debtor resources. |

| | site leasing/construction, storage, formulation, production, canning, packaging, co-packing, labeling, sourcing, marketing, staffing, and sale. | |
|---|---|---|
| 9 | All documents and communications relating to the Debtor's books, records, and online accounts. | Relates to control and concealment of Debtor records. |
| 10 | All documents and communications relating to any purchases made by the Debtor for use by you or any of the other defendants in this litigation. | Targets evidence of specific diversions of Debtor resources, including the Post Petition Best Bev Transfers, the use of Debtor credit cards for personal purchases by Parzych and Rittenburg, the Debtor's payment for Wynk-related travel and supplies, and the Debtor's payment for goods shipped to Best Bev at 2512 Quakertown Road. |
| 11 | All documents and communications relating to the data, assets, equipment, real property (whether leased or owned), and former personnel of the Debtor. | Central to asset diversion allegations. |
| 12 | All text messages and emails in which you attempted to sell beverages or products containing alcohol on behalf of any person or entity. | Shows continuation of sales operations, competition with the Debtor, and operation of entities alleged to be the alter ego/successor to the Debtor. |
| 13 | All notes pertaining to any telephone call or other conversation or meeting concerning the business of the Debtor, any of the Polebridge Entities, any of the Wynk Entities, any of the Best Bev Entities, and/or any of the Sheehan Entities. | Directly relevant to the allegations of the Amended Complaint, the operations of the Debtor, and the operation of entities alleged to be the alter ego/successor to the Debtor. |
| 14 | All documents and communications concerning any request issued to you by the Trustee pursuant to Bankr. E.D.Pa. Local Rule 2004-1. | Relevant to the Defendants' efforts to avoid producing discovery relevant to the claims raised in the Amended Complaint. |
| 15 | All documents and communications provided to or received from any regulatory, governmental, or investigative federal, state, or local agency concerning the Debtor. | Relevant to the operations of the Debtor. |
| 16 | All social media posts, messages, comments, or direct messages (including on Instagram, Facebook, LinkedIn, Twitter/X, etc.) concerning the Debtor, the Debtor's assets or | The Amended Complaint relies extensively on social media evidence, including Culbertson's LinkedIn page, Aguilar's LinkedIn page, |

| | | |
|---|---|---|
| | property, CBDelight, Faber Hand Sanitizer, Wynk Seltzer, and Best Bev, or otherwise relating in any way to the allegations in Plaintiff's Amended Complaint or your defenses thereto. | Baldwin's LinkedIn page, Sheehan's LinkedIn post, Coughlin's LinkedIn and Facebook posts, and various Instagram accounts. Social media posts demonstrate that Debtor personnel were openly working for the Pilfering Entities and that Defendants treated the entities as interchangeable. |
| 17 | All documents and communications relating to the products, brands, and intellectual property identified in paragraph 252 of the Amended Complaint. | Expressly tied to Amended Complaint allegations concerning Work Product generated with the improper use of the Debtor's resources. |
| 18 | All documents and communications concerning 2512 Quakertown Road, Pennsburg, PA 18073; 118 North Main Street, Trumbauersville, PA 18970; 2300 Trumbauersville Road, Trumbauersville, PA 18970; 2600 Milford Square Pike, Quakertown, PA 18591; and 300 Commerce Drive, Quakertown, PA 18951. | Expressly tied to locations identified in the Amended Complaint as being associated with the Debtor and/or the diversion of assets therefrom. |
| 19 | All documents and communications relating to the assets, business, or equity of the Debtor, including, but not limited to, any purchase or sale of the same. | Covers the pre-petition attempts by the Sheehan Entities to purchase the Debtor or its assets, the Section 363 sale process, the Millstone acquisition, and any other transactions involving Debtor assets. Relevant to proving that Defendants conspired to depress the value of the Debtor's assets and steer the sale to the Sheehan Entities at below-market value. |
| 20 | All documents and communications concerning the vehicle depicted in paragraph 94 of the Amended Complaint. | Paragraph 94 shows a mobile production truck used for Wynk Seltzer's first mobile production run in Ohio. This request seeks to establish ownership, funding, and use of the vehicle, relevant to claims that Debtor resources were used for the production of Wynk seltzer. |
| 21 | All documents and communications concerning the equipment, goods, and transactions identified | Expressly tied to Amended Complaint allegations identifying |

