**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

MIDNIGHT MADNESS DISTILLING, LLC,

Debtor.

Case No.: 21-11750-PMM

Chapter 7

BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling, LLC,

Plaintiff,

v.

CASEY PARZYCH, *et al.*,

Defendants.

Adv. Pro. No.: 23-00047-PMM

JURY TRIAL DEMANDED

**OBJECTION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Defendants Shawn Sheehan ("Sheehan"), XO Energy Worldwide, LLLP, XO EW, LLC, Canvas 340, LLC, and Best Bev, LLC (the "Sheehan Defendants"), through undersigned counsel, object (this "Objection") to *Plaintiff's Motion to Compel Discovery* [Adv. Dkt. No. 107] (the "Motion") and respond to *Plaintiff's Brief in Support of Motion to Compel Discovery* [Adv. Dkt. No. 107-1] ("Trustee's Brief" or "T.B."), filed by plaintiff Bonnie B. Finkel, as chapter 7 trustee ("Trustee") for the estate of debtor Midnight Madness Distilling LLC ("MMD" or "Debtor").

**PRELIMINARY STATEMENT**

1. The Trustee filed a 286-paragraph, fourteen count kitchen sink Amended Complaint ("Amended Complaint" or "A.C.") against 21 defendants (collectively, the "Defendants") asserting, among other things, a grand conspiracy among the Defendants to steal

assets from the Debtor.  Not all claims are asserted against all parties, and not all factual allegations pertain to all parties.  Yet the Trustee served the same discovery on each of the Defendants, varying only slightly between individual Defendants and entity Defendants.  Many of those requests are irrelevant to the claims and allegations asserted against each Defendant.  The Trustee's blunderbuss approach to pleading and discovery has made responding to her discovery nearly impossible.

2.      Of course, if the Trustee wanted to undertake a fishing expedition, she had Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") at her disposal for eighteen months following her appointment.  Instead, the Trustee waited until two months before the statute of limitations ran under 11 U.S.C. § 108 to initiate the Bankruptcy Rule 2004 process and never filed a motion to conduct a Bankruptcy Rule 2004 examination of any of the Sheehan Defendants.  She cannot and should not be permitted to now use discovery under the Federal Rules of Civil Procedure ("Civil Rules") to conduct the fishing expedition she failed to diligently undertake under Bankruptcy Rule 2004.

3.      Perhaps nothing better illustrates the Trustee's incoherent approach to discovery and the necessity of reaching an advanced agreement on a discovery protocol, than the search terms for electronically stored information ("ESI") proposed by her counsel.  *See* T.B. at Exhibit C (the "ESI Protocol").  The Trustee is asking each of the Defendants to run *259* search terms, many of which are absurd, including words like "liquor" and "distill" and "beverage" in a case involving a Debtor that *distilled liquor and marketed beverages*.

4.      The Sheehan Defendants are not, as the Trustee asserts, refusing to produce documents.  *Contra* T.B. at 9.  The Sheehan Defendants are ready, willing and prepared to engage with the Trustee to address the merits of her discovery (and have engaged) and fully intend to work

in good faith to diligently reach an agreement on reasonable and narrowed search terms and commit to begin producing proportionate responsive documents on a rolling basis, once such agreement is in place. But the Trustee needs to pursue discovery in a proportionate manner, which she clearly is not doing. This Court should not compel the Sheehan Defendants to respond to the unfocused, incoherent, irrelevant and disproportionate discovery served by the Trustee.

<u>**FACTUAL BACKGROUND**</u>

A. <u>The Formation of the Debtor and its Former CEO's Destructive Projects.</u>

5.      The Debtor was founded by Defendant Casey Parzych ("<u>Parzych</u>") and non-party Anthony Lorubbio ("<u>Lorubbio</u>") in November of 2011. *See* <u>Exhibit 1</u> (3/31/22 Dep. Tr. of Lorubbio) at 31:6-12. *Cf.* A.C. ¶39 (incorrectly alleging that the Debtor was formed "in or around 2012").

6.      The Debtor's business primarily focused on producing well liquor; basic, low-cost liquor used by bars to make mixed drinks. *See Expert Report of R.F. Culbertson* ("<u>Culbertson Report</u>"), attached as <u>Exhibit 2</u>, at ¶¶4-7. In 2019, Lorubbio sought to shift the Debtor's focus to producing high-end rum and a product called "SIPHON," a pressurized device filled with an effervescent liqueur. *See id.* ¶¶11-17. To finance Lorubbio's vision, the Debtor borrowed $2.5 million (the "<u>PNC Loan</u>") from PNC Bank ("<u>PNC</u>"), which was secured by a security interest in all of the Debtor's property. *See id.* ¶18; A.C. ¶42. As a result of Lorubbio's projects, the Debtor started losing money. Culbertson Report at ¶¶25-30. Eventually, Lorubbio's projects were terminated, stemming from the losses they were causing, but upsetting Lorubbio. *Id.* ¶31. The Debtor ultimately lost $1 million as a result of Lorubbio's projects. *Id.* ¶32.

7.      Lorubbio was terminated as the Chief Executive Officer of the Debtor effective January 30, 2020. *See* Exhibit 1 (3/31/22 Dep. Tr.) at 171:7-10. He sued Parzych on April 2, 2021

as a result of his termination. *See Lorubbio v. Parzych*, No. 2021-01816 (Bucks Cnty. Ct. Comm. Pl.) (the "Lorubbio Litigation").

