# EXHIBIT 9

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>MIDNIGHT MADNESS DISTILLING LLC,<br><br>     Debtor. | CHAPTER 7<br>Case No. 21-11750-PMM |
| BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG; KELLY FESTA; ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZENSKI; POLEBRIDGE, LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE, LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.,<br><br>     Defendants. | Adv. No. 23-00047-PMM<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION DIRECTED TO PLAINTIFF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34 AND FEDERAL BANKRUPTCY RULE OF PROCEDURE 7034**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Rules") made applicable to

this adversary proceeding by Rule 7034 of the Federal Rules of Bankruptcy Procedure, Defendants

Casey Parzych; Shawn Sheehan; Angus Rittenburg; Ashleigh Baldwin; R.F. Culbertson; Michael

Boyer; Kelly Festa; Polebridge, LLC; Good Design, Inc.; AgTech PA LLC; XO Energy

Worldwide, LLLP; XO EW, LLC; Best Bev, LLC; and Canvas 340 LLC ("Select Defendants")

1

by and through undersigned counsel, submit their First Set of Requests for Production (each a "Request," together, the "Requests") directed to Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC ("Plaintiff").

## **DEFINITIONS**

As used herein and unless otherwise stated or a contrary meaning is clearly called for in the context of the Request, the following words shall have the meaning set forth in these definitions:

1. The term "Action" shall mean the adversary proceeding captioned, "*Bonnie B. Finkel v Casey Parzych, et al.*," pending in United States Bankruptcy Court for the Eastern District of Pennsylvania, bearing Adv. No. 23-00047-PMM.

2. The term "Amended Complaint" shall mean the operative Amended Complaint filed by Plaintiff on or about August 22, 2024 at ECF No. 44, currently pending before the United States Bankruptcy Court for the Eastern District of Pennsylvania, Adv. No. 23-00047-PMM.

3. The term "Subject Matter of this Action" shall mean the claims and/or allegations set forth in the Amended Complaint, and any answer, affirmative defenses, or other response, as well as the alleged factual basis underlying all claims and/or allegations within those pleadings including but not limited to information Relating to the Property, any build plans Relating thereto, and the Covenants.

4. The term Debtor shall mean Midnight Madness Distilling LLC, and any of its agents, attorneys, accountants, employees, businesses, representatives, contractors, subcontractors, engineers, and/or any other persons or entities acting or purporting to act on its behalf or under its control.

2

5. The term "You" or "Your" shall mean Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC, and any of Your agents, attorneys, accountants, employees, businesses, representatives, contractors, subcontractors, engineers, and/or any other persons or entities acting or purporting to act on Your behalf or under Your control.

6. The term "Communication(s)" shall mean any disclosure, transfer, or exchange of words, information, ideas, gestures, sounds, and/or images either from one person (or entity) to another (or others), or between two or more persons or entities (including, but not limited to, among one or more Plaintiffs, between any Plaintiff and Defendant, between any Plaintiff and Plaintiffs' employees, agents, or otherwise), regardless of form, manner, or method of delivery (including, but not limited to, by in person meeting, phone call, web meeting, text message, e-mail, chat message, transcript, social media communication, instant messaging, video message, letter, facsimile, or otherwise). The term shall be inclusive of any "Communication" or "Communications" transmitted or received by carbon copy or blind carbon copy, whether electronic or otherwise.

7. The term "Document(s)" shall be construed to have the broadest meaning possible, and shall include all written, electronic, electronically stored, typewritten, handwritten, recorded, or printed matter of any kind, including the originals and all identical and/or non-identical copies thereof, including any non-identical copies different from the originals by reason of any notation made on such copies or otherwise, including without limitation, minutes and/or other records of meetings, agendas, bills, contracts, leases, programs, source code, assignments, agreements, contract, written summaries, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of Investigations or reports, strategic or business plans or summaries, brochures,

3

pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, telegrams, interoffice and intra-office communications, offers, notations of any sort of conversations, appointment books, day planners, calendars or other appointment or activity schedule, teletypes, telefax, thermafax, confirmations, computer files, cloud computing (including, but not limited to, iCloud, iTunes, Google Drive, DropBox, and Hightail) data, printouts of computer files, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed); electronically stored information; phone records; text logs; personal or business e-mails, text messages, instant messages, chats, social media messages and posts; all graphic or manual records or representations of any kind, including without limitation, photographs, microfiche, microfilm, video tape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including without limitation, tapes, cassettes, disks, magnetic cards, and recordings; all drafts, alterations, modifications, changes and amendments of any of the foregoing; and all other similar material which is in Your possession, custody, or control.  Without limiting the term "control" as used in the preceding sentence, a documents or ESI shall be deemed to be within the control of such entity or individual, regardless of its physical location, if such entity or individual has the right to secure the document or ESI from another person or entity, either public or private, including, but not limited to, such entity's or individual's legal counsel, haying actual possession thereof.

8.     The term "Identify" or "Identity":

(a) When used in reference to a natural person shall mean to state separately: (i) the person's full name; (ii) the person's business and residential addresses; (iii) the

person's telephone number; (iv) the employer of the person during the time at which the Discovery Requests are directed and the person's title or position at that time;

(b) When used in reference to a Communication shall mean to state separately: (i) its date and the location where the Communication occurred; (ii) its substance; (iii) the Identity of each Person(s) participating in the Communication; (iv) the type of Communication and (v) the Identity of all notes, memoranda, or other Documents memorializing, referring to or relating to the subject matter of the statement;

(c) When used in reference to an entity—*e.g.*, to an organization, company, corporation, association, or partnership, rather than a natural person— shall mean to state separately (i) its full name and type of organization or entity; (ii) the date and state of organization; (iii) the address of each of its principal places of organization; (iv) the nature of the activity conducted; and (v) the principal persons involved with the entity at all times relevant to the Discovery Requests; and

(d) When used in reference to a Document shall mean to state separately: (i) the date of such document, if any; (ii) a general description of the document; (iii) its subject matter; (iv) the Identity of each author, preparer, or signer; (v) the Identity of each addressee or recipient; (vi) its present location and the Identity of its custodian; and (vii) if applicable, the Bates number of the Document if it has already been or is concurrently being produced.

9. The term "Person" or "Persons" shall mean any natural person, partnership, corporation, unincorporated association, association, governmental agency or department or other legal entity of any kind.

10.   The term "Related to" or "Relating to" shall mean regarding, evidencing, showing, demonstrating, referencing, describing, explaining, mentioning, referring to, giving an account of, chronicling, depicting, detailing, disclosing, divulging, expressing, presenting, reciting, recounting, reporting, revealing, pertaining to, concerning, corresponding to, having reference to, having to do with, supporting, affirming, or contradicting.

11.   For purposes of these Requests only, all other capitalized terms not otherwise defined above shall take on the same meaning as they have in the Amended Complaint.

12.   To bring within the scope of these requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

(a) The word "including" shall mean "including, but not limited to" and "including without limitation";

(b) The present tense shall be construed to include the past tense and vice versa;

(c) The singular includes the plural, and vice versa;

(d) The masculine includes the feminine and neutral genders;

(e) The terms "all," "any," and "each" shall each be construed to include "all"; and

(f) The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside of the scope.

## INSTRUCTIONS

1.   Any term defined in the Definitions above shall include any derivation of the defined term.

2.   Unless a Request or the context indicates otherwise, the timeframe applicable to these Requests shall be January 1, 2019 to the present (the "Relevant Period").

6

3.       A Request that references or cites to the Amended Complaint incorporates any applicable definitions from the Amended Complaint solely for the purposes of discovery and these Requests.  No admissions, denials, or legal conclusions shall be drawn from Select Defendants' incorporation of any applicable definitions from the Amended Complaint.

4.       These Requests apply to all information and documents in Your possession, custody, or control regardless of their location, and regardless of whether such documents are held by Your representatives, agents, attorneys, advisors, accountants, or any other person or party in your control.  In searching for any documents responsive to these Requests, You should also search all devices and media capable of containing electronic or magnetic data including, without limitation, hard drives of all computers used by any person with knowledge of the facts relevant to this dispute, network servers, back-up and archival storage systems, home computers, laptop computers, voicemail systems, floppy disks, removable data cartridges, and any smart phone, cellular phone, or personal data assistants (e.g., a Palm Pilot, iPhone, Droid, or Blackberry, etc.).

5.       If any copy of any document(s) sought is not identical to any other copy thereof, by reason of any alterations, different form (e.g., electronic form), metadata or metatags, marginal notes, comments, or other material contained therein, attached thereto, or otherwise, all such nonidentical copies shall be produced separately.  Such other copies include, without limitation, all revisions in electronic or magnetic format.

6.       Whenever a date, amount, or other computation or figure is requested, the exact date, amount, or other computation or figure is to be given unless it is not known; and, in that case, the approximate date, amount, or other computation or figure should be given or the best estimate thereof; and the response should state that the date, amount, or other computation provided is an estimate or approximation.

7.      If no responsive documents exist for a particular Request, please so indicate by stating "none."

8.      Documents shall be produced in such a manner as to identity the Request to which they are responsive, or as they are kept in the ordinary course of business.

