# EXHIBIT 12

## Brannick, Nicholas J

| | |
|---|---|
| **From:** | Andrew Belli <ABelli@kcr-law.com> |
| **Sent:** | Tuesday, March 3, 2026 1:12 PM |
| **To:** | Brannick, Nicholas J |
| **Cc:** | Heilman, Leslie C.; Kearney, Brian |
| **Subject:** | RE: Midnight Madness - ESI Search Terms |

⚠️ **EXTERNAL**

Counsel –

Thank you for the response, but there are several fundamental issues with your proposal.

You are offering to run only 34 out of 259 search terms, rejecting 77 outright, and demanding an explanation for 145 more.  This seems to be a continuation of the obstructionist pattern described in the Trustee's motion to compel.  Running search terms is an automated process and does not impose burden in and of itself.  If certain terms generate a disproportionate number of hits, then they may be unworkable (or may require additional limiting terms or search parameters), but rejecting terms before hit counts are run is unjustified and highly unusual.

The request for explanation of 145 terms is disingenuous.  As I explained during our phone call, the Trustee's discovery requests need to be relevant to the Trustee's claims, not to a particular Sheehan-related entity.  You are in effect seeking to reduce the discovery obligation of a litigation party below that which would apply to a subpoenaed third party, which is patently improper.

Every one of the 34 "Yes" terms in your spreadsheet is subject to an end-date of September 17, 2021 — the date the Court approved the Debtor's asset sale.  This is the same unilateral temporal limitation that the Trustee's Motion to Compel identified as improper, and we cannot agree to it for the reasons set forth therein.  The Amended Complaint alleges that the misconduct continued well past September 17, 2021.  The Trustee's live claims include successor liability, alter ego/veil piercing, turnover, and avoidance of unauthorized postpetition transfers — all of which can be proven via conduct that occurred after the asset sale, including the formation and ongoing operation of Best Bev, LLC, the continued sale of products using the Debtor's resources, and the transfer of Debtor assets to entity Defendants.  Capping the search at the date of the asset sale is not warranted given the allegations of the Amended Complaint.  The start date for most terms is also unjustifiable – to give just one example, the term "Parzych" has a start date of 11/25/20 yet the underlying evidence indicates that Defendant Sheehan was discussing sanitizer with Defendant Parzych in early 2020.

The spreadsheet rejects search terms for Wynk, AgTech, XO, EtOH, AGTVI, and Canvas on the basis that these are entities "owned by Sheehan" or that related claims were "dismissed."  This conflates the dismissal of certain claims against AgTech VI, LLC with the relevance of communications about these entities and products to the claims that remain.  Best Bev, LLC, XO Energy Worldwide, LLLP, XO EW, LLC, and Canvas 340, LLC are all parties to this litigation with active claims against them, including aiding and abetting breach of fiduciary duty, alter ego/veil piercing, successor liability, unjust enrichment, breach of contract, turnover, and avoidance of postpetition transfers.  The Amended Complaint alleges that these entities, along with Wynk and the other product lines, were part of a coordinated scheme to divert assets from the Debtor.  Communications about Wynk, XO, Canvas, and the other rejected entities are directly relevant to the interrelationship among these entities — which is a core factual question in this case.  If Mr. Sheehan and his entities communicated about Wynk, XO, or Canvas, the Trustee is entitled to see those communications.  The rejection of the Wynk term is particularly egregious given the substantial evidence establishing that Wynk was created using the assets of the Debtor.  Moreover, review of Wynk's current website indicates that Defendant Canvas 340 owns Wynk.

Several terms (Roberts Oxygen, O-I Packaging, Zuckerman) are rejected on the theory that "Best Bev was a d/b/a for Can Man" and that "Best Bev, LLC and Can Man, LLC are distinct entities." Whether Can Man and Best Bev are truly distinct — or are part of the same scheme alleged in the Amended Complaint — is a central factual question in this litigation. Your clients cannot invoke their own view of the merits to justify withholding documents that would bear on that very question.

The spreadsheet rejects 31 terms as "generic," including THC, CBD, cannabis, beverage, liquor, distill!, sanitizer, ethanol, copack!, and co-pack!. These are not generic terms in the context of this case — they are the subject matter of the Debtor's business and the alleged diversion. The Amended Complaint alleges that the Defendants used Debtor resources to manufacture and sell cannabis seltzer, hand sanitizer, and beverage products through shadow entities. Rejecting every term that relates to the substance of the diverted business would ensure that the ESI search captures nothing of relevance. The same is true for terms like "bankruptcy," "evasion," "veil," "shadow," and "NDA," which go directly to the Trustee's allegations of concealment and coordinated misconduct. If the volume of hits for a particular term proves to be unmanageable, that is something we can address through modified search parameters — but the solution is not to eliminate the terms entirely before the search is even run.

