IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>MIDNIGHT MADNESS DISTILLING LLC,<br><br>　　　　　　　　　　Debtor. | CHAPTER 7<br>Case No. 21-11750-PMM |
| BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>CASEY PARZYCH, et al.,<br><br>　　　　　　　　　　Defendants. | Adv. No. 23-00047-PMM |

**PLAINTIFF'S REPLY IN FURTHER
SUPPORT OF MOTION TO COMPEL DISCOVERY**

　　The Trustee files this reply brief for the purpose of addressing issues raised for the first time in the Sheehan Defendants' Objection to the Trustee's Motion to Compel (the "Objection," Adv. D.I. 124), particularly the unfounded contention that the Trustee has "fabricated" the allegations in her Amended Complaint. The Objection is notable for what it does not dispute: the Sheehan Defendants have produced zero documents in this case; the Trustee's RFPs were served nearly a year ago; prior counsel committed to rolling production and never delivered; and the Trustee has produced over 500,000 pages while receiving nothing in return. Instead, the Objection recasts the Sheehan Defendants' stonewalling as the Trustee's fault for allegedly serving discovery that is too broad. This Court should not be persuaded and, for the reasons set forth in the Trustee's Motion to Compel, should order prompt production of all nonprivileged documents responsive to the RFPs.

1

The Objection's central theme – that the Trustee's discovery fails to distinguish among Defendants – ignores the fundamental nature of this case and represents a third attempt to relitigate twice rejected motions to dismiss arguments. The Amended Complaint alleges a *coordinated scheme* among all Defendants to loot the Debtor through interconnected entities. The Sheehan Defendants are not peripheral actors accused of isolated misconduct; they are alleged to be the architects of the very structure through which Debtor resources and profits were siphoned. Defendant Sheehan is alleged to be the ultimate owner and controller of the entities through which the Debtor's assets were diverted. The Amended Complaint details how Sheehan and his entities were copied on the Debtor's privileged attorney-client communications, participated in the Debtor's bankruptcy strategy, attempted to rig the Section 363 sale, and ultimately formed Best Bev, LLC to continue the Debtor's operations using stolen assets. Discovery concerning the full scope of this alleged scheme is not a "fishing expedition"; it is the primary means by which the Trustee can prove the coordinated misconduct that this Court has already found sufficiently pled to survive two motions to dismiss.

Revealingly, the Objection's most confident assertion – that the Trustee "lacks information or any basis to believe that the Sheehan Defendants had any involvement in CBDelight or Faber Hand Sanitizer" and "fabricated" allegations concerning the same (Objection ¶ 18) – is flatly contradicted by evidence conclusively demonstrating that the Sheehan Entities were built into the financial architecture of the Faber Hand Sanitizer operation from its inception. The Objection's characterization of the Trustee's forensic evidence as "gibberish" is similarly baseless, as proper review of that evidence establishes comprehensive operational and financial control over the Debtor exercised by a Sheehan Entities agent from a Debtor computer.

2

I. **The Sheehan Defendants Were Central Participants in the Faber Sanitizer Scheme and the Other Misconduct Alleged in the Complaint, And Their Contention that the Trustee "Fabricated" Allegations Concerning Their Involvement Is a Deliberate Falsehood**

The Sheehan Defendants devote a substantial portion of their Objection (¶¶ 14-18) to the assertion that they had no involvement in CBDelight or Faber Hand Sanitizer and that the Trustee's allegations rest on nothing more than a LinkedIn post and "gibberish." Egregiously, they go so far as to accuse the Trustee of "fabricat[ing]" allegations regarding the same. *Id.* at ¶ 18. The allegation is shocking given that evidence obtained by the Trustee from third parties[1] (and of which the Sheehan Defendants are necessarily aware) tells a dramatically different story, demonstrating that the Sheehan Defendants were inextricably intertwined with the Faber Hand Sanitizer scheme from its inception.

