**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| Midnight Madness Distilling, LLC, | : | |
| | : | |
| Debtor. | : | Case No.: 21-11750-PMM |
| | : | |
| | : | |
| Bonnie B. Finkel, in her capacity as | : | |
| Chapter 7 Trustee of Midnight Madness | : | |
| Distilling, LLC | : | |
| Plaintiff | : | Adv. No.: 23-00047-PMM |
| | : | |
| v. | : | |
| | : | |
| Casey Parzych, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF GARY PARZYCH, FINLAND LEASING CO. INC. AND
<u>EUGENE T. PARZYCH, INC. FOR JUDGMENT ON THE PLEADINGS</u>**

Defendants Gary Parzych, Finland Leasing Co., Inc. ("Finland") and Eugene T. Parzych, Inc. ("ETP") respectfully submit this memorandum of law in support of their motion for judgment on the pleadings with respect to Plaintiff's amended complaint (the "Amended Complaint")[1] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure which is incorporated into this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

---

[1]      ECF No. 44

## I.    <u>INTRODUCTION</u>

This case involves claims by the chapter 7 trustee (the "Plaintiff") against a variety of defendants alleging, in general terms, the defendants conspired to chill the bidding for the Debtor's assets during the Debtor's chapter 11 proceeding (the "Main Case"),[2] usurped the Debtor's corporate opportunities and took assets from the Debtor.

However, the factual allegations concerning Gary Parzych, Finland and ETP are far narrower than the overarching conduct the Plaintiff alleges against the other defendants. Gary Parzych, who is the father of the Debtor's principal owner, is principally accused of a single act of bid chilling in connection with the sale of the Debtor's assets.[3] Finland (the Debtor's prior landlord which is owned by Gary Parzych) and ETP (a construction company previously owned by Gary Parzych) are accused of receiving excess payments from the Debtor.

All claims asserted against Finland must be dismissed, consistent with a prior ruling[4] of the Court, because the Finland lease was assumed and assigned to the buyer of the Debtor's assets during the chapter 11 case and the buyer purchased all claims against Finland. The claims against Gary Parzych and ETP must be dismissed for similar reasons and because they are not plausibly alleged.

[2]    Case number 21-11750

[3]    The Plaintiff also alleges the Debtor purchased a $620.40 airline ticket for Gary Parzych.

[4]    ECF No. 64, penultimate paragraph (dismissing claims against AgTech PA LLC and ETOH Worldwide, LLC because these parties held liabilities which were assumed by the buyer of the Debtor's assets and all claims against the holders of assumed liabilities were sold by the Debtor during the chapter 11 case)

II.    **BACKGROUND**[5]

**The Main Bankruptcy Case**

On June 21, 2021 (the "Petition Date"), Midnight Madness Distilling LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 in the Main Case.[6] The Debtor is a Pennsylvania limited liability company[7] and engaged in the production and sale of alcoholic spirits. *Finkel v. Parzych (In re Midnight Madness Distilling, LLC)*, 2024 WL 1538465, at \*2 (E.D. Pa. Apr. 9, 2024). Casey Parzych was the principal owner of the Debtor.[8]

On the Petition Date, the Debtor filed a motion (the "Sale Motion") to approve a sale process for substantially all the Debtor's assets. The Sale Motion sought to designate ETOH Worldwide, LLC (the "Stalking Horse") as the stalking horse bidder.[9]

On July 30, 2021, before the hearing on the sale procedures aspects of the Sale Motion, the Debtor filed a supplemental declaration disclosing: (a) the Debtor

---

[5]    The movants recite certain statements or allegations made by the Debtor or the Plaintiff in this memorandum without admitting the truth of those statements or allegations.

[6]    Amended Complaint, paragraph 7. The Court may take judicial notice of certain background facts which are not in dispute from the pleadings filed in the main bankruptcy case. *Wingspire Equip. Fin. LLC v. E-Crane Int'l USA Inc. (In re Cool Springs LLC)*, 657 B.R. 767, 780 (Bankr. D. Del. 2024).

[7]    Amended Complaint, paragraph 7

[8]    Amended Complaint, paragraph 10

[9]    Main Case, ECF No. 4

is a party to a Commercial Lease Agreement (the "Lease") dated January 1, 2016 with Finland for the property located at 2300 Trumbauersville Road, Quakertown PA 18951 (the "Property"); (b) Gary Parzych, the father of the Debtor's owner Casey Parzych, is the owner of Finland; (c) the Lease expired by its own terms on December 31, 2017; (d) the Lease was in holder-over status and is month-to-month; (e) Finland previously stated that it would likely agree to lease the Property to the Stalking Horse after the closing, and would likely not lease the Property to any other bidder; and (f) despite this statement, Finland has agreed to discuss potential arrangements regarding the Property (or disposition of the assets located there) with other bidders, if any.[10]

On August 12, 2021, the Court entered an order (the "Sale Procedures Order") approving sale and bidding procedures aspects of the Sale Motion.[11] An auction was held on August 25, 2021 and the Debtor selected Millstone Spirits Group, LLC ("Millstone"), not the Stalking Horse, as the successful bidder.[12] The Amended Complaint does not allege that Millstone is an insider of the Debtor or that it has any relationship, at all, with Gary Parzych, Finland or ETP.

During the final hearing on the Sale Motion, Debtor's counsel summarized the marketing and auction process for the Court through a proffer:

> Mr. Burnett: So, pursuant to their engagement, Mr. Comly [the representative of the Court authorized broker,

---

[10]   Main Case, ECF No. 98, paragraphs 17 to 22

[11]   Main Case, ECF No. 110

[12]   Main Case, ECF No. 189, page 9

marketer and sale agent, William F. Comly and Son, Inc.] would testify that their marketing efforts included direct mail solicitation, over 500 colored postcards mailed on July the 15th, to an acquired mailing list comprising of distilleries, alcohol distributors, bar restaurant owners, business brokers, and liquor license attorneys in Philadelphia, Pennsylvania, and surrounding areas, as well as members of various food and beverage associations. Comly also did advertisement placed in regional newspapers, Philadelphia Enquirer [sic], Daily News, Lancaster Farming and internet direct mail postcard and details were placed on the website, along with photographs of the assets being offered for sale.

Mr. Comly would testify that in addition, they placed advertisements of the sale on the business and restaurant trade websites, included websites Biz Buy Sell, BizQuest, Businesses for Sale, Restaurant for Sale, as well as auction websites, Comly.com and AuctionZip, as well as various association websites, social media sites, Craigs List, Facebook, Google, Business LinkedIn, and Twitter. And also email blast professional prepared electronic sale notice was sent to Comly's extensive inhouse mailing list of over 18,920 opt in subscribers, as well as bidders in prevable [sic] comparable – previous comparable auction sales of opt in subscribers under various categories such as business brokers, attorneys, bar and restaurant owners, distilleries, and alcohol distributors.

