**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:**<br>**MIDNIGHT MADNESS DISTILLING LLC,**<br><br>**Debtor.** | **CHAPTER 7**<br>**Case No. 21-11750-PMM** |
| **BONNIE B. FINKEL, in her capacity as Chapter 7 Trustee for Midnight Madness Distilling LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CASEY PARZYCH, et al.,**<br><br>**Defendants.** | **Adv. No. 23-00047-PMM**<br>Re: Adv. Docket No. 153 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO MJOP DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**COREN & RESS, P.C.**
STEVEN M. COREN
JANICE D. FELIX
ANDREW J. BELLI
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170

*Counsel for Plaintiff*
*Bonnie Finkel, Chapter 7 Trustee*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ iii

I.  INTRODUCTION ........................................................................................................1

II.  FACTUAL AND PROCEDURAL HISTORY ..............................................................2

   A.  The MJOP Defendants and Their Role in the Insider Scheme ...............................2

   B.  Procedural History ..................................................................................................5

III.  LEGAL STANDARD....................................................................................................7

IV.  ARGUMENT.................................................................................................................7

   A.  The Trustee Is the Proper Party to Assert The Claims In the Amended
       Complaint.................................................................................................................7

       1.  With Respect to Defendants Who Are Not the Holders of Assumed
           Liabilities This Court Has Already Held That the Trustee's Claims
           Fall Outside the "Purchased Assets".............................................................7

       2.  Gary Parzych and ETP Have No Plausible Argument Regarding
           Assumed Liabilities, and Section 1.01(k) Does Not Reach Them ............10

       3.  Whether Finland Leasing "Holds an Assumed Liability" Cannot Be
           Resolved on the Pleadings ...........................................................................11

       4.  The Sold-Claims Defense Is Nonjurisdictional, Waived, and Would
           at Most Trigger Rule 17(a)(3)'s Ratification Mechanism—
           Not Dismissal................................................................................................12

   B.  The Amended Complaint States a Claim Against Each MJOP Defendant For
       Aiding and Abetting Breach of Fiduciary Duty....................................................16

       1.  The Amended Complaint Plausibly Alleges the MJOP Defendants'
           Knowledge ....................................................................................................16

       2.  The Amended Complaint Plausibly Alleges Substantial Assistance
           and Blameworthy Conduct ...........................................................................18

       3.  The Amended Complaint Plausibly Alleges Causation.............................20

   C.  The Unjust Enrichment Claim Against Gary Parzych Is Well Pleaded and
       Presents a Live Controversy .................................................................................21

   D.  The Breach of Contract, Preference, and Fraudulent Transfer Claims Against
       Finland Leasing and ETP (Counts 9, 13, and 14) Must Proceed...........................22

       1.  *Kimmelman* Is Inapposite.............................................................................22

       2.  The Amended Complaint Properly Pleads Preference Claims ..................23

       3.  The Motion Offers No Basis to Dismiss the Fraudulent Transfer Claims
           Against Finland Leasing and ETP ................................................................24

V.    CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Adena, Inc. v. Cohn*, 162 F. Supp. 2d 351 (E.D. Pa. 2001) ....................................................... 16

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) ...................... 14

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416 (3d Cir. 1994)................... 13

*Atl. Richfield Co. v. Razumic*, 390 A.2d 736 (Pa. 1978).................................................................. 9

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ................................................................... 22

*Clairton Corp. v. Geo-Con, Inc.,* 635 A.2d 1058 (Pa. Super. 1993) ............................................ 11

*Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723 (6th Cir. 2016) .............................................. 13

*Dep't of Transp. v. Manor Mines, Inc.*, 565 A.2d 428 (Pa. 1989)................................................... 9

*Happel v. Paxton*, 2026 WL 1223984 (W.D. Pa. May 5, 2026).............................................. 13, 15

*Harrison v. Harrison*, 2021 WL 3022416 (E.D. Pa. July 15, 2021).............................................. 16

*In re Student Fin. Corp.*, 335 B.R. 539 (D. Del. 2005) ................................................................ 23

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2022 WL 309178 (E.D. Pa. Feb. 2, 2022) ................................................................................ 13

*In re Wilton Armetale, Inc.*, 968 F.3d 273 (3d Cir. 2020) ........................................................... 13

*Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*,
    344 F.3d 311 (3d Cir. 2003)...................................................................................................... 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................ 12

*Linens of Europe, Inc. v. Best Mfg., Inc.*, 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)............. 9

*LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289
    (N.D. Ga. 2014) ........................................................................................................................ 20

*M. Barry Schultz & Co. v. APM Horsham, Inc.*, 835 F. Supp. 820 (E.D. Pa. 1993) ...................... 9

*Matlack Leasing, LLC v. Morison Cogen, LLP*, 2010 WL 114883 (E.D. Pa. 2010).................... 16

*Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172
    (Bankr. D. Del. 2020) ............................................................................................................... 24

*Mitchell v. Moore*, 729 A.2d 1200 (Pa. Super. 1999)................................................................... 21

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995).................................................................................................................... 9

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................................ 25

*Rosenberry v. Evans*, 48 A.3d 1255 (Pa. Super. 2012)................................................................. 17

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410
    (3d Cir. 1999)............................................................................................................................ 19

*TL Administration Corp. v. Ideasphere, Inc.*, 337 B.R. 827 (Bankr. S.D.N.Y. 2006)................... 9

*Wieburg v. GTE Sw. Inc.*, 272 F.3d 302 (5th Cir. 2001) ............................................................. 14

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187 (3d Cir. 2019) .............. 7

**Statutes and Rules**

11 U.S.C. § 101................................................................................................................................ 17

11 U.S.C. § 365........................................................................................................................... 11, 22

Fed. R. Bankr. P. 7008 .................................................................................................................... 24

Fed. R. Civ. P. 17.........................................................................................................................13-15

Fed. R. Civ. P. 8.............................................................................................................................. 24

Plaintiff Bonnie B. Finkel, in her capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of Debtor Midnight Madness Distilling, LLC f/k/a Theobald and Oppenheimer, LLC d/b/a Faber Distilling (the "Debtor"), respectfully submits this Memorandum of Law in opposition to the motion for judgment on the pleadings (the "Motion," Adv. D.I. 153) filed by Defendants Gary Parzych, Finland Leasing Co., Inc. ("Finland Leasing"), and Eugene T. Parzych, Inc. ("ETP" and, together with Gary Parzych and Finland Leasing, the "MJOP Defendants").

