**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>Midnight Madness Distilling, LLC,<br><br>Debtor. | Chapter 7<br><br><br><br>Case No.: 21-11750-PMM |
| Bonnie B. Finkel, in her capacity as Chapter 7 Trustee of Midnight Madness Distilling, LLC<br>Plaintiff<br><br>v.<br><br>Casey Parzych, *et al.*<br><br>Defendants. | Adv. No.: 23-00047-PMM |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF GARY PARZYCH, FINLAND LEASING CO. INC. AND**
**EUGENE T. PARZYCH, INC. FOR JUDGMENT ON THE PLEADINGS**

Defendants Gary Parzych, Finland Leasing Co., Inc. ("Finland") and Eugene T. Parzych, Inc. ("ETP") (collectively, "Movants") respectfully submit this reply memorandum of law in support of their motion for judgment on the pleadings with respect to Plaintiff's amended complaint (the "Amended Complaint")[1] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure which is incorporated into this adversary proceeding pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

---

[1] ECF No. 44

## I. INTRODUCTION

The Plaintiff sued Gary Parzych and related entities, Finland and ETP, claiming they were part of a scheme to chill bidding in the Debtor's section 363 sale and to divert assets and business opportunities to businesses affiliated with the Debtor's officers and employees.

The Plaintiff's conspiracy claims are painted with too broad of a brush with respect to Gary Parych and his entities. There is no allegation that Gary Parzych and his entities had anything to do with the Debtor other than serve as a landlord for one of the Debtor's operating facilities. There is no allegation that Gary Parzych owned the Debtor, worked for the Debtor or served as manager, officer or controlled the decisions of the Debtor.

There is no allegation that Gary Parzych ever communicated with the Debtor, its representatives or the other defendants about the diversion of business opportunities and assets. There is no allegation that he masterminded or participated in the diversion of assets or business opportunities other than claims that his entities passively received more funds from the Debtor than was appropriate.

There is a single allegation that Gary Parzych spoke to counsel for the ultimate buyer and stated his position that he, and indirectly Finland, would not lease the Debtor's premises to any entity other than one associated with his son. This was the only position he could legally take because the zoning use permit for

the premises, which was issued years before the bankruptcy case, required the continued involvement of his son in the distillery as a condition of the zoning permit.

Gary Parzych, and Finland, had the right to refuse to extend the oral month-to-month lease and there is no provision in the Bankruptcy Code, or any applicable law, which would require him to extend the term of the lease. See, *In re Westport Square, Ltd.*, 107 B.R. 199, 200 (Bankr. W.D. Mo. 1989)(a bankruptcy court "lacks the power to force creditor to negotiate a lease for the real estate").

Also, the Court previously ruled, with respect to two other former defendants, that the Plaintiff lacks standing to assert certain claims sold by the Debtor during the chapter 11 case. The claims against the Movants were also sold and should be dismissed consistent with the Court's prior ruling. The Plaintiff objects to dismissal on this ground and characterizes the issue as one involving the real party in interest doctrine because a claim asserted by a non-real party in interest might be ratified by substitution of the real party in interest. However, the Court, in the prior ruling, correctly analyzed the issue as a standing problem which cannot be cured by ratification.

In addition, the Plaintiff asserts there is a factual issue concerning whether the claims against Finland were sold by the Debtor. Again, this Court addressed this issue in the prior ruling by determining that the terms of the asset purchase agreement are clear that all claims against holders of "Assumed Liabilities"

identified by the agreement were sold to the purchaser. Finland is expressly identified as a holder of one of the "Assumed Liabilities."

The Plaintiff also argues the claims against Gary Parzych and ETP were not sold because they do not relate to the Debtor's business. The Plaintiff relies on the Court's prior ruling that claims against other defendants relating to the diversion of assets and corporate opportunities were not sold because those claims were not business assets. The Court noted those claims related to efforts to "build and promote their own business activities or the business activities of others, not the Debtor's business of distilling and producing spirits."