|    | | |
|----|-----------------------------------------------|----------------------------------------------|
|    | in paragraphs 150 and 178 of the Amended Complaint. | specific instances of misuse of Debtor property. |
| 22 | All documents and communications concerning any joint defense, common interest, or indemnification agreements among any defendants, or between any defendants and the Debtor. | Demonstrates the level of coordination and control among the Defendants. |
| 23 | All documents sufficient to show whether and how you used personal electronic devices or personal accounts for business communications. | Relates to the scope of potentially relevant ESI in Defendants' possession; important given the allegations of spoliation in the Amended Complaint. |
| 24 | All documents and communications concerning any destruction, deletion, or migration of electronic data concerning the Debtor or relating in any way to the allegations in Plaintiff's Amended Complaint or your defenses thereto. | Directly relates to the Amended Complaint's spoliation allegations. |
| 25 | All documents and communications relating to any insurance coverage for this case. | Standard request to identify potential sources of recovery and to understand the Defendants' financial resources for satisfying any judgment. |
| 26 | To the extent not produced in response to the foregoing requests, all documents and communications which relate in any way to the allegations in Plaintiff's Amended Complaint or your defenses thereto. | Ensures that any documents not captured by the specific requests above but which are nonetheless relevant to the allegations or defenses are produced. |
| 27 | To the extent not produced in response to the foregoing requests, all documents and communications that You may use to support any of your defenses in this litigation. | Ensures that Defendants cannot withhold documents they intend to rely upon at trial while objecting to the specificity of the prior requests. |

## Appendix B – RFPs to Entity Defendants

| RFP No. | RFP Language | Relevance |
|---|---|---|
| 1 | All documents and communications with or concerning the Debtor or its subsidiaries. | Establishes the nature, scope, and timing of Defendants' interactions with the Debtor for the purpose of demonstrating Defendants' involvement in using Debtor resources, diverting business opportunities, and misappropriating revenues. |
| 2 | All documents and communications concerning the Bankruptcy Proceeding, including but not limited to the Section 363 sale of the Debtor's assets. | Directly relevant to allegations that Defendants conspired to manipulate the Debtor's bankruptcy process, rigged the Section 363 sale in favor of the Sheehan Entities, provided false testimony at the Section 341 meeting, caused the filing of inaccurate documents, and allowed the Sheehan Entities to manage the bankruptcy process to the Debtor's detriment. |
| 3 | All documents and communications with or concerning any of the current or former defendants in this litigation that relate to any of the allegations in the Amended Complaint or your answer thereto. | Essential to demonstrate the interaction of Defendants with respect to the allegations of the Amended Complaint. |
| 4 | All documents and communications concerning the ethanol, copackaging and/or beverage industries, including, but not limited to, entity formation, site leasing/construction, storage, formulation, production, canning, packaging, co-packing, labeling, sourcing, marketing, staffing, and sale of ethanol products (including, but not limited to liquor, alcoholic beverages, hand sanitizer, and raw ethanol) and beverages (including, but not limited to alcoholic beverages and/or beverages containing CBD and/or THC). | Request targets the substantive business activities that form the core of the Trustee's claims. The Debtor was in the business of manufacturing, canning, and selling spirits, hand sanitizer, and beverages; the Pilfering Entities operated in the same lines of business using Debtor resources. This request will capture evidence of the Defendants' parallel business activities, the use of Debtor resources for non-Debtor products (e.g., CBDelight, Wynk Seltzer, Well Rebellion), and the breach of the Work Product Assignment provision. |