B. The Debtor's Bankruptcy Filing, Conversion and Appointment of the Trustee.

8. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 21, 2021. A.C. ¶7. The Bankruptcy Court converted the Debtor's case to a case under chapter 7 of the Bankruptcy Code on October 13, 2021. *Id.* ¶190. The Trustee was appointed on October 14, 2021. *Id.*

C. The Trustee's Allegations Regarding CB Delight.

9. The Trustee alleges that on April 19, 2019, Defendant Ashleigh Baldwin ("Baldwin") established Defendant Polebridge, LLC ("Polebridge"). A.C. ¶46. The Trustee also alleges that Baldwin and Defendant Angus Rittenburg ("Rittenburg") formed Defendant Good Design, Inc. ("Good Design") on May 23, 2019. *Id.* ¶47. There is no allegation in the Amended Complaint that any of the Sheehan Defendants had any interest in Polebridge or Good Design when they were formed or at any other time.

10. The Trustee alleges that Polebridge and Good Design used the Debtor's resources to develop, market, produce and sell a product called CBDelight seltzer, a carbonated beverage containing cannabis derivatives. *Id.* ¶¶49-61.

D. Lorubbio's Allegations Regarding CBDelight Do Not Implicate the Sheehan Defendants.

11. On July 26, 2021, Lorubbio filed an amended complaint in the Lorubbio Litigation. *See* Exhibit 3. Through his amended complaint, Lorubbio added Polebridge, Baldwin and Rittenburg as defendants. *See generally id.* Lorubbio's amended complaint contained several allegations regarding CBDelight and the use of Debtor resources to develop, market and sell CBDelight for the benefit of Polebridge. *See id.* ¶¶29-40. Notably absent from Lorubbio's

allegations—despite having been the CEO of the Debtor through January 30, 2020—are allegations that any of the Sheehan Defendants were involved in any way with CBDelight. Unlike the Trustee, Lorubbio had first-hand knowledge regarding the facts surrounding CBDelight through January of 2020, and he never mentions the Sheehan Defendants.

E. The Trustee's Allegations Regarding Faber Hand Sanitizer

12. Already weakened by Lorubbio's misadventures with rum and the SIPHON product, the Debtor was dealt a critical blow when the Governor of Pennsylvania shut down all bars across the Commonwealth on March 18, 2020 due to COVID-19, because the Debtor's business primarily relied upon the sale of well liquor to bars. *See* Culbertson Report ¶41-43. *See also* A.C. ¶62.

13. The Trustee alleges that, in response to the COVID-19 shutdown, the Debtor manufactured, bottled and sold a hand sanitizer under the Faber brand name previously used by the Debtor to sell alcohol ("Faber Hand Sanitizer"). A.C. ¶62. The Trustee claims that the alleged profits from Faber Hand Sanitizer were diverted to Polebridge and Good Design. *Id.* ¶63.

F. The Trustee's Unfounded "Information and Belief" Allegation Regarding the Sheehan Defendants' Involvement in CBDelight and Faber Hand Sanitizer

14. The ***only*** allegation contained in the Amended Complaint that any Sheehan Defendant had any involvement whatsoever with CBDelight or Fabor Hand Sanitizer is that: "On April 17, 2020, Defendant Sheehan made a post to his LinkedIn page advertising Faber Hand Sanitizer. Upon information and belief, Defendant Sheehan and the Sheehan Entities had an agreement with the Insider Defendants to share in the ill-gotten profits from the sale of CBDelight and Faber Hand Sanitizer." A.C. ¶74.

15. When asked through the Sheehan Defendants' interrogatories to identify all facts and documents supporting this vague allegation, the Trustee incorporated by reference an

5

interrogatory response that largely repeated the allegations contained in the Amended Complaint.

*See* Exhibit 4 at pp. 19-35; 109-110.  The only additional factual assertion regarding the Sheehan

Defendants by the Trustee is the following:

> On April 3, 2020, Defendant Casey Parzych emailed the Debtor's outside counsel
> and copied cdrangula@agtechvi.com, informing counsel that "Carey and her team
> are looking to help us on the sanitizer and ethanol projects," thus establishing the
> Sheehan Defendants' role in the scheme. See BR000264. Further confirmation of
> the Sheehan Defendants' participation is provided via by Kelly Sheehan's "Users"
> folder on a Debtor hard drive provided to the Trustee by Millstone, which contains
> hidden files with internet history revealing the Sheehan Defendants' systemic
> involvement with the Debtor's business, including via use of the email address
> kelli@fabersanitizer.com.

*Id.* at 28.

16.     The e-mail referenced by the Trustee is attached as Exhibit 5.  First, the e-mail

makes no mention of CBDelight and cannot support the Trustee's "information and belief" that

the Sheehan Defendants had any involvement in CBDelight.  Second, the e-mail chain shows that

Parzych was seeking advice from counsel for the Debtor regarding one of the Sheehan Defendants

helping with the Faber Hand Sanitizer product; hardly evidence of a conspiracy to steal the

proceeds.  Third, despite having access to the Debtors' emails, this single e-mail is the only

document the Trustee points to allegedly showing any relationship whatsoever between the

Sheehan Defendants and Faber Hand Sanitizer.