9.      ESI and/or Metadata that is responsive to any of these requests shall be produced.

10.      OCR shall be provided.

11.      All Documents shall be produced with a Bates number or other unique identifier.

12.      All images should be endorsed in the bottom right comer, with their corresponding Bates number.  The confidentiality designation for the record, if any, should be endorsed in the bottom left comer for each page of that record.

13.      In producing documents, all documents which are physically attached to each other in Your files shall be left so attached.  Documents shall be produced in the order in which they were maintained.

14.      If any document or tangible thing requested to be produced by these Requests was, but no longer is, in Your possession, custody, or control, or if the document or tangible thing is no longer in existence, please state the reason the document or thing is: (1) missing or lost; (2) destroyed; (3) in the possession, custody, or control of others, and if so, please identify the current custodian; or (4) disposed of or otherwise unavailable.  Also, identify each person having knowledge about the disposition or loss of the document and identify any other document evidencing the lost document's existence or any facts about the lost document.

15.      If You claim any privilege as a basis for not responding to any Request or any portion thereof or for withholding any otherwise responsive document, please set forth in Your response with respect to each such document, in sufficient detail to identify the particular

document, and to allow the court to adjudicate the validity of Your claim of privilege, without disclosing the information which is claimed to be privileged, the following:

    a.   The type of document (e.g., letter, memorandum, text message, e-mail, report, etc.);

    b.   The date on which the document was prepared and/or transmitted;

    c.   Its title and file reference, if any;

    d.   Each author and recipient of the document or portion thereof;

    e.   The specific basis of Your claim of privilege, and each fact upon which You rely in claiming the privilege.

16.    These Requests are continuing so as to require supplemental responses in the event You or Your representatives (including counsel) obtain additional responsive documents.

17.    The fact that Your investigation is continuing, or that discovery is not complete, should not be used as an excuse for failing to provide responses that are as full and complete as possible as of the date of response.  The omission of any name, fact, or other item of information from the responses shall be deemed a representation that such name, fact or item was not known to You or anyone acting on Your behalf at the time of service of the responses.

18.    Where facts set forth in Your responses are supplied upon information and belief, rather than based on Your direct personal knowledge, You should so state and specifically Identify each source of such information and belief.  If You are unable to respond to any Interrogatory or portion thereof by either actual knowledge or upon information and belief, You should so state.

19.    Whenever a Request calls for information which is not available to You in the form requested, but is available in another form or can be obtained at least in part from other sources in Your possession, You should so state and either supply the information requested in the form in which it is available or supply the sources from which the information can be obtained.

9

20.     Except for reference to defined or designated terms, each Request shall be construed independently and not by reference to any other Request herein for purposes of limitation.

21.     In responding to these Requests, You shall answer each Request separately, without reference to another Request.

22.     In responding to these Requests, You shall furnish all information available at the time of responding and shall supplement Your responses in accordance with the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

## <u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

1.     Produce the Documents and Communications identified in Your responses to all Interrogatories Directed to Plaintiff by any Defendant.

**RESPONSE:**

2.     Produce Documents and Communications related to any contract, lease, or agreement entered into by and between Debtor and any Defendant or other Person Related to this Action.

**RESPONSE:**

3.     Produce Documents and Communications made by and between You and Anthony Lorubbio, or by and between You and any other Person Related to Anthony Lorubbio relating to the Debtor, Defendants, and/or this Action.

**RESPONSE:**

4.      Produce Documents You reviewed, referred to, or consulted in preparing Your

Amended Complaint, any other pleading or response in this Action, and Your responses to these

Requests.

**RESPONSE:**


5.      Produce reports, notes, curriculum vitae(s), and rate schedule(s) of any expert(s)

You intend to call to testify at trial in this Action.

**RESPONSE:**


6.      Produce all exhibits You intend to use or rely on at trial.

**RESPONSE:**


7.      Produce Documents and Communications Relating to Your allegation that

"Defendants formed shadow entities—a number of which were 'offshore,'" as referenced in

Paragraph 2 of the Amended Complaint.

**RESPONSE:**


8.      Produce the "Debtor emails, internal documents, sales records, customer lists,

invoices, and marketing strategies (but for a few which remained in system files and metadata

uncovered by the Trustee)," that You reference in Paragraph 3 of the Amended Complaint.

**RESPONSE:**

9. Produce the "system files and metadata uncovered by the Trustee," that You reference in Paragraph 3 of the Amended Complaint.

**RESPONSE:**

10. Produce Documents and Communications Relating to the alleged "resources, property, and personnel [used] to generate sales and profits from CBDelight and Faber Hand Sanitizer products," as referenced in Paragraph 20 of the Amended Complaint.

**RESPONSE:**

11. Produce Documents and Communications Relating to the alleged "complex web of entities which are ultimately owned and controlled by Defendant Sheehan," as referenced in Paragraph 24 of the Amended Complaint.

**RESPONSE:**

12. Produce Documents and Communications Relating to the alleged "resources, property, and personnel of the Debtor [used] to produce, market and sell the Wynk Seltzer product," as referenced in Paragraph 27 of the Amended Complaint.

**RESPONSE:**

13. Produce Documents and Communications Relating to the alleged "resources, property, and personnel of the Debtor to generate beverage sales and beverage packaging sales for which the profits flowed not to the Debtor, but instead to the Best Bev Entities," as referenced in Paragraph 33 of the Amended Complaint.

12

**RESPONSE:**

14.     Produce Documents and Communications Relating to Your allegation that "[t]he Debtor, also known as Theobald & Oppenheimer and Faber Distilling Co., was co-founded by Defendant Casey Parzych and Anthony Lorubbio," as referenced in Paragraph 39 of the Amended Complaint.

**RESPONSE:**

15.     Produce the "February 21, 2018 Philadelphia Business Journal article," including all Documents and Communications Relating thereto, as referenced in Paragraph 41 of the Amended Complaint.

**RESPONSE:**

16.     Produce the "Loan Agreement and a Security Agreement with PNC," including all Documents and Communications Relating thereto, as referenced in Paragraph 42 of the Amended Complaint.

**RESPONSE:**

17.     Produce Documents and Communications Relating to the "first lien on all personal property of the Debtor and a second mortgage on the Debtor's headquarters," as referenced in Paragraph 42 of the Amended Complaint.

**RESPONSE:**

18.     Produce Documents and Communications Relating to Your allegation that "shadow entities—in the same lines of business as the Debtor—which were used to misappropriate Debtor resources and loot the Debtor for the benefit of the Defendants," as referenced in Paragraph 43 of the Amended Complaint.

**RESPONSE:**

19.     Produce the alleged "sham profit sharing arrangements and sham loan agreements," including all Documents and Communications Relating thereto, as referenced in Paragraph 44 of the Amended Complaint.

**RESPONSE:**

20.     Produce Documents and Communications Relating to the alleged "resources [that] were misappropriated and Debtor profits were siphoned out, and the ill-gotten gains were shared among the Defendants," as referenced in Paragraph 44 of the Amended Complaint.

**RESPONSE:**

21.     Produce Documents and Communications Relating to the "Defendants' destruction/theft of Debtor records," as referenced in Paragraph 45 of the Amended Complaint.

**RESPONSE:**

22.     Produce Documents and Communications Relating to Your allegation that "Defendant Baldwin formed Defendant Polebridge as a Pennsylvania limited liability company,

listing its registered office as the Debtor's headquarters at 118 North Main," as referenced in Paragraph 46 of the Amended Complaint.

**RESPONSE:**

23.    Produce Documents and Communications Relating to Your allegation that "[u]sing Debtor computers, Defendant Festa provided administrative support for the filing of Polebridge's registration documents," as referenced in Paragraph 46 of the Amended Complaint.

**RESPONSE:**

24.    Produce Documents and Communications Relating to Your allegation that "Defendants Baldwin and Rittenburg formed Defendant Good Design as a British Columbia corporation, listing the Debtor's headquarters as the incorporators' address.    Using Debtor computers, Defendant Festa provided administrative support for the filing of Good Design's registration documents," as referenced in Paragraph 47 of the Amended Complaint.

**RESPONSE:**

25.    Produce Documents and Communications Relating to Your allegation that "Defendant Baldwin caused Polebridge to register "Good Design" as a fictitious name with the Pennsylvania Department of State, listing 'canning' as the 'nature of the business or other activity to be carried on under or through the fictitious name,'" as referenced in Paragraph 48 of the Amended Complaint.

**RESPONSE:**

26.    Produce Documents and Communications Relating to all the ways in which C B Delight was allegedly "described to the public as a Good Design product," as referenced in Paragraph 51 of the Amended Complaint.

**RESPONSE:**

27.    Produce the "trademark filed by the Debtor on April 17, 2019," including all Documents and Communications Relating thereto, as referenced in Paragraph 51 of the Amended Complaint.

**RESPONSE:**

28.    Produce the "August 1, 2019 . . . press release," including all Documents and Communications Relating thereto, as referenced in Paragraph 52 of the Amended Complaint.

**RESPONSE:**

29.    Produce Documents and Communications Relating to "Defendant Culbertson's LinkedIn page," as referenced in Paragraph 53 of the Amended Complaint.

**RESPONSE:**

30.    Produce Documents and Communications Relating to "[t]he 'Siphon device' referenced by Defendant Culbertson," and all the ways in which it "constituted or utilized the Debtor's intellectual property," as referenced in Paragraph 53 of the Amended Complaint.