The spreadsheet rejects 17 terms relating to property addresses and phone numbers with the comment "why would we search addresses?" The answer is straightforward: the Trustee's RFPs specifically request documents concerning the addresses identified in the Amended Complaint and elsewhere in relevant documents, which are the Debtor's business locations and locations relevant to the Debtors' assets. Phone number searches similarly capture communications with specific individuals and entities relevant to the case. The terms are highly unique and should not pose a burden in terms of hit count (but, if they do, we can of course address that when the relevant hit counts are run).

You are correct that "!@dgpmanagement.com" should be "!@dpgmanagement.com." Thank you for catching that. The relevance of the "Blobe" and "Coughlin" terms is obvious given the allegations of the Amended Complaint, but I am happy to discuss.

Finally, the custodian list identifies only three individuals, all with XO Energy email addresses: Shawn Sheehan, John Charette, and Ryan Uszenski. The Sheehan Defendants in this case include not only Shawn Sheehan individually but also Best Bev, LLC, Canvas 340, LLC, XO EW, LLC, and XO Energy Worldwide, LLLP. Please identify all individuals who sent or received potentially relevant emails on behalf of each entity Defendant, along with any personal email accounts, text messaging services, or instant messaging accounts used by those individuals for business purposes. At a minimum, the proposed custodian list will have to be expanded to include Carey Drangula and Kelli Sheehan. Moreover, Ms. Drangula and Defendant Sheehan have used the following email addresses in connection with communications relevant to this case: cdrangula@agtechvi.com, shawn_sheehan@yahoo.com, shawn@gooddesigninc.com, shawn@fabersanitizer.com, shawn@drinkcannabis.usa, and shawn@drink.wynk.com. Please confirm that these mailboxes, and any others used to communicate concerning the allegations contained in the Amended Complaint are being collected. Additionally, Best Bev uses the same email domain as Can Man (@bestbev.co) and, to the extent that responsive Can Man documents are in the possession of Best Bev, they will have to be produced.

Best,

Andy


Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Andrew Belli
**Sent:** Friday, February 27, 2026 2:37 PM
**To:** 'Brannick, Nicholas J' <brannickn@ballardspahr.com>

**Cc:** Heilman, Leslie C. <HeilmanL@ballardspahr.com>; Kearney, Brian <KearneyB@ballardspahr.com>
**Subject:** RE: Midnight Madness - ESI Search Terms

Thank you, I will take a look; I don't have an issue with you filing on 3/4.

Andrew J. Belli, Esquire
(215) 735-8700 (Phone)

---

**From:** Brannick, Nicholas J <brannickn@ballardspahr.com>
**Sent:** Friday, February 27, 2026 10:59 AM
**To:** Andrew Belli <ABelli@kcr-law.com>
**Cc:** Heilman, Leslie C. <HeilmanL@ballardspahr.com>; Kearney, Brian <KearneyB@ballardspahr.com>
**Subject:** Midnight Madness - ESI Search Terms

**EXTERNAL EMAIL.**

Andrew,

We have undertaken a review of the ESI protocol you provided to the defendants in an effort to come up with something workable to move discovery forward.  Our review is provided in the attached spreadsheet.

We have placed the 259 search terms in your protocol into three buckets:

Yes – the Sheehan defendants will run the term, subject to agreeing to a date range.

No – the Sheehan defendants reject the term for the reason stated in the spreadsheet.

Trustee to Explain – we don't understand why the search term was proposed and request that you provide an explanation.

There are two search terms we did not categorize because we think they require discussion, and one we think contains an error.

We have identified proposed custodians and their e-mail addresses in the second tab of the spreadsheet.

We think it would be productive for you to have an opportunity to review the attached before we file our objection to the motion to compel.  Accordingly, we ask that our objection deadline be continued to next Wednesday, March 4.  That will give you enough time to file a reply before the hearing if filing the objection proves necessary.

We look forward to hearing from you regarding the attached analysis and our request to push out the objection deadline.

Thank you,
Nick

**Nicholas J. Brannick**

919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
302.252.4464 DIRECT
302.252.4466 FAX

302.357.2590 MOBILE | brannickn@ballardspahr.com
VCARD

www.ballardspahr.com

*Please note that Ballard Spahr's Delaware office is moving. Effective March 16, our new address will be 222 Delaware Avenue, 10th Floor, Wilmington, DE 19801-3034.*

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.