In an email dated April 13, 2020 – contemporaneous with the Debtor's pivot to hand sanitizer production – the Sheehan Entities' in house attorney, Carey Drangula, circulated an organizational chart to Defendants Sheehan, Casey Parzych, and Boyer. *See* Ex. I.[2] The chart, entitled "Hand Sanitizer Org chart," maps the flow of funds for the Faber Sanitizer operation and explicitly states that the revenues therefrom will ultimately flow to Sheehan Entity XO Energy Worldwide, LLLP, which is owned and controlled by Defendant Sheehan. Moreover, Defendant Sheehan was so involved with Faber Sanitizer that he personally communicated using an

---

[1] Curiously, the Sheehan Defendants maintain that the Trustee has access to the Debtor's emails, Objection at ¶ 16. This is incorrect – the Trustee believes that the Insider Defendants intentionally wiped or stole the Debtor's electronic data and cloud drives, as alleged in the original and amended complaints – and the Trustee's lack of access to Debtor emails is a key reason why discovery from the Sheehan Defendants is essential.

[2] References herein to "Ex. ___" refer to exhibits to the Supplemental Declaration of Andrew J. Belli filed contemporaneously herewith.

@fabersanitizer.com email address. *See* Ex. J (email chain with 6/13/20 email from Defendant Casey Parzych to Defendant Sheehan at shawn@fabersanitizer.com).

The Sheehan Defendants dismiss the Trustee's electronic evidence from the Kelli Sheehan user profile on a Debtor computer as "gibberish," attaching their Exhibit 6 to suggest that the data is unintelligible. *See* Objection ¶ 17. Instead of asking undersigned counsel which data he was referring to and how it could be properly viewed, the Sheehan Defendants picked a file at random and then viewed its raw data as plain text, which for most electronic file types would necessarily reveal "gibberish." *See* Heilman Dec. (A.D.I. 124-3) at ¶ 18.

The data referenced by undersigned counsel in the interrogatory responses discussed by the Sheehan Defendants is a standard Google Chrome browser history database. When properly processed, the data reveals that from at least May through October 2021, Kelli Sheehan, an agent of the Sheehan Entities, used a Debtor computer to exercise comprehensive operational and financial control over the Debtor's business, including:

(a) accessing the Debtor's PNC Online Banking account, *see* Ex. K at, *e.g.*, Rows 6-26;

(b) managing the Debtor's "Faber Distilling" Shopify e-commerce platform (fabereasydrinking.myshopify.com), including accessing payouts, orders, and administrative functions, *see id.* at, *e.g.*, Rows 149-152, 977;

(c)     Managing the Debtor's Square point-of-sale system, reviewing transfers, balances, sales transactions, and deposits, *see id.* at, *e.g.*, Rows 593-611;

(d)     Accessing the fabersanitizer.myshopify.com Shopify store, further confirming the Sheehan Defendants' comprehensive involvement in the Faber Sanitizer business, *see id.* at, *e.g.*, Rows 49-50;

4

  (e)  Accessing her kelli@fabersanitizer.com Gmail account — hosted under "Good Design, Inc. Mail" — including emails concerning Botanacor lab testing[3] and vendor payments for the hand sanitizer product, *see id.* at, *e.g.*, Rows 53, 725, 731, and 738;

  (f)  Accessing her kellisheehan@drinkwynk.com Gmail account — hosted under "American Cannabis LLC Mail" — including emails with subject lines such as "Fwd: Bank & CC Logins," "Fwd: MMD Quickbooks access," and "Fwd: Amex Login," demonstrating that the Debtor's finances were inextricably intertwined with the Wynk product, *see id.* at, *e.g.*, Rows 121, 872, 889, 891;

  (g)  Accessing the Debtor's accounts at Penn Community Bank, Capital One, and American Express, *see id.* at, *e.g.*, Rows 173-175, 875-887, and 897; and

  (h)  Accessing the Debtor's QuickBooks accounting files, *see id.* at, *e.g.*, 1342.