Mr. Comly would testify that through all of that marketing efforts it generated the following types of interest. They received interested parties that contacted Comly, returned signed NDAs, including PNC [the Debtor's primary secured creditor]. Seventeen different people were granted access to the data room. Four tours and inspections were – were conducted onsite. Comly would testify that he and Comly fielded bidder questions all throughout the process.

Mr. Comly would testify that as a result of the efforts of Comly, and MMD, and MMD's professionals, that two new bids were received prior to the deadline – Millstone Spirits Group, LLC, as well as Bankshares Realty, LLC, which is PNC, which was a credit bid.

Mr. Comly would testify that the auction took place on August 25th, 2021, via zoom, with the three bidders:

Millstone, PNC, and the stalking horse bidder. And that it was conducted by counsel to MMD. Mr. Comly would testify that he was in attendance at all times during the – during the zoom auction. Mr. Comly would testify that, after negotiations at the auction, all bids were normalized and deemed to be qualified bids, and able to be matched fairly, on an apples to apples basis, as competing bids for MMD's assets, in accordance with the Bid Procedures Order.

Mr. Comly would testify that in his view, the auction that took place was spirited and conducted in good faith, by all parties, including the winning bidder, and was conducted in accordance with the Bid Procedures Order approved by this Court. Mr. Comly would testify that the process that yielded the successful winning bid, from Millstone, in the amount of $1.4 million plus other consideration, per the terms of the Asset Purchase Agreement, files with this Court, is the highest and best offer at the auction.

And Mr. Comly would testify that based on his years of experience in the industry, that he believes that Comly's efforts marketing the assets were reasonable and appropriate for a transaction of this size in this industry. Mr. Comly would testify that, at all times, his interactions with the bidders were in good faith, at arm's length, and conducted for the purpose of maximizing the sale of the assets being sold here.

Lastly, Mr. Comly would testify that based on his years of experience in the industry, that he believes that Comly's work marketing these assets helped yield the highest and best offer that could be obtained for these assets under the circumstances.[13]

On September 17, 2021, the Court entered an order (the "Sale Order") authorizing the Debtor to enter into an Asset Purchase Agreement with Millstone and to consummate the sale.[14] The Court found, among other things, a) Millstone's offer was the highest and best offer; b) no further marketing or sales process was in

---

[13]    Main Case, ECF No, 189, pages 40 to 43

[14]    Main Case, ECF No. 178

the best interests of the Debtor's estate or is likely to lead to an offer that provides additional consideration; c) the sale procedures were non-collusive, duly noticed, substantively and procedurally fair to all parties, and were the result of arm's length negotiations.[15] The Court also found: a) the sale price in respect of the Purchased Assets was not controlled by any agreement among potential acquirers; b) neither the Debtor nor the buyer engaged in collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.[16] The Plaintiff, as the chapter 7 trustee, is bound by these findings.[17]

The Asset Purchase Agreement provided for the sale of the Debtor's "right, title, and interest in, to, and under all of the tangible and intangible assets, properties, and rights of every kind and nature and wherever located (other than

---

[15]    Main Case, ECF No. 178, finding "F".

[16]    Main Case, ECF No. 178, finding "J".

[17]    Main Case, ECF No. 178, paragraph 26 ("The terms and provisions of the Asset Purchase Agreement, the other ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding the dismissal of any of the Debtor's case or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtor's case to a case under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Asset Purchase Agreement, the Sale Transaction and this Sale Order shall be binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Case. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in this chapter 11 case or any order confirming any plan of reorganization (or liquidation) or any other order entered in this case shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.")

the Excluded Assets[18]), which relate to, or are used or held for use in connection with, the Business[19] (collectively, the 'Purchased Assets')"[20]

Despite the allegations that Gary Parzych helped chill bidding by refusing to enter into a lease with a buyer which was unaffiliated with his son, the Asset Purchase Agreement provided for the assignment of the Lease to Millstone.[21] The Asset Purchase Agreement expressly provided for the sale of all claims against any party, including Finland, whose liability was assumed by Millstone.[22]

The sale was consummated on September 30, 2021.[23] Following the sale, the chapter 11 case was converted to chapter 7 on October 13, 2021[24] and the Plaintiff was appointed as the chapter 7 trustee of the Debtor's bankruptcy estate.[25]

## The Adversary Proceeding

The Plaintiff commenced this adversary proceeding on June 15, 2023. Certain defendants filed a motion to dismiss the complaint which was granted in part and

---

[18]   None of the claims asserted by the Plaintiff are "Excluded Assets." See, Main Case, ECF No. 178, Asset Purchase Agreement, section 1.02.

[19]   "Business" is defined as the "business of distilling and producing spirits." Main Case, ECF No. 178, Asset Purchase Agreement, first recital.

[20]   Main Case, ECF No. 178, Asset Purchase Agreement, section 1.02

[21]   Main Case, ECF No. 178, Asset Purchase Agreement, section 1.01(e)(ii); Asset Purchase Agreement, schedule 1.01

[22]   Main Case, ECF No. 178. Asset Purchase Agreement, section 1.01(k)

[23]   Main Case, ECF No. 186

[24]   Main Case, ECF No. 191

[25]   Amended Complaint, paragraph 9

denied in part. Following the Court's decision on the motion to dismiss, the Plaintiff filed the currently operative Amended Complaint on August 22, 2024.

The Amended Complaint asserts the following claims against Gary Parzych, Finland, and ETP:

| Count | Claim | Defendant |
|---|---|---|
| Second | Aiding and abetting breach of fiduciary duties | Gary Parzych, Finland, and ETP |
| Fifth | Unjust enrichment | Gary Parzych, Finland, and ETP |
| Ninth | Breach of contract | Finland |
| Eleventh | Turnover property of the estate | Gary Parzych, Finland, and ETP |
| Thirteenth | Preferential transfer | Finland and ETP |
| Fourteenth | Fraudulent transfer | Finland and ETP |

## III.    JUDGMENT ON THE PLEADINGS STANDARD

A party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)[26] after the pleadings are closed but early enough to not delay trial. F.R.C.P. 12(c). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation omitted).

In deciding a motion for judgment on the pleadings, like a motion to dismiss, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint. *S. Cross Overseas Agencies, Inc. v. Wah*

---

[26]    Rule 12(c) of the Federal Rules of Civil Procedure applies in adversary proceedings pursuant to F.R.B.P. 7012(b).

*Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). In the bankruptcy context, a court may also take judicial notice of certain background facts which are not in dispute from the pleadings filed in the main bankruptcy case. *Wingspire Equip. Fin. LLC v. E-Crane Int'l USA Inc. (In re Cool Springs LLC)*, 657 B.R. 767, 780 (Bankr. D. Del. 2024).