## I.   INTRODUCTION

Three years into this litigation – after twice answering the Trustee's pleadings without raising the arguments they now press, and in the midst of active discovery – the MJOP Defendants ask the Court for judgment on the pleadings.  Rule 12(c) sets a demanding standard: viewing all facts and inferences derivable therefrom in the light most favorable to the Trustee, the MJOP Defendants must clearly establish that no material issue of fact remains and that they are entitled to judgment as a matter of law, on the pleadings alone.  The Motion does not meet that standard.

The Motion's argument that the Trustee's claims were sold to Millstone fails for multiple reasons.  This Court has already construed Section 1.01 of the APA and held that the Trustee's claims fall outside the "Purchased Assets" because they do not relate to the Debtor's "Business" of distilling and producing spirits.  Gary Parzych and ETP appear nowhere in Section 1.03 and hold no Assumed Liability, so Section 1.01(k) cannot reach them.  And whether Finland Leasing "holds" an Assumed Liability cannot be resolved on the pleadings — least of all when Finland simultaneously insists that the written lease was a valid, assumed, and assigned contract and that it was expired, unsigned, and terminable at will.  Even if the Court were to conclude that some claim was transferred, the defense is nonjurisdictional, has been waived by years of litigation

1

silence, and would at most trigger Federal Rule of Civil Procedure 17(a)(3)'s ratification mechanism — not entry of judgment for the MJOP Defendants.

The Motion's merits arguments fare no better. Supported by contemporaneous correspondence, the Amended Complaint alleges that Gary Parzych – an insider of the Debtor – selectively deployed his control over the Debtor's operating premises to chill bidding at the Section 363 auction for the benefit of his son's undisclosed arrangement with the stalking horse, while Finland Leasing and ETP served as the conduits through which hundreds of thousands of dollars were siphoned from the insolvent Debtor. Those allegations, taken as true with all reasonable inferences drawn in the Trustee's favor, plausibly plead knowledge, substantial assistance, and causation. The remaining arguments rest on extrinsic materials the Court may not credit on this Motion, an unaccepted "tender" that cannot moot a claim as a matter of law, an inapposite reading of *Kimmelman*, and a criticism of alternative pleading that Federal Rule of Civil Procedure 8(d) expressly permits. The Trustee respectfully suggests that the Motion should be denied in its entirety.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    The MJOP Defendants and Their Role in the Insider Scheme

MJOP Defendant Gary Parzych is the father of Defendant Casey Parzych, the Debtor's principal owner and manager, and is the President and Owner of Defendants Finland Leasing Co., Inc. and Eugene T. Parzych, Inc. Amended Complaint (Adv. D.I. 44) ¶¶ 10, 34. Finland Leasing is the Debtor's former landlord for the premises at 2300 Trumbauersville Road, Quakertown, Pennsylvania (the "Premises"), where the Debtor conducted batching and bottling operations. *Id*. ¶¶ 35, 133. ETP is a Parzych family construction company that shares its registered office with Finland Leasing at the Premises. *Id.* ¶ 36. As the relative of the person in control of the Debtor

and the owner of the Debtor's landlord, Gary Parzych and his companies are insiders of the Debtor – a point PNC's counsel made contemporaneously during the sale process. *Id.* ¶ 137 ("Casey's father and his company, Finland Leasing, are statutory insiders of the Debtor."); *see also id*. ¶ 269 (alleging Finland Leasing and ETP "are insiders of the Debtor by virtue of their close relationships with the Debtor and the fact that their dealings with the Debtor were not at arm's length").

The Amended Complaint alleges that the Insider Defendants conspired to steer the Debtor's assets to EtOH Worldwide, LLC, the stalking horse bidder affiliated with Defendant Shawn Sheehan's entities, in which Casey Parzych had an undisclosed ongoing interest. *Id.* ¶¶ 127-147. Gary Parzych and Finland Leasing supplied the scheme with a potent instrument of leverage: control over the Debtor's operating premises. "In the run up to the Section 363 sale, Defendant Gary Parzych advised potential buyers that he would not allow anyone other than the Sheehan Entities to lease the 2300 Trumbauersville Road property, nor would he permit a transition period for a buyer to find a new location for the operations in that building. Gary Parzych further stated that he was only willing to allow the Sheehan Entities to occupy the building because his son, Defendant Casey Parzych, was part of their organization." *Id.* ¶ 132.

Contemporaneous correspondence quoted in the Amended Complaint corroborates these allegations. On July 22, 2021, the Debtor caused a document to be posted to the sale data room announcing that the lease for the Premises "is expired" and that all batching and bottling equipment "needs to be immediately removed from the premises upon completion of the sale," with new distilled spirits plant licenses to be obtained. *Id.* ¶ 133. PNC's counsel immediately protested that the posting "seems well designed to scare off potential bidders," that favored treatment of the stalking horse on the lease "by virtue of this property being owned by Casey's father" was "highly inappropriate," and that "[i]t's looking more and more like MMD is designing this sale to

3

overwhelmingly favor ETOH (in a sale that no doubt will benefit Casey personally) – a clear violation of MMD's fiduciary obligations." *Id*. ¶ 134. PNC's counsel further warned that "Casey and his father (both insiders of MMD) cannot collude with each other and ETOH to favor ETOH over other bidders," and that Finland Leasing's preemptive foreclosure of lease discussions with other bidders was "deliberately and purposefully putting the other bidders at a disadvantage to throw the auction to ETOH." *Id.* ¶ 137.