However, Gary Parzych and ETP are not similarly situated to those defendants who were alleged to be building and promoting their own business activities by diverting opportunities from the Debtor. The claims against Gary Parzych relate to the section 363 sale of the Debtor's "business" assets under the asset purchase agreement. The claims against ETP relate to payments made by the Debtor to ETP in connection with the operation of the Debtor's business. As a result, the Debtor sold claims against Gary Parzch and ETP and these claims must be dismissed.

Finally, Plaintiff does not have an automatic right to amend its pleading and the informal request to amend made by Plaintiff in  footnote should be denied subject to the right of the Plaintiff to file a formal motion to amend which attaches the proposed amended pleading so the Court may determine if the proposed pleading is futile before it permits amendment.

## II. REPLY

### A. The Plaintiff lacks standing to assert the sold claims

In a prior ruling,[2] the Court addressed two distinct arguments raised by other defendants based on the sale of the Debtor's assets to Millstone.

**The "Business" Prong**

The first argument, which was rejected by the Court, was that the claims against certain of the moving defendants were sold pursuant to the general language of the Asset Purchase Agreement which defined the "Purchased Assets" to include those relating to the Debtor's "Business." The Court determined that the claims against those defendants related to activities to "build and promote their own business activities or the business activities of others" do not relate to the Debtors' business of distilling and producing spirits.[3]

**The "Assumed Liabilities" Prong**

The second argument, with which the Court agreed, was that claims against the holders of any "Assumed Liabilities" were sold because all claims against those holders were expressly included as "Purchased Assets" under section 1.01(k) of the Asset Purchase Agreement.[4] There was no requirement that the claims relate to the "Business" prong of the "Purchased Assets" definition. The Court rejected the Plaintiff's argument that the dismissed defendants in the prior ruling were not

---

2 ECF No. 64

3 ECF No. 64, endnote, pages 6-7

4 ECF No. 64, endnote, page 7

truly holders of "Assumed Liabilities" because the terms of the Asset Purchase Agreement were clear and the dismissed defendants were specifically identified as holders of "Assumed Liabilities."[5]

**Finland Falls Under the "Assumed Liabilities" Prong**

Finland's request for judgment on the pleadings falls under the "Assumed Liabilities" prong of the "Purchased Assets" definition because the Finland Lease is expressly is an "Assigned Contract" under section 1.01(d) of the Asset Purchase Agreement and Schedule 1.01 of the Asset Purchase Agreement.[6] Because the Lease is a Purchased Asset it logically, and definitionally, "relate[s] to, or [is] used or held for use in connection with, the Business."

**Gary Parzch and ETP Fall Under the "Business" Prong**

The argument raised by Gary Parzych and ETP in the motion for judgment on the pleadings are under the first prong of "Purchased Assets" which relate to the Debtor's "Business." However, the claims against them are different than the claims against the prior movants. Gary Parzych is accused of chilling the bidding for the Debtor's "Business" assets. ETP is accused of being overpaid for "utilities" and "services provided to the [Debtor's] leased premises."[7] Payments for services to the leased premises and utilities related to the Debtor's distilling "Business."

---

5 ECF No. 64, endnote, page 7

6 See, Main Case, ECF No. 178, Asset Purchase Agreement, section 1.01(d) ("Assigned Contracts" are "Purchased Assets"); Asset Purchase Agreement, Schedule 1.01, item 6 (Finland warehouse Lease specifically listed as one of the Assigned Contracts)

7 ECF No. 44, paragraph 186

Accordingly, the claims against both relate to the Debtor's "Business" and were sold to Millstone as "Purchased Assets."

**Standing Issue vs. Real Party in Interest**

The Court rejected the Plaintiff's attempt to rectify this problem, which Plaintiff characterizes as a real party in interest issue which may be corrected, with a post-complaint conditional assignment of the claims from Millstone back to the Plaintiff. The Court correctly noted that "standing is determined and must exist at the time an action is filed, and post-filing events supplying standing that did not exist upon filing may be disregarded."[8]

Accordingly, the Plaintiff lacks standing to pursue claims against Gary Parzych, ETP and Finland because the claims were sold to Millstone.