| 5 | All documents and communications related to your formation, governance, and capital structure, including but not limited to documents and communications describing your purpose, articles of incorporation, operating agreements, bylaws, minutes of meetings, shareholder/member lists. | Relevant to the piercing the corporate veil/alter ego analysis. Will reveal whether the entities observed corporate formalities, had legitimate independent purposes, and maintained separate governance structures. |
| --- | --- | --- |
| 6 | All federal, state, and local tax returns filed by you since tax year 2018. | Relevant to the Amended Complaint's alter ego/successor liability claims and damages. |
| 7 | All monthly statements from accounts (including, but not limited to, checking, savings, money market, brokerage, credit card, and investment accounts) maintained by you at any financial, depository, brokerage, or non-financial institution since January 1, 2018. | Relevant to allegations concerning improper use of Debtor resources and concerning the computation of damages. |
| 8 | All your audited and unaudited financial statements since January 1, 2018. | Relevant to allegations concerning improper use of Debtor resources, alter ego/successor liability, and concerning the computation of damages. |
| 9 | All your business plans, marketing materials, and operational reports since January 1, 2018. | Relevant to allegations concerning alter ego/successor liability, and for establishing basic foundational facts concerning Defendants. |
| 10 | Documents sufficient to identify your capital structure and any changes thereto since January 1, 2018. | Relevant to allegations concerning alter ego/successor liability, and for establishing basic foundational facts concerning Defendants. |
| 11 | Documents and communications concerning your funding, operations, cash flows, and accounting, including but not limited to, general ledgers, sub-ledgers, charts of accounts, accounting statements, sales and inventory data (including, but not limited to, invoices, purchase orders, and shipping documents), cost and expense data, revenue data, receipts, audited or unaudited financial reports, and QuickBooks files. | Comprehensive financial discovery relevant to multiple claims. Will enable the Trustee to: (1) trace diverted profits; (2) identify Debtor resources used by the Entity Defendants; (3) establish the Entity Defendants' interrelation; and (5) quantify damages. |
| 12 | Documents sufficient to identify your employees and independent contractors and their roles, since January 1, 2018. | Shows shared personnel among the Debtor and the Entity Defendants and demonstrates continuation of |

| | | operations; relevant to alter ego/successor liability. |
|---|---|---|
| 13 | All documents and communications relating to any contract, agreement, or understanding between you and the Debtor, or between you and any of the other defendants in this litigation. | Demonstrates the relationship between the Debtor and the Defendants in this litigation, and among the Defendants in this litigation and each other, and squarely relevant to the Amended Complaint's allegations concerning profit sharing and successor liability/alter ego.   Also relevant to demonstrating that intercompany transactions were not at arm's length. |
| 14 | All documents and communications relating to any funding or payments received by you from the Debtor or from any of the other defendants in this litigation. | Demonstrates the relationship between the Debtor and the Defendants in this litigation, and among the Defendants in this litigation and each other, and squarely relevant to the Amended Complaint's allegations concerning profit sharing and successor liability/alter ego. |
| 15 | All documents and communications relating to the assets or equity of the Debtor, including, but not limited to, any purchase or sale of the same. | Covers the pre-petition attempts by the Sheehan Entities to purchase the Debtor or its assets, the Section 363 sale process, the Millstone acquisition, and any other transactions involving Debtor assets. Relevant to proving that Defendants conspired to depress the value of the Debtor's assets and steer the sale to the Sheehan Entities at below-market value. |
| 16 | All documents and communications concerning Faber Hand Sanitizer, CBDelight, Wynk Seltzer, and liquor products branded Well Rebellion, Best Bev, or Pour Brothers, including, but not limited to, documents and communications concerning entity formation, site leasing/construction, storage, formulation, production, canning, packaging, co-packing, labeling, sourcing, marketing, staffing, and sale. | Directly relevant to allegations concerning product lines diverted from the Debtor or created using Debtor resources. |