17.     The Trustee's vague allegations regarding Kelly Sheehan amount to little more than

innuendo.  Notably, despite claiming that there are "hidden files" that prove that the Sheehan

Defendants were involved in the CBDelight or Faber Hand Sanitizer products, the Trustee fails to

reference any of those documents as substantiating her allegations.  That is because the documents

she unearthed are gibberish, as an example attached as Exhibit 6 illustrates.  The Trustee's

"information and belief" that the Sheehan Defendants were involved in CBDelight or Faber Hand Sanitizer is apparently premised upon that gibberish.

18.     In short, the Trustee lacks information or any basis to believe that the Sheehan Defendants had any involvement in CBDelight or Faber Hand Sanitizer.  She has fabricated an allegation "upon information and belief" to drag the Sheehan Defendants into her conspiracy theory regarding CBDelight and Faber Hand Sanitizer.

G.  The Trustee Conflates Can Man, LLC with Best Bev, LLC

19.     The Trustee alleges that Defendant Can Man, LLC ("Can Man") was formed on May 3, 2021.  A.C. ¶117.  The Trustee alleges that Can Man used the name "Best Bev."  *Id.* ¶29. However, the Trustee fails to allege that the Sheehan Defendants had or have any interest in Can Man.

20.     The Trustee claims that Defendant Best Bev, LLC ("Best Bev, LLC") is owned indirectly by Sheehan.  A.C. ¶31.  The Trustee also alleges that Best Bev, LLC was formed on June 13, 2022.  *Id.* ¶125.

21.     The Trustee claims that a piece of equipment was transferred by the Debtor to an address at 2512 Quakertown Road for use by the "Pilfering Entities," among which she includes Can Man and Best Bev in May of 2021.  A.C. ¶119.  The Trustee also claims that an employee of the Debtor hired employees for the "Pilfering Entities" in May of 2021.  *Id.* ¶120.  The Trustee claims that a proposal was provided by DPG Management, LLC on May 20, 2021 that was paid for by the Debtor but in some way relates to the "Pilfering Entities."  *Id.* ¶122.  The Trustee also claims that the Debtor's employees and resources created a "Can Man Shadow Structure" on June 14, 2021.  *Id.* ¶124.  Finally, the Trustee alleges that products were purchased for "Best Bev" between July 6, 2021 and September 29, 2021.  *Id.* ¶150.  None of these allegations are relevant

to Best Bev, LLC which ***did not exist*** when all of these alleged events occurred.  *Id.* ¶124.

Therefore, none of those allegations involve the Sheehan Defendants.

H.  Other Allegations That Have Nothing to Do With the Sheehan Defendants.

22.    The Trustee asserts that Parzych and other insiders of the Debtor failed to maintain
internal controls and relies upon allegations regarding Parzych's use of a Debtor credit card.  A.C.
¶¶ 172-78.  Those allegations have nothing whatsoever to do with the Sheehan Defendants.

23.    The Trustee also asserts that the Debtor funneled money to Defendant Finland
Leasing Co., Inc. and Gary Parzych, the father of Parzych.  *Id.* ¶¶179-88.  Again, those allegations
have nothing whatsoever to do with the Sheehan Defendants.

24.    Similarly, Counts 9, 13 and 14 of the Amended Complaint have nothing to do with
the Sheehan Defendants.  *Id.* ¶¶256-58; 268-86.

I.  Allegations Regarding Wynk Seltzer

25.    The Trustee alleges that Parzych, Rittenberg and Sheehan "used Debtor resources
and personnel to create a cannabis infused beverage known as Wynk seltzer ('Wynk Seltzer')."
A.C. ¶86.  The Trustee alleges that Sheehan's involvement with Wynk Seltzer occurred through
AgTech VI, LLC ("AgTech VI").  *Id.* ¶87.

26.    The Court dismissed all claims against AgTech VI with prejudice.  *See* Adv. Dkt.
No. 64.  Accordingly, the Trustee cannot pursue discovery regarding any claim against AgTech
VI.

J.  Other Allegations Relevant to the Sheehan Defendants.

27.    The Trustee claims that sometime after the Debtor defaulted on the PNC Loan on
February 28, 2021, an unspecified Sheehan Defendant offered to purchase the PNC Loan.  *Id.*
¶¶106 and 109.  The Trustee then claims that an unspecified Sheehan Defendant was involved in

the Debtor's decision to seek relief under the Bankruptcy Code and would purchase the Debtor's assets through an asset sale under 11 U.S.C. § 363. *Id.* ¶113. To illustrate the often irrational and conspiratorial nature of the Amended Complaint, the Trustee also alleges that an unspecified Sheehan Defendant was going to steal the Debtor's assets while the Debtor was under the supervision of this Court. *Id.*

28.     The Trustee also alleges that the Sheehan Defendants conspired to suppress bidding for the Debtor's assets during the Debtor's sale process after it filed for bankruptcy. *See id.* ¶¶131-45. Illustrating the hard work half-truths performed in the Amended Complaint, the Trustee claims that one of the means by which bidding was suppressed was Gary Parzych's refusal to allow any buyer other than one of the Sheehan Defendants to occupy a building he leased to the Debtor because the Sheehan Defendants would employ his son, Parzych. *Id.* ¶132. The Trustee has produced both a letter from Gary Parzych's attorney and documents from the Zoning Hearing Board of Milford Township that make clear that the variance allowing the use of the premises for distilling purposes was tied ***specifically*** to Parzych's use of the premises, and that the variance would "be discontinued when he is no longer involved in the craft distillery business at th[e] location." *See* Exhibit 7 (FG039282-039301). In other words, anybody buying the Debtor's assets who did not employ Parzych could not use the facility leased to the Debtor by Gary Parzych for distilling alcohol ***as a matter of law***.