**RESPONSE:**

31. Produce Documents and Communications Relating to the "Paycheck Protection Program loan," as referenced in Paragraph 54 of the Amended Complaint.

**RESPONSE:**

32. Produce Documents and Communications Relating to all instances whereby "Defendant Festa [allegedly] utilized a Polebridge Entities email address (kellyfesta@gooddesigninc.com)," as referenced in Paragraph 55 of the Amended Complaint.

**RESPONSE:**

33. Produce Documents and Communications Relating to all instances whereby "Casey Parzych [allegedly] conducted Debtor business, including communications with Debtor's outside counsel, using his Polebridge Entities email address (casey@gooddesigninc.com)," as referenced in Paragraph 56 of the Amended Complaint.

**RESPONSE:**

34. Produce Documents and Communications Relating to all instances whereby "[m]any other full-time Debtor employees [allegedly] utilized the Polebridge Entities' email addresses, accessed through Debtor computers, to further the business interests of the Polebridge Entities, including Defendant Rittenburg (angus@gooddesigninc.com), Debtor customer service representative Casey Coughlin (ccoughlin@gooddesigninc.com), and Debtor production manager John Pitts (john@gooddesigninc.com)," as referenced in Paragraph 57 of the Amended Complaint.

**RESPONSE:**

35.     Produce Documents and Communications Relating to "CBDelight's Facebook page," as referenced in Paragraph 58 of the Amended Complaint.

**RESPONSE:**

36.     Produce Documents and Communications Relating to the "LinkedIn page of John Aguilar—a Debtor account manager from November 2019 through November 2020," as referenced in Paragraph 59 of the Amended Complaint.

**RESPONSE:**

37.     Produce the "August 23, 2019 presentation," including all Documents and Communications Relating thereto, as referenced in Paragraph 60 of the Amended Complaint.

**RESPONSE:**

38.     Produce the "Debtor marketing presentation entitled 'Theobald & Oppenheimer Leadership Brands Presentation,'" including all Documents and Communications Relating thereto, as referenced in Paragraphs 61 and 80 of the Amended Complaint.

**RESPONSE:**

39.     Produce the Debtor's as well as Your Documents and Communications from January 1, 2016 through present, Relating to the Faber Hand Sanitizer trademark, "which had been trademarked by the Debtor in 2016," as referenced in Paragraph 62 of the Amended Complaint.

**RESPONSE:**

40.     Produce Documents and Communications Relating to the instances whereby "Defendants [allegedly] diverted the proceeds and profits from the massively lucrative Faber Hand Sanitizer out of the hands of the Debtor where they rightfully belonged and into the pockets of Defendants," as referenced in Paragraph 63 of the Amended Complaint.

**RESPONSE:**

41.     Produce Documents and Communications Relating to Your allegation that "Faber Hand Sanitizer was manufactured, packaged, and marketed with Debtor resources, including labor, material, office and warehouse space for operations, the purchase of additional canning/bottling equipment, sales services and incentives, marketing services, graphic design services, digital marketing and advertising services, legal services, intellectual property, and bottling services," as referenced in Paragraph 64 of the Amended Complaint.

**RESPONSE:**

42.     Produce Documents and Communications Relating to "Good Design's LinkedIn profile," as referenced in Paragraphs 65 and 68 of the Amended Complaint.

**RESPONSE:**

43.     Produce Documents and Communications Relating to "Defendant Baldwin's LinkedIn profile," as referenced in Paragraph 66 of the Amended Complaint.

**RESPONSE:**

19

44.     Produce Documents and Communications Relating to Your allegation that "the Polebridge Entities had no manufacturing capability, facilities, or personnel whatsoever, except for that pilfered from the Debtor," as referenced in Paragraph 67 of the Amended Complaint.

**RESPONSE:**

45.     Produce Documents and Communications Relating to "Good Design's LinkedIn profile," as referenced in Paragraph 68 of the Amended Complaint.

**RESPONSE:**

46.     Produce Documents and Communications Relating to Your allegation that "[b]eginning on March 26, 2020, the Debtor's Faber Liquors Instagram page was dominated by posts advertising Faber Hand Sanitizer," as referenced in Paragraph 69 of the Amended Complaint.

**RESPONSE:**

47.     Produce "posts advertising Faber Hand Sanitizer," including all Documents and Communications Relating thereto, as referenced in Paragraph 69 of the Amended Complaint.

**RESPONSE:**

48.     Produce the "Philadelphia Inquirer article dated April 6, 2020," including all Documents and Communications Relating thereto, as referenced in Paragraph 70 of the Amended Complaint.

**RESPONSE:**

49.     Produce the "email dated April 9, 2020," including all Documents and Communications Relating thereto, as referenced in Paragraph 71 of the Amended Complaint.

**RESPONSE:**

50.     Produce "Debtor's April 17, 2020 press release," including all Documents and Communications Relating thereto, as referenced in Paragraph 72 of the Amended Complaint.

**RESPONSE:**

51.     Produce Documents and Communications Relating to Your allegation that "Faber Hand Sanitizer's Facebook page stated: 'we – the team at FABER Liquors – have shifted our usual operations to produce much-needed hand sanitizer' and lists the telephone number of Faber Hand Sanitizer as (215) 268-6071, a telephone number owned by, paid for, utilized, and staffed by the Debtor," as referenced in Paragraph 73 of the Amended Complaint.

**RESPONSE:**

52.     Produce the post that "Defendant Sheehan [allegedly] made . . . to his LinkedIn page advertising Faber Hand Sanitizer," as referenced in Paragraph 74 of the Amended Complaint.

**RESPONSE:**

53.     Produce Documents and Communications Relating to Your allegation that "Defendant Sheehan and the Sheehan Entities had an agreement with the Insider Defendants to share in the ill-gotten profits from the sale of CBDelight and Faber Hand Sanitizer," as referenced in Paragraph 74 of the Amended Complaint.

21

**RESPONSE:**

54.    Produce the "April 21, 2020 email from Defendant Festa's Polebridge Entities email account (kellyfesta@gooddesigninc.com) to the Debtor's sales managers—via their Debtor email accounts (@theoandopp.com)," including all Documents and Communications Relating thereto, as referenced in Paragraph 75 of the Amended Complaint.

**RESPONSE:**

55.    Produce the "April 29, 2020 press release," including all Documents and Communications Relating thereto, as referenced in Paragraph 76 of the Amended Complaint.

**RESPONSE:**

56.    Produce the "May 12, 2020 email from the Debtor's outside counsel to a representative of the United States Alcohol & Tobacco Tax & Trade Bureau," including all Documents and Communications Relating thereto, as referenced in Paragraph 77 of the Amended Complaint.

**RESPONSE:**

57.    Produce Documents and Communications Relating to Your allegation that "[t]he Debtor's sales representatives also accepted tens of thousands, if not hundreds of thousands, of dollars in cash payments for Faber Hand Sanitizer, which were diverted from the Debtor for the benefit of the Polebridge Entities," as referenced in Paragraph 78 of the Amended Complaint.

**RESPONSE:**

58.     Produce the "June 11, 2020 presentation," including all Documents and Communications Relating thereto, as referenced in Paragraph 79 of the Amended Complaint.

**RESPONSE:**

59.     Produce Documents and Communications Relating to Your allegation that "[n]umerous individuals utilized email addresses associated with Faber Hand Sanitizer, which they accessed using Debtor computer equipment, to further the business interests of the Polebridge Entities, including: Defendant Baldwin (ashleigh@fabersanitizer.com), Defendant Culbertson (rf@fabersanitizer.com), and Debtor customer service representative Casey Coughlin (ccoughlin@fabersanitizer.com)," as referenced in Paragraph 81 of the Amended Complaint.

**RESPONSE:**

60.     Produce Documents and Communications Relating to Your allegation that "Faber Hand Sanitizer exploited the Debtor's marketing staff and resources, and utilized advertising mirroring that for Debtor's liquor products," as referenced in Paragraph 82 of the Amended Complaint.

**RESPONSE:**

61.     Produce the "advertising mirroring that for Debtor's liquor products," referenced in Paragraph 82 of the Amended Complaint.

**RESPONSE:**

23

62.      Produce Documents and Communications Relating to Your allegation that "Kelli Sheehan (who, upon information and belief, has a familial relationship with Defendant Sheehan), while a full-time employee and agent of the Sheehan Entities, utilized the Debtor's computers to conduct business relating to the Faber Hand Sanitizer product (kelli@fabersanitizer.com)," as referenced in Paragraph 83 of the Amended Complaint.

**RESPONSE:**


63.      Produce Documents and Communications Relating to Your allegation that "profits from Faber Hand Sanitizer were diverted to the Polebridge Entities, and ultimately to the Defendants," as referenced in Paragraph 84 of the Amended Complaint.

**RESPONSE:**


64.      Produce Documents and Communications Relating to Your allegation that "a minimum of $8.8 million of profits attributable to the sale of Faber Hand Sanitizer and CBDelight were stolen from the Debtor and diverted to Defendants," as referenced in Paragraph 85 of the Amended Complaint.