  This is not "gibberish." To the contrary, it is concrete evidence conclusively demonstrating a Sheehan Entities employee exercising day-to-day operational and financial control over the Debtor from a Debtor computer – accessing the Debtor's bank accounts, managing its online sales platforms, reviewing its accounting records, expending Debtor resources on CBDelight, Faber Hand Sanitizer, and Wynk Seltzer, and doing so utilizing email accounts belonging to the Sheehan Entities and the Wynk Entities. This evidence, standing alone, substantiates the Trustee's claims and defeats the Sheehan Defendants' claim of non-involvement with the allegations of the Amended Complaint.

---

[3] The visit to Botanacor lab testing from a "Good Design, Inc." email demonstrates the Sheehan Defendants' involvement with Good Design's CBDelight product, as Botanacor is a cannabis testing company that would not have any involvement with hand sanitizer.

## II. The Sheehan Defendants' Compartmentalization of Can Man and Best Bev Fails

The Objection insists that Can Man, LLC and Best Bev, LLC are distinct entities and that events predating Best Bev, LLC's formation on June 13, 2022 are irrelevant. Objection ¶¶ 19-21. This argument ignores the Amended Complaint's allegations that Can Man operated under the name "Best Bev" and that Best Bev, LLC "is either the successor in interest to Can Man or was created by Defendants to avoid liability for misconduct on the part of Can Man." *See* Adv. D.I. 44, Amended Complaint at ¶ 125. The Trustee's successor liability and alter ego claims (Counts 4A and 4B) are premised precisely on the theory that Can Man and Best Bev were part of a unified scheme. Whether Can Man and Best Bev are truly separate is a factual question that discovery is designed to resolve – not an argument that the Sheehan Defendants can assert to block production of the very documents which would prove the point.

Indeed, substantial evidence demonstrates that Can Man and Best Bev – which utilize the same address, telephone number, website domain, email domain, and personnel – are one and the same and that the supposed separation between the two is simply Defendants' abuse of the corporate form.[4] The Sheehan Defendants also argue (despite denial of two motions to dismiss) that none of the Trustee's allegations have anything to do with Best Bev, because Best Bev "did not exist" during the misconduct alleged in the Amended Complaint. *See* Objection at ¶¶ 21, 29. In addition to being legally irrelevant due to the Trustee's allegations of successor liability and

---

[4] *See, e.g.,* Trustee's Interrogatory Responses, Adv. D.I. 124-7 at p. 57 ("Best Bev LLC and Can Man LLC use the same address (2512 Quakertown Road), email domain (@bestbev.co), website (https://bestbev.co), and telephone number (215.987.5616); at all times relevant hereto, Defendant Uszenski has been the Manager of both Best Bev LLC and Can Man LLC and thus responsible for its misconduct; Best Bev LLC and Can Man LLC have a large number of personnel in common; and Can Man LLC commonly used "Best Bev" as a DBA.").

alter ego, Best Bev's attempt to divorce itself from this case – much like the Sheehan Defendants' effort to divorce themselves from Faber Hand Sanitizer – is factually baseless.

A publicly accessible website establishes that, in July 2025, Best Bev hired New Mill Capital to conduct an auction of "assets no longer required by Best Bev," which assets included property belonging to the Debtor. *See* Exs. L (Best Bev auction launch page stating that the auction ended on 7/22/25), M (Best Bev auction listing for "Hoover Ferguson 550 Gallon Stainless Steel Storage Tote" with serial number 509824), N at BR007289 (12/28/20 Appraisal of Debtor's equipment, including a Hoover tank with serial number 509824). This is not "temporal incoherence," *see* Objection at ¶ 29, it is conclusive proof of Best Bev's continued involvement in Defendants' scheme to usurp the assets of the Debtor. The Trustee's discovery requests to Best Bev are entirely appropriate as to both scope and timeframe, and the Court should order the prompt production of all documents requested in the Trustee's RFPs.

**III.     The Sheehan Defendants' Relevance Arguments Are Foreclosed by the Court's Rulings**

Beyond Faber Hand Sanitizer and Can Man/Best Bev, the Sheehan Defendants argue that various other categories of documents are "irrelevant" to the claims against them. But this Court has already considered and rejected substantially similar arguments. In its December 16, 2024 order on the second motion to dismiss, the Court noted that the Sheehan Defendants "largely reiterate[d] the arguments made in their First Motion to Dismiss" and allowed all claims to proceed. *See* Adv. D.I. 64. The claims that survived include aiding and abetting breach of fiduciary duty against all Defendants.