To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In determining a motion for judgment on the pleadings, like a motion to dismiss, the Third Circuit Court of Appeals has articulated a two-part analysis. First, the factual and legal elements of a claim should be separated, accepting all well-pleaded facts as true but disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Second, the court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Id.* at 212. The complaint must do more than allege the plaintiff's entitlement to relief; it must show an entitlement with its pleaded facts. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the plaintiff is

entitled to relief. *Id.* The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   <u>ANALYSIS</u>

### A.   **The Plaintiff may not assert claims which were sold to Millstone**

"It is well established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court." *Hill v. Akamai Techs., Inc. (In re MS55, Inc.),* 477 F.3d 1131, 1135 (10th Cir. 2007). The Sale Order in this case reiterated this rule.[27]

The Asset Purchase Agreement provided for the sale of the Debtor's "right, title, and interest in, to, and under all of the tangible and intangible assets, properties, and rights of every kind and nature and wherever located (other than the Excluded Assets[28]), which relate to, or are used or held for use in connection with, the Business[29] (collectively, the "Purchased Assets")."[30] The Sale Order also provided:

> M.   The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Debtor to the

---

[27]   Main Case, ECF No. 178, paragraph 26 (binding a subsequent trustee)

[28]   None of the claims asserted by the Plaintiff are "Excluded Assets." See, Main Case, ECF No. 178, Asset Purchase Agreement, section 1.02.

[29]   "Business" is defined as the "business of distilling and producing spirits." Main Case, ECF No. 178, Asset Purchase Agreement, first recital.

[30]   Main Case, ECF No. 178, Asset Purchase Agreement, section 1.02

Purchased Assets free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever, other than liens specifically assumed by Buyer under the Asset Purchase Agreement, provided, that all liens, claims, encumbrances and interests of which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale, in order of priority…

5.    Pursuant to sections 105(a), 363(f) and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Buyer free and clear of all liens, encumbrances, and other interests of any kind and every kind whatsoever…[31]

**The claims against Finland were sold to Millstone**

All claims against Finland were sold to Millstone and must be dismissed. The definition of "Purchased Assets" in the Asset Purchase Agreement included "any claims or causes of action the [Debtor] or its bankruptcy estate have, had, or may have against…any holder of an Assumed Liability, including, without limitation, any claims or causes of action pursuant to Sections 544, 547, 548, 549, or 550 of the Bankruptcy Code."[32] The Finland Lease was assumed and assigned to Millstone[33]

---

[31]    Main Case ECF No. 178, Sale Order, recital M, and paragraph 5

[32]    Main Case, ECF No. 178, Asset Purchase Agreement, section 1.01(k)

[33]    Main Case, ECF No. 178, Asset Purchase Agreement, sections 1.01(d) and (e)(ii); Asset Purchase Agreement, Schedule 1.01, item 6

and the obligations to Finland under the Lease are an Assumed Liability.[34] As a result, the claims asserted by the Plaintiff against Finland were sold and, consistent with the Court's prior ruling with regard to certain other defendants, the Plaintiff lacks standing to pursue them.[35]

**The aiding and abetting claims were sold to Millstone**

The aiding and abetting claims against Gary Parzych, Finland and ETP are also "Purchased Assets" which were sold to Millstone pursuant to the Asset Purchase Agreement. The definition of "Purchased Assets" includes two elements: (i) the asset must be tangible or intangible; and (ii) the asset must be "related to" the Debtor's "Business" which is defined as "the business of distilling and producing spirits."[36] The claims asserted against Gary Parzych, Finland and ETP satisfy both elements.

First, the aiding and abetting claims are intangible assets under section 1.01 of the Asset Purchase Agreement. See, *Hardy v. United States*, 2020 WL 705164, at *3 (D. Md. Feb. 12, 2020)(a tort claim is an intangible asset); see also, *Instructions to Official Bankruptcy Form B 206A/B* (defining "intangible assets" as "[t]ypes of property that are not physical in nature and cannot be touched, seen, or held").

---

[34]   Main Case, ECF No. 178, Asset Purchase Agreement, section 1.03(a)(Millstone assumed the liabilities related to Assigned Contracts)

[35]   ECF No. 64, penultimate paragraph (dismissing claims against other holders of Assumed Liabilities)

[36]   ECF No. 178, asset Purchase Agreement, section 1.01 and first recital

Second, the aiding and abetting claims are "related to" the Debtor's business rendering them within the scope of the Purchased Assets. The "related to" language in section 1.01 of the Asset Purchase Agreement is a broad phrase and can include items with "some logical or causal connection" to the item described (i.e., the "Business"). *O'Shaughnessy v. Palazzo*, 496 F. Supp. 3d 872, 878 (E.D. Pa. 2020).

The aiding and abetting against Gary Parzych and Finland is directly, logically and causally connected to Debtor's "Business" (as defined in the Asset Purchase Agreement) because Gary Parzych, the principal of Finland, is accused of helping chill the bidding for the Business assets which were ultimately sold pursuant to the Sale Order and the Asset Purchase Agreement.

The Finland Lease is expressly one of the "Purchased Assets"[37] under the Asset Purchase Agreement and is an "Assigned Contract" under section 1.01(d) of the Asset Purchase Agreement and Schedule 1.01 of the Asset Purchase Agreement.[38] Because the Lease is a Purchased Asset it logically, and definitionally, "relate[s] to, or [is] used or held for use in connection with, the Business." As a result, the Plaintiff's aiding and abetting claim relating Gary Parzych's alleged statements about the Lease and the leased Property relates to the Business which means the claim was sold to Millstone.

---

[37]    "Purchased Assets" is defined as "tangible and intangible assets, properties and rights of every kind and nature and whether located (other than the Excluded Assets), which relate to, or are used or held for use in connection with, the Business." Asset Purchase Agreement, section 1.01.

[38]    See, Asset Purchase Agreement, section 1.01(d) ("Assigned Contracts" are "Purchased Assets"); Asset Purchase Agreement, Schedule 1.01, item 6 (Finland warehouse Lease specifically listed as one of the Assigned Contracts)

The aiding and abetting claim against ETP is also directly related to the Lease and the Debtor's Business. The claim is based on an allegation that "the Debtor made various payments for utilities and services ostensibly provided to the leased premises not to Finland Leasing, but instead to Defendant ETP."[39] In other words, the Plaintiff is attempting to recover what Plaintiff believes are overpayments made under the Lease but the Plaintiff no longer holds the Lease. It was assigned to Millstone[40] and only Millstone can enforce it. Accordingly, the claim against ETP relates to the Lease and the Debtor's Business and has been sold by the Debtor to Millstone.

Because the aiding and abetting claims were sold by the Debtor during the chapter 11 case, the Plaintiff, as the chapter 7 trustee, is bound by the sale and cannot pursue the claims in this case. See, *Jevic Holding Corp. v. CIT Grp. (In re Jevic Holding Corp.)*, No. Chapter 11, 2021 BL 168313 (Bankr. D. Del. May 05, 2021)(chapter 7 trustee cannot pursue claims waived by the debtor in a DIP order during the chapter 11 case); see also, *Hill v. Akamai Techs., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1135 (10th Cir. 2007)("where a debtor-in-possession serves as the trustee in a Chapter 11 bankruptcy, a Chapter 7 trustee may not assert any rights that were previously waived by the debtor-in-possession prior to conversion").