The chilling effect was immediate and concrete. "BET Investments has already dropped out," PNC's counsel reported on July 22, 2021, and "[o]ther bidders informed PNC's counsel that they were dropping out because it was obvious that the Insider Defendants were attempting to rig the sale in favor of the Sheehan Entities." *Id.* ¶¶ 135-136. In mid-August 2021, counsel for New Liberty, a division of eventual buyer Millstone, reported that she spoke with Gary Parzych directly and "was told in no uncertain terms that he will not accommodate anyone other than ETOH with respect to either a new lease or even transition time for a new buyer to find a new location for the operations in that building," that "he is only willing to allow ETOH [to] occupy the building because his son is going to be involved with them going forward," and that "[a]ll he will offer a new buyer is 30 days," which was "not enough time to transition," while "he is offering ETOH (as the stalking horse) much more than that – because he knows that Casey will be involved with that enterprise." *Id.* ¶ 143. As PNC's counsel observed, Gary Parzych's statements were "contrary to representations made by Casey and ETOH (including representations made by Casey under oath)," and "reek[] of continuing collusion among Casey, ETOH and his father." *Id.*

Millstone ultimately placed the winning bid of approximately $1.4 million. *Id.* ¶ 144. "Due to the Defendants' misconduct . . ., the price paid by Millstone for the Debtor's assets was less than it would have been had the Section 363 sale been conducted on a level playing field." *Id.* ¶

4

145. Millstone itself later told this Court that the fact "that Finland Leasing (the Debtor's landlord for 2300 Trumbauersville Road and Casey Parzych's father) made clear he would only lease to [Sheehan Entity] ETOH, certainly dissuaded true third party purchasers." *Id.* ¶ 147.

The Amended Complaint separately alleges that the Debtor's insiders used Finland Leasing and ETP as conduits to siphon the Debtor's funds. Although the Finland Leasing lease obligated the Debtor to pay rent of $2,050.00 per month, the Debtor made monthly payments to Finland Leasing of as much as $15,000.00, overpaying its rent obligations by at least $224,339.62 between August 2017 and June 2021 (the "Finland Lease Overpayments"). *Id.* ¶¶ 179-184. And although the lease provided that the *landlord* would pay non-separately-metered utilities and invoice the Debtor for its pro rata share, the Debtor made at least $355,778.05 in payments to ETP – a non-party to the lease – "ostensibly for not only utilities, but also a variety of clearly frivolous and non-Debtor charges, including dental insurance for Defendant Casey Parzych's uncle Larry Parzych and satellite radio for Defendant Casey Parzych" (the "ETP Payments"). *Id.* ¶¶ 185-188. Finally, the Amended Complaint alleges that on January 7, 2021, while the Debtor was insolvent, Casey Parzych used the Debtor's credit card to purchase a $620.40 American Airlines ticket for his father, Gary Parzych. *Id.* ¶ 178(p).

## B.    Procedural History

The Trustee commenced this adversary proceeding on June 15, 2023. Adv. D.I. 1. The MJOP Defendants answered the original Complaint on September 15, 2023, asserting five affirmative defenses, none of which asserted that the Trustee's claims had been sold to Millstone, that the Trustee lacked standing, or that assumption of the Finland Leasing lease barred any claim. Adv. D.I. 16.

5

Other defendants (the "Prior Moving Defendants") did move to dismiss, twice.  See Adv. D.I. 17 and 50.  On July 23, 2024, Judge Coleman granted in part and denied in part their first motion, sustaining the Trustee's claims for breach of fiduciary duty (Count 1), aiding and abetting breach of fiduciary duty (Count 2), unjust enrichment (Count 5), and preferential transfer (Count 13), and sustaining the turnover claim (Count 11) to the extent it sought the Debtor's records.  Adv. D.I. 39 ("First MTD Opinion") at 74.  Although the MJOP Defendants were not among the Prior Moving Defendants, the Court explicitly acknowledged the claims against them and detailed how the facts underlying those claims fit into the context of the allegations against the other Defendants. *Id.* at 5, 10, 13.  The Trustee filed the Amended Complaint on August 22, 2024, conforming her pleading to the First MTD Opinion.  Adv. D.I. 44.

The Prior Moving Defendants then moved to dismiss the Amended Complaint (Adv. D.I. 50), arguing – exactly as the MJOP Defendants do now – that all causes of action "relating" to the Debtor's business had been sold to Millstone under the September 17, 2021 sale order (Bankr. D.I. 178) and Section 1.01 of the accompanying APA (the "General Standing Argument"), and that the claims were inadequately pleaded.  On December 13, 2024, this Court rejected the arguments, holding that the Amended Complaint's "196 paragraphs of factual allegations are identical to those set forth in the original Complaint," that Judge Coleman had already "determined that those allegations were sufficient to meet applicable pleading standards for the Counts asserted," and that the "minimal differences" in the Amended Complaint "do not constitute new allegations supporting reconsideration or visiting anew the arguments the [Prior] Moving Defendants previously made."  Adv. D.I. 64 ("Second MTD Opinion") at 5-6.  On the "General Standing Argument," the Court "reject[ed] the[] position that the Trustee's claims were sold to Millstone under the APA and Sale Order," holding that the claims "fall outside the universe of 'Purchased

Assets' as defined in §1.01 of the APA" because they "do not relate to the Debtor's 'Business'"

of distilling and producing spirits. *Id.* at 6-7. The Court granted dismissal only as to AgTech VI,

LLC and EtOH Worldwide, LLC, whose obligations were expressly identified as Assumed

Liabilities in Section 1.03(d) of the APA. *Id.* at 7-8.

## III.    LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is analyzed under the same

standards that apply to a Rule 12(b)(6) motion." *Wolfington v. Reconstructive Orthopaedic*

*Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation marks and citations omitted).

"Consequently, the court must view the facts presented in the pleadings and the inferences to be

drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion

unless the movant clearly establishes that no material issue of fact remains to be resolved and that

he is entitled to judgment as a matter of law." *Id.* (quotation marks and citations omitted). "Thus,

in deciding a motion for judgment on the pleadings, a court may only consider the complaint,

exhibits attached to the complaint, matters of public record, as well as undisputedly authentic

documents if the complainant's claims are based upon these documents." *Id.* (quotation marks and

citations omitted).