**B. The Amended Complaint does not state a claim against the Movants, as opposed to the other defendants, for aiding and abetting a breach of fiduciary duty**

**1. The Amended Complaint does not plausibly allege Gary Parzch or his entities had knowledge of the alleged breaches of fiduciary duty.**

The Plaintiff's opposition to the motion does not point to any factual allegations that the Movants had actual knowledge of the alleged breaches of fiduciary duties. Instead, the Plaintiff cites Judge Coleman's prior decision in this case for the proposition that the knowledge element can be satisfied if the Movants

---

[8] ECF No. 64, endnote, page 7

had "willful ignorance" of the breaches by "sticking their head in the sand" to allow the breaches to occur.[9]

The Supreme Court established a two-part test for willful blindness: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *MacArthur Co. v. Cupit (In re Cupit)*, 514 B.R. 42, 52 (Bankr. D. Colo. 2014) citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2070, 179 L. Ed. 2d 1167 (2011).

The analysis with respect to the second part of the test is simple because there are ***zero*** factual allegations in the Amended Complaint that Gary Parzych, Finland or ETP took "deliberate actions" to avoid learning the facts. "A complaint that fails to identify any affirmative actions taken by the defendant to avoid gaining actual knowledge of the [alleged misconduct] is insufficient to state a claim for relief based on the willful blindness theory under the pleading standards set forth in Rule 8, *Twombly*, and *Iqbal*." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012)(patent infringement action).

---

[9] Judge Coleman's prior decision (ECF No. 39) dealt with the "Insider Defendants" (as defined in the Amended Complaint) who are all either former officers of, or general counsel to, the Debtor. Gary, ETP and Finland are not alleged to be officers, general counsel, counsel, employees, volunteers or owners. They are merely alleged to by either a landlord or vendor of the Debtor or the father of the Debtor's majority member and president. There is no allegation that Gary Parzych, Finland or ETP had access to information about the alleged scheme, that they were consulted by the Debtor about the alleged scheme or participated in the decision making of the Debtor.

With respect to the first part of the test, there are no facts supporting an inference that Gary Parzych or his entities subjectively believed there was a high probability that the other defendants were breaching their fiduciary duties. There is no allegation that they were privy to any of the information concerning the alleged scheme.

Plaintiff relies on the fact that Gary Parzych is the father of Casey Parzych to imply guilt by association but there is nothing in the mere parent/grown child relationship, without more, which could result in an inference that the parent knew of the grown child's alleged misconduct. A parent is not automatically liable for the sins of a grown child and a parent of a grown child is not necessarily privy to the child's business decisions. There is nothing more alleged which would render Gary Parzych liable.

The Plaintiff alleges Gary Parzych and his companies "operated out of the Debtor's own premises." This is misleading and, arguably, facially incorrect. The dispute in this case, with respect to the Movants, is largely about the Debtor's lease of a portion of Finland's premises. The premises was not owned by the Debtor. It was owned by Finland and leased to the Debtor.

There is nothing about a landlord (Finland), vendor (ETP) or parental relationship (Gary Parzych) in itself which implies or infers that the landlord, vendor or parent has access to information about the business which is a prerequisite to willful blindness. The Plaintiff needs to allege more than a

relationship status of landlord, vendor or parent to hold the Movants responsible for willful blindness but the Plaintiff has not alleged more.

Gary Parzych's knowledge that his son was going to be involved with the stalking horse going forward[10] is not tantamount that he knew anything about the alleged scheme or that he was willfully blind. He is not a bankruptcy professional and is not alleged to be a party privy to decisions about the bankruptcy case.

Casey Parzych's alleged denial under oath of the existence of any arrangement with the stalking horse[11] has no bearing on Gary Parzych's knowledge or lack of knowledge. There is no allegation that Gary discussed this issue with Casey or anyone else or that Gary was aware of the statement under oath.

It is not an act of aiding or abetting for Gary Parzych to disclose that Casey Parzych was going to be involved with the stalking horse going forward.[12] If anything, this disclosure tends to disprove Plaintiff's factually unsupported conclusion that Gary Parzych was part of a conspiracy. If he were part of the alleged conspiracy, or knew about it, he would have kept this information quiet.

As a result, the aiding and abetting count against the Movants does not plausibly allege willful blindness as required by *Iqbal* and *Twombly* and must be dismissed.