| 17 | All documents and communications relating to your use of the Faber name. | Relates to misuse of Debtor intellectual property. |
|----|---------------------------------------------------------------|---------------------------------------------------|
| 18 | All documents and communications relating to any payments made by or to the Debtor or any of the defendants in this litigation. | Demonstrates the relationship between the Debtor and the Defendants in this litigation, and among the Defendants in this litigation and each other, and squarely relevant to the Amended Complaint's allegations concerning profit sharing and successor liability/alter ego. |
| 19 | All documents and communications relating to any purchases made by the Debtor for use by you or any of the other defendants in this litigation. | Relevant to improper use of Debtor resources. |
| 20 | All documents and communications relating to the products, brands, and intellectual property identified in paragraph 252 of the Amended Complaint. | Expressly tied to Amended Complaint allegations concerning Work Product generated with the improper use of the Debtor's resources. |
| 21 | All notes pertaining to any telephone call or other conversation or meeting concerning the business of the Debtor, any of the Polebridge Entities, any of the Wynk Entities, any of the Best Bev Entities, and/or any of the Sheehan Entities. | Directly relevant to the allegations of the Amended Complaint, the operations of the Debtor, and the operation of entities alleged to be the alter ego/successor to the Debtor. |
| 22 | All documents and communications relating to the data, assets, equipment, real property (whether leased or owned), and former personnel of the Debtor. | Central to asset diversion allegations. |
| 23 | All text messages and emails in which you attempted to sell beverages or products containing alcohol on behalf of any person or entity. | Shows continuation of sales operations, competition with the Debtor, and operation of entities alleged to be the alter ego/successor to the Debtor. |
| 24 | All documents and communications relating to any attempt by anyone to purchase the debts, business, or equity of the Debtor. | Relevant to Amended Complaint allegations concerning efforts to purchase the Debtor or its assets at lowball values. |
| 25 | All documents and communications concerning any destruction, deletion, or migration of electronic data concerning the Debtor or relating | Directly relates to the Amended Complaint's spoliation allegations. |

| | in any way to the allegations in Plaintiff's Amended Complaint or your defenses thereto. | |
|---|---|---|
| 26 | All social media posts, messages, comments, or direct messages (including on Instagram, Facebook, LinkedIn, Twitter/X, etc.) concerning the Debtor, the Debtor's assets or property, CBDelight, Faber Hand Sanitizer, Wynk Seltzer, and Best Bev, or otherwise relating in any way to the allegations in Plaintiff's Amended Complaint or your defenses thereto. | Expressly tied to Amended Complaint allegations concerning the Debtor, its assets, and brands created using the Debtor's assets. |
| 27 | All documents and communications concerning 2512 Quakertown Road, Pennsburg, PA 18073; 118 North Main Street, Trumbauersville, PA 18970; 2300 Trumbauersville Road, Trumbauersville, PA 18970; 2600 Milford Square Pike, Quakertown, PA 18591; and 300 Commerce Drive, Quakertown, PA 18951. | Expressly tied to locations identified in the Amended Complaint as being associated with the Debtor and/or the diversion of assets therefrom. |
| 28 | All documents and communications concerning the vehicle depicted in paragraph 94 of the Amended Complaint. | Expressly tied to Amended Complaint allegations identifying specific instance of misuse of Debtor property. |
| 29 | All documents and communications concerning the equipment, goods, and transactions identified in paragraphs 150 and 178 of the Amended Complaint. | Expressly tied to Amended Complaint allegations identifying specific instances of misuse of Debtor property. |
| 30 | All documents and communications concerning any joint defense, common interest, or indemnification agreements among any defendants, or between any defendants and the Debtor. | Demonstrates the level of coordination and control among the Defendants. |
| 31 | All documents and communications provided to or received from any regulatory, governmental, or investigative federal, state, or local agency concerning the Debtor. | Relevant to the operations of the Debtor. |
| 32 | All documents and communications concerning any request issued to you by the Trustee pursuant to Bankr. E.D.Pa. Local Rule 2004-1. | Relevant to the Defendants' efforts to avoid producing discovery relevant to the claims raised in the Amended Complaint. |
| 33 | All documents and communications relating to any insurance coverage for this case. | Standard request to identify potential sources of recovery and to understand the Defendants' financial resources for satisfying any judgment. |

| 34 | To the extent not produced in response to the foregoing requests, all documents and communications which relate in any way to the allegations in Plaintiff's Amended Complaint, or your defenses thereto. | Ensures that any documents not captured by the specific requests above but which are nonetheless relevant to the allegations or defenses are produced. |
|---|---|---|
| 35 | To the extent not produced in response to the foregoing requests, all documents and communications that you may use to support any of your defenses in this litigation. | Ensures that Defendants cannot withhold documents they intend to rely upon at trial while objecting to the specificity of the prior requests. |