29.     Finally, the Trustee makes various allegations regarding Best Bev's continued use of the Debtor's assets. *See* A.C. ¶¶153-71. These allegations illustrate the temporal incoherence that plagues the Amended Complaint. The Trustee acknowledges that the Debtor sold all of its assets to Millstone Spirits Group, LLC ("Millstone") on September 17, 2021. *Id.* ¶146. Yet the Trustee also contends that Best Bev is benefitting from assets of the Debtor "to this day," despite

9

the Debtor having not owned any assets for over four years. *Id.* ¶171. Indeed, the Trustee admits that Best Bev, LLC did not *exist* when the Debtor sold its assets to Millstone. *Id.* ¶125.

K. The Trustee Had Already Developed Her Conspiracy Theory by December of 2022.

30.     On December 20, 2022, Lorubbio sought to further amend his complaint in the Lorubbio Litigation. *See* Exhibit 8 ("Lorubbio Motion to Amend"). Through that motion, Lorubbio sought to add some or all of the Sheehan Defendants to the Lorubbio Litigation, making allegations against the Sheehan Entities that are strikingly similar to those in the Amended Complaint. *See* Lorubbio Motion to Amend at ¶¶9-21. Attached to the motion to amend was a declaration signed by Lorubbio ("Lorubbio Declaration"), in which he claimed to have personal knowledge regarding allegations against the Sheehan Defendants that are identical to the Trustee's allegations against the Sheehan Defendants. *See* Lorubbio Declaration at ¶¶11-23.

31.     During his deposition, Lorubbio admitted that all of the information he sought to add to his complaint regarding the Sheehan Defendants came from the Trustee. *See* Exhibit 1 (3/31/22 Dep. Tr.) at 153:19-154:3; *see also id.* at 138-39 (Lorubbio acknowledging that the Trustee had asked him about the relationship between Sheehan, Parzych and Rittenburg). In other words, the Trustee had already formed her conspiracy theory regarding the Sheehan Defendants, and shared it with Lorubbio, by December of 2022.

L. The Trustee Waits Until the Last Minute to Utilize Bankruptcy Rule 2004.

32.     The Trustee alleges that the Sheehan Defendants "failed to cooperate with requests for information issued pursuant to Bankr. E.D. Pa. Local Rule 2004-1." A.C. ¶ 195. She neglects to mention that she did not issue those requests until April of 2023—two months before the statute of limitations ran under 11 U.S.C. § 108(a)(2) for the Trustee to bring any claims. *See* Exhibit 4 at p.16. This, despite having already developed the conspiracy theory that animates the entire

10

Amended Complaint and had shared that theory with Lorubbio by December 20, 2022; the Trustee also neglects to explain why she did not bring a motion to require the Sheehan Defendants to produce documents pursuant to Bankruptcy Rule 2004. The obvious reason being that she waited too long to initiate the Bankruptcy Rule 2004 process before the statute of limitations would run.

M. The Trustee's Deficient Document Requests

33. As the Trustee admits, on March 21, 2025, she served identical document requests on the individual Defendants and identical document requests on the entity Defendants. *See* T.B. at 4 and Exhibits A-1 ("Individual RFPs") and A-2 ("Entity RFPs" and with the Individual RFPs, the "RFPs"). The Trustee sought documents from January 1, 2018 through the present, without regard to the time period relevant to any individual or entity Defendant based on the allegations of the Amended Complaint. *Id.*

34. The insuperable deficiencies with the Individual RFPs and Entity RFPs are enumerated in Appendices A and B attached to this Objection.

N. The Sheehan Defendants' Responses to the Trustee's Deficient Document Requests

35. Sheehan responded to the Individual RFPs, and the remaining Sheehan Defendants responded to the Entity RFPs, on June 20, 2025. *See* T.B. at Exhibits B-2, B-11, B-12, B-13, B-14 (the "Responses"). The Trustee complains that the Responses contained "boilerplate general objections, imposed unilateral and unsupported limitations on scope and time period, and repeatedly stated that Defendants would not search for or produce responsive materials absent arbitrary limitations on time period and scope." T.B. at 4-5. In fact, the Responses pointed out the overarching defect in the RFPs: the Trustee made no effort to tailor any of her RFPs to any specific documents, categories of documents, specific claims, or relevant time periods.