**RESPONSE:**


65.      Produce Documents and Communications Relating to Your allegation that "Defendants Casey Parzych, Rittenburg and Sheehan used Debtor resources and personnel to create a cannabis infused beverage known as Wynk seltzer," as referenced in Paragraph 86 of the Amended Complaint.

**RESPONSE:**

24

66.     Produce Documents and Communications Relating to Your allegation that "Defendant Sheehan caused Defendant AgTech VI to file Articles of Organization as a United States Virgin Islands ("USVI") limited liability company for the purposes of diverting the profits from the sale of Wynk Seltzer away from the Debtor," as referenced in Paragraph 87 of the Amended Complaint.

**RESPONSE:**

67.     Produce Documents and Communications Relating to Your allegation that "Defendant Casey Parzych, as organizer, registered American Cannabis LLC as a Pennsylvania limited liability company for the purposes of diverting the profits from Wynk Seltzer away from the Debtor," as referenced in Paragraph 88 of the Amended Complaint.

**RESPONSE:**

68.     Produce Documents and Communications Relating to Your allegation that "American Cannabis LLC filed a document with the Pennsylvania Department of State to change its name to AgTech PA LLC," as referenced in Paragraph 89 of the Amended Complaint.

**RESPONSE:**

69.     Produce Documents and Communications Relating to Your allegation that "forensic analysis of system files on a Debtor hard drive reveals that, as with CBDelight and Faber Hand Sanitizer, substantial Debtor resources were diverted for the ultimate benefit of the Wynk Entities," as referenced in Paragraph 91 of the Amended Complaint.

**RESPONSE:**

70.    Produce the "forensic analysis of system files," including all Documents and Communications Relating thereto, as referenced in Paragraph 91 of the Amended Complaint.

**RESPONSE:**


71.    Produce Debtor hard drives, including, but not limited to, those referenced in Paragraph 91 or the Amended Complaint and including all Documents and Communications Relating thereto.

**RESPONSE:**


72.    Produce Documents and Communications Relating to Your allegation that "Debtor computers were used to access email addresses associated with Wynk Seltzer, including those belonging to Defendant Casey Parzych (casey@drinkwynk.com and casey@drinkcannabisusa.com), Defendant Rittenburg (angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson (rf@drinkwynk.com and rf@drinkcannabisusa.com), Sheehan Entities' employee Kelli Sheehan (kellisheehan@drinkwynk.com), and Debtor customer service representative Casey Coughlin (ccoughlin@drinkwynk.com)," as referenced in Paragraph 92 of the Amended Complaint.

**RESPONSE:**


73.    Produce Documents and Communications Relating to Your allegation that "April 19, 2022, current Wynk Seltzer Brand Manager Casey Coughlin posted the following to her LinkedIn page," as referenced in Paragraph 94 of the Amended Complaint.

**RESPONSE:**

74.     Produce Documents and Communications Relating to the following transactions regarding "Debtor credit card records," including, but not limited, all Documents and Communications Relating thereto, as referenced in Paragraph 95 of the Amended Complaint:

    a.   On April 18, 2021, a $200.45 charge at the Hampton Inn in Gallipolis, Ohio;

    b.   On April 18, 2021, an $18.46 charge to the United Dairy Farmers convenience store in Columbus, Ohio;

    c.   On April 18, 2021, a $15.78 charge to a Bob Evans restaurant in Jackson, Ohio;

    d.   On April 18, 2021, a $30.52 charge to a Target in Columbus, Ohio;

    e.   On April 19, 2021, a $2.95 charge to a Starbucks in Columbus, Ohio;

    f.   On April 20, 2021, a $23.00 charge to Jolly Pirate Donuts in Newark, Ohio;

    g.   On April 20, 2021, a $96.80 charge to Destination Donuts in Columbus, Ohio;

    h.   On April 23, 2021, a total of $41.43 in charges to a BP gas station in Columbus, Ohio;

    i.   On April 23, 2021, a $973.01 charge to Budget Rent-A-Car in Columbus Ohio for a vehicle which was rented from 4/19/21 until 4/23/21;

    j.   On April 23, 2021, a $719.10 charge to the Canopy by Hilton hotel in Columbus, Ohio;

    k.   On April 23, 2021, a $26.44 charge to Duck Donuts in Mason, Ohio; and

    l.   On April 23, 2021, a $313.40 charge to American Airlines for travel from Columbus, Ohio to Philadelphia.

**RESPONSE:**

75.     Produce Documents and Communications Relating to Your allegation that "Debtor paid for many other purchases for the sole benefit of the Wynk Entities and the Wynk Seltzer product," as referenced in Paragraph 96 of the Amended Complaint.

**RESPONSE:**

76.     Produce Documents and Communications Relating to Your allegation that "Wynk Entities arranged for the shipment of industrial equipment to 2600 Milford Square Pike, Quakertown PA 18591, a location which was paid for by the Debtor but which, upon information

and belief, was used solely by the Pilfering Entities," as referenced in Paragraph 97 of the Amended Complaint.

**RESPONSE:**

77.     Produce the "numerous other invoices [that You allege] were billed to the Debtor yet either explicitly stated that they were for purposes related to Wynk Seltzer or called for deliveries to 2512 Quakertown Road, Pennsburg, Pennsylvania," including all Documents and Communications Relating thereto, as referenced in Paragraph 98 of the Amended Complaint.

**RESPONSE:**

78.     Produce the "website of the Cannabis Beverage Association features a member page for 'WYNK,'" as referenced in Paragraph 99 of the Amended Complaint.

**RESPONSE:**

79.     Produce Documents and Communications Relating to Your allegation that the "Wynk Entities regularly ordered supplies for Wynk Seltzer using the Debtor's computers, telephone lines, and vendor accounts," as referenced in Paragraph 100 of the Amended Complaint.

**RESPONSE:**

80.     Produce Documents and Communications Relating to Your allegation that "numerous individuals used their Wynk Entities email accounts in communications concerning the Debtor and its bankruptcy, many of which would have been otherwise privileged communications with the Debtor's attorneys, including: Defendant Casey Parzych (casey@drinkwynk.com and

28

casey@drinkcannabisusa.com), Defendant Rittenburg (angus@drinkwynk.com), Defendant Festa (kellyfesta@drinkwynk.com), Defendant Culbertson (rf@drinkwynk.com and rf@drinkcannabisusa.com), and Defendant Sheehan (shawn@drinkwynk.com)," as referenced in Paragraph 101 of the Amended Complaint.

**RESPONSE:**

81.     Produce the "email dated June 15, 2021," including all Documents and Communications Relating thereto, as referenced in Paragraph 102 of the Amended Complaint.

**RESPONSE:**

82.     Produce "Mr. Blobe's LinkedIn profile," including all Documents and Communications Relating thereto, as referenced in Paragraph 102 of the Amended Complaint.

**RESPONSE:**

83.     Produce Documents and Communications Relating to Your allegation that "all revenues from Wynk Seltzer flowed to the Wynk Entities, and ultimately the Defendants," as referenced in Paragraph 103 of the Amended Complaint.

**RESPONSE:**

84.     Produce "invoices, tax forms, and other documents," including all Documents and Communications Relating thereto, as referenced in Paragraph 104 of the Amended Complaint.

**RESPONSE:**

29

85.     Produce Documents and Communications Relating to Your allegation that Defendants allegedly "extract[ed] millions of dollars of value out of the Debtor, to place it beyond the reach of Debtor's creditors," as referenced in Paragraph 105 of the Amended Complaint.

**RESPONSE:**

86.     Produce Documents and Communications Relating to Your allegation that Defendants "maintained accounts on the Debtor's computer system and had full access to the books, records, and online accounts belonging to the Debtor," as referenced in Paragraph 108 of the Amended Complaint.

**RESPONSE:**

87.     Produce Documents and Communications Relating to Your allegation that "Defendants first attempted to have certain of the Sheehan Entities either purchase PNC's debt or purchase the Debtor's business assets outside of bankruptcy," as referenced in Paragraph 109 of the Amended Complaint.

**RESPONSE:**

88.     Produce the "January 18, 2021 email," including all Documents and Communications Relating thereto, as referenced in Paragraph 111 of the Amended Complaint.

**RESPONSE:**

89.     Produce Documents and Communications Relating to all ways in which Defendants allegedly "continued to present the Debtor to other potential purchasers as unfavorable," as referenced in Paragraph 112 of the Amended Complaint.

**RESPONSE:**

90.     Produce Documents and Communications Relating to Your allegation that the Defendants made an "effort to sell the business cheap to the Sheehan Entities through a Section 363 sale or, if that failed – via a web of entities doing business as "Best Bev" and/or "Can Man" and referred to herein as the "Best Bev Entities" – through outright theft of the Debtor's property and resources," as referenced in Paragraph 113 of the Amended Complaint.

**RESPONSE:**

91.     Produce Documents and Communications Relating to "Attorney time entries filed with this Court," as referenced in Paragraph 114 of the Amended Complaint.

**RESPONSE:**

92.     Produce "emails between the Debtor, its bankruptcy counsel, and/or its accountants concerning the Debtor's bankruptcy strategy," that the Defendants, including their agents or employees, were copied on, including all Documents and Communications Relating thereto, as referenced in Paragraph 115 of the Amended Complaint.