The Sheehan Defendants now seek to relitigate the motion to dismiss rulings through discovery objections. The argument that allegations concerning CBDelight, Faber Hand Sanitizer, Wynk seltzer, the Debtor's lease, and the Debtor's internal operations "have nothing

7

whatsoever to do with the Sheehan Defendants" (*see, e.g.,* Objection ¶¶ 22-24) ignores the aiding and abetting claim, which is asserted against *all* Defendants and requires the Trustee to prove that each Defendant "substantially assisted and/or encouraged" the Insider Defendants' breaches of fiduciary duty. Moreover, as discussed in detail above, the Trustee is in possession of evidence establishing the Sheehan Defendants' broad involvement in the misconduct alleged in the Amended Complaint and is entitled to discover the full scope of that involvement via discovery into the Sheehan Defendants' own records (as opposed to records the Trustee has gone to great lengths to obtain from third parties).

IV. **The Trustee's Discovery Is Proportional and Particularized**

The Sheehan Defendants repeatedly cite authority for the proposition that discovery must be proportional and particularized. The Trustee does not dispute these general principles. The dispute is over their application to the facts of this case, where the Amended Complaint details a coordinated scheme among all Defendants and the existing evidence indicates that the Sheehan Defendants were substantially involved in carrying out that scheme. The Sheehan Defendants argue that the Trustee's RFPs are a "blunderbuss" that fails to distinguish among Defendants. Objection ¶¶ 1, 49. But the RFPs are organized by subject matter – entity formation, intercompany transactions, communications among Defendants, use of Debtor assets, and so forth – and are limited to a defined time period during which Defendants' misconduct is likely to have occurred. Where a plaintiff alleges a coordinated conspiracy among multiple defendants, as here, it is entirely proper to seek the same categories of documents from each participant.

## V. The Sheehan Defendants' Objections to the Trustee's Search Protocol Indicate A Bad Faith Attempt to Further Delay Production and Continue the Concealment of Relevant Evidence

As to the ESI Protocol, the Sheehan Defendants' real complaint is not that the Trustee refused to negotiate (which is untrue), but that the Trustee declined to capitulate to the Sheehan Defendants' attempt to further delay production by taking issue with nearly 90% of the Trustee's proposed search terms and imposing draconian date limitations on those terms which they agreed to run. Once a party's data is collected, which should have occurred some time ago, running search terms is an automated process that entails minimal effort. Accordingly, typical litigation practice is to generate a "hit report" which can serve as a basis for further discussion regarding terms that generate an inordinate amount of hits. The Sheehan Defendants' wholesale rejection of search terms absent a hit report, demand for an explanation of terms the majority of which undersigned counsel is confident they understand the relevance of, and attempt to eliminate key date ranges from the discovery process is indicative of their intent to continue their pattern and practice of delay and obfuscation with respect to discovery.

The Sheehan Defendants continue to assert that the Trustee's requests must specifically be relevant to "Sheehan-related entities" for them to be valid. This assertion that the relevance of a discovery request must be tied to the responding party, as opposed to the claims at issue in the case, is incorrect as a matter of law. Rule 26 states that parties may obtain discovery "that is relevant *to any party's* claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Sheehan Defendants' attempt to narrow the scope of discovery to include documents relevant only to claims against them is directly contrary to the applicable rule. Moreover, as set forth in detail above, the Trustee has demonstrated that the Sheehan Defendants were extensively

9

involved in the key areas of misconduct alleged in the Amended Complaint, making their relevance argument nonsensical on its face.