---

[39]    Amended Complaint, paragraph 186

[40]    See, Asset Purchase Agreement, section 1.01(d) ("Assigned Contracts" are "Purchased Assets"); Asset Purchase Agreement, Schedule 1.01, item 6 (Finland warehouse lease specifically listed as one of the Assigned Contracts)

Accordingly, the Plaintiff does not have the right to pursue the aiding and abetting claims against Gary Parzych, Finland and ETP and the claims must be dismissed.[41]

### B.    The unjust enrichment claim against Gary Parzych must be dismissed

The unjust enrichment claim against Gary Parzych must be dismissed. The elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Feldman v. Lynch (In re Fitzpatrick Container Co.)*, 670 B.R. 425, 442 (Bankr. E.D. Pa. 2025) citing *Mitchell v. Moore*, 1999 PA Super 77, 729 A.2d 1200, 1203-04 (Pa. Super. 1999).

The only allegation in the Amended Complaint concerning benefits conferred by the Debtor upon Gary Parzych is that the Debtor paid for a $620.40 airline ticket for him.[42] There are no factual allegations concerning the reason for this purchase, whether it benefited the Debtor or not, or why the retention of the benefit by Gary Parzych would be inequitable. There is not even an allegation that Gary Parzych

---

[41]    The Plaintiff, when faced with a similar motion to dismiss claims sold to Millstone, obtained from Millstone, and filed with the Court, a conditional assignment of claims from Millstone back to the Plaintiff. The Court properly rejected this as a method of fixing the Plaintiff's standing problem correctly holding that the conditional assignment "does not confer standing retroactively that did not exist at the time the Adversary Proceeding was commenced and recognizing that standing is determined, and must exist, at the time the action is filed. ECF No. 64 citing *Reisinger v. Seneca Specialty Ins. Co.*, 2011 U.S. Dist. LEXIS 62914, at *14 (M.D. Pa. June 14, 2011) for the proposition that standing is determined and must exist at the time an action is filed, and post-filing events supplying standing that did not exist upon filing may be disregarded.

[42]    Amended Complaint, paragraph 178

used the airline ticket or received any benefit from it. Accordingly, the claim is not plausibly pled and must be dismissed.

Gary Parzych has already tendered this sum to the Plaintiff with pre-judgment interest. If the Plaintiff does not accept the tender, Gary Parzych will pay the amount, plus prejudgment interest, to the Plaintiff if ordered to do so by the Court. As a result, there is no live case or controversy with respect to this claim, and it must be dismissed.

**C.    The claim seeking turnover of estate property must be dismissed**

The elements of a claim seeking turnover of property of the estate pursuant to 11 U.S.C. §542 are: (1) property is available for the trustee's use as property of the estate; (2) the property is in the possession, custody, or control of another entity; and (3) the property has more than an inconsequential value to the debtor's estate. *Seitz v. Miller (In re Miller)*, 741 F. App'x 859, 862 (3d Cir. 2018).

The Amended Complaint does not identify any property of the bankruptcy estate which is in the possession, custody, or control of Gary Parzych, Finland, or ETP. As a result, the turnover claim against the movants must be dismissed.

**D.    The aiding and abetting claims must be dismissed**

The elements of a claim for aiding and abetting a breach of fiduciary duty claim are (i) a breach of fiduciary duty owed to another; (ii) knowledge of the breach by an aider and abettor; and (iii) substantial assistance or encouragement by the aider and abettor in effecting that breach. *Newtek Small Bus. Fin., LLC v. Tex. First Cap., Inc.*, 2025 Us Dist Lexis 22548, 2025 WL 439434, at *8 (E.D. Pa. Feb. 6, 2025).

In "order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002); *Synthes, Inc. v. Emerge Med. Inc.*, 25 F. Supp. 3d 617, 675 (E.D. Pa. 2014).

In addition, a complaint asserting a claim for aiding and abetting breach of fiduciary duty claim must allege causation between the conduct of the alleged aiding party and the plaintiff's damages. *Rosenbaum & Assocs. v. Scheff*, 287 A.3d 897, at *8-9 (Pa. Super. Ct. 2022)(plaintiff's complaint "fails to connect any conduct by [the aiding party] to [plaintiff's] damages" and "[c]ausation is simply lacking between [the aiding party's] conduct and any harm" to plaintiff); see also, *NLMK Pa., LLC v. U.S. Steel Corp.*, 2021 Us Dist Lexis 156496, 2021 WL 3682147, at *11 (W.D. Pa. Aug. 19, 2021)(causation is "an element implicitly and inherently present in all torts") citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

Aiding and abetting liability under Pennsylvania law must also "be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others." *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at *23 (Bankr. W.D. Pa. May 22, 2020). A claim for aiding and abetting liability can be dismissed when it contains no allegation about how the scheme was devised and carried out. *Id.*

**The aiding and abetting allegations**

The aiding and abetting claim is principally based on allegations that Gary Parzych, Finland's principal, helped chill the bidding for the Debtor's assets, to favor the Stalking Horse affiliated with Casey Parzych, by telling other bidders that he and Finland would not lease to any buyer which was unaffiliated with his son. The entirety of these allegations are:

> 132.   In the run up to the Section 363 sale, Defendant Gary Parzych advised potential buyers that he would not allow anyone other than the Sheehan Entities to lease the 2300 Trumbauersville Road property, nor would he permit a transition period for a buyer to find a new location for the operations in that building. Gary Parzych further stated that he was only willing to allow the Sheehan Entities to occupy the building because his son, Defendant Casey Parzych, was part of their organization.

> 143.   … Counsel for New Liberty[, a division of Millstone,][43] reached out to advise that she spoke with Casey's father (principal of the landlord for 2300 Trumbauersville Road) and was told in no uncertain terms that he will not accommodate anyone other than [the Stocking Horse Bidder] with respect to either a new lease or even transition time for a new buyer to find a new location for the operations in that building. He told her that he is only willing to allow [the Stalking Horse to] occupy the building because his son is going to be involved with them going forward. All he will offer a new buyer is 30 days, which New Liberty's counsel tells me is not enough time to transition; they need at least 90 days. At the same time, he is offering ETOH (as the stalking horse) much more than that – because he knows that Casey will be involved with that enterprise.

---

[43]   This edit was included in the Amended Complaint as the allegation is a quote from the counsel for the primary secured creditor.

> 147. The mere fact that the Stalking Horse bidder was an insider of the Debtor with intimate and preexisting knowledge of the assets to be sold, and that Finland Leasing (the Debtor's landlord for 2300 Trumbauersville Road and Casey Parzych's father) made clear he would only lease to [Sheehan Entity] ETOH, certainly dissuaded true third party purchasers…

In addition, the Amended Complaint makes generalized, and non-factual, claims of conduct purporting to constitute aiding and abetting as follows:

> 213. Each of the Defendants substantially assisted and/or encouraged the Insider Defendants to breach their fiduciary duties owed to the Debtor.