## IV.    ARGUMENT

### A.    The Trustee Is the Proper Party to Assert The Claims In the Amended Complaint

#### 1.    With Respect to Defendants Who Are Not the Holders of Assumed Liabilities This Court Has Already Held That the Trustee's Claims Fall Outside the "Purchased Assets"

Section 1.01 of the APA defines the "Purchased Assets" as the Debtor's "tangible and

intangible assets, properties, and rights of every kind and nature and wherever located (other than

the Excluded Assets), *which relate to, or are used or held for use in connection with, the*

7

*Business*"—with the "Business" contractually defined as the Debtor's "business of distilling and producing spirits."  Bankr. D.I. 178, APA § 1.01 & Recitals (emphasis added).  This Court has already construed that language and already rejected the argument the MJOP Defendants now recycle at pages 13-15 of their Motion:

> The claims set forth in the Amended Complaint allege actions and activities undertaken by the Defendants to build and promote *their own* business activities or the business activities of others, *not* the Debtor's business of distilling and producing spirits.  The Amended Complaint's claims therefore do not relate to the Debtor's "Business" and fall outside the scope of the Purchased Assets under the APA.

Second MTD Opinion at 6-7 (emphasis in original).  That holding disposes of the Motion's premise.  The aiding and abetting, unjust enrichment, breach of contract, and avoidance claims against the MJOP Defendants arise from their alleged participation in an insider scheme to rig a bankruptcy auction for the benefit of the Parzych family and the Sheehan Entities, and from their receipt of hundreds of thousands of dollars in extracontractual payments siphoned from the Debtor – conduct undertaken to benefit the Defendants, not the Debtor's distilling business.  The claims are the Trustee's to prosecute.

The MJOP Defendants' gloss on the rejected argument – that because the Finland Leasing lease was itself a Purchased Asset, any claim "relating" to Gary Parzych's statements about the lease, or to payments connected to the leased Premises, was sold, Motion at 14-15 – is without merit.  On that logic, every claim in this case would "relate to" some asset Millstone purchased, and the Debtor would have sold to Millstone, for no separately bargained consideration, the estate's right to redress the very insider misconduct that depressed the price Millstone paid.  This Court rejected that boundless reading of "relate to" for the reasons set forth in the Trustee's opposition to the Second MTD, Adv. D.I. 58, which is incorporated by reference herein.  *See, e.g.,*

8

*TL Administration Corp. v. Ideasphere, Inc.*, 337 B.R. 827, 831-35 (Bankr. S.D.N.Y. 2006) (broad "relating to the Business" language in an APA did not transfer the debtor's litigation claims, which were different in kind and nature from normal business operations); *cf. Linens of Europe, Inc. v. Best Mfg., Inc.*, 2004 WL 2071689, at *8 (S.D.N.Y. Sept. 16, 2004) (contractual assumption of "routine commercial liability incurred 'in the ordinary course of business'" did not include "tortious liability arising out of unlawful activity"); *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (Supreme Court, in the context of statutory pre-emption, cautions against an overbroad interpretation of the term "relate to" – "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere[.]" (internal alteration marks, quotation marks and citation omitted)).

Moreover, if APA Section 1.01's general language swept in all litigation claims, Section 1.01(k)—which specifically transfers claims against Millstone, its affiliates, and holders of Assumed Liabilities—would be redundant. The specific governs the general: the only claims sold were those described in Section 1.01(k). *See M. Barry Schultz & Co. v. APM Horsham, Inc.*, 835 F. Supp. 820, 822 (E.D. Pa. 1993) ("Ultimately, contracts should be construed to give effect to every provision.") (citing *Dep't of Transp. v. Manor Mines, Inc.*, 565 A.2d 428, 432 (Pa. 1989) ("It is also well established that when interpreting a contract a court must determine the intent of the parties and effect must be given to all provisions in the contract.")); *Atl. Richfield Co. v. Razumic*, 390 A.2d 736, 739 (Pa. 1978) ("To determine an agreement, a writing must be interpreted as a whole, giving effect to all its provisions.").

**2.      Gary Parzych and ETP Have No Plausible Argument Regarding Assumed Liabilities, and Section 1.01(k) Does Not Reach Them**

Section 1.01(k) of the APA transfers "any claims or causes of action the [Debtor] or its bankruptcy estate have, had, or may have against *Buyer or any of its affiliates, or any holder of an Assumed Liability*." APA § 1.01(k) (emphasis added). The APA itself identifies who may hold Assumed Liabilities: Section 1.03 enumerates them, and Section 1.03(d) expressly designates the Debtor's monetary obligations under the AgTech VI and EtOH equipment leases – the  designation on which those two entities obtained dismissal. Second MTD Opinion at 7-8.

Nothing of the sort is true of Gary Parzych or ETP. Gary Parzych, individually, is a party to no Assigned Contract and appears nowhere in Section 1.03 or its schedules; Millstone assumed no obligation running to him. The Motion does not contend otherwise – as to Gary Parzych it relies solely on the "relate to the Business" argument. Motion at 13-14. ETP likewise is a stranger to the Finland Leasing lease and to every contract on Schedule 1.01; it is not mentioned in Section 1.03, Schedule 1.01, or Schedule 1.03. The Motion's only argument as to ETP—that the Trustee is "attempting to recover . . . overpayments made under the Lease" and that the claim therefore "relates to the Lease and the Debtor's Business," Motion at 15 – is incorrect twice over. Factually, the Amended Complaint alleges that the ETP Payments were made *in violation of* the lease, which required the landlord to pay utilities and invoice the Debtor for its pro rata share, and that the payments covered "clearly frivolous and non-Debtor charges" such as dental insurance for Casey Parzych's uncle and satellite radio. Amended Complaint ¶¶ 185-188. The Trustee is not enforcing the lease against ETP; she is avoiding and recovering transfers made to a non-party to the lease with no contractual basis. Legally, Section 1.01(k) turns on whether the defendant holds an Assumed Liability and not on whether a claim "relates to" a contract or the Business, and the broader "relates to the Business" theory fails for the reasons stated in Section IV.A.1, *supra*.

10

Because neither Gary Parzych nor ETP holds an Assumed Liability, no claim against either of them was sold.