---

[10] ECF No. 160, page 8

[11] ECF No. 160, page 8

[12] ECF No. 44, paragraph 143

### 2. The Amended Complaint does not Plausibly Allege Substantial Assistance and Blameworthy Conduct with Respect to the Movants

The Plaintiff does not plausibly allege substantial assistance and blameworthy conduct.[13]

**Gary Parzych and Finland**

The Plaintiff's response appears to narrow Plaintiff's theory of the case by apparently conceding Finland was obligated to lease the premises to anyone.[14] The Plaintiff states the theory is that a "statutory insider's selective, coordinated exercise of that leverage—welcoming the insider affiliated stalking horse while preemptively foreclosing every other bidder during a fiduciary sale process—substantially assisted and encouraged the insiders' breaches."[15] This theory is factually unsupported because Plaintiff does not identify a single communication in which the parties "coordinated" their efforts.

The Plaintiff's response to the motion points to the following as the blameworthy conduct and substantial assistance given to the alleged tortfeasors by Gary Parzych and, indirectly, Finland:

---

13 Aiding and abetting liability under Pennsylvania law must also "be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others." *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at *23 (Bankr. W.D. Pa. May 22, 2020). A claim for aiding and abetting liability can be dismissed when it contains no allegation about how the scheme was devised and carried out. *Id*.

14 ECF No. 160, page 18 ("The MJOP Defendants' argument that a landlord has the "right to refuse" to lease its property, Motion at 25, 29-30, attacks a claim the Trustee has not pleaded.")

15 ECF No. 160, pages 18 and 19

> 1. Gary Parzych "advised potential buyers" that no one other than the Sheehan Entities could lease the Premises "nor would he permit a transition period for a buyer to find a new location."
>
> 2. Gary Parzych told Millstone's counsel that a new buyer would get thirty days—insufficient to transition—while ETOH would receive "much more than that," expressly because of his son's go-forward involvement.
>
> 3. Gary Parzych selectively used control over the Debtor's operating premises [i.e., his entity Finland was the landlord] in coordination with the insiders' broader effort to depress bidding and throw the auction to the stalking horse.

As explained in Movants' memorandum of law supporting the motion for judgment on the pleadings, this does not constitute blameworthy conduct and substantial assistance because, among other things, Gary Parzych and Finland had the right to deny lease extension to any party, particularly because the zoning for the premises required his son to be involved in the operations.

The Plaintiff attempts to create an issue of fact concerning whether Gary Parzych's true motive was to comply with the zoning special exemption, which predated the bankruptcy case by many years and required the continued involvement of Casey Parzych (by name) in the distillery or whether the motive was to favor a bidder affiliated with his son.

The Court does not need to resolve this motive issue. The Court can assume, for the sake of this motion, that both were motives because the result is the same. There cannot be blameworthy conduct by Gary Parzych because the zoning law prohibited the premises from being used as a distillery unless Casey Parzych was

involved. It is not blameworthy for a landlord to require a tenant to comply with the zoning laws. It is also not blameworthy for Gary Parzych to refuse to rent to anyone else. As the Plaintiff seemingly acknowledges, Gary Parzych and Finland were not obligated to lease the premises to anyone.

**ETP**

The Plaintiff argues that ETP provided substantial assistance by receiving funds which were "siphoned…away from the Debtor." The receipt of funds by a party, without any allegations of blameworthy conduct, is insufficient to support an aiding and abetting claim. *Advanced Fluid Sys., Inc. v. Huber*, 2017 WL 2445303, at *21 (M.D. Pa. June 6, 2017); *Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, No. 19-5369, 2020 BL 562275 (E.D. Pa. Apr. 27, 2020)(allegations of passive acquiescence without substantial assistance or encouragement are insufficient); *Woody Partners v. Maguire (In re OneJet, Inc.)*, 2020 Bankr Lexis 1344, 2020 WL 2617043, at *23 (Bankr. W.D. Pa. May 22, 2020)("In keeping with principles of Pennsylvania tort law, aiding and abetting liability "must be founded upon some blameworthy conduct, or lack of due care resulting in the violation of a duty owing to others. Courts have denied aiding and abetting claims when the defendant is passive and has not actively engaged or encouraged a tortfeasor to breach a duty to a third party.")(internal quotations and footnotes omitted).