O.   The Trustee's Absurd ESI Search Protocol

36.     On August 6, 2025, counsel for the Trustee provided a draft ESI Protocol.  *See* T.B. at Exhibit C.  The Trustee appears to have conceded that she does not need documents from 2018 or after 2023 in the ESI Protocol, contrary to the position taken in the Trustee's Brief.  *Compare id. with* T.B. at 14.  Nevertheless, the Trustee proposed *259* search terms.  The only concession to relevance and reason made by the Trustee is that custodians did not need to run their own names against their own data.  Otherwise, as with the RFPs, the Trustee undertook no effort to propose search terms relevant to the Trustee's allegations or claims against each Defendant.  Moreover, many of the search terms are facially absurd, while many others bear no obvious relevance to any allegations or claims against the Sheehan Defendants.  A few examples illustrate this point:

| Search Terms | Issues With Search Terms |
|---|---|
| Wynk, DrinkWynk, !@drinkwynk.com | Wynk is produced by an affiliate of the Sheehan Defendants.  Requiring the Sheehan Defendants to search for terms of an affiliate's product will yield every single e-mail concerning that product. |
| Best Bev, BestBev, !@bestbev.co, AgTech, Ag Tech, @agtechvi.com, XO, X/O, !@xo-energy.com, EtOH, AGTVI, Canvas, Wherehouse | All of these entities are among the Sheehan Defendants.  Requiring the Sheehan Defendants to search for documents amongst themselves will yield a morass of irrelevant documents.  Additionally, AgTech VI and EtOH Worldwide, LLC have been dismissed. |
| Angus, Rittenburg, Festa, Ashleigh, Baldwin; Coughlin | These individuals came to work for Best Bev or Canvas 340 after their termination by the Debtor.  Having Sheehan Defendants search these terms after these individuals were employed by Best Bev or Canvas 340 will yield every single e-mail involving these individuals. |

| Search Terms | Issues With Search Terms |
|---|---|
| Sheehan, Uszenski, Carey, Drangula | These individuals are or were employees of the Sheehan Defendants. Running their names will yield every e-mail or document involving them. |
| 2512 Quakertown, 300 Commerce, !565-5845, !268-6071, 2600 Milford, 118 North, 118 N!, 479029824486, 02498, !987-5616, 2300 Trumbauersville, PO Box 391, PO Box 46, PO Box 273, PO Box 576, PO Box 171, PO Box 48, 1619 New London | Searching various addresses, phone numbers or random numbers is likely to yield volumes of irrelevant data. For example, 1619 New London Rd. is the physical address of a non-defendant company, XO Energy, LLC. |
| Beverage, liquor, distill!, wagon, non-disclosure, sanitizer, distribu!, ethanol, Squar, POS, shadow, Drifter, Newco, Unattended, evasion, excise, bankruptcy, "revenue model!", Ugly | Searching generic, common and business terms will yield volumes of irrelevant data. |

P.   The Trustee's Deficiency Letter

37.   On August 19, 2025, counsel for the Trustee sent a letter asserting deficiencies in the Defendants' responses to the RFPs. *See* T.B. at Exhibit D ("Deficiency Letter"). The Deficiency Letter asserted the same positions taken in the Motion and Trustee's Brief but assiduously failed to address the fundamental problem with the RFPs—the unfocused scattershot approach to discovery without regard to the Defendant targeted, or the allegations or claims regarding that Defendant.

Q.   The Trustee's Deficient Response to Defendants' Discovery

38.   While complaining that the Defendants provided "boilerplate" responses to each of her indiscriminate RFPs, the Trustee could not be bothered to even do that in her own responses. On March 28, 2025, the Sheehan Defendants (along with other Defendants) served requests for production on the Trustee targeted to eliciting the production of documents tied to specific allegations within the Amended Complaint. *See* Exhibit 9. On June 27, 2025, the Trustee served

13

her response to the Sheehan Defendants' requests for production, which consisted of an "omnibus"

response rather than the individual responses required under Civil Rule 34(b)(2)(B):

> Plaintiff objects to providing paragraph by paragraph responses and objections to Defendants' First Sets of Requests for Production as doing so represents an undue burden and an intent to harass the Trustee due to the sheer number of requests (214 collectively) and the fact that many of the requests are duplicative and redundant. Plaintiff objects to all requests to the extent they call for production of information subject to the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection. With the exception of the following requests, to which more specific objections are provided, Plaintiff has produced or will produce all non-privileged documents in her possession which concern the allegations of the Amended Complaint and potential defenses thereto and which may be responsive to the document requests. Plaintiff specifically objects to Select Defendants' Requests ##5 and 6 as premature as discovery in this matter is ongoing and she has not yet made a decision as to the use of expert witnesses or trial exhibits in this matter. Plaintiff will produce information regarding expert witnesses and trial exhibits in the time and manner required by the Scheduling Order and the applicable Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and local rules.

*See* Exhibit 10.

R. The Trustee's Document Dump

39. The Trustee applauds herself for having produced "over 500,000 pages of documents." T.B. at 2. Her production appears to have been a wholesale document dump that evinces no effort to review documents for relevance. *See* Declaration of Leslie C. Heilman ("Heilman Dec.") at ¶¶14-15.

S. The January 28, 2026 Meet and Confer

40. The Trustee references a January 28, 2026 meet and confer between Trustee's counsel and undersigned counsel. T.B. at 9; Heilman Dec. ¶7. During that meet and confer, undersigned counsel informed counsel for the Trustee that the Trustee's failure to serve discovery that focused on the allegations and claims against individual Defendants was improper under Civil Rule 26(b) and rendered collecting, much less reviewing, responsive documents impossible.