**RESPONSE:**

93.    Produce Documents and Communications Relating to Your allegation that "Defendants Sheehan and Casey Parzych jointly retained Washington D.C.-based public relations firm kglobal to direct marketing strategies in light of Debtor's bankruptcy and Sheehan's anticipated takeover of Debtor's assets," as referenced in Paragraph 116 of the Amended Complaint.

**RESPONSE:**

94.    Produce Documents and Communications Relating to Your allegation that "Can Man, LLC ("Can Man") was formed as a Pennsylvania limited liability company with Debtor's outside counsel acting as organizer.  Can Man's registered office was originally listed as 2600 Milford, but changed on September 30, 2021 to 2512 Quakertown Road, the same address used by the Wynk Entities," as referenced in Paragraph 117 of the Amended Complaint.

**RESPONSE:**

95.    Produce Documents and Communications Relating to Your allegation that "Defendants caused the Debtor to transfer a Hamrick Recaser machine with an estimated value of $145,000 to 2512 Quakertown Road for use by the Pilfering Entities," as referenced in Paragraph 119 of the Amended Complaint.

**RESPONSE:**

96.    Produce the "May 6, 2021, Casey Coughlin Facebook page," including all Documents and Communications Relating thereto, as referenced in Paragraph 120 of the Amended Complaint.

**RESPONSE:**

97.     Produce Documents and Communications Relating to Your allegation that "Ms. Coughlin's hiring efforts on behalf of the Debtor – were intended to benefit the Pilfering Entities," as referenced in Paragraph 121 of the Amended Complaint.

**RESPONSE:**

98.     Produce the "May 20, 2021 DPG proposal . . . entitled 'Wynk – Proposal,'" including all Documents and Communications Relating thereto, as referenced in Paragraph 123 of the Amended Complaint.

**RESPONSE:**

99.     Produce the "Word document titled 'Can Man Shadow Structure,'" including all Documents and Communications Relating thereto, as referenced in Paragraph 124 of the Amended Complaint.

**RESPONSE:**

100.    Produce Documents and Communications Relating to Your allegation that "Best Bev, LLC was formed as a United States Virgin Islands limited liability company," as referenced in Paragraph 125 of the Amended Complaint.

**RESPONSE:**

33

101.   Produce Documents and Communications Relating to Your allegation that "[o]n June 24, 2022, Maho, LLC filed papers with the Pennsylvania Department of State to utilize "Best Bev" as a fictitious name.   The document was signed by John Pitts, the Best Bev Entities' Processing & Compliance Manager (and the Debtor's former production manager) and indicates that it should be returned to Defendant Festa at 2512 Quakertown Road," as referenced in Paragraph 126 of the Amended Complaint.

**RESPONSE:**

102.   Produce the "June 3, 2021 . . . Joint Resolution of the Managers and Majority In Interest of Members of the Debtor," including all Documents and Communications Relating thereto, as referenced in Paragraph 127 of the Amended Complaint.

**RESPONSE:**

103.   Produce the "Equipment Lease Agreements," including all Documents and Communications Relating thereto, as referenced in Paragraph 128 of the Amended Complaint.

**RESPONSE:**

104.   Produce Documents and Communications Relating to Your allegation that "the Debtor over a two-year period would pay well more than double the original cost of the equipment," as referenced in Paragraph 129 of the Amended Complaint.

**RESPONSE:**

34

105.     Produce the "letter dated June 10, 2021, [written by] Defendant Sheehan, writing as President of Defendant EtOH Worldwide, LLC," as referenced in Paragraph 130 of the Amended Complaint.

**RESPONSE:**


106.     Produce Documents and Communications Relating to Your allegation that "Gary Parzych advised potential buyers that he would not allow anyone other than the Sheehan Entities to lease the 2300 Trumbauersville Road property, nor would he permit a transition period for a buyer to find a new location for the operations in that building.  Gary Parzych further stated that he was only willing to allow the Sheehan Entities to occupy the building because his son, Defendant Casey Parzych, was part of their organization," as referenced in Paragraph 132 of the Amended Complaint.

**RESPONSE:**


107.     Produce Documents and Communications Relating to Your allegation that "Debtor caused a document to be posted to the Section 363 sale data room which stated that the 2300 Trumbauersville Road 'lease is expired,'" as referenced in Paragraph 133 of the Amended Complaint.

**RESPONSE:**


108.     Produce the "July 22, 2021 email from PNC's counsel to the Debtor's bankruptcy counsel," including all Documents and Communications Relating thereto, as referenced in Paragraph 134 of the Amended Complaint.

**RESPONSE:**


109.    Produce Documents and Communications Relating to Your allegation that "counsel

for PNC expressed further concerns," as referenced in Paragraph 135 of the Amended Complaint.

**RESPONSE:**


110.    Produce Documents and Communications Relating to Your allegation that "[o]ther

bidders informed PNC's counsel that they were dropping out," as referenced in Paragraph 136 of

the Amended Complaint.

**RESPONSE:**


111.    Produce the "July 23, 2021 email from PNC's counsel," including all Documents

and Communications Relating thereto, as referenced in Paragraph 137 of the Amended Complaint.

**RESPONSE:**


112.    Produce Documents and Communications Relating to Your allegation that "[o]n

July 26, 2021, counsel to the United States Trustee held a Section 341 meeting at which Defendant

Casey Parzych testified . . . that the Debtor had no relationship with Wynk Seltzer," as referenced

in Paragraph 138 of the Amended Complaint.

**RESPONSE:**


113.    Produce Documents and Communications Relating to Your allegation that the

"creditor which participated in the meeting emailed counsel for the United States Trustee.  The

creditor forwarded an email from a representative of Classic Staffing Services, Inc. (stating that a Debtor representative told her that 'Drink Wynk, Theo and Opp, and Faber were one and the same'), and pointed out that it establishes the 'opposite of what [Defendant Casey Parzych] testified [to] on today's call re: DrinkWynk's relationship to Midnight Madness,'" as referenced in Paragraph 139 of the Amended Complaint.

**RESPONSE:**

114.    Produce Documents and Communications Relating to Your allegation that "PNC's counsel confirmed that numerous Debtor employees were simultaneously working for the Wynk Entities," as referenced in Paragraph 140 of the Amended Complaint.

**RESPONSE:**

115.    Produce the Debtor's "August 6, 2021, . . . response to questioning from counsel from the United States Trustee" including all Documents and Communications Relating thereto, as referenced in Paragraph 141 of the Amended Complaint.

**RESPONSE:**

116.    Produce the "email string dated August 16 & 17, 2021," including all Documents and Communications Relating thereto, as referenced in Paragraph 143 of the Amended Complaint.
**RESPONSE:**

117.    Produce Documents and Communications Relating to Your allegation that on "August 25, 2021, Millstone placed a winning bid at the Section 363 auction for an approximate

37

price of $1.4 million and agreements to assume certain contracts, and pay certain administrative expenses," as referenced in Paragraph 144 of the Amended Complaint.

**RESPONSE:**

118.   Produce Documents and Communications Relating to Your allegation that "Defendants caused the DIP to make numerous transfers and incur debts from which the Debtor derived no benefit and which went to the sole benefit of the Best Bev Entities and the other Pilfering Entities," as referenced in Paragraph 148 of the Amended Complaint.

**RESPONSE:**

119.   Produce the "email on August 31, 2021," including all Documents and Communications Relating thereto, as referenced in Paragraph 149 of the Amended Complaint.

**RESPONSE:**

120.   Produce Documents and Communications Relating to the following alleged transfers, as referenced in Paragraph 150 of the Amended Complaint:

    a.    On or about July 6, 2021, Defendants caused an industrial shrink wrapper machine (PMI Shrink Wrapper with Heat Tunnel, SI-TW30, Serial No. 02498) belonging to the Debtor to be delivered to 2512 Quakertown Road for use by Best Bev.  Defendant Festa later falsely informed Millstone that the machine was broken and scrapped before closing;

    b.    On or about July 4, 2021, Defendants used the Debtor's account to order $700.40 worth of carbon dioxide from Roberts Oxygen Company, Inc., with the carbon dioxide delivered to Best Bev at 2512 Quakertown Road

    c.    On or about July 14, 2021, Defendants used the Debtor's account to order 25,872 750 ML glass bottles and 2,688 1.75 L glass bottles from O-I Packaging Solutions LLC at a cost of $22,198.03, which were delivered to Best Bev at 2512 Quakertown Road, and which

were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

d.    On or about July 19, 2021, Defendants used the Debtor's account to order 25,872 750 ML glass bottles, 1,344 1.75L glass bottles, and 3,072 750 ML tequila bottles from O-I Packaging Solutions LLC at a cost of $22,919.06, which were delivered to Best Bev at 2512 Quakertown Road, and which were paid for by check drawn on the Debtor's DIP account and signed by Defendant Festa;

e.    On or about August 5, 2021, a $400.00 check to Milford Township (in which 2512 Quakertown Road sits) for a "Fire Inspection" was drawn on the Debtor's DIP bank account and signed by Defendant Festa;

f.    On or about August 10, 2021, Defendants used the Debtor's account to arrange for SunTeck Transport Co., LLC to deliver a 2,000 LB shipment from Eastgate Graphics in Lebanon, OH to Best Bev at 2512 Quakertown Road at a cost of $2,795.00;

g.    On or about August 11, 2021, Defendants used the Debtor's account to order $1,244.30 worth of packaging material from Century Packing, Inc., for shipment to Best Bev at 2512 Quakertown Road;

h.    On or about August 12, 2021, Defendants used the Debtor's account to order 24,024 1L glass bottles from O-I Packaging Solutions LLC at a cost of $17,125.14, which were delivered to Best Bev at 2512 Quakertown Road;

i.    On or about August 18 and 19, 2021, Defendants used the Debtor's account to order a total of $1,236.64 worth of carbon dioxide from Roberts Oxygen Company, Inc., which was delivered to Best Bev at 2512 Quakertown Road;

j.    On or about August 31, 2021, Defendants used the Debtor's account to order and ship 181,984 aluminum cans from Zuckerman Honickman at a total cost of $41,037.12, which were delivered to Best Bev at 2512 Quakertown Road;

k.    On or about September 13, 2021, Defendants used the Debtor's account to order 722,000 aluminum can ends from Zuckerman Honickman at a cost of $23,465.00, which were delivered to Best Bev at 2512 Quakertown Road; and

l.    A September 29, 2021 email from Millstone's counsel to Debtor's bankruptcy counsel reported that Defendants removed the following items from Debtor's facility (upon information and belief, for the benefit of the Best Bev Entities): a case shrink sealer, a nitrogen doser, and a bulk carbon dioxide system.