      A.      **The Temporal Cutoff.**  Those few terms which the Sheehan Defendants agreed to run have an end date of September 17, 2021.  But the Amended Complaint alleges that misconduct continued after this date.  Indeed, the Trustee has discovered through independent investigation that Best Bev continued to use Debtor property in its operations and was attempting to sell such property as late as July 2025 (s*ee* Exs. L, M, and N), and that the Sheehan Entities were using a Debtor computer to access the Debtor's Shopify accounts at least until October 2, 2021 (*see* Ex. K at Rows 1953-1957).  The start dates proposed by the Sheehan Defendants fare no better.  For example, November 25, 2020 is proposed as a start date for the term "Parzych," yet Defendant Casey Parzych was coordinating the actions alleged in the Amended Complaint well before this date.  *See, e.g.,* Ex. I.  The effort to cut the Trustee's discovery off at the knees via demonstrably inappropriate date limitations is indicative of the Sheehan Defendants' bad faith with respect to the discovery process.

      B.      **"Generic" Search Terms.**  The Sheehan Defendants claim that the discovery sought by the Trustee is a "fishing expedition" and object to terms like "cannabis," "THC," "CBD," "beverage," "liquor," and "sanitizer."  Objection ¶¶ 2-3, 42, 50.  But these terms describe the products at the center of the alleged diversion of Debtor assets.  For example, the Kelli Sheehan browser history demonstrates precisely why a term like "sanitizer" is relevant to the Sheehan Defendants: it would capture communications about the Faber Hand Sanitizer product which generated revenues that ultimately flowed to Sheehan Entity XO Energy Worldwide, LLLP.  Undersigned counsel understands Defendant Sheehan and his entities' primary focus to be energy trading and Defendant Sheehan's foray into the alcohol, marijuana,

10

and hand sanitizer businesses appears to have arisen entirely out of his relationship with the Insider Defendants and the Debtor.[5] While the search terms at issue may be "generic" in some contexts, they are not generic in this case, which involves an energy trading company's effort to pilfer the assets of the Debtor to establish its own alcohol, hand sanitizer, and marijuana businesses.

        C.     **Wynk Seltzer.** The Sheehan Defendants appear to be refusing outright to produce any document pertaining to Wynk seltzer, which is a key aspect of the Amended Complaint, and with respect to which the Sheehan Defendants have been substantially involved. *See, e.g.,* Ex. K (Sheehan Defendants' employee web browser history demonstrating extensive use of the Debtor's computer system to advance the Wynk product). Moreover, the Amended Complaint seeks ownership of Wynk's intellectual property because that property was created by Defendants Parzych and Rittenburg using Debtor resources. The dismissal of claims against one Sheehan Entity does not absolve the others from producing documents pertaining to Wynk. Indeed, Wynk's website indicates that the current owner of Wynk is Canvas 340, an entity which has not been dismissed from this case. *See* Ex. P (Wynk webpage printout).

     **VI.**     **The Sheehan Defendants' Collateral Attacks Are Meritless**

        A.     **The Rule 2004 Argument.** Ironically, the Sheehan Defendants attack the Trustee for seeking discovery in the instant adversary proceeding rather than utilizing pre-complaint Rule 2004 discovery. Objection ¶¶ 2, 32, 45. The argument is irrelevant to the instant Motion, but it bears noting that the Trustee did attempt to utilize Rule 2004 against certain of the Sheehan Defendants, only to be "ghosted" by their attorney with respect to the response thereto. *See* Ex.

---

[5] *See, e.g.,* Ex. O (Shawn Sheehan LinkedIn Page stating his job experience as being entirely at XO Energy, "a proprietary energy trading and risk management firm" until October 2020, when he co-founded Wynk with Defendants Casey Parzych and Rittenburg).

11

Q (May 2023 email exchange between undersigned counsel and counsel for Sheehan Entities, with the latter failing to respond to undersigned counsel's effort to narrow Rule 2004 discovery).