> 214. To the extent that any Insider Defendant might be found not to have had a fiduciary duty to the Debtor at the time of the misconduct complained of herein, each such Insider Defendant is nevertheless liable for having aided and abetted the breach of fiduciary duties by one or more of the other Insider Defendants possessing such duties at the relevant times.

> 215. The entity Defendants' substantial assistance and/or encouragement is demonstrated by, inter alia, their role as the entities through which the individual Defendants siphoned money away from the Debtor, and the improper benefits they received because of that misconduct.

These non-factual and conclusory allegations are insufficient to establish plausibility under *Twombly* and *Iqbal.*

### There are no plausible causation allegations with respect to Gary Parzch or Finland

The plausibility standard of *Iqbal* and *Twombly* applies to the causation element of causes of action. See, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.,*

347 F. App'x 617, 620 (2d Cir. 2009); *Orcutt v. Pelletier*, No. 22-55494, 2023 Us App Lexis 13375, 2023 WL 3735584, at *2 (9th Cir. May 31, 2023).

The Amended Complaint does not plead plausible causation allegations regarding Gary Parzych or Finland. See, *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289, 1317 (N.D. Ga. 2014)(causation for a bid chilling claim requires that "someone was discouraged from bidding on the property because of the…wrongful conduct"). There are no non-conclusory factual allegations that Gary Parzych, Finland's representative, discouraged or dissuaded any specific bidder and the Plaintiff has not identified any bidder who would have paid more for the Debtor's assets if not for Gary Parzych's alleged conduct.

Despite the Plaintiff's conclusory allegations of a conspiracy "to attempt to"[44] favor the Stalking Horse, the winning bidder, Millstone, was a third-party[45] which was not dissuaded by the disclosures concerning the Lease. To the contrary, the Lease was included in the Asset Purchase Agreement as an "Assigned Contract"[46] and the assumption and assignment of the Lease was approved by the Court.[47]

Millstone (the party which allegedly spoke to Gary Parzych) represented to the Court in the Main Bankruptcy Case that: a) Millstone did due diligence

---

[44]    Amended Complaint, paragraph 204(l). There is no cause of action in Pennsylvania for attempting to aid and abet a breach of fiduciary duty.

[45]    The Sale Order includes a finding that the buyer, Millstone, is not an "insider" of the Debtor and that the sale was proposed, negotiated, and entered into without collusion, in good faith and from arm's length bargaining positions. (Main Case, ECF No.178, Finding I).

[46]    ECF No. 178, Asset Purchase Agreement at ¶ 1 and Schedule 1.01

[47]    ECF No. 178, paragraphs 5, 11

regarding the Lease before the sale; b) the Lease was included in the Debtor's data room for the sale; c) the Lease was a month-to-month tenancy since December 31, 2017; and d) Millstone was informed during the due diligence period that no signed version of the Lease existed.[48]

There is no allegation in the Amended Complaint that Millstone paid less than it would have paid if not for the alleged conversation between Millstone's counsel and Gary Parzych. Even when Millstone filed a motion to enforce the terms of the Lease on December 23, 2021,[49] Millstone acknowledged it intended to vacate the Property by December 31, 2021,[50] just eleven (11) days later. Millstone's post-sale dispute with Finland was not about Millstone's ability to continue to occupy the leased premises following December 31, 2021, it was about how much rent it had to pay.[51]

The Plaintiff cannot prove, much less legitimately allege, that Gary Parzych or Finland caused a reduction in the purchase price because problems with the Finland Lease were public knowledge even if Gary Parzych and Finland took no action. Any reasonable bidder hoping to use the leased Property after the sale would have investigated whether the operation of the Business at the Property was a permitted use under the applicable zoning rules. The public record reveals that the

---

[48]    Main Case, ECF No. 248

[49]    Main Case, ECF No. 248

[50]    Main Case, ECF No. 248

[51]    Main Case, ECF No. 248

Debtor was using the Property as a distillery pursuant to a special exception issued by the township zoning hearing board on December 12, 2013, long before the Petition Date, which expressly contained the following condition terminating the special exception if Casey Parzych was no longer involved in the distillery:

> That the craft distillery is managed and operated by Casey Parzych, who established the craft distillery in connection with a college program[,] and shall be discontinued when he is no longer involved in the craft distillery business at this location.[52]

Other problems with the Lease were disclosed by the Debtor (not Gary Parzych or Finland) during the bankruptcy case in two ways. First, according to the Plaintiff (and corroborated by Millstone's post-closing filing),[53] the Debtor posted a disclosure in the bidders' data room stating the Lease was expired and that a buyer would need to remove equipment from the Property following closing and obtain a new distilled spirits plant license:

> On July 22, 2021, the Debtor caused a document to be posted to the Section 363 sale data room which stated that the 2300 Trumbauersville Road "lease is expired. All batching and bottling equipment that is currently stored in this building needs to be immediately removed from the premises upon completion of the sale. New distilled spirits plant license [sic] will then have to be obtained as

---

[52]    A true and correct copy of the zoning order and zoning board decision is attached as **Exhibit A**. The Court may take judicial notice of the order pursuant to Rule 201 of the Federal Rules of Evidence. F.R.E. 201; *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)(public records); *Franco v. Siry*, 2024 Us Dist Lexis 93494, 2024 WL 2701646, at *6 (E.D.N.Y. May 24, 2024)(judicial notice of decisions of zoning boards)

[53]    Main Case, ECF No. 248

all current licenses are tied to 2300 Trumbauersville Road."[54]

Second, during the chapter 11 sale process, the Debtor (not Gary Parzych or Finland) filed a supplemental declaration which disclosed the Lease expired by its own terms on December 31, 2017 and that the Lease was currently in holder-over status on a month-to-month basis.[55] As noted by counsel for the main secured creditor: "It's fair to alert bidders that the lease is expired and cannot be assumed or assigned under Section 365 (if that is the case)."[56] The supplemental declaration also stated:

> Finland [Leasing] has previously stated that it would likely agree to lease the Property to the [Stalking Horse bidder] after the closing, and would also likely not lease the Property to any other bidder. Despite this statement, Finland has agreed to discuss potential arrangements regarding the Property (or disposition of the assets located there) with other bidders, if any.[57]

There is nothing in the applicable law, including section 365 of the Bankruptcy Code, which would compel Gary Parzych or Finland to extend the term of a lease which was, by all accounts, on a month-to-month basis. This is particularly true given that the zoning special exception required the continued involvement of Casey Parzych for the use to be permitted.

---

[54]   Amended Complaint, paragraph 133

[55]   Main case, ECF No. 98, paragraphs 19-20

[56]   Amended Complaint, paragraph 137

[57]   Main case, ECF No. 98, paragraph 21

Gary Parzych and Finland had the right to refuse to lease the Property to a third party. Their refusal to extend the term of the Lease is not "blameworthy" conduct required for liability in an aiding and abetting claim. See, *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at *23 (Bankr. W.D. Pa. May 22, 2020)("In keeping with principles of Pennsylvania tort law, aiding and abetting liability "must be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others.")(internal quotations and footnotes omitted).