### 3. Whether Finland Leasing "Holds an Assumed Liability" Cannot Be Resolved on the Pleadings

Finland Leasing argues that its lease with the Debtor was an Assigned Contract on Schedule 1.01, that Millstone assumed the Debtor's obligations under Assigned Contracts pursuant to Section 1.03(a), and therefore that Finland Leasing "holds" an Assumed Liability and all claims against it were sold to Millstone. Motion at 12-13. Finland Leasing seeks to have it both ways. To defeat the Trustee's claim to ownership, it insists the written lease was a valid, assumed, and assigned contract whose obligations Millstone took on. To defeat causation, it insists – relying on materials outside the pleadings – that the lease was expired, unsigned, terminable at will, and publicly known to be worthless to any buyer. *Compare* Motion at 12-13 with *id.* at 21-25. The conflict in Finland Leasing's own argument highlights disputes of law and fact which preclude judgment on the pleadings as to the issue of claim ownership.

If Finland Leasing is correct, then the lease was incapable of assumption pursuant to 11 U.S.C. § 365(c)(3). *See also* Sale Order ¶ 11 (authorizing the Debtor to "assume the Assigned Contracts and assign and sell the Assigned Contracts to the Buyer"). Furthermore, there would have been no lease to assign – under Pennsylvania law, when a tenant holds over after the expiration of its term and the landlord acquiesces by accepting rent, the parties' relationship continues not under the expired lease but under a *new* tenancy implied by operation of law, which incorporates such of the old lease terms as are consistent with the new arrangement. *See, e.g., Clairton Corp. v. Geo-Con, Inc.,* 635 A.2d 1058, 1059 (Pa. Super. 1993).

The contract listed on Schedule 1.01 is the written "Warehouse Lease." If, as Finland Leasing argues, the Debtor thereafter occupied the Premises in "holder-over status," Motion at 24,

11

then whatever occupancy interest existed on the Petition Date arose from an implied tenancy created by operation of law and incorporating the written lease's material terms, not from the scheduled contract.   And Section 1.03(a) defines the Assumed Liabilities as the Debtor's obligations "under the Assigned Contracts": obligations under an unscheduled implied tenancy were not defined as Assumed Liabilities and Finland Leasing would hold no Assumed Liability at all.   It is inappropriate for the MJOP Defendants to ask the Court to hold the opposite as a matter of law, on the pleadings, when they at the same time raise arguments questioning the character of the Debtor's tenancy, the identity of the operative agreement, and the scope of what Millstone actually assumed, all of which are unresolved and fact sensitive questions of Pennsylvania law.

### 4.      The Sold-Claims Defense Is Nonjurisdictional, Waived, and Would at Most Trigger Rule 17(a)(3)'s Ratification Mechanism—Not Dismissal

Even were the Court to conclude that one or more claims against Finland Leasing was transferred to Millstone, the resulting issue would not deprive the Court of Article III jurisdiction and the Federal Rules require an opportunity for substitution of the proper party in interest.  The Trustee is the representative of the Debtor's estate suing to redress injuries to the estate: an auction price depressed by insider misconduct and hundreds of thousands of dollars siphoned to insider-owned entities for the benefit of non-Debtor parties.  Those injuries exist regardless of the proper contractual owner of the resulting causes of action.  That is a paradigmatic case or controversy, and provides a basis for the Trustee's Article III standing at the commencement of this action. What the MJOP Defendants actually assert is that certain claims were contractually transferred to someone else – that is, that the Trustee does not *own* the claims she presses.  Under controlling authority, who owns a cause of action is a merits question, not a limitation on the Court's adjudicatory power.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-28 & n.4 (2014) (so-called "prudential" or "statutory" standing defects do not implicate

subject-matter jurisdiction); *In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020) (holding in the wake of *Lexmark* that "a litigant's 'standing' to pursue causes of action that become the estate's property means its *statutory* authority under the Bankruptcy Code, not its *constitutional* standing to invoke the federal judicial power"); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2022 WL 309178, at *3 (E.D. Pa. Feb. 2, 2022) ("For purposes of constitutional standing, 'one who sells his interest in a cause of action is not deprived of Article III standing.'" (quoting *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016))).

In other words, the MJOP Defendants' argument is properly construed not as a matter of the Court lacking jurisdiction, but rather that this action is not being prosecuted by the proper party in interest. *See Cranpark,* 821 F.3d at 730-31 ("We conclude that one who sells his interest in a cause of action is not deprived of Article III standing, but he is susceptible to a real-party-in-interest challenge, at least if the challenge is timely raised."); *Happel v. Paxton*, 2026 WL 1223984, at *5 (W.D. Pa. May 5, 2026) ("A debtor's lack of authority to prosecute a prepetition claim belonging to the bankruptcy estate is not a jurisdictional defect depriving the Court of Article III power to adjudicate the case; rather, it is a real-party-in-interest problem governed by Federal Rule of Civil Procedure 17(a).").

Two consequences follow.  The first is waiver.  An objection that the action is not being prosecuted by the real party in interest must be raised with reasonable promptness, or it is forfeited. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1431 (3d Cir. 1994).  The MJOP Defendants (which, unlike the Trustee, were parties to this bankruptcy case at the time the sale order was approved and consummated) answered the Complaint in September 2023 (Adv. D.I. 16) asserting five affirmative defenses (none suggesting that the claims against them belonged to Millstone), answered the Amended Complaint without asserting the defense (Adv. D.I. 46),

13

watched the Prior Moving Defendants press the same theory in December 2024, and then participated in more than a year of merits discovery before first raising the defense in July 2026. If this defense was ever available to the MJOP Defendants, it has been waived.

The second consequence is that even a timely objection would not support the relief the Motion seeks. Federal Rule of Civil Procedure 17(a)(3) (applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7017) states that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." The provision exists "to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made," Fed. R. Civ. P. 17 advisory committee's note (1966 amendment), rationales that apply with full force here with the Trustee stepping into the shoes of a debtor in possession with a complex history.

Courts accordingly hold that dismissing without consideration of Rule 17(a)(3) is an abuse of discretion – including in precisely this posture, where the defense contends that the plaintiff's claims belong to a bankruptcy estate's representative or its transferee. *See Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308-09 (5th Cir. 2001) (abuse of discretion to dismiss claims that belonged to a chapter 7 trustee without considering the less drastic alternatives of joinder, ratification, or substitution under Rule 17(a)); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20-21 (2d Cir. 1997) (Rule 17 substitution should have been permitted where the original plaintiff reasonably but mistakenly believed that attempted assignments authorized it to prosecute the

14

claims, substitution would not alter the underlying allegations, and defendants would suffer no prejudice).