Instead of pointing to any actual non-passive conduct by ETP, like active engagement or encouragement of the alleged tortfeasors, the Plaintiff points to allegations that the funds received by ETP were for dental insurance for a relative

and satellite radio to paint a picture of blameworthiness but, no matter how blameworthy Plaintiff attempts to make this look, the standard requires affirmative blameworthy "conduct" which has not been plead. There is no allegation that ETP engaged in any conduct, whether blameworthy or not, at all.

Accordingly, the Amended Complaint does not plausibly allege blameworthy conduct and substantial assistance by the Movants.

### 3. The Amended Complaint does not Plausibly Allege Causation

#### Alleged Scheme to Divert Assets and Corporate Opportunities

The Plaintiff seeks to hold the Movants liable for all damages resulting from the alleged scheme to divert assets and corporate opportunities from the Debtor along with the tangential alleged scheme to chill bidding. However, there is no allegation that Movants were involved, in any way, with the diversion of assets and corporate opportunities. As a result, the Amended Complaint fails to properly plead any damages caused by Movants with respect to the alleged diversion of assets and corporate opportunities.

#### Alleged Bid Chilling

With respect to the alleged bid chilling, the Plaintiff asserts that paragraph 135 of the Amended Complaint plausibly alleges that the Movants caused a bidder, BET Investments, to be discouraged or dissuaded from bidding. Paragraph 135 quotes a communication from counsel for the secured creditor as follows:

> I am very concerned about the due diligence materials being presented to potential bidders and management's favoritism to ETOH (that an affiliate holds Casey and his

> wife's personal guaranty over their heads is a major red flag – I don't care what was proffered yesterday). PNC got access to the data room yesterday and discovered that only 2020/2021 financials were uploaded (only COVID operations, nothing historic). PNC requested that historical financials for the past 3 years be updated (and was told by [the Debtor's auctioneer] that they would be). It just seems like management is doing everything it can to make this business look unattractive to third parties. BET Investments has already dropped out – Kurtzman told me today.

This may be a sufficient allegation of causation with respect to the Debtor's management, which the Plaintiff would like to conflate with the Movants, but the allegation does not mention Gary Parzych, Finland, ETP or the lease and does not allege any of the Movants did anything to cause BET Investments or any other bidder to drop out. There is no allegation that Movants had any involvement in the preparation or dissemination of the due diligence materials presented to bidders or that they were involved in the data room. There is no allegation that Movants had anything to do with the guaranty allegedly being held over Casey Parzch's and his spouse's heads by the stalking horse.

Plaintiff cites paragraph 136 of the Amended Complaint as alleging causation with respect to the Movants but that paragraph also does not mention the Movants at all. Paragraph 136 states, in its entirety, "[o]ther bidders informed PNC's counsel that they were dropping out because it was obvious that the Insider Defendants [which is defined to exclude Movants][16] were attempting to rig the sale in favor of

---

[16] ECF No. 44, paragraph 16

the Sheehan Entities." Again, there is no allegation that the other bidders dropped out because of anything the Movants did or said.

Plaintiff argues that paragraph 143 of the Amended Complaint establishes causation. That paragraph alleges Gary Parzych told counsel affiliated with Millstone that he would not lease to them longer than 30 days but there is no allegation that Millstone dropped out of the bidding. To the contrary, Millstone was the successful bidder and was apparently undaunted by Gary Parzych's position.

Paragraph 145 of the Amended Complaint also does not plausibly allege causation as Plaintiff claims. It alleges, in conclusory terms, that the price paid by Millstone was less than it would have been if the sale was conducted on a level playing field. This conclusory statement does not include any factual allegations and must be discarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

Finally, the Plaintiff points to paragraph 147 of the Amended Complaint which quotes a post-sale pleading filed by Millstone objecting to the stalking horse's request for reimbursement of expenses. The allegation complains about the stalking horse's insider status and mentions the Finland lease and the conversation between Gary Parzych and counsel affiliated with Millstone and then makes the conclusory statement, without any supporting facts, that other third parties were "certainly dissuaded" from bidding. Millstone did not mention what parties were dissuaded or how it reached that conclusion. Millstone did not say that it lowered its bid or that other bidders would have bid higher had it not been for something the Movants did

or said. Accordingly, this conclusory statement falls far short of alleging facts plausibly supporting the causation element.