Counsel for the Trustee declared that the Trustee was entitled to take discovery from all Defendants regarding all allegations and claims, regardless of the relevance of those allegations or claims to any individual Defendant. Heilman Dec. ¶8. Regarding the ESI Protocol, undersigned counsel informed counsel for the Trustee that requiring the Sheehan Defendants to search 259 terms without regard to relevance or custodian was unreasonable. Counsel for the Trustee offered no solution to that problem. *Id.* ¶9. Undersigned counsel agreed to analyze the ESI Protocol and provide suggested revisions to it. *Id.*

T.    Sheehan Defendants' Attempt to Rationalize the ESI Protocol

41.    Parsing through 259 search terms and engaging with the Sheehan Defendants regarding those terms took a significant amount of time and effort. *See id.* ¶11. Nevertheless, on February 27, 2025, counsel for the Sheehan Defendants provided counsel for the Trustee a detailed, term-by-term analysis of the ESI Protocol, identifying terms that are acceptable (subject to agreeing on a date range), unacceptable, or unclear as to why the Trustee proposed the term. *See* Exhibit 11.

U.    The Trustee Rejects Any Curtailment of Her Unreasonable Search Terms and Discovery

42.    On March 3, 2026, counsel for the Trustee responded to the Sheehan Defendants' analysis of the Trustee's unreasonable search protocol. *See* Exhibit 12. That response again illustrates that the Trustee is engaged in a fishing expedition rather than discovery and is unwilling to undertake any effort whatsoever to make the discovery process rational or reasonable. Among other things:

- The Trustee refuses to explain 145 of her search terms that appear to have no connection to any allegations against the Sheehan Defendants.

- The Trustee refuses to consider any reasonable time limitation on discovery.

- The Trustee insists that the Sheehan Defendants run their own names and brands (*e.g.* Wynk) against their own data, ensuring that *every* document and communication they possess will be swept up in the search.

- The Trustee insists that the Sheehan Defendants run terms related to allegations against Can Man, LLC—an entity the Trustee admits was not owned by any of the Sheehan Defendants when the alleged events occurred.

- The Trustee insists that the Sheehan Defendants run generic terms, including terms such as "cannabis" across the data of entities that make cannabis infused drinks, again ensuring that the Trustee's search terms indiscriminately sweep up every possible communication among the Sheehan Defendants.

- The Trustee insists that, simply because the Amended Complaint contains allegations regarding addresses and phone numbers, addresses and phone numbers should be run as search terms.

- The Trustee demands that the Sheehan Defendants "identify all individuals who sent or received potentially relevant emails on behalf of each entity Defendant," but her 259 search terms essentially render every e-mail sent by every employee of the Sheehan Defendants "relevant" because the Trustee's notion of relevance is limitless.

43. It is clear that the Trustee is attempting to make discovery in this case as protracted, painful and expensive as possible.

**A<span>RGUMENT</span>**

**I. The Trustee's Indiscriminate Discovery Exceeds the Scope of Permissible Discovery**

44. Civil Rule 26(b) establishes the scope of permissible discovery, providing:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to

16

any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).  "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed."  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citing *Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed. Cir. 1990)).  *See also In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009) (same).

45.    Civil Rule 26 does not permit fishing expeditions. *See, e.g., Ferrari v. Leib*, No. 24-7753 (ES) (MAH), 2024 WL 4432747, at *3 (D.N.J. Oct. 7, 2024) (Hammer, Mag.) (quoting *Schneck v. IBM*, No. 92–4370 (GEB), 1993 WL 765638, at *2 (D.N.J. July 27, 1993)).   If the Trustee wanted to go on a fishing expedition to gather information necessary to substantiate her expansive conspiracy theories, she had the means to do so under Bankruptcy Rule 2004.  *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, the scope of Rule 2004 is broad and unfettered, and has been likened to a 'fishing expedition' and 'an inquisition.'") (quotations omitted).  The Trustee had 18 months from her appointment to conduct discovery under Bankruptcy Rule 2004 and had developed the conspiracy theory underlying the Amended Complaint by December of 2022.  She had ample opportunity to go fishing and chose not to do so until it was too late to obtain a fishing permit in the form of an order under Bankruptcy Rule 2004. She cannot belatedly go fishing in this litigation.

46.    Under Civil Rule 34(b)(1)(A), requests for documents "must describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. P.

17

34(b)(1)(A). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *Asbestos Prod. Liab.*, 256 F.R.D. at 157 (citing *Frank v. Tinicum Metal Co.*, 11 F.R.D. 83, 85 (E.D. Pa. 1950)). *See also Net-Com Svcs., Inc. v. Eupen Cable USA, Inc.*, No. CV 11-2553 PSG (SSx), 2012 WL 12887396, at *5 (C.D. Cal. Nov. 14, 2012) (document requests for "all documents" concerning an entity fail to describe documents requested with reasonable particularity); *Quest Sol'n, Inc. v. RedLPR, LLC*, No. 2:19-cv-00437-CW-DBP, 2021 WL 9828082, at *2 (D. Utah Oct. 8, 2021) (request for "any and all documents and communications related to" a project was overbroad because "Plaintiff fail[ed] to tailor its discovery requests to any particular . . . fact that is relevant to a party's claim or defense and proportional to the needs of [the] case")