**RESPONSE:**

39

121. Produce Documents and Communications Relating to Your allegation that "goods and services which were paid for by the Debtor, . . . were used for the sole benefit of Best Bev or the other Pilfering Entities," as referenced in Paragraph 151 of the Amended Complaint.

**RESPONSE:**

122. Produce Documents and Communications Relating to Your allegation that "Defendants have intentionally sabotaged the Trustee's efforts to determine the full extent of goods and services paid for by the Debtor but used for the sole benefit of Best Bev or the other Pilfering Entities," as referenced in Paragraph 152 of the Amended Complaint.

**RESPONSE:**

123. Produce Documents and Communications Relating to Your allegation that "Defendant Festa instructed vendors to falsely state that Debtor orders were being delivered to the Debtor's facilities when they were actually being delivered to Best Bev at 2512 Quakertown Road," as referenced in Paragraph 152 of the Amended Complaint.

**RESPONSE:**

124. Produce Documents and Communications Relating to Your allegation that "the Insider Defendants falsely informed Debtor employees that they would be meeting with Millstone representatives, but instead arranged a meeting with agents of the Best Bev entities, who requested that Debtor employees sign a document stating their intention to work for Best Bev. The employees were then told to take the week off, which allowed Defendants to remove several pieces

40

of large equipment from the Debtor for the benefit of the Best Bev entities," as referenced in Paragraph 153 of the Amended Complaint.

**RESPONSE:**

125.     Produce Documents and Communications Relating to Your allegation that on "September 21, 2021, prior to the Millstone deal closing, the Insider Defendants intentionally deleted, wiped, or stole all the Debtor's electronic data and cloud computing drives, both," as referenced in Paragraph 154 of the Amended Complaint.

**RESPONSE:**

126.     Produce Documents and Communications Relating to Your allegation that Defendant Festa's certain "testimony is contradicted by numerous facts, including: a) due to standardized safeguards and warnings issued by the Debtor's cloud provider prior to mass deletion of data, and a thirty day hold period during which deleted data can be recovered, it is highly improbable that all of the Debtor's email and electronic data could be inadvertently destroyed; b) in addition to data stored on cloud services, the Debtor's computers were wiped of meaningful data prior to their transfer to Millstone; c) a forensic analysis conducted by Millstone indicated that the data was not destroyed, but instead transferred; and d) in discussions which occurred after the supposed deletion of data, Defendant Festa was able to retrieve specifically requested electronic documents belonging to the Debtor, but only after reporting that she had to ask for permission to do so," as referenced in Paragraph 155 of the Amended Complaint.

**RESPONSE:**

127.    Produce Documents and Communications Relating to Your allegation that "[o]n September 27, 2021, Millstone's counsel reported to the Debtor's counsel that Defendant Parzych told Debtor employees not to come to work, that the Debtor had not been fulfilling customer orders, that "Faber products are out of stock in basically every store," and that there was no backlog of inventory or glass bottles at the Debtor's premises.  Upon information and belief, this was because Defendants: a) encouraged the Debtor's former employees to work for the Best Bev Entities instead of Millstone; b) were fulfilling the Debtor's customer orders for the benefit of the Best Bev Entities instead of the Debtor; and c) were using the Debtor's inventory and equipment to produce large amounts of product for use by Best Bev," as referenced in Paragraph 156 of the Amended Complaint.

**RESPONSE:**


128.    Produce Documents and Communications Relating to Your allegation that "millions of dollars' worth of DIP property was improperly diverted to the Best Bev Entities," as referenced in Paragraph 157 of the Amended Complaint.

**RESPONSE:**


129.    Produce Documents and Communications Relating to Your allegation that "Defendants lied about the true nature of their supposedly new enterprise, informing customers that Best Bev was simply a continuation of the Debtor," as referenced in Paragraph 158 of the Amended Complaint.

**RESPONSE:**

130.    Produce the "October 7, 2021 text message," including all Documents and Communications Relating thereto, as referenced in Paragraph 159 of the Amended Complaint.

**RESPONSE:**

131.    Produce "Culbertson's text message," including all Documents and Communications Relating thereto, as referenced in Paragraph 160 of the Amended Complaint.

**RESPONSE:**

132.    Produce "similar text messages [allegedly sent] to hundreds of the Debtor's former customers[] using customer lists which Defendants stole from the Debtor," including all Documents and Communications Relating thereto, as referenced in Paragraph 161 of the Amended Complaint.

**RESPONSE:**

133.    Produce the "October 11, 2021 email," including all Documents and Communications Relating thereto, as referenced in Paragraph 162 of the Amended Complaint.

**RESPONSE:**

134.    Produce Documents and Communications Relating to Your allegation that Defendants used "stolen Debtor equipment as well as the Debtor's supposedly deleted internal data," as referenced in Paragraph 164 of the Amended Complaint

**RESPONSE:**

135.    Produce the "custom Well Rebellion flyers," including all Documents and Communications Relating thereto, as referenced in Paragraph 165 of the Amended Complaint.

43

**RESPONSE:**

136.    Produce Documents and Communications Relating to Your allegation that "the Defendants utilized the Debtor's phone.com account for the benefit of Best Bev, returning calls to Debtor customers who placed orders for Faber products, and instead selling them the corresponding Best Bev products," as referenced in Paragraph 166 of the Amended Complaint.

**RESPONSE:**

137.    Produce the full call log history of "Debtor's phone.com account," as referenced in Paragraph 166 of the Amended Complaint.

**RESPONSE:**

138.    Produce the "October 18, 2021, Drifter Spirits email[ to] Millstone," including all Documents and Communications Relating thereto, as referenced in Paragraph 167 of the Amended Complaint.

**RESPONSE:**

139.    Produce the "October 20, 2021 report," including all Documents and Communications Relating thereto, as referenced in Paragraph 168 of the Amended Complaint.

**RESPONSE:**

140. Produce the "November 1, 2021, . . . Millstone sales manager report[],"including all Documents and Communications Relating thereto, as referenced in Paragraph 169 of the Amended Complaint.

**RESPONSE:**

141. Produce Documents and Communications Relating to Your allegation that "Defendants caused Best Bev to join the Upper Perkiomen Valley Chamber of Commerce," as referenced in Paragraph 170 of the Amended Complaint.

**RESPONSE:**

142. Produce the "May 10, 2021 letter," including all Documents and Communications Relating thereto, as referenced in Paragraph 174 of the Amended Complaint.

**RESPONSE:**

143. Produce "testimony and declarations," including all Documents and Communications Relating thereto, as referenced in Paragraph 175 of the Amended Complaint.

**RESPONSE:**

144. Produce allegedly "inaccurate documents," including all Documents and Communications Relating thereto, as referenced in Paragraph 175 of the Amended Complaint.

**RESPONSE:**

145.    Produce "Debtor's books and records" from the beginning of the Debtor's existence, including all Documents and Communications Relating thereto, as referenced in Paragraph 175 of the Amended Complaint.

**RESPONSE:**

146.    Produce Documents and Communications Relating to Your allegation that the Sheehan Defendants allegedly "Debtor to incur substantial unnecessary and avoidable fees, costs, and expenses," as referenced in Paragraph 175 of the Amended Complaint.

**RESPONSE:**

147.    Produce Documents and Communications Relating to Your allegation that "Defendant Boyer was breaching fiduciary duties," as referenced in Paragraph 176 of the Amended Complaint.

**RESPONSE:**

148.    Produce Documents and Communications Relating to Your allegation that Defendant Boyer "knew or should have known of management's [alleged] wrongdoing," as referenced in Paragraph 177 of the Amended Complaint.

**RESPONSE:**

149.    Produce Documents and Communications Relating to the "proper standards of corporate governance," you allege in Paragraph 177 of the Amended Complaint.