B. **The Trustee's Own Discovery Production.** The Sheehan Defendants complain about the Trustee's response to document requests and allege that her document production "appears to have been a wholesale document dump that evinces no effort to review documents for relevance." Objection ¶¶ 38-39, 51. The argument is disingenuous and factually baseless – the Trustee produced all documents pertaining to her investigation of the claims in the Amended Complaint. Even the eight (out of hundreds of thousands) individual pages of documents which the Sheehan Defendants have cherry picked as "irrelevant," *see* Adv. D.I. 124-3, Heilman Dec. at ¶ 16, have a direct relevance to the Trustee's investigation and the claims in this case.[6]

C. **The Gary Parzych Lease.** The Sheehan Defendants argue that Gary Parzych's refusal to lease to non-Sheehan purchasers was justified by a zoning variance. Objection ¶ 28. This is a merits argument. Whether the variance justified the conduct or was a pretext for insider favoritism is a factual question for trial. Indeed, as noted in the Trustee's Motion, Defendants Casey Parzych, Gary Parzych, and Festa agreed to delete emails concerning the topic of the Gary Parzych lease, indicating that the zoning argument is mere pretext.[7]

---

[6] TRUSTEE20032 depicts a Facebook post from Joan Sitzman, a recruiter for Best Bev, attempting to obtain a nanny willing to travel to the Virgin Islands, where the bulk of the Sheehan Entities are incorporated and where a number of Defendants lived at certain times relevant to the Amended Complaint. TRUSTEE16886-89 are accompanied by metadata indicating that they came from files included in a Debtor "Sales Folder" which was somehow obtained by Defendant Festa after the date on which Debtor data was supposedly "wiped." *See* Ex. R. And TRUSTEE18063, 18039, 18202, and 18208 are accompanied by metadata indicating that they are files associated with a downloaded copy of the Best Bev website.

[7] *See* Adv. D.I. 107-2 (Belli Dec. at ¶ 7 ("On January 30, 2026, counsel for Defendant Gary Parzych produced an Excel spreadsheet containing text messages responsive to the Trustee's document requests, including internal text messages between Defendant Casey Parzych and his father, Defendant Gary Parzych, with Casey Parzych instructing his father on May 18, 2021

**D.** **The Lorubbio Litigation.** The Objection spills an inordinate amount of ink discussing pre-bankruptcy litigation brought by the Debtor's former manager Anthony Lorubbio against certain of the defendants in this litigation, going so far as to attach a purported "expert" report from that litigation authored by Defendant Culbertson (with whom the Sheehan Defendants apparently have a conflict so great as to require the withdrawal of their and Culbertson's prior counsel). *See* Objection at 6, 11, 30-31 and Exhibit 2. This is not the Lorubbio litigation and, to the extent the Sheehan Defendants believe their non-inclusion in the Lorubbio litigation somehow eliminates their discovery obligations in the instant case, they are incorrect.

## **CONCLUSION**

The Sheehan Defendants have produced zero documents in nearly a year. Their characterization of the Trustee's forensic evidence as "gibberish" is refuted by that evidence's own contents, which show a Sheehan Entities employee managing the Debtor's bank accounts, e-commerce platforms, and accounting systems from a Debtor computer, and using Debtor resources to manage the Faber Hand Sanitizer and Wynk products. The Trustee respectfully requests that the Court grant the Motion to Compel and order the Sheehan Defendants to promptly produce all nonprivileged documents responsive to the Trustee's RFPs along with a

---

"Please no emails about a lease being available to MMD it's a critical part of our law suits that you are not willing to rent to MMD . . . Going to delete the one you just sent," and his father responding "Ok understood. Make sure [Defendant] Kelly [Festa] deletes too.").

13

privilege log.

Dated: March 9, 2026

                                        **COREN & RESS, P.C.**

                                        /s/ Andrew J. Belli
                                        STEVEN M. COREN
                                        ANDREW J. BELLI
                                        JANICE D. FELIX
                                        Two Commerce Square, Suite 3900
                                        2001 Market Street
                                        Philadelphia, PA 19103
                                        Tel: (215) 735-8700
                                        Fax: (215) 735-5170
                                        scoren@kcr-law.com
                                        abelli@kcr-law.com
                                        jfelix@kcr-law.com

                                        *Counsel for Plaintiff*
                                        *Bonnie Finkel, Chapter 7 Trustee*