Even if Gary Parzych and Finland told potential bidders that they would not lease to them, there is no allegation that any specific bidders were dissuaded or reduced their bid price. There was plenty in the public record, and the data room, for the bidders to realize that the Lease was, at best, a short-term endeavor with no way to compel Gary Parzych or Finland to renew or extend the Lease.

Because the Amended Complaint does not identify any bidders who were dissuaded by, or reduced their bids due to actions of, Gary Parzych and Finland, the Amended Complaint does not plausibly allege that Gary Parzych or Finland actually caused any damage to the Debtor.

### There are no plausible aiding and abetting allegations with respect to ETP

ETP was named as a defendant in this case for one reason: it allegedly received payments from the Debtor which the Plaintiff claims were unjustified.[58] There are no factual allegations that ETP did anything other than to receive funds

---

[58]    Amended Complaint, paragraphs 186, 87 and 188

from the Debtor. The passive receipt of funds by a party, without any allegations of blameworthy conduct, is insufficient to support an aiding and abetting claim. *Advanced Fluid Sys., Inc. v. Huber*, 2017 WL 2445303, at \*21 (M.D. Pa. June 6, 2017); *Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, No. 19-5369, 2020 BL 562275 (E.D. Pa. Apr. 27, 2020)(allegations of passive acquiescence without substantial assistance or encouragement are insufficient); *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at \*23 (Bankr. W.D. Pa. May 22, 2020)("In keeping with principles of Pennsylvania tort law, aiding and abetting liability "must be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others. Courts have denied aiding and abetting claims when the defendant is passive and has not actively engaged or encouraged a tortfeasor to breach a duty to a third party.")(internal quotations and footnotes omitted).

There are no non-conclusory factual allegations concerning any substantial assistance or encouragement provided by ETP. There are no factual allegations that ETP communicated with any party or did anything whatsoever.

Accordingly, the Amended Complaint does not state a plausible aiding and abetting claim against ETP.

### There are no factual allegations that Gary Parzych, Finland, or ETP had knowledge of the alleged breach of fiduciary duty

The Amended Complaint does not plausibly allege Gary Parzych, Finland or ETP had knowledge of any breach of fiduciary duty. The sole allegation concerning his knowledge is "[e]ach of the Defendants had knowledge that the Insider

Defendants' conduct was a breach of their fiduciary duties owed to the Debtor."[59] This allegation is a conclusory and "threadbare" recital of the knowledge element of the cause of action which does not suffice under the *Iqbal* and *Twombly* standard. *Iqbal*, 556 U.S. at 678. As a result, the allegation cannot be accepted as true when evaluating the sufficiency of the Plaintiff's claim. *Brown v. Harry*, No. 1:24-CV-00317-RAL, 2026 BL 217156, at *7 (W.D. Pa. June 10, 2026) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555); *King v. Walker*, 2026 Us Dist Lexis 104649, at *13 (W.D. Pa. May 12, 2026)(conclusory allegations of knowledge are insufficient to state a plausible claim).

Other than this single conclusory and factually unsupported allegation that must be disregarded, there is no factual allegation concerning the knowledge of the movants which would support a finding of plausibility. There are no allegations that Gary Parzych was an officer, director, member, or employee of the Debtor. There are no allegations that Finland or ETP had overlapping employees, officers, or agents with the Debtor or that they received any inside information. There are no allegations that movants participated in the operation or management of Debtor's business in any way.

There are no allegations that movants communicated with the Debtor or any defendant concerning any alleged scheme by the defendants. There are no allegations that the alleged statements that Finland and Gary Parzych would not lease to anyone other than a buyer associated with Casey Parzych was prompted in

---

[59]   Amended Complaint, paragraph 212

any way by the Debtor or any of the defendants. That position is consistent with Gary Parzych and Finland protecting their own interests considering the special zoning exception which required Casey Parzych to remain involved in the operations. It is also consistent with a father being more willing to transact with a family member than a third party and does not raise an inference that it was done to dissuade other bidders.

Accordingly, the Amended Complaint does not plausibly allege the knowledge element of the cause of action.

### There are no plausible allegations that Gary Parzych or Finland encouraged or provided substantial assistance for the alleged  breach of fiduciary duties

The Amended Complaint does not include plausible allegations that Gary Parzych or Finland encouraged or provided substantial assistance to those breaching a fiduciary duty. There are zero factual allegations that either defendant encouraged the alleged breaches. There are no allegations of any communications, let alone encouraging communications, between the other defendants and Gary Parzych or Finland. As a result, the claim, if it exists, must be based on the "substantial assistance" prong.

To determine whether "substantial assistance" was provided, courts have considered five factors from section 876 of the Restatement (Second) of Torts: (1) the nature of the act encouraged; (2) the amount of assistance given by the defendant; (3) the defendant's presence or absence at the time of the tort; (4) the defendant's relation to the tortfeasor; and (5) the defendant's state of mind. *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007) citing *Hurley v. Atlantic City Police Dep't*,

174 F.3d 95, 127 n. 27 (3d Cir. 1999). A sixth factor — the duration of the assistance provided — is also considered. *Id.* citing *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983).

There are no allegations that Gary Parzych was present when the alleged torts occurred. There are also no allegations concerning Gary Parzych's state of mind.

Only one brief act is identified in the Amended Complaint. It alleges Gary Parzych had a single conversation with Millstone's counsel and stated that Finland would not lease the property to a buyer unaffiliated with Casey Parzych.[60] This, if true, is inconsequential given the disclosures made by the Debtor in filings with the Court and in the data room. The statement only repeated what was already known by Millstone and the other bidders due to the disclosures made by the Debtor and Gary Parzch and Finland were totally within their rights to choose to whom they would lease the Property. Neither defendant was obligated to lease to any third party under applicable law and could not lease the Property to a third party for use as a distillery due to the special zoning exception which was conditioned on the continued involvement of Casey Parzych. Gary Parzych and Finland had the right to refuse a tenant and a use which would not comply with the applicable zoning ordinance.

Gary Parzych and Finland were permitted to tell anyone who inquires the truth – that Finland was not going to lease the Property to a third-party buyer.

---

[60]    Amended Complaint, paragraph 143

There is nothing wrong with their position and the alleged statement, without any other factual allegations, does not plausibly suggest that Gary Parzych or Finland engaged in any "blameworthy conduct" which would expose them to liability for aiding and abetting a breach of duty by others. See, *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at \*23 (Bankr. W.D. Pa. May 22, 2020)(Pennsylvania law requires blameworthy conduct).

**There are no plausible allegations concerning
how the alleged scheme was carried out**

A claim for aiding and abetting liability can be dismissed when it contains no allegation about how the scheme was devised and carried out. *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at \*23 (Bankr. W.D. Pa. May 22, 2020).