Accordingly, should the Court conclude both that the issue is properly presented and that some claim was transferred, the proper course under Rule 17(a)(3) would be to afford Millstone (or the Trustee as its assignee[1]) a reasonable time to ratify, join, or be substituted—not to enter judgment for the MJOP Defendants. There is no suggestion that any mistake on the Trustee's part as to claim ownership was tactically motivated, and correction would cause no prejudice to the MJOP Defendants – Millstone and the Trustee assert no competing claims to recovery; the allegations, defendants, requested relief, and available defenses would remain unchanged; and ratification, joinder, or substitution would protect the MJOP Defendants against any risk of a second action. Nor would notions of Article III standing stand in the way: where the action was commenced by a plaintiff asserting a genuine injury to the interests she represents, a defect in claim ownership may be cured retroactively pursuant to the plain language of Rule 17 without offending the case-or-controversy requirement. See *Happel*, 2026 WL 1223984, at \*5.

---

[1] In response to the Prior Moving Defendants' Second Motion to Dismiss, the Trustee filed a Conditional Assignment of Claims in which Millstone transferred back to the Trustee any causes of action asserted in the Adversary Proceeding to the extent that the Court held that they were transferred to Millstone pursuant to the APA. *See* Adv. D.I. 58-7. While the Trustee acknowledges the Court's prior holding with respect to AgTech VI and EtOH that the conditional assignment could not retroactively supply Article III standing, the Trustee respectfully suggests that, pursuant to the authority cited herein, the issue is properly framed as a challenge to the proper party in interest. Accordingly, the assignment of claims can operate retroactively under Rule 17 to make the Trustee the proper party in interest with respect to any claim which may have been transferred. *See* Fed. R. Civ. P. 17(a)(3) ("After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.").

15

**B.      The Amended Complaint States a Claim Against Each MJOP Defendant For Aiding and Abetting Breach of Fiduciary Duty**

A claim for aiding and abetting breach of fiduciary duty under Pennsylvania law requires the plaintiff to show: "(1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach."  First MTD Opinion at 40-41 (citing *Adena, Inc. v. Cohn*, 162 F. Supp. 2d 351, 357-358 (E.D. Pa. 2001)).  This Court has already held that the Trustee states a claim against the Insider Defendants for breach of fiduciary duty due to their orchestration of a rigged sale process and systematic diversion of the Debtor's resources, thus satisfying the first element.  First MTD Opinion at 32-37, 41; Second MTD Opinion at 5-6 (adopting First MTD Opinion).

**1.      The Amended Complaint Plausibly Alleges the MJOP Defendants' Knowledge**

"With respect to the knowledge element of the claim, either the defendant's direct knowledge of, or willful ignorance to, the breach of fiduciary duty may satisfy the requirement."  First MTD Opinion at 41 (citing *Harrison v. Harrison*, 2021 WL 3022416, at *10 (E.D. Pa. July 15, 2021)).  "The Court sides with those courts finding that direct knowledge *or* willful ignorance meets the knowledge requirement, as this slightly relaxed threshold is consistent with the practical reality that a party can aid and abet another's breach of fiduciary duty by willfully 'sticking their head in the sand' to allow such breach to occur."  *Id.* (citing *Matlack Leasing, LLC v. Morison Cogen, LLP*, 2010 WL 114883, at *11 (E.D. Pa. 2010); *Adena*, 162 F.Supp.2d 351, 357-58 (E.D. Pa. 2001)).

The MJOP Defendants' knowledge argument, Motion at 26-28, reduces the Amended Complaint to a single paragraph (¶ 212) and ignores everything else.  Paragraph 212 does not stand alone.  It sits in the context of the detailed factual allegations in the remainder of the Amended

16

Complaint, which alleges that: Gary Parzych is the father of the Debtor's controlling insider and thus himself a statutory insider, 11 U.S.C. § 101(31)(B)(vi); his companies operated out of the Debtor's own premises and did not deal with the Debtor at arm's length, Am. Compl. ¶¶ 34-36, 269; and he told Millstone's counsel in August 2021 that he would accommodate only ETOH "because his son is going to be involved with them going forward," *id.* ¶ 143, at the very time Casey Parzych was denying under oath the existence of any arrangement with the stalking horse, *id.* (Gary Parzych's statements were "contrary to representations made by Casey . . . under oath"). Taken as true with all reasonable inferences drawn in the Trustee's favor, these allegations plausibly establish that Gary Parzych knew of the undisclosed insider arrangement at the heart of the scheme—knowledge that Casey Parzych was concealing from this Court, from the United States Trustee, and from bidders—and knew that steering the sale to ETOH on the strength of that arrangement breached the insiders' duties. At minimum, the allegations plead willful ignorance, which suffices under the caselaw cited *supra*.

The filings of record in the main case only deepen the plausibility of these allegations. By Finland Leasing's own account, it and the Debtor were operating under a prepetition *oral* arrangement—at nearly five times the written rent—that was never disclosed in the bankruptcy case or the data room and that, as Millstone put it, "directly contradicts the sworn Declaration of Casey Parzych" denying any other agreement or arrangement between the Debtor and his father's companies. Main Case D.I. 248 ¶¶ 15-16; D.I. 258 ¶¶ 15-16. A defendant who maintains secret financial arrangements with the debtor is not plausibly a stranger to the insiders' scheme.

The knowledge of Finland Leasing and ETP in any event follows by imputation: Gary Parzych is the President and Owner of both entities, and his knowledge is imputed to them. *See, e.g., Rosenberry v. Evans*, 48 A.3d 1255, 1262 (Pa. Super. 2012) ("It is well settled in the law of

17

this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and, therefore, knowledge of the agent is knowledge of the principal." (quotation marks and citation omitted)); *see also* First MTD Opinion at 42.  The MJOP Defendants' catalogue of allegations the Trustee supposedly failed to make—no manager or officer status, no overlapping employees, and no receipt of "inside information," Motion at 27—does not impact plausibility and is factually incorrect: the "inside information" Gary Parzych possessed was his own son's undisclosed deal and plan to direct the Debtor's assets to the Sheehan Defendants by, among other things, dissuading other bidders.