The only thing Plaintiff has is an attempt to hold Gary Parzch and his entities guilty by association because Gary is Casey's father. But the familial relationship, without more, is not enough to keep Gary Parzych and his entities in this case and require them to spend large amounts of money defending themselves. Gary Parzych, and Finland, had the right to refuse to extend the lease and there is nothing in the Bankruptcy Code or applicable law which could compel him to extend it. See, *In re Westport Square, Ltd.*, 107 B.R. 199, 200 (Bankr. W.D. Mo. 1989)(a bankruptcy court "lacks the power to force creditor to negotiate a lease for the real estate").

### C. The Unjust Enrichment Claim Against Gary Parzych Is Not a Real Dispute

The motion for judgment on the pleadings pointed out that the unjust enrichment claim against Gary Parzch appears to be an airline ticket for Gary Parzych for which the Debtor paid $620.40. The Plaintiff has not identified any other item alleged in the Amended Complaint which unjustly enriched Gary Parzych. Although Gary Parzych disputes the claim, the amount at issue is not worth the cost to defend. Without admitting any liability, Gary Parzych consents to the entry of an order which dismisses the unjust enrichment claim and requires him to pay this amount plus applicable interest.

### D. The Breach of Contract, Preference, and Fraudulent Transfer Claims Against Finland Leasing and ETP (Counts 9, 13, and 14) Must be Dismissed

Plaintiff argues that the Third Circuit's rule in *Kimmelman v. Port Authority of N.Y. & N.J. (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311 (3d Cir. 2003), which prohibits avoidance claims for payments made under an assumed contract or lease.

First, Plaintiff asserts that there may not be a valid assignment of the "month-to-month" lease could be assumed. Plaintiff's position is precluded by the sale order which provides each of the "Assigned Contracts" (which expressly includes the Finland lease) [17] are assumed and assigned to the buyer.[18] The sale order also stated that the Assigned Contracts remain in full force and effect.[19] The sale order is expressly binding on the Plaintiff as the chapter 7 trustee. [20]

Second, the Plaintiff asserts, without any supporting statute or case law, that the rule in *Kimmelman* does not apply when the proposed cure amount for the lease is zero. There is no case or statute cited supporting this position which runs contrary to *Kimmelman* and standard practice. The Plaintiff's theory, if adopted by the Court, would allow debtors to side-step *Kimmelman* any time there is no monetary default or cure due required at the time of the sale.

Third, Plaintiff claims that *Kimmelman* does not apply to ETP because ETP is not a party to an assigned contract. Movants do not dispute that ETP is not a party to an assigned contract. However, the preference claim against ETP is based

---

[17] Main Case, ECF No. 178, Asset Purchase Agreement, schedule 1.01

[18] Main Case, ECF No. 178, paragraph 5

[19] Main Case, ECF No. 178, paragraph 12

[20] Main Case, ECF No. 178, paragraph 26

on the lease[21] which was assumed by the Debtor and assigned to Millstone.[22] The Amended Complaint states payments were made to ETP which should have gone to Finland which is a party to the lease.[23] If those payments are clawed back, it could potentially leave Finland liable to ETP and without the benefit of the lease and the protections afforded by *Kimmelman*. This is a result which should not occur. Movants recognize that this issue, which only applies to ETP, may not be appropriate for judgment on this pleadings.

However, there is another issue with respect to ETP which is dispositive. In particular, as stated in the Movants' opening memorandum of law, the Amended Complaint does not allege any of the payments to ETP were on account of antecedent debts. To the contrary, the Plaintiff alleges that the payments to ETP were made without valid consideration and that the Plaintiff is only asserting the preference claim "to the extent that the Court finds that any of the ETP Payments…were valid antecedent debts."[24] The Plaintiff has not alleged any factual basis for any finding that the payments relate to antecedent debts and, accordingly, has not satisfied the *Twombly* and *Iqbal* standard. As a result, the preference claim must be dismissed. *Miller v. Easy Star Records (In re DA Liquidating Corp.)*, 622

---

21 See, ECF No. 44, paragraphs 185, 186, 187, 188, 270 to 279

22 ECF No. 44, paragraphs 186, 187

23 Main Case, ECF No. 178, Asset Purchase Agreement, sections 1.01(d) and (e)(ii); Asset Purchase Agreement, Schedule 1.01, item 6

24 ECF No. 44, paragraph 276

B.R. 172, 177 (Bankr. D. Del. 2020)(dismissing preference claim for failure to identify the required element of an antecedent debt).