47.     "When a request is overly broad on its face, the party seeking the discovery has the burden to show the relevancy of the request." *Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 WL 6735710, at *13 (S.D. Cal. Dec. 21, 2018) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 542 (D. Kan. 2006)). "Generally, a discovery request without temporal or other reasonable limitations is objectionable on its face as overly broad." *Id.* (citing *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014); *Johnson*, 236 F.R.D. at 541-42). "A document request or interrogatory is also overly broad or unduly burdensome on its face if it: '(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information.'" *Id.* (quoting *Moses v. Halstead*, 236 F.R.D. 667, 662 (D. Kan. 2006)). *See also McCraney Montagnet Quin & Noble, PLLC v. Miller*, No. 3:15-cv-425-DPJ-FKB, 2016 WL 11668677, at *2 (S.D. Miss. Aug. 29, 2016)

18

(request for "all documents relating to the subject matter of the lawsuit or allegations – fails to describe the documents with reasonable particularity").

48.     Courts routinely reject document requests that encompass the entirety of the allegations contained in the complaint or a defendant's answer or defenses. *See, e.g., Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575-76 (N.D. Tex. 2018) ("[A] request for 'all documents and records' that relate to 'any of the issues,' while convenient, fails to set forth with reasonable particularity the items or category of items sought for the responding party's identification and production of responsive documents.") (quoting *Sewell v. D'Allesandro v. Woodyard, Inc.*, No. 2:07–cv–343–FtM–29SPC, 2011 WL 843962, at *2 (M.D. Fla. Mar. 8, 2011)); *Rodriguez Martinez v. Mendoza*, No., 5:17-CV-628-FL, 2019 WL 5606568, at *6 (E.D.N.C. Oct. 29, 2019) ("Broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous.") (quoting *Preferred Carolinas Realty, Inc. v. Am. Home Realty Network, Inc.*, 2014 WL 1320133, at *3 (M.D.N.C. Mar. 28, 2024)); *Braun v. Hanson*, No. 18-cv-3355 (JNE/ECW), 2020 WL 6042399, at *3 (D. Minn. Oct. 13, 2020 ("Courts … have concluded that broad requests seeking facts that essentially encompass a complaint do not meet the particularity requirements of Rule 34….") (citing *Lopez*, 327 F.R.D. at 575-76; *Arrendondo v. Delano Farms Co.*, No. 1:09cv01247 LJO DLB, 2010 WL 2219323, at *3 (E.D. Cal. Jun. 2, 2010) (denying request for all documents supporting affirmative defenses); *Ford v. Gov't Emp. Ins. Co.*, No. 1:14cv180-MW/GRJ, 2015 WL 11109373, at *6 (N.D. Fla. Apr. 3, 2015), *reconsidered in non-relevant part*, 2015 WL 11109374 (N.D. Fla. Jun. 11, 2015) (denying "catch-all request for all documents supporting [defendant's] answer and affirmative [defenses] because it is overly broad").

19

49. The Trustee's approach to discovery in this litigation utterly disregards the permissible scope of discovery under Civil Rule 26(b) and the particularity requirement of Civil Rule 34(b)(1)(A). Serving the same 27 RFPs on every individual Defendant, and the same 35 RFPs on every entity Defendant without regard to whether each RFP has anything at all to do with the allegations or claims of the Trustee against the party on which such RFP was served falls well outside even the expansive bounds of Civil Rule 26(b). Likewise, asking each individual Defendant and each entity Defendant to respond to the same RFPs regardless of whether those RFPs have anything at all to do with the allegations concerning or claims against such Defendant in the Amended Complaint defies the requirement of particularity under Civil Rule 34(b)(1)(A).

50. The Trustee's ESI Protocol simply doubles down on her blunderbuss approach to discovery, requiring every Defendant to run 259 terms, largely without regard to whether those terms are relevant to the allegations or claims against that Defendant or whether the terms are likely to yield large volumes of irrelevant data. Particularly egregious are the generic terms contained in the ESI Protocol, such as "beverage," "distribu!," "Square," "wagon," "shadow," "evasion," "exercise, "Ugly," "Unattended," and "veil," and ordinary business terms, such as "NDA," "non-disclosure," "POS," "revenue tracker," and "revenue model!". Courts have rejected such generic search terms. *See, e.g., Digital Ally, Inc. v. TASER Int'l, Inc.*, No. 16-cv-2032-CM-TJJ, 2018 WL 4334297, at *2 (D. Kan. Sept. 11, 2018) (The "inclusion of many generic and commonly used words (and derivatives of those words) as search-term combinations renders [each term] overly broad on its face."); *MMR Constructors, Inc. v. JB Grp. Of LA, LLC*, No. 22-267-BAJ-RLB, 2023 WL 6206426, *3 (M.D. La. Sept. 22, 2023) (rejecting search terms with generic file/file extension terms and generic industry and contracting terms). *See also Synthes Spine Co., L.P. v. Nash*, No. 05-CV-3070 (E.D. Pa. Feb. 9, 2006) (rejecting proposed list of 130 search terms).