**RESPONSE:**

46

150.     Produce Documents and Communications Relating to Your allegations of certain "personal purchases using the Debtor's funds," as referenced in Paragraph 178 of the Amended Complaint:

a.   On May 22, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $287.60 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

b.   On May 22, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $114.42 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

c.   On June 1, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $1,029.42 purchase at Elliott Aviation, a private aircraft service provider;

d.   On June 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $698.75 purchase at AVFlight, a private aviation service provider in North Canton, OH;

e.   On June 2, 2020, Defendant Angus Rittenburg used the Debtor's credit card to make a $438.76 purchase at Rich Air, a private aircraft services provider in Queensbury, NY;

f.   On June 3, 2020, Defendant Casey Parzych used the Debtor's credit card to make an $81.76 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

g.   On June 8, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $247.34 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

h.   On June 12, 2020, Defendant Casey Parzych used the Debtor's credit card to make a total of $2,072.10 in purchases at Elite Flight Experience, a private flight school in Princeton, NJ;

i.   On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $948.30 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

j.   On June 13, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $173.97 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

k.   On June 13, 2020, Defendant Rittenburg used the Debtor's credit card to make a $285.64 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

l.   On June 14, 2020, Defendant Casey Parzych used the Debtor's credit card to make to make a $1,657.10 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

m.   On June 22, 2020, Defendant Rittenburg used the Debtor's credit card to make a $2,398.00 purchase at General Aviation Modifications, Inc., a supplier of private aircraft engine parts in Ada, OK;

47

n.  On August 23, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $14,362.24 purchase at the Pink Sands Club, a luxury resort located on the Caribbean island of Canouan in St. Vincent and the Grenadines;

o.  On October 2, 2020, Defendant Casey Parzych used the Debtor's credit card to make a $329.22 purchase at Heartwood Aviation LLC, a private flight school in Quakertown, PA;

p.  On January 7, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $620.40 purchase with American Airlines for purposes of buying an airline ticket for his father, Defendant Gary Parzych;

q.  On February 13, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $205.14 purchase at the Margaritaville Beach hotel in Hollywood, Florida;

r.  On February 16, 2021, Defendant Casey Parzych used the Debtor's credit card to make a total of $274.89 in purchases from American Airlines for travel to St. Thomas;

s.  On March 2, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $4,551.93 purchase at Elite Flight Experience, a private flight school in Princeton, NJ;

t.  On March 29, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $940.00 purchase at Fare Share Ltd., a private flight school in Pottstown, PA; and

u.  On April 21, 2021, Defendant Casey Parzych used the Debtor's credit card to make a $15,000.00 payment to his personal attorney at Rogers Counsel in Ardmore, PA.

**RESPONSE:**

151.   Produce the Debtor's "lease with Defendant Finland Leasing dated January 1, 2016," including all Documents and Communications Relating thereto, as referenced in Paragraph 179 of the Amended Complaint.

**RESPONSE:**

152.   Produce Documents and Communications Relating to Your allegation that "Defendant Finland Leasing is owned and controlled by Defendant Gary Parzych, Casey Parzych's father," as referenced in Paragraph 180 of the Amended Complaint.

48

**RESPONSE:**

153.    Produce the "2300 Trumbauersville Lease," including all Documents and Communications Relating thereto, as referenced in Paragraphs 181, 182 and 185 of the Amended Complaint.

**RESPONSE:**

154.    Produce Documents and Communications Relating to Your allegation that "despite only being obligated to pay Finland Leasing $2,050.00 per month in rent, the Insider Defendants, for the purpose of funneling money out of the reach of the Debtor's creditors, caused the Debtor to pay Finland Leasing well more than $2,050.00 per month in rent," as referenced in Paragraph 183 of the Amended Complaint.

**RESPONSE:**

155.    Produce Documents and Communications Relating to and supporting the information contained in the chart included in Paragraph 183 of the Amended Complaint.

**RESPONSE:**

156.    Produce Documents and Communications Relating to Your allegation that "Debtor made at least $308,389.62 in payments to Finland Leasing from August 2017 through June 2021," as referenced in Paragraph 184 of the Amended Complaint.

**RESPONSE:**

157.   Produce Documents and Communications Relating to Your allegation that "various payments for utilities and services ostensibly provided to the leased premises not to Finland Leasing, but instead to Defendant ETP," as referenced in Paragraph 186 of the Amended Complaint.

**RESPONSE:**

158.   Produce Documents and Communications Relating to Your allegation that "clearly frivolous and non-Debtor charges, including dental insurance for Defendant Casey Parzych's uncle Larry Parzych and satellite radio for Defendant Casey Parzych," as referenced in Paragraph 187 of the Amended Complaint.

**RESPONSE:**

159.   Produce Documents and Communications Relating to Your allegation that "$355,778.05 in unjustified and extracontractual payments [were made] to ETP," as referenced in Paragraph 188 of the Amended Complaint.

**RESPONSE:**

160.   Produce Documents and Communications Relating to and supporting the information contained in the chart included in Paragraph 188 of the Amended Complaint.

**RESPONSE:**

161.   Produce Documents and Communications Relating to Trustee's "investigation," as referenced in Paragraph 191 of the Amended Complaint.

**RESPONSE:**

162.    Produce Documents and Communications Relating to Your assertion that "Defendants intentionally destroyed or stole the Debtor's emails and electronic files," as referenced in Paragraph 193 of the Amended Complaint.

**RESPONSE:**

163.    Produce Documents and Communications Relating to the "documents stored in a safe located at 118 North Main," as referenced in Paragraph 194 of the Amended Complaint.

**RESPONSE:**

164.    Produce Documents and Communications Relating to the "forensic analysis of the Debtor's Wi-Fi system," as referenced in Paragraph 194 of the Amended Complaint.

**RESPONSE:**

165.    Produce the "non-disclosure agreements," including all Documents and Communications Relating thereto, as referenced in Paragraph 196 of the Amended Complaint.

**RESPONSE:**

166.    Produce Documents and Communications Relating to Your allegation that a "chocolate phallus was sent to the family home of a former Debtor employee who chose to work for Millstone rather than join Defendants at the Best Bev Entities," as referenced in Paragraph 197 of the Amended Complaint.

**RESPONSE:**

167.    Produce the "March 7, 2022, Millstone . . . proof of claim," including all Documents and Communications Relating thereto, as referenced in Paragraph 198 of the Amended Complaint.

**RESPONSE:**

168.    Produce Documents and Communications Relating to Your allegation that "Insider Defendants breached their fiduciary duties," including by:

a.    Making, or allowing to be made, significant unauthorized or improper transfers;

b.    Causing the Debtor to enter into transactions with affiliates and family members of its managers and members without proper authorization;

c.    Engaging in numerous acts of self-dealing and theft for the benefit of the Pilfering Entities;

d.    Causing or allowing the Debtor's funds to be commingled with the funds of other persons or entities;

e.    Using or allowing to be used the Debtor's funds for the use of the Pilfering Entities or the personal use of Defendants Casey Parzych and Rittenburg;

f.    Failing to maintain and preserve the Debtor's assets and records, including, among other things, intentionally destroying or stealing Debtor emails and electronic records;

g.    Failing to ensure that adequate internal controls and reporting systems were in place and property utilized to mitigate against the misappropriation of Debtor funds and resources;

h.    Failing to maintain an adequate accounting system;

i.    Failing to hold regular meetings of the Board of Managers;

j.    Failing to conduct or maintain written records of meetings, votes, resolutions, or written consents;

k.    Failing to keep, or cause to be kept, accurate, complete, and proper books, records, and accounts pertaining to Debtor's affairs;

l.    Conspiring to attempt to sell Debtor or its assets to the Sheehan Entities at a fraction of its true value, and in so doing sabotaging offers from other interested purchasers;

m.    Grossly mismanaging Debtor's Chapter 11 Case, including allowing representatives of the Sheehan Entities to manage the bankruptcy process to the detriment of the Debtor and its estate;

n.  Destroying Debtor's attorney-client privilege by including the Wynk Entities and Sheehan Entities in numerous communications;

o.  Causing the Debtor to operate in an illegal fashion in violation of tax laws and other regulatory obligations;

p.  Conspiring with the Sheehan Entities, Finland Leasing, and Gary Parzych to chill bidding at the Debtor's Section 363 sale; and

q.  Engaging in other acts of fraud, gross negligence, or other material breaches of their fiduciary duties as set forth herein.

as referenced in Paragraph 204 of the Amended Complaint.

**RESPONSE:**

169.  Produce Documents and Communications Relating to Your allegation that "Insider Defendants engaged in self-dealing," as referenced in Paragraph 205 of the Amended Complaint.

**RESPONSE:**

170.  Produce Documents and Communications Relating to Your allegation that "Insider Defendants and their affiliates received millions of dollars for their roles in facilitating and implementing the breaches of fiduciary duty," as referenced in Paragraph 206 of the Amended Complaint.

**RESPONSE:**

171.  Produce Documents and Communications Relating to Your allegation that "Debtor has suffered damages in an amount to be determined at trial, but which exceeds the sum of $10 million," as referenced in Paragraph 208 and 218 of the Amended Complaint.

**RESPONSE:**

172.    Produce Documents and Communications Relating to Your allegation that "Defendants had knowledge that the Insider Defendants' conduct was a breach of their fiduciary duties," as referenced in Paragraph 212 of the Amended Complaint.