There are no allegations in the Amended Complaint about how the alleged scheme between the movants and the other defendants was carried out. There are no allegations of any planning or communications between the parties. There are no allegations that anybody told Gary Parzych or Finland how to respond to the inquiry from Millstone's counsel. Gary Parzych, if the allegation is true, was merely repeating what was in the public record and the data room and protecting his own rights and the rights of Finland to choose to whom, if anybody, they would lease the Property.

Accordingly, the claims against Gary Parzych, Finland and ETP for aiding and abetting the alleged breaches of fiduciary duties must be dismissed.

**E.    The breach of contract and preference claims against Finland must be dismissed because the Lease was assumed and assigned to Millstone**

The ninth count of the Amended Complaint asserts a breach of contract claim against Finland and the thirteenth count asserts a preference claim against Finland. Both counts are based on the Lease which was assumed and assigned by the Debtor to Millstone.[61] Consequently, the Plaintiff, as the Debtor's chapter 7 trustee, cannot pursue the breach of contract claim because Millstone is now the proper party to the Lease. The Plaintiff also may not pursue a preference claim for the assumed and assigned Lease. *Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Air Lines, Inc.),* 344 F.3d 311, 322-23 (3d Cir. 2003)("the assumption of a contract under 11 U.S.C. § 365 bars a preference claim by a trustee").

Accordingly, these claims against Finland must be dismissed.

**F.    The preference claim against ETP must be dismissed**

For similar reasons as discussed in the previous section, the preference claim (thirteenth count) against ETP must be dismissed. The preference claim against ETP is based on the Lease[62] which was assumed by the Debtor and assigned to Millstone.[63] Accordingly, under *Kimmelman*, the Plaintiff lacks standing to pursue the preference claim against ETP. *Kimmelman v. Port Auth. of N.Y. & N.J. (In re*

---

[61]    Main Case, ECF No. 178, Asset Purchase Agreement, sections 1.01(d) and (e)(ii); Asset Purchase Agreement, Schedule 1.01, item 6

[62]    See, Amended Complaint, paragraphs 185, 186, 187, 188, 270  to 279

[63]    Main Case, ECF No. 178, Asset Purchase Agreement, sections 1.01(d) and (e)(ii); Asset Purchase Agreement, Schedule 1.01, item 6

*Kiwi Air Lines, Inc.),* 344 F.3d 311, 322-23 (3d Cir. 2003)("the assumption of a contract under 11 U.S.C. § 365 bars a preference claim by a trustee").

In addition, the Amended Complaint does not allege any of the payments to ETP were on account of antecedent debts. To the contrary, the Plaintiff alleges that the payments to ETP were made without valid consideration and that the Plaintiff is only asserting the preference claim "to the extent that the Court finds that any of the ETP Payments…were valid antecedent debts."[64] The Plaintiff has not alleged any factual basis for any finding that the payments relate to antecedent debts and, accordingly, has not satisfied the *Twombly* and *Iqbal* standard. As a result, the preference claim must be dismissed. *Miller v. Easy Star Records (In re DA Liquidating Corp.),* 622 B.R. 172, 177 (Bankr. D. Del. 2020)(dismissing preference claim for failure to identify the required element of an antecedent debt).

## V.   CONCLUSION

For the foregoing reasons, Gary Parzych, Finland, and ETP respectfully request that judgment on the pleadings be granted in their favor dismissing Plaintiff's Amended Complaint against them.

Dated: July 8, 2026         Respectfully submitted,

**BUCHANAN, INGERSOLL & ROONEY, P.C.**

/s/ Mark Pfeiffer
Mark Pfeiffer, Esq.
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
Email: mark.pfeiffer@bipc.com

---

[64]    Amended Complaint, paragraph 276

*Attorneys for Gary Parzych, Finland Leasing Co., Inc., and Eugene T. Parzych, Inc.*

# EXHIBIT A

## BEFORE THE ZONING HEARING BOARD
## OF MILFORD TOWNSHIP

IN RE:  APPLICATION OF                          : TAX PARCEL #23-021-017
         FINLAND LEASING CO., INC.                :
         GARY S. PARZYCH, PRESIDENT         :
         2300 Trumbauersville Road              : Date of Mailing _12-12-2013_

## ORDER

AND NOW, as of the date of mailing noted above, after a public hearing held upon the Application of Finland Leasing Co., Inc. for a special exception under Section 804.b. to allow for the continuation of a temporary nonconforming craft distillery use on the property, it is hereby ORDERED and DECREED that a special exception is granted to allow the continuation of the craft distillery with the following conditions:

1.      That the craft distillery use shall be limited to the portion of the building outlined in yellow on the Floor Plan identified at the hearing as Exhibit A-3-2;

2.      That the craft distillery use operates in accordance with the testimony and exhibits presented at the hearing on November 12, 2013 and at the 2012 hearing on the prior application for the craft distillery as a temporary use;

3.      That the craft distillery is managed and operated by Casey Parzych, who established the craft distillery in connection with a college program and shall be discontinued when he is no longer involved in the craft distillery business at this location; and

345852v1

4.  That all required permits are received and complied with.

ZONING HEARING BOARD OF MILFORD
TOWNSHIP

BY: _____
Cameron Waite, Chairman

BY: _____
Gregory Hobson, Vice-Chairman

BY: _____
Dr. James P. Walsh, Alternate Member

Catherine M. Harper, Solicitor
Ann Thornburg Weiss, Esq.
Milford Township Zoning Hearing Board
Timoney Knox, LLP
400 Maryland Dr., P.O. Box 7544
Ft. Washington, PA 19034-7544
(215) 646-6000
email: charper@timoneyknox.com
        aweiss@timoneyknox.com

345852v1                                    2

BEFORE THE ZONING HEARING BOARD
OF MILFORD TOWNSHIP

| IN RE: APPLICATION OF | : TAX PARCEL #23-021-017 |
|---|---|
| FINLAND LEASING CO., INC. | : |
| GARY S. PARZYCH, PRESIDENT | : |
| 2300 Trumbauersville Road | : Date of Mailing *12-12-2013* |

## DECISION

### I.    BRIEF HISTORY OF THE CASE

Pursuant to an Application received by Milford Township on or about September 26, 2013, a public hearing was held on November 12, 2013 on the Application of Finland Leasing Co., Inc. and Gary S. Parzych, for a special exception under Section 804.b. of the Milford Township portion of the Quakertown Area Zoning Ordinance. The Application was filed to allow the continued craft distillery use that had been previously approved by the Board as a temporary use in connection with an entrepreneurship program at Carnegie Mellon University in which Mr. Parzych's son has been participating.

One neighbor appeared at the hearing, but indicated he was not in opposition to the Application.

The Zoning Hearing Board consisted of Chairman Cameron Waite, Vice Chairman Gregory Hobson, and Member Dr. James P. Walsh. The Applicant, Gary Parzych, and his wife and the Zoning Officer Jeff Vey were sworn to give testimony at the beginning of the hearing.