### 2.    The Amended Complaint Plausibly Alleges Substantial Assistance and Blameworthy Conduct

The MJOP Defendants recast the Trustee's allegations as "a single conversation" and the "passive receipt of funds."  Motion at 25-26, 29.  That is not what the Amended Complaint alleges.  It alleges that "[i]n the run up to the Section 363 sale," Gary Parzych "advised potential buyers" that no one other than the Sheehan Entities could lease the Premises "nor would he permit a transition period for a buyer to find a new location."  Am. Compl. ¶ 132.  It alleges he told Millstone's counsel that a new buyer would get thirty days—insufficient to transition—while ETOH would receive "much more than that," expressly because of his son's go-forward involvement. *Id.* ¶ 143.  And it alleges that this selective use of control over the Debtor's operating premises was deployed in coordination with the insiders' broader effort to depress bidding and throw the auction to the stalking horse. *Id.* ¶¶ 130-137, 147.  That is affirmative conduct, not passivity.

The MJOP Defendants' argument that a landlord has the "right to refuse" to lease its property, Motion at 25, 29-30, attacks a claim the Trustee has not pleaded.  The Trustee does not contend that Finland Leasing was obligated to lease the Premises to anyone.  She contends that a

18

statutory insider's selective, coordinated exercise of that leverage—welcoming the insider-affiliated stalking horse while preemptively foreclosing every other bidder during a fiduciary sale process—substantially assisted and encouraged the insiders' breaches.  Lawful means deployed in knowing furtherance of another's breach of fiduciary duty are the paradigm of aiding and abetting. And whether Gary Parzych's stance was, as the Motion speculates, innocently motivated by zoning constraints or paternal preference, Motion at 27-28, is a quintessential question of fact—one the Motion supports only with a 2013 zoning decision attached as an exhibit and offered for its truth, which the Court may not credit on a Rule 12(c) motion.  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (court may take judicial notice of public records for their existence, not for the truth of the facts asserted therein).  The zoning theory also contradicts the pleadings the Court must accept and common sense: the special exception concerned operation of a distillery, yet Gary Parzych refused bidders even a transition period to remove equipment or repurpose the facility for another use (e.g., storage), while offering ETOH generous accommodations—a distinction zoning cannot explain.  Am. Compl. ¶¶ 132, 143.

As to ETP, the Amended Complaint alleges far more than passive receipt: ETP was one of "the entities through which the individual Defendants siphoned money away from the Debtor," Am. Compl. ¶ 215, receiving at least $355,778.05 in payments the lease never authorized, for charges as far afield from any legitimate obligation of the Debtor as dental insurance for Casey Parzych's uncle and satellite radio, *id.* ¶¶ 186-188.  Serving as the vehicle through which insiders extract a debtor's funds is substantial assistance in the most literal sense and ETP's knowledge and conduct are in any event supplied by its owner and President, Gary Parzych, through imputation. Am. Compl. ¶¶ 34, 37.  The MJOP Defendants' cases involving disinterested third parties who

merely failed to intervene, Motion at 25-26, do not permit a family-owned conduit for insider self-dealing.

### 3.      The Amended Complaint Plausibly Alleges Causation

The Motion asserts that "there are no non-conclusory factual allegations that Gary Parzych . . . discouraged or dissuaded any specific bidder." Motion at 21. But the Amended Complaint alleges exactly that: BET Investments "has already dropped out" amid the data-room revelations concerning the Premises, Am. Compl. ¶ 135; "[o]ther bidders informed PNC's counsel that they were dropping out because it was obvious that the Insider Defendants were attempting to rig the sale," *id.* ¶ 136; New Liberty—an actual bidder—was told it would receive only thirty days of transition time it could not use, while the stalking horse received "much more," *id.* ¶ 143; the price Millstone paid "was less than it would have been had the Section 363 sale been conducted on a level playing field," *id.* ¶ 145; and Millstone itself represented to this Court that Finland Leasing's stance "certainly dissuaded true third party purchasers," *id.* ¶ 147. At the pleading stage, nothing more is required. The MJOP Defendants' own authority confirms the point: *LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC*, 17 F. Supp. 3d 1289 (N.D. Ga. 2014), addressed the sufficiency of bid-chilling evidence on a full record—not the sufficiency of allegations under Rule 12. *See id.* at 1311-12 ("Alexander has pointed to evidence in the record from which a reasonable jury could conclude that LSREF's conduct at the foreclosure sale chilled the bidding. First, a reasonable jury could conclude that the sales price . . . was grossly inadequate. Second, a reasonable jury could decide, from the evidence in the record, that LSREF conducted the sale in a manner meant to mislead buyers into thinking the personal property was worth far less than it was." (citations omitted)).

20

The Motion's remaining causation theory—that the Debtor's own disclosures about the expired lease and the zoning condition rendered Gary Parzych's statements harmless, Motion at 22-25—is a jury argument built on extrinsic evidence, and an uncompelling one at that. The Amended Complaint alleges that the July 22, 2021 data-room posting was itself part of the scheme—a document that "seems well designed to scare off potential bidders," posted by the insider-controlled Debtor. Am. Compl. ¶¶ 133-134. That the conspirators chilled bidding through multiple mutually reinforcing channels is hardly a defense to any of them. And the assertion that Millstone paid full value notwithstanding the conduct rests entirely on factual representations drawn from Millstone's post-closing motion (Main Case D.I. 248) and from counsel's proffer of the auctioneer's anticipated testimony at the sale hearing—materials the Court may notice only for their existence, not their truth. *S. Cross*, 181 F.3d at 426-27. If the MJOP Defendants wish to litigate what the bidding would have looked like in an untainted process, the vehicle is summary judgment or trial, on evidence, after discovery.

### C.    The Unjust Enrichment Claim Against Gary Parzych Is Well Pleaded and Presents a Live Controversy

Under Pennsylvania law, unjust enrichment requires "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue." *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. 1999) (citation omitted). The Amended Complaint alleges each element: while the Debtor was insolvent, its funds were used to purchase a personal airline ticket for Gary Parzych, an obvious benefit to him at the expense of the Debtor and its creditors. Am. Compl. ¶¶ 178(p), 240-244. Nor is the claim limited to the ticket: the Amended Complaint seeks disgorgement of the benefits received

21

through the scheme, which are the subject of ongoing discovery.  Am. Compl. ¶¶ 216, 240(e), 244.