**2. The Amended Complaint does not Properly Plead Preference Claims**

Plaintiff is taking inconsistent positions with regard to Finland. On one hand, to avoid the rule of *Kimmelman* which precludes preference claims based on an assigned lease of contract, the Plaintiff states the lease may not be valid. On the other hand, when addressing the substance of the preference claim, the Plaintiff asserts the Debtor was paying $2,050.00 per month was "on account of antecedent debt owed by the Debtor to Finland Leasing pursuant to the Finland Lease." These inconsistent positions cannot stand. If the lease was valid, which would be required for a finding of an antecedent debt, then *Kimmelman* clearly applies and the preference claim must be dismissed. If the lease was not valid, then there is no antecedent debt which was paid by the Debtor and the preference claim must be dismissed. Rule 8 does not authorize alternative claims when neither alternate results in a valid claim. It requires at least one of the alternatives be sufficient. F.R.C.P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

**3. The Fraudulent Transfer Claims Against Finland Leasing and ETP must be Dismissed**

The Plaintiff does not provide any reason why the fraudulent transfer claims against Finland and ETP should not be dismissed other than asserting that the fraudulent transfer claims were not sold for the reasons previously discussed in Plaintiff's opposition. Accordingly, if the Court determines the claims against ETP

and Finland were sold during the chapter 11 case, the fraudulent transfer claims should be dismissed.

## III. AMENDMENT OF THE COMPLAINT SHOULD NOT BE PERMITTED

Plaintiff, in a footnote, seeks authority to amend the complaint a second time and cites *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) as authority for the amendment. *Phillips* is not a case involving a motion for judgment on the pleadings. It is a case dealing with amendment in connection with a motion to dismiss under Rule 12(b)(6). This is an important distinction. Rule 15(a)(1)(B) provides an automatic right to amend for a motion to dismiss under Rule 12(b)(6) but does not provide an automatic right to amend with respect to a motion for judgment on the pleadings under Rule 12(c). Even if this were a Rule 12(b)(6) motion, the Plaintiff's automatic twenty-one day right to amend has expired under Rule 15(a)(1)(B).

To amend at this stage, without the Movants' consent which will not be forthcoming, the Plaintiff should file a motion to amend pursuant to Rule 15(a)(2). This step should not be sidestepped by Plaintiff requesting an opportunity to amend in a footnote. Motions to amend are typically accompanied by a draft of the proposed amended pleading. This is important, particularly in this case, because amendment may be denied if it is futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

At present, there is no proposed pleading before the Court and the Court cannot make a determination concerning futility, on substantive grounds, until the Court sees the proposed changes.

On non-substantive grounds, any amendment would appear futile for a variety of reasons including: a) the Debtor's sale of the claims against the Movants; and b) the lapse of Pennsylvania's two-year statute of limitations for torts. 42 Pa.C.S.A. § 5524.

Accordingly, Movants respectfully request the Court deny Plaintiff's informal request to amend the complaint for the second time.

## V. CONCLUSION

For the foregoing reasons, Gary Parzych, Finland, and ETP respectfully request that judgment on the pleadings be granted in their favor dismissing Plaintiff's Amended Complaint against them. Movants also respectfully request Plaintiff's request to file an amended complaint be denied.

Dated: August 28, 2026

Respectfully submitted,

**BUCHANAN, INGERSOLL & ROONEY, P.C.**

/s/ Mark Pfeiffer
Mark Pfeiffer, Esq.
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
Email: mark.pfeiffer@bipc.com
*Attorneys for Gary Parzych, Finland Leasing Co., Inc., and Eugene T. Parzych, Inc.*