51. The Trustee's own document dump further illustrates that she is conducting discovery without regard to relevance. *See Scott Hutchison Enterprises, Inc. v. Cranberry Pipeline Constr.*, 318 F.R.D. 44, 54 (S.D. W.Va. 2016) ("The term 'document dump' is often used to refer to the production of voluminous and mostly unresponsive documents without identification of specific pages or portions of documents which are responsive to the discovery requests.").[1] Unlike the Trustee, the Sheehan Defendants are committed to conducting discovery as required by the Civil Rules, including reviewing documents for relevance rather than simply engaging in a document dump. Consequently, the Sheehan Defendants oppose the Trustee's expansive, unfocused RFPs designed to maximize the cost of discovery in this case.

52. The Sheehan Defendants alerted the Trustee to the fundamental deficiencies in her indiscriminate RFPs in their RFP Responses. *See, e.g.*, T.B. Exhibit B-2, B-11, B-12, B-13, B-14 (objecting because "the Trustee made no effort to tailor [each] Request to specific documents, categories of documents, specific claims, or relevant time periods"). The Trustee fails to address this issue at all in the Trustee Brief.

53. This Court should not require the Sheehan Defendants to incur the cost of collecting and reviewing documents in response to the Trustee's unfocused and indiscriminate RFPs or require the Sheehan Defendants to conduct searches using the Trustee's ESI Protocol. Rather, the Trustee should be directed to revise her RFPs to conform to Civil Rules 26(b) and 34(b)(1)(A).

**II. The Trustee Fails to Establish the Relevance of Numerous RFPs.**

54. On a motion to compel, the Trustee "bears the initial burden of showing the relevance of the requested information." *Jones v. Sorbu*, No. 20-5270-KSM, 2022 WL 10493533,

---

[1] The Sheehan Defendants reserve the right to seek relief under Civil Rule 37 if the Trustee fails to provide proper responses to the Sheehan Defendants' document requests under Civil Rule 34(b)(2)(B) and remedy her document dump production.

at *2 (E.D. Pa. Oct. 18, 2022) (quoting *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). Only if the Trustee satisfies that threshold requirement would the Sheehan Defendants have the burden to justify withholding information. *Id.* (quoting *Morrison*, 203 F.R.D. at 196). The Trustee attempts, but fails, to satisfy her burden through Appendices A and B to the Trustee Brief. The Sheehan Defendants respond in Appendices A and B to this Objection.

**III. The Trustee's Discovery is Disproportionate to the Needs of this Adversary Proceeding.**

55.     Under Rule 26(b)(1), "[t]he court may limit discovery to ensure its scope is proportional to the needs of a case." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 18-cv-1215, 2019 WL 117555 (3d Cir. Jan. 7, 2019). "Rule 26(b)(1) identifies six factors relevant to proportionality: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Glucagon-Like Peptide-1 Receptor Agonists GLP-1 Ras Prods. Liab. Litig.*, No. 24-md-3094, 2025 WL 2989035, *2 (E.D. Pa. Oct. 23, 2025).

56.     "The fifth factor…asks whether the requested discovery 'goes to a central issue or a side one.'" *Id.* at *2 (citing *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, 2021 WL 4037857, at *5 (E.D. Pa. Sept. 3, 2021)). "Plaintiffs, as the 'party claiming that their request is important to resolve the issues,' is expected to explain why." *Id.* (quoting Fed. R. Civ. P. 26, adv. Comm. n. to 2015 am.). Here, the Trustee has failed to adequately explain why her plethora of search terms in the ESI Protocol are "important to resolve the issues" at play in this litigation or why the Sheehan Defendants should be subjected to RFPs that have nothing to do with allegations or claims related to the Sheehan Defendants.

22

57.     The sixth factor "requires the Court to weigh the 'burden or expense of the requested discovery' against its 'likely benefit.' *In re Glucagon-Like*, 2025 WL 2989035, at \*5 (citing *Penn Eng'g & Mfg. Corp.*, 2021 WL 4037857, at \*6). Here, as previously discussed, the excessive number of search terms in the ESI Protocol with no distinction as to relevance to individual Defendants or even as to custodians means that the Sheehan Defendants would have to run searches that they know would produce exponentially more non-responsive documents than responsive ones – and that some terms would require certain Sheehan Defendants to hand over virtually <u>all</u> of their emails over a period of years. There is no benefit that Trustee could point to that would balance out this burden.

### CONCLUSION

58.     The Trustee's unfocused and expansive approach to discovery has made responding to that discovery nearly impossible.  The Sheehan Defendants are prepared to engage with the Trustee to conduct discovery but should not be forced to respond to the morass of document requests in the RFPs or the Trustee's absurd ESI Protocol.  The Trustee should be directed to rationalize and target her discovery requests to obtain the information necessary to pursue her claims, rather than every document or communication in the Sheehan Defendants' possession, custody or control without regard to relevance.

March 4, 2026

**BALLARD SPAHR LLP**

*/s/ Leslie C. Heilman*
Leslie C. Heilman (No. 94589)
Nicholas J. Brannick (Admitted *Pro Hac Vice*)
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Fax: (302) 252-4466
Email: heilmanl@ballardspahr.com
         nbrannick@ballardspahr.com

         -and-

Brian N. Kearney (No. 326227)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 665-8500
Fax: (215) 864-8999
Email: kearneyb@ballardspahr.com

*Counsel for Defendants Shawn Sheehan, XO Energy Worldwide, LLLP, XO EW, LLC, Canvas 340, LLC, and Best Bev, LLC*

24