**RESPONSE:**

173.    Produce Documents and Communications Relating to Your allegation that "improper benefits they received," as referenced in Paragraph 215 of the Amended Complaint.

**RESPONSE:**

174.    Produce Documents and Communications Relating to Your allegation that "Defendants received millions of dollars for their roles in aiding and abetting the breaches of fiduciary duty, and they should be required to disgorge and repay those ill-gotten gains," as referenced in Paragraph 216 of the Amended Complaint.

**RESPONSE:**

175.    Produce Documents and Communications Relating to the "valuable assets," as referenced in Paragraph 220 of the Amended Complaint.

**RESPONSE:**

176.    Produce Documents and Communications Relating to the "revenue and profits for the Debtor," as referenced in Paragraph 220 of the Amended Complaint.

**RESPONSE:**

177.    Produce Documents and Communications Relating to Your allegation that "Insider Defendants deprived the Debtor of millions of dollars," as referenced in Paragraph 221 of the Amended Complaint.

**RESPONSE:**

178.    Produce Documents and Communications Relating to Your allegation that "Defendants ignored the corporate boundaries" as stated in referenced in Paragraph 225 of the Amended Complaint.

**RESPONSE:**

179.    Produce Documents and Communications Relating to Your allegation that the Defendants "prevent[ed] the Debtor from paying its legitimate debts," as referenced in Paragraph 227 of the Amended Complaint.

**RESPONSE:**

180.    Produce Documents and Communications Relating to Your allegation that "Debtor management and employees [made] all decisions for and conducting the daily operation of the Pilfering Entities utilizing the physical plant and equipment of the Debtor," as referenced in Paragraph 228 of the Amended Complaint.

**RESPONSE:**

181.    Produce Documents and Communications Relating to the "intercompany transactions," as referenced in Paragraph 230 of the Amended Complaint.

**RESPONSE:**

182.    Produce Documents and Communications Relating to Your allegation regarding "siloing assets, profits, personnel, resources, and opportunities with the Pilfering Entities," as referenced in Paragraph 237 of the Amended Complaint.

**RESPONSE:**

183.    Produce Documents and Communications Relating to the ways "each of the Defendants was [allegedly] enriched and received economic and other benefits from the Debtor without justification," as referenced in Paragraph 240 of the Amended Complaint and including:

a.    The Pilfering Entities use of the Debtor's facilities, equipment, personnel, inventory, and intellectual property without payment of fair compensation therefor;

b.    The Pilfering Entities receipt of revenue from the sale of CBDelight, Faber Hand Sanitizer, Wynk Seltzer, and other products manufactured by the Debtor or with the use of the Debtor resources;

c.    Finland Leasing and ETP's receipt of extracontractual and unjustified payments from the Debtor (i.e., the Finland Lease Overpayments and the ETP Payments);

d.    Defendant Casey Parzych's and Rittenburg's receipt of the Parzych/Rittenburg Purchases; and

e.    Upon information and belief, each of the Defendants have received monetary payments from the Pilfering Entities which were derived with the benefit of the Debtor's resources.

**RESPONSE:**

184.    Produce Documents and Communications Relating to Your allegation that "the Estate [was] left with millions of dollars in unpaid debts," as referenced in Paragraph 242 of the Amended Complaint.

**RESPONSE:**

185.    Produce "Debtor's Amended and Reinstated Operating Agreement As Amended and Restated as of April 16, 2019 and Debtor's Amended and Restated Operating Agreement As Amended and Restate as of March 26, 2021," including all Documents and Communications Relating thereto, as referenced in Paragraph 248 of the Amended Complaint.

**RESPONSE:**

186.    Produce Documents and Communications Relating to the following, as referenced in Paragraph 252 of the Amended Complaint:

a. The Wynk Seltzer and CBDelight products;
b. The Best Bev Entities' branding and brands;
c. United States Design Patent Nos. US D918,708 S, US D931,672 S;
d. United States Patent Application Publication No. US 2022/0264947 and Patent Cooperation Treaty Application No. PCT/US2020/043055;
e. United States Patent Application Publication No. US 2022/0232859 and Patent Cooperation Treaty Application No. PCT/US2020/043034;
f. Unites States Patent Application No. 63/174,233 and Patent Cooperation Treaty Application No. PCT/US2022/024394;
g. United States Patent Application No. 62/979,200 and Patent Cooperation Treaty Application No. PCT/US2021/018509;
h. United States Patent Application No. 62/903,260 and Patent Cooperation Treaty Application No. PCT/US2020/051783;
i. United States Patent Application No. 62/847,019 and Patent Cooperation Treaty Application No. PCT/US2020/032590;
j. United States Patent Application No. 62/979,233 and Patent Cooperation Treaty Application No. PCT/US2021/018532;
k. United States Patent Application No. 62/847,023 and Patent Cooperation Treaty Application No. PCT/US2020/032593;
l. United States Patent Application No. 62/903,293 and Patent Cooperation Treaty Application No. PCT/US2020/051803; and
m. United States Trademark Serial Nos. 97263015, 90889744, 90674624, 97883067, 97174708, 97184527, 97184492, 97600495, 97600483, 88639939, 88840793, 88389825, 88421795, 88389949.

**RESPONSE:**

187.   Produce Documents and Communications Relating to the "Finland Lease Overpayments and ETP Payments," as referenced in Paragraphs 257, 270, 275, 276, 281, 282 and 283 of the Amended Complaint.

**RESPONSE:**


188.   Produce Documents and Communications Relating to the alleged "full amount of the Finland Lease Overpayments and ETP Payments," as referenced in Paragraph 258 of the Amended Complaint.

**RESPONSE:**


189.   Produce Documents and Communications Relating to any "injury to Debtor's creditors," as referenced in Paragraph 260 of the Amended Complaint.

**RESPONSE:**


190.   Produce Documents and Communications Relating to all "Post Petition Best Bev Transfers," as referenced in Paragraph 266 of the Amended Complaint.

**RESPONSE:**


191.   Produce Documents and Communications Relating to the "Total Finland Leasing Payments and the ETP Payments," as referenced in Paragraphs 271, 272 and 273 of the Amended Complaint.

**RESPONSE:**

192.     Produce Documents and Communications Relating to Your allegation that "[o]n March 19, 2021, Defendant Boyer received a $75,000.00 wire transfer from the Debtor," as referenced in Paragraph 277 of the Amended Complaint.

**RESPONSE:**

193.     Produce Documents and Communications Relating to the "Boyer Payment as well as that portion of the Total Finland Leasing Payments and the ETP Payments," as referenced in Paragraph 279 of the Amended Complaint.

**RESPONSE:**

194.     Produce Documents and Communications Relating to the damages you allege.

**RESPONSE:**

Dated: March 28, 2025                               **K&L GATES LLP**

                                                   /s/ *Steven L. Caponi*
                                                   Steven L. Caponi
                                                   600 N. King Street, Suite 901
                                                   Wilmington, DE  19801
                                                   Phone:  (302) 416-7000
                                                   Fax:  (302) 416-7020
                                                   Steven.Caponi@klgates.com

                                                   Carly S. Everhardt (admitted *pro hac vice*)
                                                   **K&L GATES LLP**
                                                   Southeast Financial Center, Suite 3900
                                                   200 South Biscayne Boulevard
                                                   Miami, FL  33131
                                                   Phone:  (305) 539-3300
                                                   Fax:  (305) 358-7095

Carly.Everhardt@klgates.com

Falco A. Muscante II
**K&L GATES LLP**
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA  15222
Phone:  (412) 355-6500
Fax:  (412) 471-8868
Falco.MuscanteII@klgates.com

*Attorneys for Casey Parzych; Shawn Sheehan;*
*Angus Rittenburg; Ashleigh Baldwin; R.F.*
*Culbertson; Michael Boyer; Kelly Festa,*
*Polebridge, LLC; Good Design, Inc.; AgTech*
*PA LLC; XO Energy Worldwide, LLLP; XO*
*EW, LLC; Best Bev, LLC; and Canvas 340 LLC*

**IN THE UNITED STATES BANKRUPTCY COURT FOR
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re:

MIDNIGHT MADNESS DISTILLING

    Debtor.

_____/

BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling,

    Plaintiff,

v.

CASEY PARZYCH; SHAWN SHEEHAN; ANGUS RITTENBURG, KELLY FESTA, ASHLEIGH BALDWIN; MICHAEL BOYER; R.F. CULBERTSON; GARY PARZYCH; RYAN USZESNKI; POLEBRIDGE LLC; GOOD DESIGN, INC.; AGTECH PA LLC; AGTECH VI, LLC; XO ENERGY WORLDWIDE LLLP; XO EW, LLC; CAN MAN LLC; BEST BEV, LLC; ETOH WORLDWIDE, LLC; CANVAS 340, LLC; FINLAND LEASING CO., INC.; and EUGENE T. PARZYCH, INC.

    Defendants.

_____/

Case No.: 21-11750-PMM

Chapter 7 case

Adv. Pro. No.: 23-00047-PMM

**CERTIFICATE OF SERVICE**

I, Steven Caponi, hereby certify that on March 28, 2025, I served a copy of the forgoing Defendants' First Set of Requests for Production Directed to Plaintiff via email on all counsel of record.

                                          */s/ Steven L. Caponi*
                                          Steven L. Caponi