345852v1

During the hearing, the following exhibits were marked:

| Exhibit | Description |
|---------|-------------|
| A-1 | A copy of the Application |
| A-2 | Deed to the Property dated August 1, 1986 between Lester V. Clymer and Finland Leasing Co., Inc., a Pennsylvania Corporation |
| A-3-1 | Plan for the property titled Land Development Plan dated 09-26-03, Sheet 1 of 1 prepared for Finland Leasing Company, Inc by Schlosser & Claus, with area designated as Existing Office and Garage highlighted in yellow |
| A-3-2 | Plan titled Floor Plan identified as A.1, Sheet 4 of 6 with the area of the craft distillery highlighted in yellow |
| A-3-3 | Plan titled East Elevation identified as A.2, Sheet 5 of 6 |
| A-4 | Previous Order and Decision of the Milford Township Zoning Hearing Board dated August 14, 2012 (permitting the craft brewery use as a temporary special exception) |
| A-5 | 2013 Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board Limited Distillery License No,: AL4 issued January 10, 2013 with an expiration date of December 31, 2013, issued to Midnight Madness Distilling LLC |
| ZHB-1 | List of adjoining property owners with colored map |
| ZHB-2 | Hearing Notice to the *Town & Country* Newspaper |
| ZHB-3 | Google Earth Map of the Property |

After the hearing, the Zoning Hearing Board deliberated and unanimously made the decision outlined in the attached Order based upon the testimony and exhibits at the hearing as well as the Findings of Fact and Conclusions of Law stated herein.

345852v1                                                                   4

## II.    FINDINGS OF FACT

1.    The craft distillery use located on the subject property at 2300 Trumbauersville Road in Milford Township, Bucks County, Pennsylvania was approved as a temporary use by special exception granted by the Zoning Hearing Board in September of 2012 pursuant to Section 404.H8 of the Milford Township portion of the Quakertown Area Zoning Ordinance.

2.    The property in its entirety consists of various parcels which total 27 acres.

3.    The property is located in the RD Zoning District and there are presently additional nonconforming business uses on the property in addition to the craft distillery.

4.    After the special exception was granted, the craft distillery use was established and is operated by Casey Parzych, the son of Applicant Gary S. Parzych, President of Finland Leasing Co., Inc. (hereinafter "Applicant"), the owner of the subject property.

5.    Casey Parzych is a student at Carnegie Mellon University and participates in the University's entrepreneurship program.

6.    The uncontroverted testimony of Gary Parzych was that the craft distillery use has been established and is operated by Casey in accordance with the testimony presented at the August 14, 2012 hearing has been in compliance with all of the conditions imposed by the Board in its September 13, 2012 Order and Decision.

7.    The September 13, 2012 Order and Decision was admitted as an exhibit in this proceeding and is incorporated herein by reference.

8.    Having established the craft distillery in accordance with his original plans, Casey Parzych now intends to return to college to complete his studies, while continuing to operate the business on a part-time basis, in accordance with the program requirements.

345852v1                                                    5

9. The craft distillery produces a specialized vodka product that has achieved a level of success in the industry and has prospects for viability in the marketplace if Casey is able to find interested investors and obtain the necessary financing for such a venture..

10. In order to acquire investors and obtain financing, it will be necessary to continue the craft distillery use as it presently exists.

11. In order to maintain the existing regulatory permits and approvals, it will be necessary to continue the craft distillery use as it presently exists.

12. The craft distillery is located within an existing office and garage building located in the subject property.

13. The craft distillery operations are limited to a relatively small portion of the building. The area occupied by the craft distillery totals 420 square feet.

14. Neither the Applicant nor his son has any plans to expand the craft distillery operations at this location.

15. There will be no signage identifying the craft distillery business on the property.

16. There are no on-site sales, tasting or tours of the craft distillery. All sales are to the Pennsylvania Liquor Control Board.

17. There will be no additional traffic to or from the location as a result of the continued operation of the craft distillery.

18. There will be no change in the hours of operation of the craft distillery. The hours will be from 7 a.m. to 6 p.m. on Mondays through Fridays and from 7 a.m. to 2 p.m. on Saturdays.

19. There will be no outside noise or odors as a result of the craft distillery.

20. There have been no complaints about the existing craft distillery.

345852v1                    6

21.   The existing craft distillery has not received any notices of code or other violations.

22.   The craft distillery will remain connected to public sewer and has an on-site water supply.

23.   The craft distillery operations will continue to be managed and handled by the Applicant's son, with assistance from family members if needed.

III.   **CONCLUSIONS OF LAW**

1.   The Zoning Hearing Board of Milford Township has jurisdiction to hear a request for a special exception under Section 1107 of the Milford Township portion of the Quakertown Area Zoning Ordinance and under Section 912.1 of the Pennsylvania Municipalities Planning Code.

2.   The property in question is located in the RD Zoning District which does not permit industrial or commercial uses.

3.   The property in question is already host to a nonconforming business uses that were was permitted in previous decisions of the Milford Township Zoning Hearing Board.

4.   Section 804 of the Milford Township portion of the Quakertown Area Zoning Ordinance permits the extension of nonconforming uses and structures by special exception and Section 808 of the Zoning Ordinance permits changes in nonconforming uses to another nonconforming use by special exception.

5.   The Zoning Hearing Board unanimously found that the use of the craft distillery, if operated in accordance with the testimony at the hearing was consistent with the requirements of the above-referenced provisions of the Zoning Ordinance.

345852v1                                                7

6.  The Zoning Hearing Board did not receive any recommendation from the Milford Planning Commission in writing.

7.  After reviewing the testimony, the Zoning Hearing Board concluded unanimously that the permanent craft distillery use as described in the testimony and exhibits from the 2012 and 2013 hearings should be granted a special exception with conditions including limiting the use to the portion of the building outlined in yellow on the Floor Plan identified at the hearing as Exhibit A-3-2 and structured its Order to provide for the craft distillery to be managed and operated by Casey Parzych and to be discontinued at such time as he is no longer involved in the draft distillery business at the subject property.

Accordingly, the Zoning Hearing Board unanimously agreed to enter the attached Order pursuant to the testimony and exhibits at the hearing and the Findings of Fact and Conclusions of Law stated herein.

ZONING HEARING BOARD OF
MILFORD TOWNSHIP

BY: _____
Cameron Waite, Chairman

BY: _____
Gregory Hobson, Vice-Chairman

BY: _____
Dr. James P. Walsh, Member

Catherine M. Harper, Solicitor
Ann Thornburg Weiss, Esq.
Milford Township Zoning Hearing board
Timoney Knox, LLP
400 Maryland Dr., P.O. Box 7544
Ft. Washington, PA 19034-7544
Tel: 215-646-6000
email: charper@timoneyknox.com
        aweiss@timoneyknox.com

345852v1                                    8