Drawing all inferences in favor of the Trustee, it is reasonable to assume that Gary Parzych derived

further benefit from the Defendants' scheme to divert Debtor assets and that, as the owner of

Defendants Finland Leasing and ETP, the hundreds of thousands of dollars in Finland Lease

Overpayments and the ETP Payments ultimately flowed to his benefit.  *Id.* at ¶¶ 34, 179-188.

The suggestion that Gary Parzych's unaccepted "tender" of $620.40 plus interest moots the

claim, Motion at 17, is foreclosed by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016):

"an unaccepted settlement offer . . . does not moot a plaintiff's case."  A defendant cannot

extinguish a claim by offering what he unilaterally deems complete relief, and in all events the

offer here would not be complete relief given the breadth of the Trustee's allegations.

**D.      The Breach of Contract, Preference, and Fraudulent Transfer Claims
Against Finland Leasing and ETP (Counts 9, 13, and 14) Must Proceed**

**1.      *Kimmelman* Is Inapposite**

The Motion's primary argument against Counts 9 and 13 rests entirely on *Kimmelman v.*

*Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir. 2003), which

held that a debtor's court-approved assumption of an executory contract – with its attendant

obligation to cure all defaults – precludes later avoidance, as preferences, of prepetition payments

made under that contract.  *Kimmelman's* logic is that avoidance would be circular and inconsistent

with the assumption order: any payment clawed back would simply have been owed again as part

of the cure.  That logic has no purchase here, for three independent reasons.

*First*, *Kimmelman* presupposes a valid assumption.  As set forth in Section IV.A.3, *supra*,

whether the expired, unsigned, month-to-month Finland Leasing lease was or even could have

been assumed under 11 U.S.C. § 365(c)(3) is a disputed question that cannot be resolved on the

pleadings.  *Second*, *Kimmelman* protects payments made on account of obligations fixed by the

22

assumed contract—payments that, if avoided, would resurface in the court-approved cure. That rationale is inapplicable here: the proposed cure amount for the Warehouse Lease was $0.00, to which Finland Leasing did not object. Main Case D.I. 248 ¶¶ 19-20. There were no defaults to cure and avoiding transfers the written lease never required (monthly payments of up to $15,000 against a $2,050 rent obligation, and $355,778.05 routed to a non-party for charges including an uncle's dental insurance, Am. Compl. ¶¶ 179-188) disturbs no cure and creates no windfall. Either way, *Kimmelman* does not reach the Finland Lease Overpayments. *Third*, as to ETP, *Kimmelman* has no conceivable application: ETP is not a party to the lease or to any Assigned Contract, held no claim that assumption cured, and received no protection from any assumption order. The Motion's assertion that the preference claim against ETP "is based on the Lease," Motion at 31, inverts the Amended Complaint, which alleges the ETP Payments were made *in violation of* the lease's terms. Am. Compl. ¶¶ 185-186.

### 2.    The Amended Complaint Properly Pleads Preference Claims

As to Finland Leasing, Count 13 pleads a straightforward preference: within the one-year insider reach-back period, the insolvent Debtor made monthly payments to Finland Leasing, of which $2,050.00 per month was "on account of antecedent debt owed by the Debtor to Finland Leasing pursuant to the Finland Lease." Am. Compl. ¶¶ 269-274. Every element of § 547(b) is pleaded, and insider status—pleaded at ¶¶ 34, 137, and 269—is a fact-intensive inquiry not resolvable on the pleadings. *See, e.g.,* First MTD Opinion at 73; *In re Student Fin. Corp.*, 335 B.R. 539, 547 (D. Del. 2005) ("Any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny may qualify as an 'insider.' Thus, the inquiry into insider status is fact-intensive and can be made only on a case-by-case basis." (quotation marks and citation omitted)).

23

As to the Finland Lease Overpayments and the ETP Payments, the Trustee's primary theory is that they were made for no consideration and on account of no debt at all—and are therefore recoverable as fraudulent transfers (Count 14), unjust enrichment (Count 5), and breach of contract (Count 9). Count 13 pleads preference *in the alternative*: "to the extent that the Court finds that any of the [payments] made during the one[-]year preference period were valid antecedent debts, then those payments were preferential as well." Am. Compl. ¶¶ 275-276. Rule 8 expressly authorizes exactly this: a party "may set out 2 or more statements of a claim . . . alternatively or hypothetically," and "may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3); Fed. R. Bankr. P. 7008. The MJOP Defendants' sole authority, *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622 B.R. 172 (Bankr. D. Del. 2020), dismissed a preference claim that failed to identify any antecedent debt on any theory; it did not purport to abrogate Rule 8(d) or to forbid pleading preference in the alternative to fraudulent transfer.

### 3.    The Motion Offers No Basis to Dismiss the Fraudulent Transfer Claims Against Finland Leasing and ETP

Although the Motion's conclusion asks for judgment on the pleadings with respect to the entire Amended Complaint, its argument never addresses the fraudulent transfer claim (Count 14) on the merits. As to ETP, the Motion offers no ground for dismissal of Count 14 at all—ETP holds no Assumed Liability, and the sold-claims argument does not reach it even on the MJOP Defendants' own theory. As to Finland Leasing, the only argument is the sold-claims theory which is without merit for the reasons detailed above.

24

## V. CONCLUSION

In light of the foregoing facts and authorities, the Trustee respectfully submits that the

MJOP Defendants' motion for judgment on the pleadings should be denied.[2]


Dated: July 31, 2026

**COREN & RESS, P.C.**

/s/ Andrew J. Belli
STEVEN M. COREN
ANDREW J. BELLI
JANICE D. FELIX
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
abelli@kcr-law.com
jfelix@kcr-law.com

*Counsel for Plaintiff*
*Bonnie Finkel, Chapter 7 Trustee*

---

[2] In the alternative, if the Court determines that dismissal of any claims is warranted, Plaintiff respectfully requests that the dismissal be without prejudice so that the Trustee may amend the complaint with respect to any claim deemed insufficient. *See, e.g., Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) ("even when plaintiff does not seek leave to amend his complaint after a defendant [successfully] moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time").